UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.                                     Case number: 3:21-CR-22(S1)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
_____

MOTION TO DISMISS SUPERSEDING INDICTMENT AND
MEMORANDUM OF LAW

      The Defendant, **KRISTOPHER JUSTINBOYER ERVIN**, by and through the undersigned attorney, moves to dismiss the Superseding Indictment (Doc. 25). Particularly, the Defendant, Mr. Ervin, moves to dismiss Counts 1 through 7 in part, and Counts 8 through 14 in full, for (1) Failure to State an Offense; (2) Unconstitutional Vagueness; (3) First Amendment Violations; and (4) Exceeding Congress's Power under the Tax and Spend Clause.

      As relevant to this Motion, the charges in the Superseding Indictment (Doc. 25) all relate (at least in part) to sales of artwork—laser-etched images on small, flat pieces of metal called "autokeycards"—which the government has alleged are machine gun conversion devices.

    I.    Factual Background

      The relevant underlying factual allegations are relatively simple, and they can be found in the Complaint (Doc. 1). An ATF agent obtained at least one

1

autokeycard. Evidently something of a machinist, the agent used a dremel to drill the autokeycard metal into multiple pieces of different sizes and shapes, which took about thirty-seven minutes. Doc. 1 at 19. The agent then used some of those pieces to fabricate a "lightning link," which the agent "installed" in a semiautomatic rifle. *Id.* Essentially, the agent treated the autokeycard as a raw material and made it into something different, apparently expecting that, with a little gunsmithing, he could convert his rifle into a machine gun. Predictably, however, mutilating the metal card and sticking the mangled pieces of it inside the rifle simply caused the weapon to malfunction. "Tests" of the Frankensteinian rifle revealed that the agent's crude alterations made the weapon fire erratically, and, at times, fire more than once per single trigger pull. Doc. 1 at 19.

## II. Argument

First, 26 U.S.C. § 5845's definitions of firearms and machine guns do not reach laser-etched images or raw materials, so by charging Mr. Ervin for laser-etched images on metal, the government has failed to state an offense under §5861 or §5871. And, because the government alleges that Counts I-7 were committed while violating another United States law, those Counts fail to state an offense in part for the same reason. Second, assuming *arguendo* that § 5845's definitions could include a laser-etched image on a piece of metal, the

statutory scheme (1) violates the First Amendment as applied to Mr. Ervin, and (2) is void for vagueness as applied to Mr. Ervin. Finally, even if the statutory scheme is otherwise constitutional, it exceeds Congress's power under the Tax and Spend Clause of the United States Constitution.

### A. Counts 1-7 should be dismissed in part.

Mr. Ervin moves to dismiss Counts 1-7 in part, for the same reasons addressed below with respect to Counts 8-14, insofar as they allege that he engaged in various transactions "while violating another law of the United States." Doc. 25 at 1, 2. There is no sufficient allegation that Mr. Ervin violated "another law of the United States," as discussed below. To the extent that the laser-etched images at issue here could violate the law, those laws would be unconstitutional as applied for the same reasons discussed below.[1]

### B. Failure to State an Offense

The Superseding Indictment fails to state an offense as to Counts 8-14. This issue is properly resolved on a motion to dismiss, because "the infirmity in the prosecution is essentially one of law." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Where, as here, "the indictment tracks the language of the

---

[1] If, alternatively, the government is alleging violation of an additional law not specified in the Superseding Indictment, the Superseding Indictment does not adequately put Mr. Ervin on notice of the charges against him. If this Court declines to partially dismiss Counts 1-7, Mr. Ervin moves for a bill of particulars.

3

statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). As an initial matter, the Superseding Indictment fails to do this, and Counts 8-14 should be dismissed for that reason alone. But even considering and taking as true the facts laid out in the Complaint, the Superseding Indictment fails as a matter of law. The object described by the government does not constitute a machine gun conversion device under § 5845.

