UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:21-cr-22(S1)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its response in opposition to defendant's Motion to Dismiss Superseding Indictment and Memorandum of Law (Doc. 30) (hereinafter, the "Motion to Dismiss"). The Superseding Indictment in this case charges defendant with seven counts of structuring financial transactions while violating another law of the United States (Counts 1-7), one count of transporting or delivering unregistered firearms (machinegun conversion devices) in interstate commerce (Count 8), and six counts of possessing unregistered machinegun conversion devices (Counts 9-14).

Defendant argues that, because the machinegun conversion devices he manufactured and distributed required a degree of basic additional machining to be functional, they do not meet the legal definition of a machinegun and the Superseding Indictment should be dismissed. Motion to Dismiss at 3-8. Defendant further urges the Court to find that the legal definition of a machinegun contained in Title 26, United States Code, Section 5845, is unconstitutionally vague – as applied

to the facts of this case. *Id.* at 8. Defendant also requests dismissal because he claims his illegally manufactured machinegun conversion devices are his artwork – while in the same breath admitting that defendant did not come up with the design for a lightning link – and that he therefore has a First Amendment-based right to manufacture machinegun conversion devices. *Id.* at 10-12. Finally, Defendant submits that the statutory scheme itself is an unconstitutional overreach of Congress's power to tax and spend and, in any event, defendant could not have legally registered his lightning links even if he had tried. *Id.* at 12-14.

    Defendant's motion is at best devoid of pertinent legal authority for his arguments or, worse, ignores well-established and controlling contrary authority. Moreover, those arguments plainly are factually grounded – and the facts that he asserts in support of those arguments are internally inconsistent, sometimes to the degree that they are self-contradictory. Defendant's Motion to Dismiss depends on determination of facts that must be found by a fact finder at trial, and therefore it would be error for this Court to grant the motion. There is no basis to dismiss the Superseding Indictment.

## FACTUAL BACKGROUND[1]

    In January 2021, an agent for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received information that defendant was trafficking in illegally

---

[1] The United States provides this brief factual background to assist the Court in understanding the context of defendant's arguments. The proof the United States would present at trial in this case would be substantially more detailed than what is presented here. As discussed below, in determining the Motion to Dismiss, the

manufactured and unregistered machinegun conversion devices. The specific type of machinegun conversion device that defendant was dealing in is referred to as an auto-sear or lightning link.[2] Defendant was doing so through at least two websites – AutoKeyCard.com and AutoKeyCards.com – which he used to receive and process orders for his products. The products manufactured, marketed, and sold by defendant are generally about the size of a credit card, are made of sheet metal, and feature etchings for between 1-3 auto-sear devices per card.[3] Each auto-sear device etched into the card is composed of two pieces or parts that are combined to make an auto-sear. One of the two pieces of the auto-sear requires two internal cut-outs to function; for some models of defendant's products, the internal cut-outs were already performed, and for other models, no internal cut-outs were performed but the location of the internal cut-out was etched onto the card. The variety of auto-sear with internal cut-outs was referred to as the "pen holder edition" and marketed on social media with images of a pen placed through one of the internal cut-outs.

---

Court may only rely on the face of the Superseding Indictment. Nevertheless, the Factual Background demonstrates that, contrary to defendant's contentions, the facts that he presents are not undisputed.

[2] "Lightning link" is the term used to describe auto-sears of the specific design that defendant manufactured, whereas "auto-sear" is a broader term that includes lightning links and other types of machinegun conversion devices.

[3] Defendant also had listings featuring a shirt and a hat available for sale on his website which featured an image of an auto-sear design. It is not clear whether any purchasers ever purchased a clothing item from defendant, and the United States does not contend that these items fit the definition of a machinegun.

