1

```
 1                IN THE UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                       JACKSONVILLE DIVISION

 3                  CASE NO:  3:21-cr-22(S1)-MMH-MCR

 4    UNITED STATES OF AMERICA        Jacksonville, Florida

 5         -vs-                       Date:  July 8, 2021

 6    KRISTOPHER JUSTINBOYER ERVIN,   Time:  2:03 p.m. - 2:39 p.m.

 7         Defendant.                 Courtroom:  10B

 8    _____

 9                            MOTION HEARING
              BEFORE THE HONORABLE MARCIA MORALES HOWARD
10                    UNITED STATES DISTRICT JUDGE

11    A P P E A R A N C E S:

12    COUNSEL FOR GOVERNMENT:

13    LAURA TAYLOR, ESQ.
      U.S. Attorney's Office - FLM
14    300 N. Hogan Street, Suite 700
      Jacksonville, FL  32202
15

16    COUNSEL FOR DEFENDANT:

17    ALEX KING, ESQ.
      FINLEY WILLIAMS, ESQ.
18    Monroe & King, P.A.
      200 East Forsyth Street
19    Jacksonville, FL  32202

20
      OFFICIAL COURT REPORTER:
21
      Cindy Packevicz Jarriel, RPR, FCRR
22    221 N. Hogan Street, #128
      Jacksonville, FL  32202
23    Telephone:  904.301.6843
      e-mail:  cindyrprfcrr@gmail.com
24         (Proceedings reported by stenography; transcript
      produced by computer.)
25
```

```
 1              P R O C E E D I N G S
 2   July 8, 2021                              2:03 p.m.
 3                      -  -  -
 4              COURT SECURITY OFFICER:  All rise.
 5              The United States District Court, in and for the
 6   Middle District of Florida, is now in session.  The Honorable
 7   Marcia Morales Howard presiding.
 8              Please be seated.
 9              THE COURT:  Give me one moment to get my computer
10   going.
11              All right.  This is Case No. 3:21-cr-MMH-MCR -- I
12   think it's 3:21-cr-22(S1)-MMH-MCR, United States of America
13   versus Kristopher Justinboyer Ervin.
14              Ms. Taylor is here on behalf of the United States.
15              And, Ms. Taylor, if you could introduce the case
16   agent, please.
17              MS. TAYLOR:  Your Honor, with me is Special Agent
18   Jesse Hooker of the Bureau of Alcohol, Tobacco, Firearms &
19   Explosives.
20              THE COURT:  Excuse me one second.
21              And Mr. King is here on behalf of Mr. Ervin.
22              Mr. Ervin is in the courtroom.
23              And who else do we have?
24              MR. KING:  Your Honor, this is Mr. Williams.  He's an
25   attorney with my firm.
```

1      THE COURT:  All right.  So we're set for a hearing on
2  the motion that was filed by Mr. Ervin's previous counsel.
3  It's Document No. 30.  And Mr. Ervin's current counsel has
4  adopted the motion.
5      Ms. Taylor, I was a little confused.  You had
6  indicated previously your belief that we needed a hearing and
7  that you would be calling Agent Hooker to testify.
8      Can you help me understand what I need evidence for
9  to resolve this motion?
10      MS. TAYLOR:  Your Honor, I think actually what I
11  stated at the status was that I did not expect to present any
12  witnesses and believed that this was a legal motion where we
13  would not be presenting evidence beyond what was in my written
14  response.
15      THE COURT:  Okay.  That -- that makes a little bit
16  more sense to me.
17      All right.  So, Madam Deputy, may I see you one
18  moment.
19     (Pause in proceedings.)
20      THE COURT:  All right.  So, Mr. King, you opted to
21  adopt the motion.
22      I guess my question to you is, why isn't -- I mean,
23  Mr. Ervin's argument appears to me to be a challenge to the
24  sufficiency of the evidence.  And if it's a challenge to the
25  sufficiency of the evidence, isn't it foreclosed by

1  Eleventh Circuit precedent?

2       MR. KING:  Your Honor, I think because the essential

3  factual issue is not in dispute, it's -- in terms of what was

4  actually the part.  Because of that, it does bring a First

5  Amendment issue in terms of, you know, whether or not this can

6  be resolved by the Court.

