UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 3:21-cr-22(S1)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO RECONSIDER DETENTION OF DEFENDANT**

On March 25, 2021, defendant was ordered detained pending trial based on the danger to the community that he would pose if released.  Doc. 23.  Defendant now moves to reopen his detention hearing,[1] but sets forth no information unknown to him at the time of his original detention hearing that would have changed the outcome of that hearing – which is the legal standard for reopening a detention hearing.  *See* 18 U.S.C. § 3142(f).  His motion should be denied.

## BACKGROUND

As related in defendant's motion, he had ample time to prepare for his detention hearing and procure a suitable third-party custodian.  *See* Doc. 87 at 1 (defendant was arrested on March 3, 2021, and did not have his hearing until

---

[1] Defendant styles his motion as one to reconsider detention, but cites Fed. R. Crim. P. 46(a) (stating that 18 U.S.C. §§ 3142 and 3144 govern pretrial release) and 18 U.S.C. § 3142(f)(2) as the legal grounds for his request.  The undersigned assumes that defendant intended to invoke the portion of 18 U.S.C. § 3142(f) that provides "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

March 15, 2021); Docs. 5, 10, 15 (defendant's repeated motions to continue detention hearing, which were unopposed). The United States sought detention based both upon risk of flight and danger to the community. Doc. 85 at 10. At the hearing, no third-party custodian for defendant was proposed. *Id.* at 33-34. It is clear, however, that the option to present a third-party custodian was known to defendant and his counsel, however, at that time, defendant's father declined to offer himself to serve as a third-party custodian. *Id.* at 33-34, 36-37.

At the conclusion of the detention hearing, the magistrate judge found that the United States had met its burden of demonstrating by clear and convincing evidence that defendant would pose a danger to the community if released, but she found insufficient evidence to detain defendant based upon risk of flight. *Id.* at 46-47. In the magistrate judge's oral findings supporting the order of detention, she cited defendant's lack of current job, source of income, and work history, his history of drug use, the "very serious" nature of the offense, the "overwhelming" evidence against defendant, the degree of risk-taking that defendant engaged in as part of the offense, and the fact that there was no suitable third-party custodian presented. *Id.* Similarly, the magistrate judge in her written order cited these factors as well as defendant's efforts to conceal the illegal nature of his products, structuring of financial transactions, and attempt to "disclaim knowledge of illegality by feigning innocence and claiming mere exercise of his First Amendment right to free speech in the form of art." Doc. 23 at 3. Additionally, the magistrate judge noted that the Pretrial Services officer had "recommended detention after listening to the proffers

by both sides." *Id.* Defendant never asked the assigned District Judge to review or revoke the Magistrate Judge's ruling.

Defendant now argues that this hearing should be reopened on the following grounds:

1. At the detention hearing, the United States argued that defendant "may have access to unknown amounts of money," which defendant claims he can now establish is not the case through unspecified "testimony" that "he has been unable to contribute to the cost of his defense or his commissary account at the Baker County Jail."
2. Defendant's father is now willing to serve as a third-party custodian.
3. Defendant has been in custody since March 2021 and more than a year has elapsed. Defendant attributes "substantial delays in the case due to the rolling discovery production, two superseding indictments, and the recent arrest of codefendant Matthew Hoover, on February 22, 2022," and complains that his period of pre-trial detention will be lengthy.
4. Co-defendant Hoover was granted a bond at his detention hearing.

Doc. 87 at 4. None of these factors warrants reopening detention.

