UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr22(S2)-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER,
_____/

**<u>MOTION TO DISMISS</u>**

Defendant Matthew Raymond Hoover ("Defendant") respectfully moves

this Court to dismiss Counts 1 – 7 of the Indictment (ECF 57) against him.

This Motion is based on this Motion; Request for Judicial Notice, and Exhibits-

A – B. In support of this Motion, Defendant hereby states:

## I.     LEGAL STANDARDS
### a.  ULTIMATE FACTS TO SUSTAIN AN INDICTMENT

As this Court wrote in *United States v. Balotin*, "[u]nder Rule 7(c)(1),

Federal Rules of Criminal Procedure, an indictment must be a plain, concise,

and definite written statement of the essential facts constituting the offense

charged. The Eleventh Circuit Court of Appeals has articulated a three part

test to determine the sufficiency of an indictment: An indictment is sufficient

if it: (1) presents the essential elements of the charged offense, (2) notifies the

accused of the charges to be defended against, and (3) enables the accused to

rely upon a judgment under the indictment as a bar against double jeopardy

for any subsequent prosecution for the same offense." No. 3:19-cr-191-MMH-

JBT, 2021 U.S. Dist. LEXIS 107878, at *4-6 (M.D. Fla. June 9, 2021); (citing *U.S. v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation and quotation omitted)).

An indictment is generally sufficient if it "set[s] forth the offense in the words of the statute," as long as those words set forth all of the elements of the offense. *Id.* (citing *Hamling v. U.S.*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); *U.S. v. Adkinson*, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment need do little more than track the language of the statute)).

While the Eleventh Circuit has explained that an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime," an indictment must also "include enough facts and circumstances to inform the defendant of the specific offense being charged." *U.S. v. Yonn*, 702 F.2d 1341, 1348 (11th Cir. 1983); *U.S. v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003); *see also U.S. v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)

Accordingly, while an indictment does not need to "allege in detail the factual proof that will be relied upon to support the charges," it must state sufficient ultimate facts on the face of the pleading for a court to conclude that a crime had been committed—the Government's mere conclusory recitation of the elements is insufficient. *U.S. v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978).

2

### i. DEFINITION OF A MACHINEGUN CONVERSION PART: "PLUS FACTOR" & INTENT NEEDED

The Eleventh Circuit, in interpreting the definition of destructive device under 26 USCS § 5845(f), stated that: "[a]lthough the statute does define a 'destructive device' to include explosive devices, such as [appellee's], it also explicitly excludes from coverage any explosive device not designed for use as a weapon. 26 U.S.C. § 5845(f). Thus, a device that explodes is not covered by the statute merely because it explodes. Statutory coverage depends upon proof that a device is an explosive plus proof that it was designed as a weapon. No explosive can constitute a destructive device within the meaning of the statute unless it has this 'plus' factor." *United States v. Hammond*, 371 F.3d 776, 780 (11th Cir. 2004) (holding that to qualify as a destructive device under the National Firearms Act, the Government must show a "plus" factor to show that it was *designed* as a weapon.).

This is relevant because 26 USCS § 5845(b) defines "machinegun," in relevant part, as "any part designed and ***intended solely and exclusively*** . . . for use in converting a weapon into a machine gun[.]"

Accordingly, for a part to be a "machinegun" under 26 USCS § 5845(b), must: (1) be a part, (2) designed—which can be demonstrated by the "plus" factor—and intended solely and exclusively for use in converting a weapon into a machine gun. "Machinegun" is defined as "any weapon which shoots, is

3

designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

### b. VAGUENESS & LENITY: THE NFA IS DESIGNED TO GO AFTER "CRIME WEAPONS" NOT TCHOTCHKES

The vagueness doctrine requires that a criminal statute "clearly define the conduct it proscribes." *Skilling v. United States*, 561 U.S. 358, 415 (2010) (Scalia, J., concurring in part and concurring in the judgment); *accord Johnson v. United States*, 576 U.S. 591, 596 (2015) (Fifth Amendment guarantees that every criminal law provides "ordinary people fair notice of the conduct it punishes" and is not "so standardless that it invites arbitrary enforcement"). In *United States v. Lanier*, 520 U.S. 259 (1997), the Supreme Court described three aspects of the requirement that criminal statutes give "fair warning" of what is outlawed. First, "the vagueness doctrine bars enforcement of a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* at 266. Second, any ambiguity in a criminal statute must be resolved in favor of applying the statute only to conduct which is **clearly covered**. *Id.* Third, although clarity may be applied by judicial gloss, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.; see also United States v. Denmark*, 779 F.2d 1559 (11th Cir. 1986). Central to each inquiry is "whether the statute,

4

either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267.

