UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr22(S2)-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER,

_____/

## REQUEST FOR  JUDICIAL NOTICE IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE

Pursuant to Federal Rule of Evidence 201, Defendant Matthew Raymond Hoover ("Defendant") respectfully moves this Court to take judicial notice of the Honorable Steven D. Merryday's order granting members of the Gambino Organized Crime Family's Motion to Transfer Venue ("Exhibit-A") and the Honorable John Steele's order granting a defendant's Motion to Transfer Venue ("Exhibit-B") in support of his Motion to Transfer Venue. In support of this Motion, Defendant states:

### I.   LEGAL STANDARDS AND ARGUMENT

Pursuant to Federal Rule of Evidence 201(b), the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately

1

and readily determined from sources whose accuracy cannot be reasonably questioned."

It should further be noted that the Eleventh Circuit Court of Appeals – in addressing judicial notice – has stated that:

> Public records are among the permissible facts that a district court may consider. *See Stahl v. U.S. Dep't of Agrc*, 327 F.3d 697, 700 (8th Cir. 2003) ('The district court may take judicial notice of public records and may thus consider them on a motion to dismiss.')

*Universal Express, Inc. v. United States Securities and Exchange Commission*, 177 Fed. Appx. 52, 53 (11th Cir. 2006). *See also Parker v. Hurley*, 514 F.3d 87, 90 (1st Cir. 2008).

| Exhibit | Description |
|---------|-------------|
| A | The Honorable Steven D. Merryday's order granting members of the Gambino Organized Crime Family's Motion to Transfer Venue |
| B | The Honorable John Steele's order granting a defendant's Motion to Transfer Venue. |

Both Exhibit-A and B are public records the United States District Court for the Middle District of Florida. Accordingly, the Court should judicially notice the complete copy of Exhibit-A and B, which are attached hereto, so that the Court can properly consider them in its entirety during the course of the litigation.

**WHEREFORE** Defendant Matthew Hoover respectfully moves this Honorable Court to take judicial notice of Exhibit-A and B for all purposes throughout the course of the litigation of the above styled cause.

DATED:  June 21, 2022

Zachary Z. Zermay, Esq.               /s/Matthew Larosiere
1762 Windward Way                     Matthew Larosiere
Sanibel, FL 33957                     6964 Houlton Circle
Email: zach@zermaylaw.com             Lake Worth, FL 33467
Telephone: 239-699-3107               Email: larosieremm@gmail.com
*Lead Counsel for Defendant*          Telephone: 561-452-7575
                                      *Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on  June 21, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Zachary Z. Zermay, Esq.

EXHIBIT-A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO.:   8:08-cr-323-T-23TGW

JOHN A. BURKE,
JAMES V. CADICAMO,
DAVID D'ARPINO,
MICHAEL D. FINNERTY, and
GUY T. PEDEN
_____/

## ORDER

In January, 2009, the grand jury returned a four-count, superseding indictment
against John A. Burke, James V. Cadicamo, David D. D'Arpino, Michael D. Finnerty,
and Guy T. Peden.  Count One charges each of the five defendants with conspiracy in
violation of the Racketeer-Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. § 1962(d).  Count Two charges that Burke and D'Arpino, acting together with
Michael Malone and Pasquale J. Andriano, murdered John Gebert in aid of racketeering
in violation of 18 U.S.C. § 1959(a)(1).  Count Three charges Cadicamo with conspiring
to tamper with a witness, Michael Malone, in order to impede, influence, or prevent his
testimony in a federal criminal trial in violation of 18 U.S.C. § 1512(k).  Count Four
charges Cadicamo with conspiring to "cause bodily injury" to Michael Malone in
retaliation for Malone's testifying in a criminal case and providing information about
other federal offenses.

Relying on Rule 21(b), Federal Rules of Criminal Procedure, the five defendants
move (Doc. 167) in concert to transfer this action to the Eastern District of New York.

The United States responds (Doc. 175) in opposition to the transfer. After receiving

permission (Doc. 188), the defendants reply (Doc. 193) in support of transfer.

### COUNT ONE OF THE INDICTMENT

Stating four counts in eighteen pages, the indictment alleges an array of facts,

encapsulated in pertinent part as follows:

The Gambino Organized Crime Family ("the Gambino OCF") of La Cosa Nostra

"secretly" operated as "an organized criminal group" in New York, New Jersey,

Pennsylvania, Florida (including the Middle District of Florida), and elsewhere but was

"supervised and controlled by its hierarchy located in New York." The Gambino OCF's

administrative hierarchy features at the top a "boss," supported by an "underboss" or

"consigliere." At the service of the "boss" and the "consigliere" are groups called

"crews" or "decinas" supervised by "captains," also called "capos." A "crew" comprises

"made members," also called "soldiers" or "good fellows," of the Gambino OCF. The

"made members" in turn use "associates" to accomplish criminal objectives. A "captain"

receives a moiety from the proceeds of his organization's criminal episodes.