It is clear from the face of the statute that machine gun conversion devices are not laser-etched images on what amounts to raw materials. And, any "ambiguity concerning the ambit of a criminal statute should be resolved in favor of lenity." *Huddleston v. United States*, 415 U.S. 814, 831 (1974). This is because "principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979). The statute defines "machinegun" (hereinafter "machine gun") as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use

4

>in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (2019). The Superseding Indictment indicates that Mr. Ervin possessed "machinegun conversion devices," so the only potentially applicable part appears to be "any part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."[2] *See* Doc. 25 at 3.

The Complaint alleged that Mr. Ervin's website was selling "auto sears or similar devices that convert weapons into machineguns."[3] Doc. 1 at 4. Initially, the Complaint implied that Mr. Ervin was selling metal cards with some kind of perforated design, such that an "auto sear" could be "punch[ed] out." Doc. 1 at 4. Later, however, it explained that

---

[2] Bizarrely, the Complaint states that, according to the FTCB report, the lightning link is "a 'combination of parts designed and intended, for use in converting a weapon to a machinegun' and is therefore a regulated firearm under the National Firearms Act." Doc. 1 at 18. However, the autokeycards are individual objects, not sets or combinations of objects. *Cf. United States v. Was*, 684 F. Supp. 350, 353 (D. Conn. 1988), *aff'd*, 869 F.2d 34 (2d Cir. 1989) (explaining that a finished auto sear fell within the "combination of parts" language of § 5845(b) because it was "physically made up of more than one part").

[3] Notably, the complaint's definition of "auto sear" is, at best, overly simplistic. It treats the terms "auto sear" and "lightning link" as interchangeable.

5

"lightning link"[4] machine gun-conversion devices were "laser etched" on a metal card. *Id.* at 17. The ATF agent's use of a dremel for thirty-seven minutes to create something new out of the metal card is not the same as using a "part" to convert a weapon into a machine gun. *See id.* at 19.

To the degree that the agent's kludgy weapon can be called a machine gun, making it required the agent to fabricate a part, using the autokeycard as raw material. The statutory scheme does not restrict raw materials or card-sized sheets of metal.

Previously, ATF had issued guidance stating that a shoestring with two loops tied in it was a "machine gun" under the statute. After the guidance was used to impeach expert witnesses, the ATF reversed its position, but still maintained that a shoestring added to a semiautomatic firearm would be a machine gun. *See* Conversion kits, Firearms Law Deskbook § 6:10 (citing Letter from Richard Vasquez,

---

[4] Allegedly, lightning link devices can "slip over the hook in the top of the disconnector in an AR-15 type receiver and be positioned in the receiver over the top of the selector and under the rear intake pin." Doc. 1 at 17. This can purportedly "replicate[ ] the function of an automatic-sear and convert[ ] a semi-automatic AR-15 type firearm to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." *Id.* at 17-18.

6

acting Chief, ATF Firearms Technology Branch, June 25, 2007, to Brian A. Blakely, 903050:JPV, 3311/2007-615).

Although the tied shoestring requires no modification whatsoever before being attached to the semiautomatic firearm, it is not a machine gun. And yet, the government claims that a piece of metal that needs to be drilled for thirty-seven minutes by a skilled firearms agent in order to be added to a gun that might then inconsistently shoot multiple times per trigger-pull is a machine gun. *Cf. Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 454 (5th Cir. 2016) (discussing "an unfinished piece of metal that looks quite a bit like a lower receiver but is not legally considered one and may therefore be bought and sold freely" that "requires additional milling and other work to turn into a functional lower receiver"). An image on a metal card does not fit within the statutory definition of a "machine gun" any more than a shoestring does.

At least one district court has held that flat pieces of metal are not firearms under federal law—even if they have laser perforations:

> However, the court simply does not believe that a flat piece of metal with laser perforations and holes constitutes a "receiver," i.e., a "firearm." Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane. Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded. Until that time, it is a patterned piece of paper. Simply put, this court

7

>   has no evidentiary or legal basis for holding that a flat piece of metal with laser perforations and some holes constitutes, ultimately, a "firearm." It may become part of a firearm at some point, but not until further work has been accomplished to allow it to secure the stock, chamber, barrel and other parts. Until that time, it is not even a true component of a firearm, only a potential component of a firearm.