Multiple undercover purchases of metal cards etched with auto-sears were conducted from defendant via his websites, including purchases of both the "pen holder edition" with internal cut-outs, and the basic version with no internal-cutouts. Both types of cards were tested by a Firearms Enforcement Officer for the ATF's Firearms Criminal Technology Branch. For each version of the design, the Firearms Enforcement Officer was able to use a commonly available Dremel tool to cut fully through the etched lines on the card and thereby complete the final step of the manufacturing process for an auto-sear device. The two pieces of the auto-sear were then placed into an AR-style rifle for testing purposes. After installation of defendant's auto-sear devices, the rifle functioned as a machinegun – that is, it fired more than one round with a single function of the trigger.

Defendant generated substantial revenue through his online sales of cards with etchings for auto-sear devices, which ultimately were deposited into his account at a local credit union. Defendant structured cash withdrawals of the illicit gains in order to avoid the filing of currency transaction reports.

## MEMORANDUM OF LAW

### I.   The Indictment States Offenses Under Federal Law and Dismissal is Not Warranted

When ruling on a motion to dismiss an indictment for failure to state an offense, "a district court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). The court must view that language "in the light

most favorable to the government." *Id.* at 1258. "The propriety of granting a motion to dismiss an indictment under [Fed. R. Crim. P.] Rule 12 by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact." *United States v. Miller*, 491 F.2d 638, 647 (5th Cir. 1974). Because the sufficiency of an indictment is determined on its face, it is reversible error for a Court to look beyond the face of the indictment in ruling on a motion to dismiss for failure to state an offense. *See generally Sharpe*, 438 F.3d 1257 (reversing dismissal of indictment where "the allegations in the indictment were sufficient to state the charged offenses as a matter of law . . . because the counts contained all of the elements of the offense charged and informed the defendants of the charges they faced"); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (reversing the dismissal of an indictment and explaining "[t]here is no summary judgment procedure in criminal cases" and "[n]or do the rules provide for a pre-trial determination of sufficiency of the evidence.").

Under Fed. R. Crim. P. 7(c), "[t]he indictment [] must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .'" "The indictment is sufficient if "[i]t (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Walker*, 490 F.3d 1282, 1296 (11th Cir. 2007) (quoting *United States v. Woodruff*, 296 F.4d 1041, 1046 (11th Cir. 2002)).

Defendant moves to dismiss Counts 8-14 in full, and Counts 1-7 in part, because, according to defendant, the counts fail to state an offense because the auto-sears he manufactured and sold were not machinegun conversion devices. Motion to Dismiss at 2-3. Defendant then proceeds to lay out a 5-page argument for why he believes *factually* that the auto-sears he manufactured should not be considered to be machinegun conversion devices. *Id.* at 3-8.

Each count of the Superseding Indictment tracks the statutory language of the offense charged and alleges each necessary element of the crime, for Counts 8-14 describes the type of device that is the subject of the charge (machinegun conversion device(s) constituting [a] machinegun(s)), the date or dates on which the offenses occurred, that the offenses were committed within the Middle District of Florida, and the specific portion of the United States Code that is alleged to have been violated. A grand jury, having been advised of the elements of the charged offenses and the facts of this case, has found probable cause to believe that the items at issue in this case meet the definition of a machinegun in Title 26, United States Code, Section 5845(a) and (b), and found the Superseding Indictment to be a true bill.

Defendant asks this Court to look beyond the four corners of the indictment and find that the machinegun conversion devices he was selling were "raw materials" (Motion to Dismiss at 4), that they are not "parts" because some additional tooling on the devices was needed before they could be used (Motion to Dismiss at 5-6), because shoelaces are not machineguns (Motion to Dismiss at 6-7), and because, according to an unpublished and later reversed opinion from the

6

District of Kansas, machined pieces of metal are not firearms receivers as defined in a completely separate definition in a different title of the United States Code (Motion to Dismiss at 7-8)[4].