7       And essentially the reason -- for reasons of judicial

8  economy as well, you know, considering that there really is no

9  factual dispute, you know, we believe a motion to dismiss would

10 be appropriate, understanding that there -- you know, if there

11 were factual disputes in terms of the actual item, then this

12 Court would be foreclosed and that would be for a motion for

13 judgment of acquittal at the time of the trial.  But because

14 there really is no factual dispute, I think it would be

15 appropriate for the Court to review the underlying statute,

16 and, you know, how it applies to Mr. Ervin and the First

17 Amendment issue to make a resolution, you know, short of

18 testimony.

19       THE COURT:  To the extent it does raise a First

20 Amendment issue, isn't there, in fact, a factual dispute, in

21 that wouldn't a jury have to determine whether this is art or

22 whether this is an actual item of utility?

23       MR. KING:  I would think that because of the nature

24 of what's on there -- and I think it could be a legal issue,

25 because it's -- the information is placed on a piece of metal.

1  It's not -- in terms of whether or not it would be a factual

2  issue -- whether or not something is protected speech is a

3  legal determination for a court to make, not for a jury.

4         THE COURT:  Can you point me to any authority that

5  suggests that I can do that on a motion to dismiss in a

6  criminal case?

7         MR. KING:  I have not been able to find any, no.  I

8  have looked quite extensively.

9         THE COURT:  I'm confident of that, because I can't.

10         So I guess -- so Mr. Ervin is charged in Counts One

11  through Seven with unlawful structuring of monetary

12  transactions to avoid reporting requirements while committing

13  another violation of law.

14         And so in the motion to dismiss, Mr. Ervin argues

15  that Counts Eight through Fourteen should be dismissed because

16  the item that he manufactured, possessed, and arguably

17  transported is not a machine gun under the law.

18         It's not a firearm because it doesn't fall within the

19  definition of machine gun in 26 U.S.C. 5845; right?

20         That's his argument, Mr. King?

21         MR. KING:  Yes, Your Honor.

22         THE COURT:  And Mr. Ervin argues that the superseding

23  indictment doesn't include a sufficient statement of facts and

24  circumstances to inform Mr. Ervin of the offense that's

25  charged.

1    And I think the truth of the matter is, looking at
2  the indictment, nothing could be further from accurate.
3    The indictment in this case gives far more detail
4  than is often given.  And to the extent -- well, I guess, let's
5  address two different things.  I think I'll start first with
6  whether it gives him enough information.
7    Rule 7(c)(1) of *The Federal Rules of Criminal*
8  *Procedure* requires that an indictment be a plain, concise, and
9  definite written statement of the essential facts constituting
10  the offense charged.
11    And the Eleventh Circuit Court of Appeals has given
12  us a three-part test to determine the sufficiency of an
13  indictment.
14    It's sufficient if it presents the essential elements
15  of the charged offense; if it notifies the accused of the
16  charges to be defended against; and if it enables the accused
17  to rely upon a judgment under the indictment as a bar against
18  double jeopardy for any subsequent prosecution.
19    The Eleventh Circuit and the Supreme Court have
20  instructed fairly unequivocally that:  An indictment is
21  sufficient if it sets forth the offense in the words of the
22  statute -- which with regard to all 14 of the counts, this
23  indictment does -- as long as those words address all of the
24  elements of the offense.
25    And so what the Eleventh Circuit says is:  If it

tracks the language of the statute, it's sufficient as long as the language sets forth the essential elements of the crime.

And so looking at the indictment with regard to -- well, it's true, all three sets of charges -- I'm not going to go through them individually, but with regard to each of the charges, the indictment charges the offense in the language of the statute. And then with -- and addresses each of the elements of the charges.

And in addition to that, the indictment alleges the factual underpinning of the charges.

So if we look at Counts One through Seven, the indictment charges that Mr. Ervin, knowingly and for the purpose of evading the reporting requirements of federal law, 31 U.S.C. § 5313, structured money transactions while he was violating another law of the United States; and Counts Eight through Fourteen charge the underlying other law violation.

Right, Ms. Taylor?

MS. TAYLOR:  That's correct, Your Honor.

THE COURT:  The indictment goes on to identify the specific date of the transaction, the amount of each transaction, and the financial institution at which the transaction was made.

If there were anything lacking from Count One, it would only be the identification of what other law of the United States was being violated, but I think that's addressed

1   in Counts Eight through Fourteen, and also addressed by

2   Ms. Taylor here today.

3          As to Count Eight, the indictment alleges a violation

4   of 26 U.S.C. 5861(j).  And it alleges the offense in the

5   language of the statute, but it doesn't just refer to

6   delivering a firearm, it specifies what portion of the firearm

7   definition is implicated, that is, the machine gun conversion

8   device, constituting a machine gun.