## MEMORANDUM OF LAW

Section 3142(f) provides that a court "may" reopen a detention hearing if defendant can "show that: (1) there is new information that did not exist or was unknowable by the defendant at the time of the hearing; and (2) the new information has a material bearing on the issue of whether there are conditions of release that will

3

reasonably assure . . . the safety of any other person in the community." *United States v. Smith*, 337 F.R.D. 366, 368 (N.D. Fla. 2020) (citing *United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012); *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)); *see also United States v. Pon*, No. 3:14-cr-75-J-39PDB, 2014 WL 3340584, at *3 (M.D. Fla. May 29, 2014).  As indicated by the use of the word "may," it is within the Court's discretion to decline to reopen the detention hearing even if defendant meets this burden. *Id.* (citing *Watson*, 475 F. App'x at 601); *Pon*, 2014 WL 3340584 at *9 ("[R]eopening is unwarranted if the newly offered evidence was available at the time of the hearing. . . . And even then, reopening is discretionary."). Courts have interpreted Section 3142(f) "strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing or is not material." *Id.* (quoting *United States v. Ward*, 63 F. Supp. 2d 1203, 1206-06 (C.D. Cal. 1999)). Information is material "only if it indicates that the defendant is less likely to flee or fail to appear." *Id.* (citing *Watson*, 475 F. App'x at 600). In other words, to meet the materiality requirement, the newly discovered information must be of such gravity that it would have changed the outcome of the hearing. *See, e.g., United States v. Havens*, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (declining to reopen a detention hearing where prosecution conceded it had incorrectly proffered at the original detention hearing that the defendant had manufactured child pornography, rather than possessing and copying it, because that newly discovered information would not have changed the court's original decision to detain the defendant).

Several magistrate judges within the Middle District of Florida have found that a defendant's desire to call a witness who he failed to call at his detention hearing does not constitute newly discovered information. *See, e.g., United States v. Brown*, Case. No. 8:21-cr-348-SCB-SPF, 2022 WL 309430, at *2-3 (M.D. Fla. Feb. 2, 2022) (declining to reopen detention hearing where defendant wished to call witnesses to offer interpretation of evidence presented at hearing and reasoning that defendant was aware of the evidence the government would present and did not seek a continuance to present the witnesses; defendant's decision not to call witnesses did not render their existence unknown to him); *United States v. Cornelius*, No. 6:06-cr-67-Orl-28JGG, 2006 WL 1360923, at *1 (May 17, 2006) (defendant's choice "to proceed with the detention hearing rather than seek an enlargement of time to gather witnesses and evidence" did not render unpresented witnesses "unknown" to defendant).

Courts also have determined that the length of defendant's detention "is not considered 'material' under 3142(f)(2)." *United States v. Smith*, 337 F.R.D. 366, 369 (N.D. Fla. 2020) (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (holding that the length of detention "cannot 'be considered under this section since it is not material to the issue of risk of flight or dangerousness'"); *United States v. Gotti*, 776 F. Supp. 666, 669 (E.D.N.Y.) (same)). This reasoning is persuasive, because defendant cannot demonstrate that his period of detention has somehow rendered him not a danger to the community. Indeed, as described below, his actions and statements since being detained are contrary to that determination.

5

Normal developments in a case – like witness interviews or the production of discovery – typically will not amount to new material information sufficient to reopen a detention hearing. *See United States v. Rodriguez-Adorno*, 606 F. Supp. 2d 232, 237-38 (D.P.R. 2009); *United States v. Morris*, 452 F. Supp. 3d 484, 487 (N.D. Tex. 2020). This is because Congress did not intend § 3142(f)'s reopening provision "to be twisted into an open invitation for parties to bring motions . . . at any and every stage . . . in which new information arises regarding the weight and credibility of evidence in the case." *Rodriguez-Adorno*, 606 F. Supp. 2d at 238. Rather, in authorizing the reopening of hearings upon the discovery of new material information, "Congress intended [that] new information to signify something other than a defendant's own evaluation of the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *Id.*; accord *Morris*, 452 F. Supp. 3d at 487.