"A penal statute maybe void for vagueness 'for either of two independent reasons.'" *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). First, a statute may be unconstitutionally vague if it "fails to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A statute may also be unconstitutionally vague if it "fails to provide explicit standards to prevent arbitrary and discriminatory enforcement by those enforcing the statute." *Lim*, 444 F.3d at 915 (citing *Karlin v. Foust*, 188 F.3d 446, 458-59 (7th Cir. 1999)). As observed by the United States Supreme Court, the requirement that a penal statute provide minimal guidelines to discourage arbitrary enforcement is "perhaps the most meaningful aspect of the vagueness doctrine." *Smith v. Goguen*, 415 U.S. 566, 574 (1974). Without these minimal enforcement guidelines, "policemen, prosecutors, and juries are allowed to pursue their personal predilections." *Kolender*, 461 U.S. at 358.

The Sixth Circuit has held that "after exhausting the traditional tools of statutory construction, § 5845(b) remains ambiguous. *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 898 (U.S. 6th Cir. 2021). If statutory language is ambiguous, then "the rules of statutory construction allow the Court to look beyond the plain language reading of the statute to its legislative history in

order to further aid in its interpretation." *Id.* at 1010. "[T]he purpose of Firearms Act, of which § 5861 is a part, is to go after crime weapons," not tchotchkes or cards into which were allegedly etched a design. *See U.S. v. Vest*, 448 F. Supp. 2d 1002, 1014 (S.D. Ill. 2006).

"[A] law imposing criminal sanctions—whether it be a statute or a regulation—must provide fair notice of the prohibited conduct." *Gun Owners of Am., Inc.*, 19 F.4th at 901. The rule of lenity "is premised on two ideas: First, 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed'; second, 'legislatures and not courts should define criminal activity." *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18, 115 S. Ct. 2407, 2416 (1995). The government's conduct here falls short of both.

### c. FACIAL AND AS-APPLIED UNCONSTITUTIONAL CONTENT-BASED SPEECH RESTRICTIONS: OVERBROAD AND UNDER INCLUSIVE

Content based restrictions on speech must survive strict scrutiny. The Government's charges against Mr. Hoover relate to alleged YouTube videos discussing an etched piece of metal and raising money for Mr. Ervin. As to arbitrariness, overbreadth, and under inclusivity "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully

detained, and who should be set at large." *Morales*, 527 U.S. at 60 (quoting *United States v. Reese*, 92 U.S. 214, 221, 23 L. Ed. 563 (1876)).

Heightened judicial scrutiny is applied to specific, content-based restrictions on protected expression. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). To survive strict scrutiny, the government must demonstrate that the law is "justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011).

### d. THE GOVERNMENT HAS EXCEEDED ITS AUTHORITY UNDER THE TAX AND SPEND CLAUSE

"Congress cannot punish felonies generally." *Cohens v. State of Virginia*, 19 U.S. 264, 428 (1821). Accordingly, every criminal penalty it enacts "must have some relation to the execution of a power of Congress" (*Bond v. U.S.*, 572 U.S. 844, 844, 134 S. Ct. 2077, 2083 (2014)), like the "power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States," so long as they are "uniform throughout the United States." U.S. Const., Art. I, § 8, cl. 1. A law which does not attach consequences "beyond requiring a payment to the IRS" is a penalty—not a tax. *Id.* at 567-68. Individuals who produce items like the machinegun have no option to pay a tax. *See United States Justice Manual 9-63.516*, "Charging Machinegun Offenses Under 18 U.S.C. § 922(o), Instead of Under the National Firearms Act," 1999 WL 33219894, at *1. (because it is

impossible to comply with the registration and taxation provisions in the NFA, prosecutors should charge the unlawful possession or transfer of a machine gun made after May 19, 1986 under § 922(o).