Within the Gambino OCF at various pertinent times, John A. Gotti was the "boss,"

Eugene Gotti was a "captain," Peter Gotti was a "captain" or "boss," Ronald Trucchio

was a "captain," Charles Carneglia was a "soldier," John Carneglia was a "soldier,"

John Alite was an "associate" proximate to John A. Gotti, and Kevin McMahon was an

"associate" proximate to the Carneglias.

The Gambino OCF, an ongoing interstate criminal enterprise as defined in 18

U.S.C. § 1961(4), generated money and other proceeds for the members by dealing

narcotics, by extortion, by armed and unarmed robbery, by gambling, by bribery, and by sundry other felonious undertakings, all of which were effected by threats and violence "ranging from simple assault to murder."  From about 1983 until at least the return of the indictment, the five defendants conspired among themselves and with others to conduct the Gambino OCF's criminal enterprise by a pattern of racketeering that included murder in violation of the law of New York; robbery and associated activity in violation of the law of New York, New Jersey, Pennsylvania, and Florida; kidnapping and associated activity in violation of the law of New York; extortion and related activity in violation of the law of New York and Florida; bribery in violation of the law of New York; gambling in violation of the law of New York; and dealing in controlled substances in violation of the law of Florida and New York.  All or most of these patterns of racketeering also violate one or more of Sections 201, 892, 894, 1503, 1951, 1952, 1956, 1957, 2314, and 2315 of Title 18 of the United States Code and Sections 841 and 846 of Title 21 of the United States Code.  The Gambino OCF also threatened and used force and violence to defend and expand the criminal enterprise's geographical dominion and the consequent operation of both legal business, such as a bar, restaurant, valet service, and the like, and illegal business, such as illegal gambling and usurious lending.  The criminal enterprise also employed force and violence and other felonious means, including murder and bribery, to avoid detection by law enforcement and to impede the prosecution of a member of the criminal enterprise.

The criminal enterprise operated the "Club Mirage" in Tampa, Florida; forced individuals to purchase controlled substances in New York; assaulted persons in New

York to enforce purchases of controlled substances from the criminal enterprise; traveled between New York and Florida to commit crimes, including violent crimes; and committed an array of other crimes in each of New York, Florida, Pennsylvania, and New Jersey and in other locations unspecified in the indictment.

Paragraphs 38 and 39 of the indictment specifically allege conspiracy to distribute and distribution of controlled substances in New York by Burke and Peden.

Paragraph 40 of the indictment specifically alleges the murder of Bruce John Gotterup by Burke and Peden and others in New York.

Paragraph 41 of the indictment specifically alleges the murder of John Gebert by Burke and D'Arpino and others in New York.

### COUNT TWO OF THE INDICTMENT

Count Two of the indictment alleges in three paragraphs that the July 12, 1996, murder of John Gebert in New York by Burke, D'Arpino, and others constituted a murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1).

### COUNT THREE OF THE INDICTMENT

Count Three of the indictment alleges in one paragraph that between August, 2006, and the spring of 2007 in the Middle District of Florida and in violation of 18 U.S.C. § 1512(k) Cadicamo and others conspired to kill or use force against Michael Malone to prevent, impede, or influence the testimony of Michael Malone as a witness in Case No. 8:04-cr-348-T-24TGW, a federal criminal case formerly pending (but now resolved) in the Middle District of Florida.

## COUNT FOUR OF THE INDICTMENT

Count Four of the indictment alleges in one paragraph that from November, 2006, through the spring of 2007 in the Middle District of Florida Cadicamo and others conspired in violation of 18 U.S.C. § 1513(f) to retaliate against Michael Malone for testifying in Case No. 8:04-cr-348-T-24TGW and for providing other information to law enforcement.