*United States v. Prince*, No. 09-10008-JTM, 2009 WL 1875709, at \*3 (D. Kan. June 26, 2009), *rev'd on other grounds*, 593 F.3d 1178 (10th Cir. 2010). Autokeycards are, unlike the flats in *Prince*, mere images etched into metal. There is no legal basis for holding that they are machine guns.

### C. The statutory scheme is unconstitutionally vague as applied to Mr. Ervin.

To the extent that the statutory definition of machine gun does include Mr. Ervin's laser-etched image, the statute is unconstitutionally vague under the Fifth Amendment as applied to Mr. Ervin. The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement. *See, e.g., Skilling v. United States*, 561 U.S. 358, 402-03 (2010).

"The question of fair warning must begin with the language of the statute itself." *United States v. Hunt*, 526 F.3d 739, 743 (11th Cir. 2008). The statute's restriction of a part designed solely and exclusively for use

8

in converting a weapon to a machine gun does not put on ordinary person on fair notice that a laser-etched image on a metal card is a machine gun.

There is nothing in the statutory scheme that appears to criminalize images, and whether or not the image appears on a piece of metal does not change the analysis. Many materials could be drilled into shapes that could cause certain firearms to fire more than once with a single pull of a trigger. That does not bring them all within the statute's reach, regardless of whether they could be manipulated or fabricated into a "conversion device."

Plastic is one such material, as in the recent case, *United States v. Watson*, No. 3:20-cr-00042-GMG-RWT (N.D. W. Va. 2020). In *Watson*, the government alleged that the defendant 3d printed coat hangers that could be used as auto sears; he did not merely draw pictures that looked like them. *See id*. A closer analogy to Mr. Ervin's case would be if that defendant had taken an ultra-fine-point permanent marker and drawn a picture that looked like a lightning link on a solid LEGO piece,[5] or on

---

[5] LEGO bricks and pieces are popular toys for children, and they are made out of ABS plastic. *See* "What are Lego bricks made of, and why is treading on them so painful?" Explorations of Everyday Chemical Compounds (April 9, 2018) *available at* https://www.compoundchem.com/2018/04/09/lego/ (last accessed March 30, 2021). ABS plastic is commonly used for 3D printing. *See* "The Free Beginner's Guide," 3D Printing Industry: The Authority on Additive

a PETG plastic[6] food container. Where, as here, the medium is not itself a firearm, no ordinary person would have fair warning that using a particular medium to draw an image would result in criminal machine gun charges.

### D. The statutory scheme violates the First Amendment as applied to Mr. Ervin.

#### 1. The autokeycard is protected expression.

To the extent that the statute does indeed criminalize a laser-etched image, it violates the First Amendment as applied. Ultimately, Mr. Ervin is before this Court because of a drawing of what the government says is a lightning link. Artistic works, like drawings, are protected expression under the First Amendment.

It is clearly the design of the image, rather than the material itself, that the government is targeting. Similarly-sized pieces of metal are abundant on the consumer market, used as credit cards, pocket survival tools, and more. It cannot be that the law criminalizes any piece of metal that could be drilled into something that could be used to make a machine gun. What the government

---

Manufacturing, *available at* https://3dprintingindustry.com/3d-printing-basics-free-beginners-guide/ (last accessed April 8, 2021).
  [6] The coat hangers in *Watson* were printed using PETG plastic. *Watson*, Doc. 1-1 at 15-16.

finds blameworthy here is not the metal. It is the drawing. That is the only thing that separates Mr. Ervin's autokeycard from the popular titanium Apple Card. Notably, Mr. Ervin printed the same autokeycard design on t-shirts and hats, which shows that the design itself was a form of expression.