In other words, defendant urges this Court to engage in an improper detour from the four corners of the Superseding Indictment and find that, as a factual matter, his auto-sears are not machinegun conversion devices. That plainly would be improper under *Sharpe* and other Eleventh Circuit precedents, and the Court should deny defendant's motion on that basis.[5]

---

[4] Defendant relies exclusively upon the unpublished opinion in *United States v. Prince*, 2009 WL 1875709, No. 09-10008-JTM (D. Kan. 2009) for this argument. The *Prince* case concerned the definition of firearm under Title 18, United States Code, Section 921(a)(3), not the definition of a machinegun under Title 26, United States Code, Section 5845(a) and (b). Those definitions contain substantial dissimilarities, and thus the reasoning of the *Prince* court is not enlightening in this case. Moreover, as defendant notes, the opinion was reversed on other grounds, and in reversing the District of Kansas, the Tenth Circuit did not adopt the district court's interpretation of the statutory definition of a firearm. *See United States v. Prince*, 593 F.3d 1178 at n.3 ("Because the government has not raised the issue on appeal, we need not decide whether the flats at issue are 'receivers' and therefore 'firearms' under 18 U.S.C. § 921(a)(3)(B)."). The District Court's opinion has only been cited twice since it was issued in 2009, and in neither of those cases did the citing court adopt the reasoning in *Prince* as pertinent to defendant's argument, and neither of those cases is from the Eleventh Circuit. *See United States v. Seay*, 620 F.3d 919, 925 (8th Cir. 2010); *United States v. Lacy*, No. 09-CR-135, 2009 WL 3756987, *1 (E.D. Wis. Nov. 6, 2009).

[5] Defendant also argues in a footnote, based on *United States v. Was*, 684 F. Supp. 350, 353 (D. Conn. 1988), that because his particular machinegun conversion devices are "individual objects, not sets or combinations of objects" that they do not meet the "combination of parts" portion of the federal definition of a machinegun. Motion to Dismiss at 5 n.2. As the *Was* Court itself acknowledges, the definition in Title 26, United States Code, Section 5845(b), was amended in November 1986 to include individual parts designed and intended for use in converting a weapon into a machinegun, and so the holding in *Was* has no applicability to this case. *See Was*, 684 F. Supp. at 351 n.1. In any event, as described above, the devices

7

## II. The Statutory Scheme Is Not Unconstitutionally Vague

Defendant does not point to a single case where any court has found Title 26, United States Code, Section 5845(a) and (b) (or any other statutes pertinent to the Superseding Indictment) unconstitutionally vague. Rather, defendant simply argues that he was not sufficiently on notice that the particular machinegun conversion devices he manufactured, possessed, and distributed fit the statutory definition.

Factually, this is demonstrably false. ATF's investigation has revealed ample evidence that defendant was fully aware of the illegality of his machinegun conversion devices and that they were governed by the National Firearms Act (NFA). For example, on September 15, 2020, a purchaser of one of defendant's products emailed customerservice@autokeycard.com and asked if there were "instructions" for the item. The customer service email responded, in part:

> All NFA Rules Apply. Unfortunately we cannot provide instructions as per the NFA. It is a gray market item and that is the line we cannot cross.
>
> I can point you in the right direction so you can find the information on your own at your own risk. Do a google image search for different combinations of the terms "Lightning" "swift" "coathanger test" "Link" and any terms you discover along the way. Youtube search the same terms and between both you should find the information you seek. The image search will help you greatly find general available schematic information. It is not difficult to find.
>
> The Auto Key Card is a conversation piece as sold and as with many legal products, illegal use can occur. Think of

---

manufactured, possessed, and sold by defendant are composed of two individual pieces, the etchings for both of which are contained on a single metal card.

> brass knuckles sold as paperweights. Please be smart and careful you don't get in trouble. It is intended to stay in the sold as form. Individuals may make the choice to use it in a different way under certain fire circumstances in the future. Please share our product with others and friends that may need it someday. Stay safe and protect the innocent. They need people like us in the difficult times ahead.