9          So it not only alleges that it's a firearm, it

10  alleges how it is a firearm.  And it alleges how what --

11  alleges the interstate commerce nexus by alleging that the

12  offense -- that the materials were sent throughout the U.S.

13  mail, and that they were not registered in the National

14  Firearms Registration and Transfer Record as required, and it

15  cites the statute there.

16         It goes on, having alleged the elements of the

17  offense, to explain or to allege with specificity the date on

18  which the knowing transportation or delivery of firearms is

19  alleged to have occurred, and the number of mailings on each

20  date.  And that goes over the course of three pages.

21         And then lastly, in Counts Nine through Fourteen,

22  Mr. Ervin is charged with possession of a firearm, specifically

23  a machine-gun conversion device, constituting a machine gun, as

24  that object is defined under 26 U.S.C. § 5845(a) and 5845(b),

25  alleges that it was not then registered in the National

1   Firearms Registration and Transfer Record as required.

2        So the -- there's no question that the indictment is

3   sufficient in terms of satisfying the requirements that the

4   Eleventh Circuit articulated, and that is it presents -- as to

5   each of the charges, it presents the essential elements of the

6   charged offense; it notifies Mr. Ervin of the charges to be

7   defended against; and particularly in light of the specificity

8   in this indictment, there's no question that it would enable

9   him to rely upon a judgment under the indictment as a bar

10   against double jeopardy.

11        So Mr. Ervin's argument seems to be that the Court

12   should rule, as a matter of law, that the item isn't a firearm.

13   And my -- I guess what I would say to you, Mr. King, is why

14   isn't that a sufficiency of the evidence argument that is

15   foreclosed by Eleventh Circuit precedent?

16        MR. KING:  May I just have a moment, Your Honor?

17        THE COURT:  Sure.

18        MR. KING:  And, Your Honor, I understand the question

19   you previously asked me about the case law that I have to

20   support the position, and I don't have a dearth of information

21   as it goes there.

22        The argument is essentially that, as a matter of law,

23   because this is essentially not a factual issue; we're not

24   asking the Court to resolve a factual issue.  We're asking the

25   Court to resolve a legal issue, which is, as a matter of law,

1    is this a firearm or not.  Essentially, that was what we would

2    be asking the Court to do, understanding that the Court may

3    view that as a factual issue rather than a legal issue, and

4    would then be precluded from making that determination until

5    judgment -- motion for judgment of acquittal.

6                    THE COURT:  All right.  Ms. Taylor, you want to

7    respond?

8                    MS. TAYLOR:  Your Honor, it's, of course, a mixed

9    question of fact and law, and the facts simply aren't before

10   this Court, and this is not the way in which things are

11   intended to be decided.

12                   The United States has to be allowed the opportunity

13   to present all of its evidence.

14                   I would anticipate this being a trial that would take

15   several days for us to present all of the evidence that we

16   would have, including from an expert witness about what his

17   experience was with using the item as a machine gun, testimony

18   from -- from witnesses about Mr. Ervin's intentions, the

19   presentation of documentary evidence about what his intentions

20   were for the use of the item, and then, at the end of that, to

21   allow a jury to decide this issue, which is the appropriate

22   procedure.

23                   And it would not be appropriate for this Court to

24   make a ruling, not having the facts in front of it, about

25   whether factually an item meets the definition of a machine gun

1    before the United States has had an opportunity to present its

2    evidence in this case.

3          THE COURT:  So I want to make sure I address all the

4    different arguments that Mr. Ervin has raised.

5          Mr. Ervin has argued that the item that he produced

6    is essentially a raw material, and that the agent had to make

7    significant efforts in order to convert it into a device that

8    would render a rifle into an either machine gun or an automatic

9    weapon.

10          And Mr. Ervin's argument -- and I'm going to quote

11   for it.  Mr. Ervin argues the agent essentially -- the agent

12   treated the autokeycard as a raw material and made it into

13   something different, apparently expecting that with a little

14   gunsmithing, he could convert his rifle into a machine gun.

15   Predictably, however, mutilating the metal card and sticking

16   the mangled pieces of it inside the rifle simply caused the

17   weapon to malfunction.

18          Tests of the Frankensteinian rifle revealed that the

19   agent's crude alterations made the weapon fire erratically and

20   at times fire more than once per single trigger.