> A. *Defendant's purported lack of access to funds is neither newly discovered information nor material to the magistrate judge's determination that he would pose a danger to the community if released.*

First, the whereabouts of defendant's funds was not unknown to the defendant at the time of his detention hearing. As proffered by the United States, defendant received approximately $130,000 into his bank account as a result of the charged offenses, which had been drawn down to approximately $5000 at the time of his arrest. Doc. 85 at 20. As proffered at the detention hearing, $3700 in cash was recovered from a bank envelope in defendant's vehicle at the time of his arrest, and the investigation revealed that defendant had purchased a piece of land for

6

approximately $35,000 and a bus for approximately $10,000. *Id.* Subsequent investigation by the United States revealed that small portions of the money defendant earned were used to purchase additional inventory. *See, e.g.,* Second Superseding Indictment, Doc. 57, at 5 (defendant ordered 1400 Auto Key Cards for $3230), at 7 (defendant ordered 1200 Auto Key Cards for $3600), at 7-8 (defendant ordered 2400 more Auto Key Cards for a $5000 down payment – the investigation revealed this money was later returned to defendant by his vendor). The United States' investigation also revealed that defendant sent gifts to his co-conspirator, Hoover, including a Louis Vuitton purse and keychain for which he paid approximately $1958, video production equipment for which he paid approximately $841, and unknown amounts of U.S. currency or other items of value that were shipped to Hoover. *Id.* at 5-6, 8. At the hearing, his counsel proffered that defendant had spent unspecified amounts of funds to hire a friend with a backhoe to begin clearing his land and had begun to make modifications to his bus. Doc. 85 at 39. None of this adds up to nearly the sum total of cash that Ervin obtained as a result of his crimes.

  Whatever defendant did with the rest of the money, that was not a mystery to him at the time of the detention hearing. He had the opportunity to present evidence on his own behalf regarding the whereabouts of his ill-gotten gains, but chose not to. This is not newly discovered information. Furthermore, the magistrate judge did not cite defendant's financial situation or his apparent concealment of funds as a basis for her decision to order him detained *based on danger*

7

*to the community* either in her oral or written findings. *See id.* at 46-47; Doc 23 (noting that defendant made $130,000 in profit from his business, but making no mention of the whereabouts or concealment of those funds as posing a basis for his detention). Thus, the amount and location of defendant's available funds was not material to the decision to detain defendant, and is not material now.

  B. *Defendant's father's change of heart about serving as a potential third-party custodian is not newly-discovered information, and in any event, he would not be a suitable third-party custodian.*

As noted above, defendant and his counsel discussed at the detention hearing that his father was unwilling, at that time, to serve as a third-party custodian. Defendant had ample opportunity to secure an appropriate third-party custodian. He was granted three unopposed continuances of his detention hearing, and yet no custodian was presented. Defendant's father had ample opportunity to step up and offer to serve as a third-party custodian at the time of the initial hearing (and defendant also had the option to waive detention and move to reopen as of right upon securing an appropriate third-party custodian, but chose to proceed without a candidate). Thus this does not qualify as newly-discovered information.

Moreover, had defendant presented his father as a potential third-party custodian, the United States would have presented information demonstrating that defendant's father was not a suitable third-party custodian. This information includes that defendant operated his illicit business out of his father's home. Additionally, via proffers that the United States has conducted with defendant's father, it was revealed that defendant had shown his father items including a video of

8

a fish thrashing that had been modified to make it appear as if the fish were shooting projectiles automatically. The video was apparently created by or on defendant's behalf as an advertisement for the Auto Key Cards business. Defendant's father proffered that he asked defendant if it was a good idea to associate the Auto Key Card business with images of machineguns, and that defendant brushed this aside, stating he was just trying to garner interest in Auto Key Cards. Defendant's father stated that he was aware that machineguns were regulated. Yet, defendant's father did not raise any concerns with law enforcement.

Additionally, defendant's father is expected to be a witness at trial. Defendant's father has proffered that he was aware of the relationship between defendant and the co-defendant, Hoover. Defendant's father agreed to provide to the government text message conversations between himself and defendant, which reflect that defendant sent links to his father to the YouTube videos in which co-defendant Hoover explained what Auto Key Cards were and how they could be used to convert weapons into machineguns, as shown in the screen shots below[2]:

---

[2] As described in the Second Superseding Indictment, the video "Is this An ATF Trap And How Does It Work" was a video published by co-defendant Hoover in which Hoover "described how to order an Auto Key Card and further described how to cut the lightning link from the Auto Key Card and install it into an AR-15 style rifle, thus converting the AR-15 style rifle into a machinegun." Doc. 57 at 4-5. The video "The Parts The ATF Wishes Never Existed" features co-defendant Hoover "discuss[ing] various methods for manufacturing a machinegun or silencer, including the Auto Key Card, which H[oover] described as the sponsor of his video." *Id.* at 5.