## II.   THE GOVERNMENT FAILED TO STATE SUFFICIENT ULTIMATE FACTS TO ALLEGE A CRIME
### a. VIOLATION OF 18 U.S.C. § 371: CONSPIRACY TO VIOLATE 26 §§ U.S.C. 5861(e) & 5871 & 18 U.S.C. § 2

To state a claim under 18 U.S.C. § 371 the Government must allege sufficient facts to demonstrate that there was: (1) an agreement between two or more persons, (2) to commit a crime against the United States, (3) and an overt act by one of them in furtherance of the agreement. *See United States v. Qiao Chu*, No. 3:11-cr-286-J-34MCR, 2017 U.S. Dist. LEXIS 208200, at *49 (M.D. Fla. Dec. 19, 2017). "The United States Supreme Court recently reiterated that the fundamental characteristic of a conspiracy is a joint commitment to an endeavor which, if completed, would satisfy all of the elements of the underlying substantive criminal offense." *Id.* (cleaned up, citing *Ocasio v. United States*, 578 U.S. 282, 287 (2016)). Drilling down the second element, the Government is required to plead sufficient facts to allege that each conspirator must have "specifically intended that some conspirator commit each element of the substantive offense." *Ocasio*, 578 U.S. at 292.

On the face of the indictment, the Government complains that Mr. Hoover conspired "to transfer firearms, that is machinegun conversion devices constituting machineguns as defined in 26 U.S.C. 5845(a) and 5845(b), which

8

firearms were not then registered in the National Firearms Registration and Transfer Record as required by 26 U.S.C. 5841, in violation of 26 U.S.C. 5861(e) & 5871." In relevant part, 26 U.S.C. 5845(a) defines the word machinegun as "any weapon which shoots, is designed to shoot . . . automatically more than one shot . . . [t]he term shall also include . . . **any part designed and intended solely and exclusively** . . . for use in converting a weapon into a machinegun[.]"

The Government claims that Mr. Hoover conspired to violated 26 §§ U.S.C. 5861(e) and 5871 because the Auto Key Cards were not registered as allegedly required by 26 U.S.C. 5841. 26 U.S.C. 5841 states that "[e]ach manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor."

As a result of an alleged violation of 26. U.S.C. 5841, the Government contends that Mr. Hoover violated both 26 U.S.C. § 5861(e)—which prohibits the "transfer a firearm in violation of the provisions of this chapter" and 26 U.S. Code § 5871 which states that "violat[ions] or fail[ures] to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both[.]" As pled, the Government has failed to state a crime against Mr. Hoover with its scattershot allegations.

### b. BREAKING DOWN THE SECOND ELEMENT OF THE CONSPIRACY STATUTE: 26 §§ U.S.C. 5861(e) & 5871
#### i. THE GOVERNMENT FAILED TO ALLEGE FACTS PERTAINING A MACHINEGUN CONSPIRACY

26 U.S.C. § 5861(e) prohibits the "transfer a firearm in violation of the provisions of this chapter [26 USCS §§ 5801 et seq.]." For reasons stated *supra*, for a device to be a "machinegun" under 26 USCS § 5845(b), must meet the following elements: it must (1) be a part; (2) which is designed and intended solely and exclusively for use in converting a weapon into a machine gun.

#### ii. AS PLED, AUTOKEYCARD IS NOT A MACHINEGUN UNDER 26 USC §§ 5845(b) OR 5871
##### 1. COUNT 1: THE GOVERNMENT FAILED TO ALLEGE FACTS REGARDING A DESIGN & INTENT SOLELY & EXCLUSIVELY FOR MACHINEGUN CONVERSION PURPOSES & THERE IS NO "PLUS FACTOR" ALLEGED

The only mention of the word "design" in the Indictment is paragraph 4 where the Government wrote that "[t]he Auto Key Cards designed and sold by ERVIN consisted of cards machined from stainless steel, into which were etched the design for machinegun conversion devices known as lightning links, which constituted machineguns as defined in 26 U.S.C. § 5845(a) and 5845(b)." Notably, the Government only alleged that the Auto Key Card was designed by Ervin. That allegation is insufficient as a matter of law.

First, it did not even allege that the Auto Key Card was designed for use in converting a weapon into a machine gun in a conclusory manner. Second,

the Government did not allege anything that can be construed as an adequate "plus" factor under case law interpreting as explained *supra*.