## THE BILLS OF PARTICULARS

The United States filed a bill of particulars as to the allegations in the indictment against each defendant. The United States' bills of particulars provide for each defendant the following catalog of "discrete, specific acts about which the government currently intends to offer proof at trial:"

## JOHN A. BURKE

| | Nature of the Act | Location of Act(s) | Date of Occurrence (on or about) |
|---|---|---|---|
| 1. | Distribution and possession of controlled substances | Queens, New York | 1989 and continuing thereafter |
| 2. | Conspiracy to distribute and to possess controlled substances | Queens, New York | 1989 and continuing thereafter |
| 3. | Murder | Boardwalk/Rockaways, Queens, New York | November 20, 1991 |
| 4. | Robbery/Extortion | Valley Stream, Nassau County, New York | 1995 |
| 5. | Robbery/Extortion | Long Island, New York | Late spring/early summer 1996 |
| 6. | Murder | Frankie and Johnny's, Woodhaven section of Queens, New York | July 12, 1996 |
| 7. | Battery | Queens, New York | 1996 |

## DAVID D'ARPINO

| | Nature of the Act | Location of Act(s) | Date of Occurrence (on or about) |
|---|---|---|---|
| 1. | Robbery/Extortion Aggravated Battery | 12201 N. 50th Street, Tampa, Florida | March 18, 1996 |
| 2. | Robbery | 1010 N. Westshore Blvd., Tampa, Florida | March 24, 1996 |
| 3. | Attempted Murder | Queens, New York | Spring 1996 |
| 4. | Robbery/Extortion | Long Island, New York | Late spring/early summer 1996 |
| 5. | Murder | Frankie and Johnny's, Woodhaven section of Queens, New York | July 12, 1996 |
| 6. | Robbery/Extortion | Long Island, New York | May 20, 2000 |
| 7. | Robbery/Extortion | Long Island, New York | In or about 2000 |
| 8. | 18. U.S.C. § 1962(a) | Tampa, Florida | 2003-2007 |

## JAMES V. CADICAMO

| | Nature of the Act | Location of Act(s) | Date of Occurrence (on or about) |
|---|---|---|---|
| 1. | Aggravated Battery | Park Lane South, Woodhaven Section, Queens, New York | 1995/1996 |
| 2. | Robbery | 7th/8th Street and Shunk Street, Philadelphia, Pennsylvania | 2000 |
| 3. | Robbery | Marlton, New Jersey | May 8, 2000 |
| 4. | Robbery/Extortion | Long Island, New York | May 20, 2000 |
| 5. | Robbery/Extortion | Long Island, New York | In or about 2000 |
| 6. | 18 U.S.C. § 1962(a) | Tampa, Florida | 2003-2008 |
| 7. | 18 U.S.C. § 1512(k) | Tampa, Florida | August 2006-spring 2007 |
| 8. | 18 U.S.C. § 1513(f) | Tampa, Florida | November 2006-spring 2007 |

## MICHAEL D. FINNERTY

| | Nature of the Act | Location of Act(s) | Date of Occurrence (on or about) |
|---|---|---|---|
| 1. | Obstruction of Justice | Eastern District of New York | 1987-1989 |

| | | | |
|---|---|---|---|
| 2. | Assault/Battery | Queens, New York | 1989 |
| 3. | Extortion | Queens, New York | 1989 |
| 4. | Robbery | Massapequa, New York | 1990 |
| 5. | Burglary | Manhattan, New York | 1991 |
| 6. | Burglary | Queens, New York | Early-to-mid 1990's |

## GUY T. PEDEN

| | Nature of the Act | Location of Act(s) | Date of Occurrence (on or about) |
|---|---|---|---|
| 1. | Distribution and possession of controlled substances | Queens, New York | 1984 and continuing thereafter |
| 2. | Conspiracy to distribute and to possess controlled substances | Queens, New York | 1984 and continuing thereafter |
| 3. | Murder | Boardwalk/Rockaways, Queens, New York | November 20, 1991 |
| 4. | Bookmaking | Queens, New York | 1984 and continuing thereafter |

## THE MOTION TO TRANSFER

Relying on Rule 21(b), Federal Rules of Criminal Procedure, the defendants move to transfer this action to the Eastern District of New York "for the convenience of the parties and witnesses and in the interests of justice."  The defendants note that four of the five "charged defendants live 1200 miles away from Tampa," presumably in and around New York City, and that the "overwhelming majority" of the thirty-one criminal acts alleged in the indictment occurred in New York (specifically, twenty-seven in New York) and "just a few" in Florida (specifically, four in Florida).  The defendants assert that "virtually all of the witnesses called by the government at trial" and "a significant number" of defense witnesses reside in New York, which in the event of a trial in Florida results in a "logistical nightmare for the parties, the witnesses, and the Court."  The

defendants assert that most of the defendants employ counsel in New York and that the New York defendants with retained counsel will incur unnecessary and burdensome expense owing to defense in Florida.

## THE UNITED STATES RESPONDS

The United States responds in opposition to the motion to transfer and states initially the uncontested proposition that the Middle District of Florida is a "proper" venue because 18 U.S.C. § 3237(a) unambiguously permits venue for a prosecution in any district in which the charged offense was "begun, continued, or completed."  The United States notes that four of the five defendants are residents of New York and the other defendant, Cadicamo, is a resident of Florida.