### 2. The restriction on Mr. Ervin's expression is content-based and cannot survive strict scrutiny.

Because Mr. Ervin has been charged based on what his image depicts, it is a content-based restriction on his expression. Heightened judicial scrutiny is applied to specific, content-based restrictions on protected expression. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000). To survive strict scrutiny, the government must demonstrate that the law is "justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011).

Criminalizing basic drawings of lightning links serves no compelling government interest. The definition at issue is part of the Internal Revenue Code. While increasing revenue through firearm taxes might be a substantial government interest, it is not compelling. *See Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 231 (1987). There is no option for someone like Mr.

Ervin to pay a tax on the images. If the government is aiming to limit available information on lightning links, the statutory scheme does not accomplish that: blueprints for lightning links are freely available on the internet.[7] Artistic replicas and renderings of both legal and illegal gun parts are common forms of political speech used to show support of Second Amendment rights.[8] Restricting such artwork is not narrowly-tailored to any compelling government interest, and it cannot survive strict scrutiny.

### E. To the extent that the statute reaches Mr. Ervin's conduct, it exceeds Congress's power under the Tax and Spend Clause.

"Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond*, 572 U.S. at 854), such as the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1.

---

[7] *See, e.g.*, Free Lightning Link Template, *available at* https://www.pinterest.com/pin/347973508706397446/ (last accessed March 31, 2021). The autokeycard image does not even rise to the level of a blueprint—it lacks any scale markings.

[8] *See, e.g.*, AR-15 Keychains, *available at* https://www.etsy.com/market/ar_15_keychain?ref=pagination&page=2 (last accessed March 31, 2021).

In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, the Supreme Court upheld the Affordable Care Act's ("ACA") "penalty" as a "tax" properly within the scope of the Tax and Spend Clause. 567 U.S. 519, 561-75 (2012). *Sebelius* held that the ACA was not punitive because "[n]either the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS." *Id.* at 567-68. Those factors distinguished the ACA from "a mere penalty with the characteristics of regulation and punishment." *Id.* at 573 (citing *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994); *Drexel Furniture*, 259 U.S. at 38) (internal quotations omitted).

Individuals who produce items like the autokeycard have no option to pay a tax. If they carve the wrong image into the wrong material, they face prosecution, regardless of their willingness to pay. That is not a tax; it is a mere penalty with the characteristics of regulation and punishment. The US Attorney's Manual acknowledges as much: " because it is impossible to comply with the registration and taxation provisions in the NFA, prosecutors should charge the unlawful possession or transfer of a machine gun made after May 19, 1986 under § 922(o)." *United States Justice Manual* 9-63.516, "Charging Machinegun Offenses Under 18 U.S.C. § 922(o), Instead of Under the National Firearms Act," 1999 WL 33219894, at *1. Accordingly, to the extent that the

13

statutory scheme criminalizes Mr. Ervin's conduct here, it exceeds Congress's power under the Tax and Spend Clause.

## III. Prayer for Relief

For the foregoing reasons, Mr. Ervin respectfully requests that this Court (1) dismiss Counts 1-7 in part, to the extent they allege a violation of another United States law; (2) dismiss Counts 1-8 in full; or, in the alternative (3) direct the government to file a bill of particulars detailing any other violations of United States law it intends to rely on and describing the particular objects that it believes constitute "machine gun conversion devices."

Dated:   April 12, 2021.

JAMES T. SKUTHAN
ACTING FEDERAL PUBLIC DEFENDER

s/ Lisa Call
_____
Lisa Call
Assistant Federal Defender
Florida Bar No. 0896144
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Facsimile: (904) 232-1937
Lisa_Call@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished by electronic filing through the United States District Court to Cyrus Beatriz Zomorodian, US Attorney's Office, 300 North Hogan Street, 7th Floor, Jacksonville, FL 32202 on March 19, 2021.

s/ Lisa Call

_____

Lisa Call
Assistant Federal Defender