Furthermore, the investigation has revealed that defendant conspired with as-yet unindicted co-conspirators to promote his machinegun conversion devices specifically for use in converting rifles into machineguns. Defendant knew exactly what he was manufacturing and selling and what his customers intended to do with his products. In any event, this Court may not decide the Motion to Dismiss based on facts not alleged in the Superseding Indictment; defendant must wait for a determination on this issue – at the earliest – at a motion for judgment of acquittal after the United States has had the opportunity to present all of its evidence at trial.

In any event, courts – including the Eleventh Circuit – repeatedly have rejected constitutional challenges to the statutory definition of a machinegun, finding that it is not unconstitutionally vague. *See, e.g.*, *Akins v. United States*, 312 Fed. App'x 197, 200-01 (11th Cir. 2009) ("Section 5845(b) also is not unconstitutionally vague."); *United States v. Carter*, 465 F.3d 658, 664 (6th Cir. 2006) (finding there was "no such risk" that "ordinary people cannot understand what is prohibited" by Section 5845(b)); *United States v. McCauley*, 601 F.2d 336, 340 (8th Cir. 1979) (definition of machinegun sufficiently advised defendant of the illegality of his machinegun); *United States v. Campbell*, 427 F.2d 892, 893 (5th Cir. 1970) (definition

of machinegun to include "any combination of parts designed and intended for use in converting a weapon into a machinegun" was "sufficiently clear to put any person of reasonable intelligence on notice as to what is forbidden").

Defendant knew what he was doing and the legal risk he undertook in manufacturing auto-sears and distributing them across the country. Moreover, decisions going back decades have found the statutory language defining a machinegun in Title 26 not to be vague. There is no basis to grant defendant's motion to dismiss based on statutory vagueness, and the Court should deny defendant's request to do so.

### III. Machinegun Conversion Devices Are Not "Artwork" and Defendant Has No First Amendment Right to Manufacture and Distribute Them Contrary to Law

In his first argument, defendant submits that the devices he manufactured, possessed, and sold were merely a "raw material" used for fabricating machinegun conversion devices. Motion to Dismiss at 6. Later, when making his First Amendment argument, defendant seeks to recharacterize the items as his "artistic works," and argues that it is "clearly the design of the image, rather than the material itself, that the government is targeting." *Id.* at 10. In the same breath, defendant acknowledges that "blueprints for lightning links are freely available on the internet" and provides a link to such a template, thus acknowledging that the design for a lightning link auto-sear that he etched onto his products is *not* in fact his original artwork or design in any way. *Id.* at 12 & n.7.

This case is not *only* about the distribution of schematics for a design for a machinegun conversion device, nor is it a case *only* about distribution of a piece of metal with a drawing on it. Rather, this case is about the manufacturing and distribution of carefully machined metal cards containing an etching for a decades-old design for a machinegun conversion device that is a simple step away from functionality. Defendant's arguments ignore the facts of the case – which are that defendant chose to etch a correctly scaled existing design for a machinegun conversion device onto a piece of metal – which is precisely the medium that these devices are composed of. Defendant's metal cards are no more First Amendment-protected artistic works than is a pair of nail clippers or an AR-15 rifle. It is the combination of material and design that make defendant's devices what they are – machinegun conversion devices.

Moreover, defendant acknowledged in his own designs his intent to distribute functional objects by emblazoning each card with the words "PATENT PENDING." Patent protection, of course, is only available for items performing some utilitarian function in a novel way, not for artistic works. *See* What can and cannot be patented?, U.S. Patent and Trademark Office, *available at* https://www.uspto.gov/help/patent-help#type-browse-faqs_1902 (FAQ explaining that "[l]iterary, dramatic, musical, and artistic works" cannot be patented).