21          And relying on -- on those arguments, Mr. Ervin asks

22   the Court to determine that as a matter of law the object that

23   he was transmitting through the mail and that he possessed

24   doesn't fall within the definition of a firearm.

25          26 U.S. Code § 5845 defines a firearm and it also

1    defines a machine gun.  And the definition of a machine gun

2    includes the frame or receiver of any such weapon, any part

3    designed and intended solely and exclusively, or combination of

4    parts designed and intended for use in converting a weapon into

5    a machine gun.

6            And so, in my view, the question of whether this

7    keycard is a part that was designed and intended, whether

8    exclusively or combined with other parts, to convert a weapon

9    into a machine gun is a question that only the jury can decide.

10   It is not a question that the Court can decide.

11           And there are a couple of problems with Mr. Ervin's

12   argument to the contrary.

13           The first problem is that even if the facts were

14   undisputed, The *Federal Rules of Criminal Procedure* do not

15   provide any sort of summary-judgment type of remedy.

16           Unlike civil cases where you can say:  Judge, the

17   facts are undisputed; who wins, who loses?

18           The Eleventh Circuit has firmly said there is no

19   summary judgment procedure in criminal cases, nor do the rules

20   provide for a pretrial determination of the sufficiency of the

21   evidence.

22           And the Eleventh Circuit has said that in the *United*

23   *States versus Salman*, S-a-l-m-a-n, 378 F.3d 1266 at 1268, and

24   also in *United States versus Critzer*, C-r-i-t-z-e-r, 951 F.2d

25   306 at 307.

1    And the -- what Mr. Ervin is asking the Court to do

2    is -- is to look at the keycard and decide that as a matter of

3    law that that cannot constitute a firearm.

4    In doing that, Mr. Ervin is asking the Court to do

5    something the Court is prohibited from doing, and making the

6    same mistake that was made in the *Salman* case where the -- on a

7    motion to dismiss the indictment, the judge determined, as a

8    matter of law, that the individual was not unlawfully in the

9    United States and dismissed the indictment.  And it went to the

10   Eleventh Circuit; the Eleventh Circuit reversed.

11   And the Eleventh Circuit said:  By looking beyond the

12   face of the indictment and ruling on the merits of the charges

13   against the defendant, the district court, in effect, granted

14   summary judgment in favor of the defendant.  In doing so, the

15   court overlooked binding Eleventh Circuit precedent citing to

16   *Critzer*.

17   And the Eleventh Circuit said what Ms. Taylor just

18   argued, and that is that the Government is entitled to present

19   its evidence at trial and have its sufficiency tested by a

20   motion for judgment of acquittal.

21   So that -- so in my view, there are two problems with

22   the argument.  One is there is no summary judgment procedure at

23   all, so the Court can't view the -- judge the sufficiency of

24   the evidence.  But the other problem is that even if the Court

25   were to evaluate the evidence, Mr. Ervin is asking the Court to

1   evaluate the evidence based on his version of the evidence.
2   And when rule -- looking at the sufficiency of the indictment,
3   the Court is limited to the face of the indictment, limited to
4   the charges brought by the Government, and can't consider the
5   information that I read earlier about Mr. Ervin's version of
6   whether the keycard was intended to be used in the fashion that
7   the agent used it.
8          And so for all of those reasons, the indictment is
9   sufficient and Mr. Ervin's challenge to Counts Eight through
10  Fourteen are simply unavailing.
11         I'll say -- we didn't discuss it here today, but in
12  the pleading that was authored -- I know not by current counsel
13  but by the previous counsel, there was an argument that one
14  case has previously made a similar determination.  I'll just
15  note that reliance on that, the *Prince* case, which is at WL
16  1875709, is really not persuasive for a myriad of reasons.
17         One, it does require the Court to conduct that
18  pretrial sufficiency of the evidence review, which the
19  Eleventh Circuit does not permit.  It's for a jury to decide
20  whether the item constitutes a machine gun as that term is
21  defined under the statute.  But -- but also fails to recognize
22  that the Court in the *Prince* case was reviewing a statute with
23  a different definition, and so that's unavailing.
24         Mr. Ervin argued that the statute -- oh, I'm sorry, I
25  need to back up.  Because Mr. Ervin's challenge to Counts Eight

1   through Fourteen is due to be denied, his motion to dismiss

2   Counts One through Seven is also due to be denied, because it

3   depended entirely upon a finding that there was no violation of

4   another law of the United States.