Additionally, in one text message, defendant's father appeared to chastise defendant for letting people into the home, despite "the ATF dangers," as shown below:



Despite the overwhelming evidence that defendant's father was aware of what defendant was doing and the illegality of it, he never attempted to intervene in defendant's illegal machinegun business, and instead, facilitated it by allowing defendant to operate the business out of the father's home and use the father's credit card to make online purchases in support of the business. Defendant's father plainly would not be an appropriate third-party custodian, and thus his being presented as such would not have made a material difference in the magistrate judge's decision to detain defendant.

    C.    *The length of defendant's detention is not material to whether he would pose a danger if released.*

As described above, multiple courts have found that the length of a defendant's detention is not material to whether he would pose a danger if released.

This is a reasonable conclusion, because defendant has not been rendered any less dangerous as a result of his detention. This point is only driven home by a jail call that defendant made to his father in July 2021, in which defendant stated that the agents investigating him "need to have their arrest powers taken from them. These people need to be prosecuted. These people need to be hunted and put in boxes like they do us, this is ridiculous." Additionally, the continuances granted in this case each have been requested by (or joined in by) defendant or otherwise were necessary in order to allow defendant time to prepare for trial and litigate his desired pre-trial motions; defendant could have chosen at any point to demand a trial. The rolling discovery referenced by defendant has been the result of continuing investigation as this case has gone on and has been made available to defendant promptly.

> D. *If anything, co-defendant Hoover's release on conditions only enhances the danger that defendant would pose a danger if released.*

As described in the Second Superseding Indictment, even after defendant was arrested and ordered detained, he expressed in jail calls with his future co-defendant, Hoover, that he wished to be released so that he could continue operating their conspiratorial enterprise. *See* Doc. 57 at 10 (describing that on or about March 30, 2021, defendant, Hoover, and a third person "participated in a phone call in which they discussed plans to continue selling Auto Key Cards and create additional videos promoting [defendant] and his Auto Key Cards business"), *id.* (describing that Hoover and a third person operated a GoFundMe fundraiser on defendant's behalf "to benefit [defendant] with the intention that funds raised would be used, in part, to

obtain the release of [defendant] so that [defendant] and Hoover could continue their conspiratorial goals"). The fact that Hoover was granted release, despite the request of the undersigned that he be detained pending trial, only increases the danger that would be posed to the community were defendant to be released as well.[3] These post-arrest communications clearly reflect that defendant was undeterred from his desire to continue to engage in the illegal conduct that led to his detention in the first place. There is no reason now to believe that defendant's mindset has changed.

## CONCLUSION

Each of the factors that defendant relies on to support his motion are fatally flawed in that they do not constitute newly discovered information, and/or are not valid considerations in the calculus for whether a person should be detained, and/or

---

[3] The judge who granted pretrial release to Hoover apparently also believed that the release of both defendants would increase the risk of their posing a danger to the community. At Hoover's detention hearing, the Court stated that one reason it believed pretrial release was appropriate was that "with co-deft [Ervin] behind bars [the Court] find[s] it unlikely Hoover would continue illegal activity." *See* Doc. 68-4 at 3.

in fact only reinforce the danger that defendant would pose if released.   Defendant's motion should be denied without a hearing.

                              Respectfully submitted,

                              ROGER B. HANDBERG
                              United States Attorney

By:    s/ *Laura Cofer Taylor*
        LAURA COFER TAYLOR
        Assistant United States Attorney
        USA No. 170
        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202
        Telephone:   (904) 301-6300
        Facsimile:   (904) 301-6310
        E-mail: Laura.C.Taylor@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alex King, Esq.

*s/ Laura Cofer Taylor*
LAURA COFER TAYLOR
Assistant United States Attorney