In *Hammond*, "[t]he 'firearm' in question was a cardboard tube, approximately thirteen inches long and one-and-one half inches in diameter." The inside of the tube "was filled with…nine ounces of…an explosive powder[.]" "A green fuse, wrapped in aluminum foil, was placed through one of the ends and ran to the center of the device." *Id.* at 778. The Court found that the explosive capabilities, and even the threat of serious injury was "not enough to bring the device within the statutory framework" because it did not have the "plus factor" to show that it was designed as a weapon. *Id.* at 780. Similarly, in this case the Indictment is facially defective because there is no "plus" factor alleged to sustain the legal conclusion that these cards are designed and intended solely for use as a weapon, as required by the statute. They are mere stainless-steel cards, into which a design was lightly etched.

The Government may argue that *Hammond* is distinguishable from this case because it involves a "destructive device" under § 5845(f) which specifically excludes "any device which is neither designed nor redesigned for use as a weapon" as opposed to a "machinegun conversion device" under § 5845(b). Mr. Hoover submits that the standard under § 5845(b) is actually more stringent than the destructive device definition because it includes the language "designed and intended solely and exclusively" as opposed to just

merely "designed". *See also Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 454 (5th Cir. 2016) (discussing "an unfinished piece of metal that looks quite a bit like a lower receiver but is not legally considered one and may therefore be bought and sold freely" that "requires additional milling and other work to turn into a functional lower receiver"); John Markoff, *Data-Secrecy Export Case Dropped by U.S.*, The New York Times, Jan. 12, 1996, https://www.nytimes.com/1996/01/12/business/data-secrecy-export-case-dropped-by-us.html (The Government, which regarded cryptographic software as a munition under the Arms Export Control Act, dropped a criminal investigation of Zimmermann without an indictment, stemming from his releasing an encryption program as shareware.).

What case law has made clear in this otherwise ambiguous definition is that the law requires something much more than the Government has alleged. Accordingly, the Indictment should be dismissed.

### 2. AS PLED, THE AUTOKEYCARD IS NOT A PART. IT IS A DRAWING, NOTHING MORE.

For reasons stated *supra*, the Government has failed to plead sufficient ultimate facts which demonstrate the Auto Key Card is designed and intended solely and exclusively as a machinegun conversion device. However, it has conclusively demonstrated that the Auto Key Cards are not machinegun

conversions devices as a matter of law because as pled in the Indictment, the Auto Key Card is not a "part."

The Government pled that the Auto Key Cards are "cards . . . into which were etched the design for machinegun conversion devices known as lightning links[.]" It then, in a conclusory manner, declares that such cards are "machineguns as defined in 26 U.S.C. §[§] 5845(a) and 5845(b)." To embrace the Government's position that a card with design on it is a "part" under § 5845(b) would be to ignore the plain and ordinary language of the word. The term "part" is undefined in the statute, but "[i]f possible, every word and every provision is to be given effect." *Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1141 (11th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 26, at 174 (2012); The ordinary meaning of a "part" in the context of machinery like a firearm is "a constituent member of a machine or other apparatus." *See* Webster's Dictionary, Part, https://www.merriam-webster.com/dictionary/part#:~:text=1%20%3A%20one%20of%20the%20sections,My%20dog%20is%20part%20husky. (last retrieved on June 7, 2022); *See also Johnson v. United States*, 559 U.S. 133, 134 (2010) (where a word is undefined, the court must give it its ordinary meaning.).

### c. COUNTS 2 – 5: THE SAME ANALYSIS *SUPRA* APPLIES TO 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2

While aiding and abetting might commonly be thought of as an offense in and of itself, it is not an independent crime under 18 U.S.C. § 2. That statute provides no penalty, and only collapses common law notions of "principal" and "accessory." *United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983). Under it, the acts of the perpetrator become the acts of the aider and abettor and the latter can be charged with having done the acts himself. *Id.* at 200-01. An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider and abettor. *Id.* Accordingly, the indictment need not specifically charge a violation of 18 U.S.C. § 2.

The Government has charged Mr. Hoover with violating 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 in Counts 2 – 5 of the Indictment. And for reasons thoroughly stated *supra*, the Government has failed to state sufficient ultimate facts to sustain those allegations.

### III.   VAGUENESS & LENITY: THERE WAS NO FAIR WARNING THAT THE CONDUCT ALLEGED AGAINST MR. HOOVER IS A CRIME UNDER THE NATIONAL FIREARMS ACT

The Government has charged Mr. Hoover with violating 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 in Counts 2 – 5 of the Indictment. And for reasons thoroughly stated *supra*, the Government has failed to state sufficient ultimate facts to sustain those allegations, much less support scienter.