In the response the United States asserts that Count One of the superseding indictment charges "a two-object conspiracy to violate 18 U. S. C. § 1962(a) and (c)." The United States denies that the "charged enterprise" in Count One is the Gambino OCF and asserts that the "charged enterprise" is "a group of individuals led by Alite that operated at times under the influence and control of the Gambino [OCF]."  For this proposition the United States cites paragraphs seventeen through nineteen and twenty-four through twenty-five of the superseding indictment.  Paragraph seventeen alleges involvement by Burke, Cadicamo, D'Arpino, Finnerty, and Peden, as well as "John E. Alite, Michael Malone, Pasquale J. Andriano, and other persons known and unknown . . . ."  Paragraph nineteen of the superseding indictment alleges with respect to the charged criminal enterprise:

> The Criminal Enterprise's activities were originally based in Queens County, New York, but the members operated in other areas of New York City, the

- 8 -

> State of New Jersey, the State of Pennsylvania, the Middle District of Florida, the Southern District of Florida, and elsewhere. While the membership of the Criminal Enterprise churned and fluctuated during the period of time charged in this Superseding Indictment, and not all members pursued each unlawful end, the structure and purpose of the Criminal Enterprise remained the same.

Paragraph twenty-five of the superseding indictment alleges that Burke, Cadicamo, D'Arpino, Finnerty, and Peden, along with Malone, Andriano, and others "engage[d] in an array of criminal conduct in the State of New York, the State of New Jersey, the State of Pennsylvania, the State of Florida, and elsewhere . . . ."

The United States cites Platt v. Minnesota Mining & Manufacturing, Co., 376 U.S. 240 (1964), but contends that the Eleventh Circuit has not adopted the factors enumerated in Platt "as the definitive test" for transfer (of course, a list of factors, such as the Platt list, that includes as a factor "any other special elements which might affect the transfer" is manifestly not "definitive" in the sense of "explicitly exhaustive," except to the extent that a list that explicitly incorporates all possible "factors" is also a list that by definition omits no possible factor). Similarly, the United States attempts to distinguish Platt as pertaining to transfer of a corporate defendant but not an individual defendant.[1]

Nonetheless, the United States assesses the Platt factors. The United States begins with "the location of the corporate defendant" (presumably the United States intends some sly humor here) and notes that the defendants have cited no case that

---

[1] The "Advisory Committee Notes" to the 1966 amendments to Rule 21 state:

The amendment permits a transfer in any case on motion of the defendant on a showing that it would be for the convenience of parties and witnesses, and in the interest of justice. Cf. 28 U.S.C. § 1404(a), stating a similar standard for civil cases. See also Platt v. Minnesota Min. & Mfg. Co., 376 U.S. 240 (1964).

"addresses" the factor concerning the location of the (corporate) [the United States'
parenthetical] defendant" (presumably the absence of a corporate defendant in this
case explains the subsequent disinterest by the defendants in the subject of venue for a
corporate defendant; in any event, this order mentions the venue of a corporate
defendant no further).  The United States also mentions that "four of the five defendants
. . . [are] present in [the Middle District of Florida] . . . ."  As of today, an additional
defendant has returned to New York and, as the United States fails to mention explicitly,
two of the three defendants remain in Florida only because of pre-trial detention, a
circumstance that would transform to pre-trial detention in New York if the action is
transferred.

The United States discusses the location of witnesses, citing Kevin Bonner (a
prospective witness from southern Florida); Louis "Duke" Mendel, who the United States
oddly says "has or will be subpoenaed in this case" (but the United States never quite
says that Mendel will testify in this case); and twenty-five or thirty other, unnamed
persons whose knowledge is not specified and whose residence is not specified.  Of
course, with respect to these twenty-five or thirty witnesses the United States, again,
says only that about twenty-five "will be served" with a trial subpoena and that another
five are "known to the United States" (actually, the response says "the government
knows of at least five or more" and excludes with respect to these "five or more" the
promise of even a trial subpoena, much less a promise of testimony or an idea of the
content of the testimony).

The United States next turns to the "location of events likely to be in issue" and
asserts that Alite, the putative leader of the charged enterprise, controlled seven

businesses in Tampa.  The United States provides no meaningful measure of the
relative quantity or quality of the charged enterprise's business in Florida compared to
the aggregate of the enterprise's business.  In describing the charged enterprise's
activities in the Middle District of Florida, the United States uses phrases such as "a
primary operational base" (not <u>the</u> primary operational base), "significant criminal
proceeds" (not the majority or plurality of the criminal proceeds), "in Tampa and
elsewhere" (specifying Tampa but not detailing the "elsewhere"), and "a significant
amount of violent conduct in Tampa" (not "most of the violent conduct was in Tampa").
A typically ambiguous and evasive statement concludes the United States' section on
the location of events:

> Thus, although a good number of the events that will be at issue at trial
> occurred in New York City, a significant amount of criminal conduct – in
> violation (sic?) of both objects of the charged RICO conspiracy – occurred
> in Tampa or was related to the criminal businesses operating in Tampa.