Even if this Court were to somehow conclude that defendant's distribution of metal cards intended for use as machinegun conversion devices should be entitled to some form of First Amendment protection, the government has a compelling interest

in regulating the possession of firearms and particularly fully-automatic firearms. Defendant points to not a single case where any court has found that the First Amendment guarantees the right to unfettered possession of firearms as a means of personal expression, and indeed that is not the law.   The objects that defendant manufactured, possessed, and distributed are machinegun conversion devices – not raw materials for machinegun conversion devices, and not defendant's original artwork – and the First Amendment has no applicability to this case.   And again, the facts relied upon by the defendant are not in the Superseding Indictment; therefore the advancement of this argument is premature.

**IV.   Section 5861 is a Valid Exercise of Congress's Taxing Power**

No less authority than the U.S. Supreme Court has found that the National Firearms Act is a valid exercise of Congress's taxing authority.   *Sonzinsky v. United States*, 57 U.S. 554 (1937).   Moreover "a tax does not cease to be valid merely because it regulates, discourages, or even definitely deters the activities taxed." *United States v. Sanchez*, 340 U.S. 42, 44 (1950) (citing *Sonzinsky*, 300 U.S. at 513-14); *see also United States v. Spoerke*, 568 F.3d 1236, 1245 (11th Cir. 2009) ("The Supreme Court has upheld the [National Firearms] Act based on the taxation power of Congress . . . ." (citing *Sonzinsky*, 300 U.S. at 514)); *Zwak v. United States*, 848 F.2d 1179, 1182 (11th Cir. 1988).

Defendant makes a follow-on argument, based upon Department of Justice guidance, that he *should* have been charged under Title 18, United States Code, Section 922(o), for possession of an unregistered machinegun, rather than under

12

Section 5861, because he says it is impossible to comply with the NFA's registration and taxation provisions. Motion to Dismiss at 13. Defendant provides no legal authority, however, that a charge under Section 5861 is invalid as to him. Moreover, this argument has already been rejected by the Eleventh Circuit. *Spoerke*, 568 F.3d at 1245-46 (rejecting defendant's argument that the NFA was unconstitutional as applied to him due to the impossibility of registering his weapons and paying the required tax).[6]

## CONCLUSION

Defendant has presented this Court with no legal basis to dismiss the Superseding Indictment. Indeed, each of his bases either depends on the resolution

---

[6] In *Spoerke*, the Eleventh Circuit noted that the argument advanced by defendant – as here – is based on the false premise that registration of the devices was legally impossible. 568 F.3d at 1246 (citing *United States v. Eaton*, 260 F.3d 1232, 1236 (10th Cir. 2001)). It is in fact possible to legally manufacture new machineguns in certain limited circumstances. *See* National Firearms Act Handbook, Bureau of Alcohol, Tobacco, Firearms, and Explosives, at §§ 7.5-7.6, *available at* https://www.atf.gov/files/publications/download/p/atf-p-5320-8/atf-p-5320-8.pdf (describing that "qualified manufacturers may manufacture machineguns on or after May 19, 1986 for sale to Federal and State agencies or to [Federal Firearms Licensees/payers of the Special Occupational Tax] as 'sales samples' for demonstration to prospective governmental customers" or "for exportation in compliance with the Arms Export Control Act and Department of State regulations"). However, defendant chose not to avail himself of legal avenues for manufacturing machinegun conversion devices.

of factual issues – which is improper at this stage – or is premised on already-rejected legal theories, or both.   The Court should therefore deny his motion.

                Respectfully submitted,

                KARIN HOPPMANN
                Acting United States Attorney

By:   s/ *Laura Cofer Taylor*
       LAURA COFER TAYLOR
       Assistant United States Attorney
       USA No. 170
       300 N. Hogan Street, Suite 700
       Jacksonville, Florida 32202
       Telephone:   (904) 301-6300
       Facsimile:    (904) 301-6310
       E-mail: Laura.C.Taylor@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Lisa Call, Esq.

    *s/ Laura Cofer Taylor*
    LAURA COFER TAYLOR
    Assistant United States Attorney