5          Mr. Ervin also argues with regard to Counts Eight

6   through Fourteen that the statute is unconstitutionally vague

7   under the Fifth Amendment.  But the Fifth Circuit has rejected

8   that challenge in pre-1981 case law.

9          So in the *United States versus Campbell*, 427 F.2d

10  892, the defendant argued that the portion of the statute that

11  referred to any combination of parts designed and intended for

12  use in converting a weapon into a machine gun was

13  unconstitutionally vague, and the Fifth Circuit rejected that

14  decision.

15          So it's simply not a -- not a meritorious argument.

16          Mr. Ervin also argues that the statute violates his

17  First Amendment rights because it targets his artistic work,

18  and that it's a content-based restriction on his expression.

19          The first problem with that argument is, again, it

20  asks the Court to rule on facts that aren't in the indictment.

21          If Mr. Ervin wishes to defend against these charges

22  by presenting evidence that it's an artistic work, then a jury

23  may well find that it is not a part designed and intended

24  solely and exclusively for use in converting a weapon into a

25  machine gun, but that's a decision that the jury has to make.

1    It's not a decision that the Court can make pretrial.

2              So Mr. Ervin's argument in that regard is unavailing.

3              Mr. Ervin also argues that the statute exceeds

4    Congress' taxing power.  But that argument, too, appears to be

5    foreclosed by Eleventh Circuit precedent.

6              The Eleventh Circuit has rejected that argument in --

7    well, most recently in *United States versus Bolatete*,

8    B-o-l-a-t-e-t-e, 977 F.3d 1022 at 1032.

9              And also previously in *United States versus Ross*, and

10   *United States versus Spoerke*, S-p-o-e-r-k-e.  And the *Ross* and

11   *Bolatete* dealt with firearms -- dealt with the individuals who

12   received the firearm, but the *Spoerke* case is more similar to

13   Mr. Ervin's in that the individual there was the individual who

14   had created the item.  I think there was a pipe bomb, if I'm

15   not mistaken.  But in either event, the Eleventh Circuit has

16   rejected the challenge based on the statute exceeding Congress'

17   taxing power.

18             So for all those reasons, it seems to me that the

19   motion is due to be denied.

20             Mr. King, did I fail to address any argument that

21   Mr. Ervin's prior counsel had raised?

22             MR. KING:  No, Your Honor, I don't believe so.

23             The only -- the only issue is, you know, as the Court

24   said, for the Counts One through, I believe, Seven, dealing

25   with the structuring, you know, the request for a bill of

1  particulars, and even if it's, you know, if the Government made
2  an oral assurance that that's based on the other counts, I
3  think that would be sufficient.
4          THE COURT:  Yeah.
5          Ms. Taylor, is there any reason why just -- since
6  there was -- that's probably the only ambiguity.  Any reason
7  that I shouldn't direct the Government to file a bill of
8  particulars identifying the other law of the United States that
9  is implicated in Counts One through Seven?
10         MS. TAYLOR:  I can do that, Your Honor.
11         THE COURT:  I think that would clear up any ambiguity
12 in the record.
13         So then Mr. -- yes, Mr. King?
14         MR. KING:  I was going to say, I'm sorry, that was
15 it.  Otherwise I think the Court's addressed everything.  I
16 wasn't sure if I'd said that.
17         THE COURT:  All right.  So then I think that -- so
18 that there's no further delay, and I -- and, Ms. Taylor, maybe
19 I misunderstood, because I probably could have ruled on this in
20 the papers, but it -- for some reason, I -- Madam Deputy and I
21 both understood that you had intended for Agent Hooker to
22 testify to something, and that's -- so there was probably some
23 miscommunication there.
24         MS. TAYLOR:  I apologize if that was on my part, Your
25 Honor.  But, of course, my position is that this is not -- not

1  something that would be appropriate for the Court to receive

2  evidence on, so I did not intend to present a witness.

3          THE COURT:  Yeah.  No, I agree with you.

4          I don't think I need to enter a written order.  I

5  think I've made -- made my findings here on the record.

6          I think that the bottom line is that the *United*

7  *States versus Salman* case, in which the Eleventh Circuit

8  reversed a district court for doing exactly what Mr. Ervin is

9  asking me to do now, and that is, make a pretrial determination

10  of the sufficiency of the evidence, simply -- simply forecloses

11  any relief.  And further, because all of his arguments would

12  also require the Court to consider evidence other than the face

13  of the indictment, for that reason, it would also be due to be

14  denied.