In no event would a reasonably intelligent person foresee that the conduct charged in this case—talking about a card with a drawing on it—

would be deemed criminal. As applied against Mr. Hoover, 26 §§ U.S.C. 5861(e) and 5871, and 18 U.S.C § 2 are unconstitutionally vague under the Fifth Amendment as applied. Mr. Hoover had no reason to believe, at any point, that he would be engaging in criminal conduct if—as alleged—he entered into an agreement with a tchotchke salesman to discuss stainless steel cards with a design on them on his YouTube channel.

It is worth emphasizing that no court has ever applied the National Firearms Act to a fact pattern like this one. The conduct at issue certainly isn't in the heartland of machinegun cases. Despite ample opportunity to do so, the Government did not allege that a consumer was able to convert a firearm into a machinegun using the alleged design scratched into a stainless-steel card.

As the Sixth Circuit recently wrote, "after exhausting the traditional tools of statutory construction, § 5845(b) remains ambiguous. *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 898 (U.S. 6th Cir. 2021). However, "the purpose of Firearms Act . . . is to go after crime weapons," not tchotchkes. *See Vest*, 448 F. Supp. at 1014. The National Firearms Act is, at best, ambiguous in whether it applies to the conduct alleged against Mr. Hoover, and accordingly, the rule of lenity also requires it to be construed narrowly, especially given the clear First Amendment implications heretofore discussed.

A regulation may "provide such inadequate notice of potential liability so as to offend the rule of lenity." *Gun Owners of Am., Inc.*, 19 F.4th at 901. "The Attorney General has directed the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to administer, enforce, and exercise the functions and powers of the Attorney General with respect to Chapter 44 of Title 18 and Chapter 53 of Title 26. 28 C.F.R. § 0.130(a)." *Gun Owners of Am., Inc.*, 19 F.4th at 897. "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 2782 (1984). Unlike with widely publicized bump stocks, suppressors, and other items, ATF has issued no guidance relating to drawings. In fact, ATF recently rescinded *all* guidance in the context of what is and is not a "firearm" when it comes to incomplete or "partially finished" articles. *See Definition of "Frame or Receiver" and Identification of Firearms*, 87 F.R. 24652 at 24672 ("Any such classifications, to include weapon or frame or receiver parts kits, would need to be resubmitted for evaluation.").

Because "[a]pplying the statute to determine whether a device constitutes a machinegun is within ATF's substantive field", the government may seek to invoke *Chevron*. However, *Chevron* does not displace the rule of

lenity "simply because an agency has interpreted a statute carrying criminal penalties." *See id.* at 901. As the Supreme Court wrote in *Babbitt*:

> We have applied the rule of lenity in a case raising a narrow question concerning the application of a statute that contains criminal sanctions to a specific factual dispute . . . where no regulation was present.

*Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 704 n.18 (1995).

Where there is ambiguity in a criminal statute—or regulation interpreting that statute—doubts are resolved in favor of the defendant. *See Yates v. United States*, 574 U.S. 528 (2015); *Skilling v. United States*, 561 U.S. 358 (2010); *United States v. Santos*, 553 U.S. 507 (2008); *Jones v. United States*, 529 U.S. 848 (2000); *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013); *United States v. Trout*, 68 F.3d 1276 (11th Cir. 1995). Here, similarly, there is no regulation on point.

The Supreme Court in *Yates* explained that if the statute "leaves any doubt" about the application of the statute to the facts to which the government seeks to have the statute apply, the rule of lenity precludes such application. *I.e.*, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Yates*, 574 U.S. at 547-48 (quoting *Cleveland v. United States*, 531 U. S. 12, 25 (2000); *see also Liparota v. United States*, 471 U. S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the

appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). In determining the meaning of "machinegun" under the National Firearms Act, "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Yates*, 574 U.S. at 548, (quoting *Cleveland*, 531 U.S. at 25, and *United States v. Universal C. I. T. Credit Corp.*, 344 U. S. 218, 222 (1952)); *see also Jones v. United States*, 529 U. S. 848, 858–859 (2000). *Santos* explained that the rule of lenity "not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *Santos*, 553 U.S. at 514.