In sum, the United States nowhere unqualifiedly asserts and nowhere offers facts
to establish that the Middle District of Florida was the site of the principal exertions of
the charged enterprise or the characteristic home of the controlling participants – each a
prospect heavily clouded by equivocal assertions such as this from the United States'
memorandum:

> Thus, Count One charges some criminal conduct that occurred primarily in
> Tampa, some criminal conduct that occurred primarily in New York City,
> and some that occurred in multiple jurisdictions, including New York, New
> Jersey, Pennsylvania, the Middle District of Florida, the Southern District of
> Florida, and elsewhere.

Alleging "some criminal conduct" here, "some criminal conduct" there, and "some
criminal conduct" elsewhere is unhelpful, uninstructive, and unpersuasive.

- 11 -

The United States responds further by discussing the "location of documents likely to be involved." Dismissing effectively the importance of this factor, the United States notes that the availability of electronic means to effect discovery neutralizes the location of documents as a source of inconvenience or burden to the parties.

In discussing expense to the parties, the United States expresses concern about the expense to Burke, Cadicamo, and Peden if required to "relocate" their Florida counsel to New York. Of course, the readily available, typical, and highly probable option is for the defendants to retain New York counsel and relinquish Florida counsel, an option with little or no net financial consequence.

The United States objects to transfer because of a purportedly "ongoing investigation," the details and location of which are unspecified. The United States offers only statements such as, "The government knows of several individuals who participated in the murderous conduct and who have not yet been charged." Absent more specific information, this assertion warrants little, if any, weight.

The United States discusses the respective accessibility of New York and Tampa, including details such as the driving time from the airport to the courthouse, and the relative docket conditions in the Middle District of Florida and the Eastern District of New York. These factors, which are both indeterminate and equivocal, are not strongly influential in the present circumstance. But in a conspicuously vague manner the United States invokes the supposed preference of the "crime victims" for venue in the Middle District of Florida. Although for both moral and legal reasons the victim of a crime warrants special consideration, including consideration under 18 U. S. C. § 3771, the United States in asserting the victims' supposed preference identifies neither the

victims (by name, by number, or otherwise) nor the crimes (by name, by number, or otherwise), nor the location of either, nor the reason for the victims' preference. To the extent that a victim might prefer that a defendant's trial occur at a place inconvenient and unduly burdensome to the defendant or occur at a particular place because the victim (or the government) perceives that the prospect of conviction is greater in one venue than another, the victim's preference either invokes a consideration foreign to a judicial consideration of the "interests of justice" under Rule 21(b) or merely restates in different terms the question of which proper venue is the most convenient venue.

## THE DEFENDANTS' REPLY

The United States' twenty-one page response triggered the defendants' twenty-one page reply. The defendants first thrust is a continuation of the argument, appearing in both earlier papers, about the location of the "acts" specified by the United States in the bills of particulars, included earlier in this order. The defendants provide a telling summary:

> The Bills provided by the government also confirm that (a) the acts allegedly committed by the defendants Burke, Peden, and Finnerty all occurred exclusively within the State of New York, (b) the substantial majority of the acts allegedly committed by defendant D'Arpino occurred exclusively within the State of New York, and (c) at least half of the acts allegedly committed by defendant Cadicamo occurred exclusively within the State of New York.

This argument leads to renewal of the argument about the location of witnesses, concerning which the defendants note that:

> the only two charged murders – the murder of Bruce John Gotterup and the murder of John Gebert – were wholly planned and committed in the State of New York. Defendant John A. Burke has been previously tried for these murders in New York. All New York-based fact witnesses were called at his trial, nearly twenty in the aggregate, including eyewitnesses, crime scene witnesses, forensic witnesses, and medical examiners.

- 13 -

The defendants assert the intention to summon an array – an unstated "significant number" – of New York-based witnesses at trial, including alibi witnesses and other exculpatory witnesses, some of whom have testified already at a related trial in New York. The defendants note that the only Florida resident the United States specifically identifies as a trial witness is Louis "Duke" Mendel, about whom at a detention hearing in this case the United States observed, "But that said, I would never call [Mendel] at trial, Your Honor, without substantial supporting evidence, because I, frankly, don't trust him and don't ever intend to call him as a witness."