15          So the motion, which is Document No. 30, is denied.

16          Mr. -- I don't -- what trial term is Mr. Ervin

17  currently on, Mr. King, do you know?

18          MS. TAYLOR:  The August trial term, Your Honor.

19          THE COURT:  Okay.  And, Mr. King, were you -- do

20  you-all anticipate being ready for trial at that time?

21          MR. KING:  Your Honor, I don't anticipate being ready

22  for trial.

23          I spoke with Ms. Taylor earlier in the week.  I have

24  not had an opportunity to speak with Mr. Ervin about how much

25  time we would need, and potentially an expert witness for him,

1   and the amount of time that's going to take to prepare.

2          I spoke with -- I haven't shared this with Mr. Ervin

3   yet because we have not had an opportunity to speak, but I

4   would anticipate us filing a motion to continue probably at

5   least 60 days as we try to get an expert to respond to some of

6   the more technical aspects of this.

7          THE COURT:  Okay.  Well, to save you-all some time,

8   do you want to talk to Mr. Ervin now so that you don't have to

9   file a written motion?

10          MR. KING:  That would be --

11          THE COURT:  Sure.

12          MR. KING:  Thank you, Your Honor.

13          THE COURT:  Certainly.

14      (Pause in proceedings.)

15          MR. KING:  I have spoken with Mr. Ervin.  He has

16   authorized me to make an *ore tenus* motion to continue the trial

17   term for an additional 60 days.  I think that would take us to

18   the October trial term.

19          THE COURT:  Ms. Taylor, any objection?

20          MS. TAYLOR:  No, Your Honor.

21          THE COURT:  And, Mr. King, just so that I can make an

22   ends-of-justice finding, my understanding is that now that the

23   Court has ruled -- has denied the motion to dismiss, that you

24   need additional time in order to prepare for trial and

25   specifically to investigate whether you need an expert and to

1    allow that expert sufficient time to consult with you and

2    provide his or her assistance; is that correct?

3              MR. KING:  That's correct, Your Honor.

4              THE COURT:  All right.  Then the Court, without

5    objection by the United States, will grant the motion, and for

6    the reasons I've just stated will find that the ends of justice

7    served by granting the motion outweigh the best interests of

8    the public and the defendant in a speedy trial.

9              We'll move the case 60 days to the October trial

10   term.

11             Madam Deputy, can you give me the information about

12   the October trial term, please.

13             COURTROOM DEPUTY:  October 4.  And the status -- do

14   you want to set a special status conference, Your Honor?

15             THE COURT:  Yeah, we should.

16             So since we'll be getting ready for trial likely

17   then, we'll set it for a special status.

18             That doesn't mean that if circumstances warranted

19   that you can't ask for another continuance, Mr. King.  As long

20   as you can show good cause, of course.

21             9:30, Monday, September 20th.

22             And the plea deadline for that trial term, Madam

23   Deputy?

24             COURTROOM DEPUTY:  September 27th.

25             THE COURT:  All right.  So it's on the October 4

1    trial term.  We'll have a status at 9:30 on September 20th, and

2    the plea deadline is September 27th.

3              Oh, Ms. Taylor, can you file -- today is July 8th.

4    Can you file your bill of particulars by July 16th?

5              MS. TAYLOR:  Yes, Your Honor.

6              THE COURT:  All right.  So the Government is directed

7    to file a bill of particulars with regard to the other law of

8    the United States as charged in Counts One through Seven no

9    later than July 16th.

10             All right.  So, Mr. Ervin, your attorney filed a

11   motion to dismiss the charges.  I've now denied that motion.

12             Do you understand what happened here today?

13             THE DEFENDANT:  Yes, ma'am, I understand.

14             THE COURT:  Okay.  Anything further, Mr. King?

15             MR. KING:  No, Your Honor.  It's good seeing you.

16             THE COURT:  Good to see you, too.

17             Ms. Taylor, anything else?

18             MS. TAYLOR:  No, Your Honor.

19             THE COURT:  All right.  We're in recess.

20             COURT SECURITY OFFICER:  All rise.

21         (Proceedings concluded at 2:39 p.m.)

22                          -   -   -

23

24

25

C E R T I F I C A T E

UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA  )

        I hereby certify that the foregoing transcript is a true
and correct computer-aided transcription of my stenotype notes
taken at the time and place indicated herein.


                Dated this 11th day of August 2021.




                        /s/Cindy Packevicz Jarriel
                        Cindy Packevicz Jarriel, RPR, FCRR