When examining a device from which machinegun conversion devices could be manufactured, the Chief of the ATF's Firearms Technology Industry Services Branch admitted in a letter of December 17, 2018 (the "Letter" or Exhibit-A)[1] that:

---

[1] "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment. *See Bryant v. Avado* Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)." *Universal Express, Inc. v. United States Securities and Exchange Commission*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). Public records are among the permissible facts that a district court may consider. *See Stahl v. U.S. Dep't of Agrc*, 327 F.3d 697, 700 (8th Cir. 2003) ('The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.')

The [drop in auto sear ("DIAS") generally does not require machining of the receiver for installation; with minor adjustments to the mounting body it simply fits into the rear internal area of the receiver, where the . . . machinegun automatic sear would be installed. The sear mounting body and sear together serve no other functional purpose and together are a combination of parts designed and intended solely and exclusively, to convert a semiautomatic AR-15 type firearm into a machinegun.

[A] fixture designed to repair and/or manufacture the parts of a DIAS . . . is not regulated under the [Gun Control Act] or the [National Firearms Act].

Ex.-A at P. 3.

As pled in the Indictment, the Government defined Auto Key Cards as "cards machined from stainless steel, into which were etched the design for machinegun conversion devices." Even looking at the Government's vague and conclusory pleading liberally, the Auto Key Card would require significant transformative labor and machining of the card to cause it to fit into the rear internal area of the receiver, where the machinegun automatic sear would be installed. Further torturing the language of the Indictment to the Government's benefit for the purposes of argument, the Auto Key Card could, at most, constitutes a trinket from which the parts of a DIAS could possibly be made. Such tchotchkes are not regulated under the Gun Control Act or the National Firearms Act. *See also United States v. Prince*, No. 09-10008-JTM, 2009 WL 1875709, at *3 (D. Kan. June 26, 2009), rev'd on other grounds, 593 F.3d 1178 (10th Cir. 2010) ("However, the court simply does not believe that a

19

flat piece of metal with laser perforations and holes constitutes a 'receiver,' *i.e.*, a 'firearm.' Rather, the flat piece of metal is somewhat akin to a piece of paper with lines drawn on it as a guide to make a paper airplane. Although making the paper airplane might be the intended use, it is not an airplane until it is properly folded. Until that time, it is a patterned piece of paper.").

### IV. CONTENT-BASED SPEECH RESTRICTIONS ON HOOVER'S YOUTUBE VIDEOS, SOLICITATION FOR LEGAL FUNDS, AND DESIGNS ON METAL CARDS

Facially and as applied, 26 USCS § 5845(b) is a content-based restriction that is simultaneously overbroad and under inclusive. Accordingly, it is not narrowly tailored to serve a compelling government interest. To be a machinegun, an item MUST: (1) be a part, (2) designed—which can be demonstrated by the "plus" factor—and intended solely and exclusively for use in converting a weapon into a machine gun. As to overbreadth, under inclusivity, and the risk of arbitrary enforcement, "[t]he Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts [or United States Attorneys Office] to step inside and say who could be rightfully detained, and who should be set at large." *Morales*, 527 U.S. at 60 (quoting *United States v. Reese*, 92 U.S. 214, 221, 23 L. Ed. 563 (1876)). If a statute entrusts lawmaking "to the moment-to-moment judgment of the policeman on his beat. . . . it furnishes a convenient tool for harsh and discriminatory enforcement by [] prosecuting officials, against particular

groups deemed to merit their displeasure and confers on police a virtually unrestrained power to arrest and charge persons with a violation." *Kolender*, 461 U.S. at 360.

Heightened judicial scrutiny is applied to specific, content-based restrictions on protected expression. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011). "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000). To survive strict scrutiny, the government must demonstrate that the law is "justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011).

26 USCS § 5845(b) is simultaneously over and under inclusive. For an item to violate § 5845(b) , it must: (1) be a part, (2) designed—which can be demonstrated by the "plus" factor—and intended solely and exclusively for use in converting a weapon into a machine gun. The broad sweep of the § 5845(b), as wielded here, violates "the requirement that a legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358. There are no such guidelines in the law or regulations. Any item, including shoelaces, may constitute a "machinegun." *See* Conversion kits, Firearms Law Deskbook § 6:10 (*citing* Letter from Richard Vasquez, acting Chief, ATF Firearms Technology Branch, June 25, 2007, to Brian A. Blakely, 903050:JPV, 3311/2007-615). For

these reasons, § 5845(b) is overbroad. If this Court were to allow the Indictment to stand, it matters not whether the reason that a YouTuber makes a video about the Auto Key Card was to spur a discussion about firearms laws, to advocate for gun control, or to raise money for Mr. Ervin's legal defense. *See* Indictment at ¶ 6(y).