Although merely a statement of then-current intention (based on then-current information) and not a statement irretrievably foreclosing the United States' later summoning Mendel as a trial witness, the United States' earlier observation about Mendel serves graphically to illustrate, as stated in an order in the related prosecution of John A. Gotti, Jr., that "the witnesses in a case of this nature and at this stage of the prosecution are necessarily speculative in number and location, but undoubtedly the bulk of the witnesses to the RICO conspiracy charged in the Florida indictment are in and around New York or, at least, not singularly convenient to Tampa."

The defendants continue with an explanation of the location and identity of the defense counsel, both present and prospective, and note that, if the case is transferred, the defendants will obtain New York counsel, in some cases appointed counsel and in other cases counsel more familiar with the pertinent facts and law because of earlier representation of the same party in another case in New York.

The defendants conclude by touching the less decisive issues of accessibility, the defendants' families and friends, the defendants' business interests, and the like.

## <u>DISCUSSION</u>

The Rule 21(b) determination answers to "convenience" and the "interests of justice," which are informed in turn by the factors enumerated in <u>Platt</u>, which factors are neither exhaustive nor exclusive:

> (1) location of corporate defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

376 U.S. at 243-44.

Strongly influential conclusions result from a review of the arguments of the United States and the defendants applying the factors in <u>Platt</u> to the circumstances of this case.  (1) Although presently or recently displaced by detention or imprisonment, four of the five defendants are residents of New York and to each Florida is an inconvenient and burdensome forum.  The fifth defendant, Cadicamo, a Florida resident, nonetheless joins the motion to transfer and, accordingly, any inconvenience to him is not a factor gravitating against a transfer to New York, which he favors. (2) and (3) A reasonable and fair interpretation of the superseding indictment, the bills of particulars, the parties' papers, and other matters of record starkly reveals that the lopsided majority of the events pertinent to this prosecution occurred, and the persons likely to testify about those events reside, in and around New York City or are situated nearer and more conveniently to New York City than to the Middle District of Florida and to Tampa, although as noted in <u>United States v. Bein</u>, 539 F. Supp. 72, 72 (N.D. Ill. 1982):

- 15 -

> It is really impossible, without conducting a kind of pre-trial mini-trial, to evaluate the significance of the prospective witnesses to see in what direction this factor points.

New Jersey and Pennsylvania, the only two other places mentioned in the indictment and in the parties' other papers, are nearer and more convenient to New York than to Tampa. Although the United States attempts to emphasize the Tampa events and connections and to subordinate the events in, and connections to, New York and elsewhere, the unmistakable and inescapable fact is that the Gambino OCF; the charged enterprise in all its undertakings and machinations; and the persons, places, things, and events that combine to provide the stuff of this indictment are disproportionately native to New York and the surrounding area and not to the Middle District of Florida and Tampa (although undoubtedly some alleged events, including events of violence and other felonious acts, occurred in or near Tampa). As stated in United States v. Ringer, 651 F. Supp. 636, 638 (N.D. Ill. 1986):

> Location of Events Likely to Be In Issue. Even a cursory glance at the indictment demonstrates that this factor calls for transfer. Despite an apparent effort on the Government's part to insert the word "Chicago" wherever it could into the indictment, almost every fact alleged either took place in New York or was directed from there by defendants.

The bills of particulars leave no doubt that this factor controls the outcome in this instance. (4) The parties agree (or agree as nearly as they seem capable) that the availability of electronic discovery tools renders the location of documents effectively superfluous to the present question. (5) No material issue of damage to a defendant's business appears. (6) Although difficult to quantify, some increment of expense to the defendants attaches to defending at a forum remote from their residence. (7) The United States enjoys office, staff, and resources at every federal venue and typically is

- 16 -

not disadvantaged in the Rule 21(b) sense by a transfer.  Further, the United States is

not entitled to staff a prosecution awkwardly or unnaturally to manufacture for tactical

advantage an inconvenience or a burden that weighs against the Rule 21(b) interests of

the defendant.  Even if the United Stated can identify some inconvenience, an

"inconvenience to the Government is 'given little weight when other considerations of

convenience suggest a transfer." United States v. Hanley, No. 94-cr-394, 1995 WL

60019 (S.D.N.Y. Feb. 10, 1995) (quoting United States v. Gruberg, 493 F. Supp. 234,

243 (S.D.N.Y. 1979)).  In other words, the "interests of justice" under Rule 21(b) are

governed by the history of and the participants in the charged crime and not by an

arcane staffing decision by the United States.  At present, some defense counsel are

located in New York (even though local counsel, as required by the Local Rules, now or

formerly appeared in Florida); in the event of a transfer, apparently all defense counsel

will reside in New York.  (8) and (9) Neither the accessibility of the place of trial nor the

condition of the docket in the respective districts is a material factor under the prevailing

circumstances. United States v. Snipes, No. 5:06-cr-22, 2007 WL 2572198 (M.D. Fla.