Furthermore, if it applies to the cards at issue as the government alleges, § 5845(b) is under inclusive. To wit, if it applied here and not, for example, to an electronic massage gun with the same schematic drawn on it that could help relax muscles (or rapidly engage a semiautomatic rifle's trigger). Given this result, it "necessarily [and impermissibly] entrusts lawmaking [regarding this content-based restriction or otherwise] to the moment-to-moment judgment of the policeman on his beat." *See City of Chi. v. Morales*, 527 U.S. 41, 60 (1999). The law is not narrowly tailored to serve a compelling government interest.

## V.   THE GOVERNMENT IS ACTING OUTSIDE THE LIMITS OF THE TAXING AND SPENDING CLAUSE

"We start with first principles. The Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549 (1995). The first question in assessing the constitutionality of the government's actions is whether it is acting pursuant to a legitimate source of power. *See* U.S. Const., Art. I, §8. The definitions applied to the Auto Key Cards here are found under the Internal Revenue Code, part of a law purported to be passed pursuant to the taxing clause. In *Nat'l Fed'n of Indep. Bus. v. Sebelius*, the

Supreme Court upheld the Affordable Care Act's ("ACA") "penalty" as a "tax" within the scope of the Tax and Spend Clause. 567 U.S. 519, 561-75 (2012). *Sebelius* held that the ACA was not punitive because "[n]either the Act nor any other law attaches negative legal consequences to not buying health insurance, beyond requiring a payment to the IRS." Id. at 567-68. Those factors distinguished the ACA from "a mere penalty with the characteristics of regulation and punishment." *Id.* at 573 (citing *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994); *Drexel Furniture*, 259 U.S. at 38) (internal quotations omitted).

The instant case presents a very different situation. The government will not accept the payment of the tax required by the charged statute, and yet nonpayment presents serious criminal consequences and permanent deprivations of liberty. It is unconstitutional as applied to Mr. Hoover.

## VI.   CONCLUSION

For all the reasons argued *supra*, the Indictment should be dismissed against Mr. Hoover. The Indictment is defective for failing to state sufficient ultimate facts, there is no "plus factor" alleged necessary to make a finding that the Auto Key Card is a machinegun under the NFA, this prosecution runs afoul of the rule of lenity, and the government is without the power to regulate as it has. Case law has held that § 5845(b) is vague and ambiguous. Indeed, the ATF's own Chief of the ATF's Firearms Technology Industry Services

Branch's has stated that items from which the parts of a machinegun conversion device can be made are not regulated under the Gun Control Act or the National Firearms Act. Accordingly, the Government has failed to allege that Mr. Hoover committed a crime, much less that he has committed one with scienter. Moreover, as regulating the content of Mr. Hoover' speech and conduct, § 5845(b) is unconstitutional facially and as applied because it is simultaneously overbroad and underinclusive. The Court should err on the side of lenity and Mr. Hoover. He should not be forced to endure a criminal trial (and possible appeals) just so that the Middle District of Florida's Project Safe Neighborhoods can test novel applications of the National Firearms Act.

If the Court dismisses this case, the Government can appeal, and if the Eleventh Circuit holds that the National Firearms Act can constitutionally be applied to the facts alleged in this case, then the prosecution can proceed. The Government will not have suffered any harm. The opposite is not at all true for Mr. Hoover. Using Mr. Hoover as a guinea pig will needlessly and irreparably harm his reputation, financially ruin his family, and will necessarily divert his attention and time from raising his daughters to defending himself against these dubious charges.

**WHEREFORE** Defendant Matthew Raymond Hoover respectfully moves this Honorable Court to dismiss the Indictment (ECF 57) against him

in its entity with prejudice, and for any further relief that this Court deems just and proper.

DATED:  June 21, 2022

_Zachary Z. Zermay_
Zachary Z. Zermay, Esq.
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Lead Counsel for Defendant*

/s/Matthew Larosiere
Matthew Larosiere
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Defendant*


### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  June 21, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

_Zachary Z. Zermay_
Zachary Z. Zermay, Esq.