Sept. 5, 2007).  Tampa and New York are, on balance, readily accessible by an array of

means at an array of times (and, by definition, travel from A to B is neither more nor

less convenient than travel from B to A, although that symmetry seems occasionally

overlooked).  Although both are busy, either district court can accommodate and

historically has accommodated in a reasonably "speedy" and expeditious manner a trial

of the nature suggested by the papers in this case.  Experience teaches that the actions

of the parties, including motions, hearings, superseding indictments, interlocutory

appeals, pleas, and the like govern the schedule in a matter of this nature more

decisively than the condition of the docket. (10) Neither the United States nor the defendants offers a compelling "special element which might affect the transfer."

The United States' final submission (Doc. 215) on venue again outlines activity of the charged enterprise that occurred in Tampa (although the United States discusses John Alite's real estate purchases in New Jersey and stipulates that Alite "regularly bounced" between New Jersey, New York, and Tampa). However, the United States again fails to engage the galvanizing fact that becomes manifest upon an inspection of the bills of particulars. Every "discrete, specific act about which the government intends of offer proof at trial" against John H. Burke occurred in New York. Five of the eight "discrete, specific acts about which the government intends of offer proof at trial" against David D'Arpino occurred in New York. Five of the eight "discrete, specific acts about which the government intends of offer proof at trial" against James V. Cadicamo occurred in New York, New Jersey, or Pennsylvania. All six of the "discrete, specific acts about which the government intends of offer proof at trial" against Michael D. Finnerty occurred in New York. All four of the "discrete, specific acts about which the government intends of offer proof at trial" against Guy T. Peden occurred in New York.

Four of the five defendants reside in New York. The Gambino OCF, the alleged organizational parent of the charged enterprise, emanates from New York. Alite, the leader of the charged enterprise, resides in and operates in and around New York and New Jersey. The alleged murders occurred in and around New York.

Notwithstanding the alleged operation in Tampa of a night club, some valet services, and sundry businesses (even if "real" and not just a "front") and the occurrence in Tampa of some assorted crimes of force and violence, the undoubted

- 18 -

"nerve center" of the charged enterprise and the locus of the enterprises malefactions is New York City and its environs.  Almost the whole of the indicators to the contrary are found only within the United States' subjective intention, expressed as an intention to call unspecified Tampa witnesses to provide unspecified testimony.   In this instance, the residence and circumstances of the defendants and the explicit and unambiguous (and objective) content of the bills of particulars govern the Rule 21(b) issue.[2]

## CONCLUSION

Because the defendants establish a "substantial imbalance of inconvenience" that adversely affects a "substantial right" and implicates the "interests of justice" protected by Rule 21(b), the defendants' motion to transfer is **GRANTED** and the action is **TRANSFERRED** to the Eastern District of New York.  The Clerk is directed to **CLOSE** the file.

ORDERED in Tampa, Florida, on March 3, 2009.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**

---

[2]   Throughout the papers dedicated to venue and particularly in the final paper (Doc. 215), the United States adverts to the similarity of United States v. Trucchio, et al, Case No. 8:04-cr-348-T-24TGW, tried by a jury before Judge Susan C. Bucklew in the Middle District of Florida.  Trucchio appears to present allegations of criminality by a "crew" of the Gambino OCF.  Two major distinctions between Trucchio and the present case appear to the careful observer.  First, the defendants in Trucchio mounted no concerted attempt to transfer under Rule 21(b), and Judge Bucklew had no occasion to address the questions presented in this order.  Second, the magistrate judge ordered the United States in that case to file bills of particulars, a review of which is most suggestive and enlightening and reveals that the United States stated the following:  Four of the five acts "about which the government currently intends to offer proof at trial" against Michael Malone occurred in Florida (three in Tampa and one in Port St. Lucie).  (Doc. 222 in that case)  All four of the acts "about which the government currently intends to offer proof at trial" against Terry L. Scaglione occurred in Tampa. (Doc. 223 in that case)  Fourteen of the twenty-three acts "about which the government currently intends to offer proof at trial" against Ronald J. Trucchio occurred in Florida (plus three or more additional, depending on how one counts).  (Doc. 458 in that case)  The two acts involving Kevin McMahon occurred in New York and New Jersey, respectively.  (Doc. 325 in that case)  Apparently defendant Catalano neither sought nor received a bill of particulars.  In any event, the present case differs from Trucchio and the bills of particulars tend to confirm the propriety of both Trucchio's venue in the Middle District of Florida and this case's transfer to New York.

EXHIBIT-B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

vs.                                              2:12-cr-48-FtM-29SPC

PEGGY S. ALBEDHADY-SANCHEZ
_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion To Transfer Proceedings to District of New Jersey (Doc. #32) filed on November 9, 2012.  The government filed a Response (Doc. #36) and Amended Response (Doc. #37) in opposition, to which defendant filed a Reply (Doc. #39.)

Defendant is charged with interference with a flight crew in violation of 49 U.S.C. § 46504 during an airplane flight from Newark, New Jersey to Fort Myers, Florida.  The Indictment (Doc. #1) was filed in the Fort Myers Division of the Middle District of Florida, and defendant was arraigned on April 16, 2012.  "The right of criminal defendants to be tried in the state and judicial district in which the alleged crime occurred is guaranteed by article III of and the sixth amendment to the United States Constitution as well as Rule 18 of the Federal Rules of Criminal Procedure."  United States v. Bagnell, 679 F.2d 826, 830 (11th Cir. 1982), citing United States v. Davis, 666 F.2d 195, 198-99 (5th Cir. 1982).  It is clear that venue is proper in the Fort Myers Division of the Middle District of Florida, and defendant does not

assert otherwise. (Doc. #39, p. 1.) Defendant, however, seeks a transfer of venue to the Newark Division of the District of New Jersey, pursuant to Fed. R. Cr. Pro. 21(b).

Rule 21(b) provides that "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Cr. Pro. 21(b). Where venue is proper, the decision to grant a Rule 21(b) transfer is within the sound discretion of the Court. United States v. Kopituk, 690 F.2d 1289, 1322-23 (11th Cir. 1982). A change of venue under Rule 21(b) considers a number of factors, the significance of which will vary depending on the facts of a given case, namely (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. Platt v. Minn. Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964). Rule 21(b) also requires consideration of the interests of justice. United States v. Walker, 665 F.3d 212, 224 (1st Cir. 2011). The relevant factors are considered as follows:

(1) Location of the defendant: Defendant is a life-long resident of Union City, New Jersey, and the closest federal courthouse to her residence is in Newark, New Jersey. Venue in Newark would clearly be more convenient for defendant, and travel would be difficult for reasons atypical of most defendants, as set forth in the Affidavit of defendant's son Alex Velazquez. (Doc. #39-1.) It is also clear, however, that a criminal defendant does not have a constitutional right to be tried in the district encompassing her residence. Bagnell, 679 F.2d at 832; see also Kopituk, 690 F.2d at 1322-23.

(2) Location of witnesses: It appears that no witness to the offense resides in New Jersey, that some reside in Florida, and that most witness will have to travel to court regardless of venue. Witnesses regarding defendant's mental and physical health are located in New Jersey.

(3) Location of events likely to be in issue: New Jersey has no connection with the offense, and Florida's only connection is because it was the final destination of the flight upon which defendant's alleged misconduct occurred, and some of the conduct may have occurred within airspace above the Middle District of Florida.

(4) Location of documents and records: Documents and records relating to competency will originate in New Jersey, and records relating to the offense will originate in Florida and elsewhere.

(5) Disruption of the defendant's business:  Defendant has no business which will be disrupted.

(6) Expense to the parties:  Since defendant is indigent, she will have no greater expense in one venue than the other, other than travel expenses.  Defendant's concerns about the expense and inconvenience of being tried away from home are ordinarily of little relevance to a motion for a change of venue.  Bagnell, 679 F.2d at 832.

(7) Location of counsel:  Defendant is represented by the Federal Public Defender's Office, which also has an office in Newark.

(8) Relative accessibility of place of trial:  Newark is probably more accessible for witnesses by air than is Fort Myers, but not to a significant degree.

(9) Docket conditions in each district:  Both districts are busy, but undoubtedly will welcome the opportunity to hear another case.

(10)  Any other specific element which might affect the transfer:  Defendant has competency issues, medical and mental health issues, and logistical difficulty traveling which favor New Jersey.

After considering all of the factors in this case, the Court concludes that defendant's motion to transfer venue should be granted.  Enough of the factors favor New Jersey in a manner not

-4-

typical of the usual case, or are essentially neutral given the nature of the offense, that the Court is satisfied that the matter is best handled in New Jersey.

Accordingly, it is now

**ORDERED**:

1. Defendant's Motion To Transfer Proceedings to District of New Jersey (Doc. #32) is **GRANTED**. The Clerk of the Court shall transfer the case to the Newark Division of the District of New Jersey and provide a copy of the court documents to that district.

2. The Clerk shall terminate all previously scheduled deadlines and pending motions and close the Fort Myers file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___3rd___ day of December, 2012.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:

Magistrate Judge

Counsel of Record

-5-