UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE №: 3:21-cr22(S2)-MMH-MCR

UNITED STATES OF AMERICA,

v.

MATTHEW RAYMOND HOOVER,
_____/

**SUPPLEMENT TO MOTION TO DISMISS & TO DECLARE UNCONSTITUTIONAL THE NATIONAL FIREARMS ACT OF 1934**

Defendant Matthew Raymond Hoover ("Defendant"), in light of the Supreme Court's recent decision in *New York State Rifle & Pistol Assn., et al. v. Bruen*, 597 U.S. __ (slip op., 2022), respectfully supplements his Motion to Dismiss Counts 1 – 7 of the Indictment (ECF 57) against him. This Motion is based on the aforementioned Motion and its attachments; the Supreme Court's recent decision; and the text of the Constitution, as informed by the history and tradition of the United States. In support of this Motion, Defendant hereby states:

I.  **THE SUPREME COURT'S LANDMARK *BRUEN* DECISION FUNDAMENTALLY CHANGES THE INSTANT MATTER**

   a. **THE *BRUEN* DECISION AND ITS LEGAL STANDARD**

*Bruen* held as unconstitutional New York's 1911 Sullivan Act, requiring a license and demonstration of "proper cause" for the possession and carrying of a concealable firearm. *Bruen*, 597 U.S. __ at *2. What makes *Bruen*

1

particularly germane to the instant matter is the announcement of a clear legal standard for the evaluation of acts regulating the peaceable keeping and bearing of arms. *Bruen* identified the Court of Appeals "coalesce[ing] around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-ends scrutiny", the Court correctly identified this as "one step too many[.]" *Id.* \*9-10. Those previous decisions at the various Courts of Appeal manifested deference to the Government in a manner unlike any other fundamental right, and the inexplicable consideration of regulations clearly contemplating the keeping and bearing of arms as beyond the scope of the Second Amendment. *Id.* \*14 (reading case law to "necessarily reject[]" intermediate scrutiny in the Second Amendment context, further positing that a "constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all.") (quoting *Heller v. District of Colombia*, 554 U.S. 570 at 634 (2008)).

Finally, though, we have a standard which clearly articulates the burdens in a case involving restrictions on the right to keep and bear arms. It is, as artfully penned by the Court, "when the Second Amendment's plain text covers an individual's conduct, the Constitution **presumptively protects** that conduct. The Government **must *then*** justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation. **Only then** may a court conclude that the individual's

conduct falls outside the Second Amendment's 'unqualified command.'" (cleaned up) (emphasis added).

To summarize: any law, regulation, or government policy affecting the "right of the people to keep and bear arms," U.S. CONST., Amend. II, can **only** be constitutional if the Government demonstrates analogous restrictions deeply rooted in American history evinced by historical materials contemporaneous with the adoption of the Bill of Rights in 1791. *Bruen*, 597 U.S. at *29.

### b. THE STATUTES HERE AT ISSUE AFFECT CONDUCT COVERED BY THE SECOND AMENDMENT'S "UNQUALIFIED COMMAND"

Defendant is charged under 18 U.S.C. 5861 and 5871, as well as conspiracy to commit those offenses. The charged statutes deal with the taxation and transfer of machineguns, and other weapons. The Government alleges the tchotchkes at issue—the "auto key cards"—to be machineguns. What's more, actions subsequent to the passage of the charged firearm statutes render it impossible to comply with the taxing provisions, thus leaving the statutes a bizarre, vestigial area of law passed pursuant to the taxing power which—in dubious constitutionality—is used by the Government as an independent effective prohibition on the sale, transfer, or possession of any controlled devices not registered by 1986.

3

The Government may attempt to argue that machineguns are beyond the scope of the Second Amendment by attempting to characterize them as "dangerous and unusual," as it has in other cases, but this is not the test. The court's invocation of "dangerous and unusual" weapons in *Heller* and subsequently *Bruen* was for the purpose of discussion of what *might be* a constitutionally acceptable law, rather than the endorsement of any particular extant policy. *Bruen*, 597 U.S. at *12 (Clarifying that the Court was not undertaking "an exhaustive historical analysis…of the full scope of the Second Amendment") (quoting *Heller*, 554 U.S. at 627). Rather, the only way a court may conclude Defendant's conduct falls outside the scope of the Second Amendment's unqualified command remains clear: the Government must prove the particular regime in question is consistent with the history and tradition of the United States. *Id* at *15. Furthermore, the question of whether a weapon is "in common use at the time," necessarily pins the analysis to the time *before the prohibition*. To consider otherwise would incentivize the Government to legislate wantonly and aggressively, seizing arms, then later evade constitutional scrutiny by suggesting that the arms cannot be in common use, because the Government prohibited them. Such circular logic would be inconsistent with any fundamental rights jurisprudence. Thus, the Government has the burden to prove that the regime in question is consistent

4

with the history and tradition of firearms regulation in this country around the founding era.

### c. THE LAWS HERE AT ISSUE ARE FACIALLY UNCONSTITUTIONAL UNDER *BRUEN*

It is no great secret that no federal regulation of firearms existed before the enactment of the laws here at issue. In addition to the previously raised Constitutional questions, nothing in the applicable history and tradition of the United States supports the categorical ban of machineguns, much less the item here at issue—a tchotchke the Government alleges might possibly, with transformative labor, one day become a machinegun. Further, the ATF's decision that the tchotchke at issue—a stainless steel card with some lines lightly thereupon engraved—was a machinegun came completely by administrative fiat, absent even notice and comment. Our Nation's history and tradition does not, and cannot, support a finding that an alleged drawing of a part is that part merely because an unelected bureaucrat unilaterally willed it to be. To hold otherwise would be to grant the Bureau more power than Congress could have ever granted it, and make innumerable items potentially illegal. *See Bruen*, 597 U.S. at *19-20 ("Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearms regulation requires a determination of whether the two regulations are "relatively similar." . . . "Even though the Second Amendment's definition of 'arms' is fixed according to its historical

5

understanding, that general definition covers modern instruments that facilitate armed self-defense.") (cleaned up) (internal citations removed).

As *Bruen* explained, historical analogues to a regulation can be helpful, but Defendant here proffers more modern evidence that a categorical ban on machineguns, as the Government here seeks to enforce against a bespoke trinket, would be unconstitutional. We present the testimony of then-Attorney General Cummings at a 1934 hearing on the National Firearms Act.

> MR. LEWIS: I hope the courts will find no doubt on a subject like this, General; but I was curious to know how we escaped that provision in the Constitution.
>
> ATTORNEY GENERAL CUMMINGS: Oh, we do not attempt to escape it. We are dealing with another power, namely, the power of taxation, and of regulation under the interstate commerce clause. <u>You see, if we made a statute absolutely forbidding any human being to have a machine gun, you might say there is some constitutional question involved.</u> *But* when you say "We will tax the machine gun" and when you say that "the absence of a license showing payment of the tax has been made indicates that a crime has been perpetrated", you are easily within the law.
>
> MR. LEWIS: In other words, it does not amount to prohibition, but allows of regulation.

> ATTORNEY GENERAL CUMMINGS: <u>That is the idea</u>. We have studied that very carefully.

National Firearms Act: Hearings before the Committee on Ways and Means, House of Representatives on H.R. 9066, 73 Cong. 2d Sess. (1934). Defendant posits that the then-Attorney General, advancing the very law whose constitutionality was even then dubious, admitting that a categorical ban on machineguns would present constitutional problems, is instructive that there is no historical basis for the current regime—essentially reflecting what Mr. Cummings describes as problematic—consistent with the Second Amendment.

### d. THE LAWS HERE AT ISSUE ARE UNCONSTITUTIONAL AS APPLIED TO DEFENDANT UNDER *BRUEN*

In the alternative to that advanced above, the application of §5861 and §5871 is unconstitutional as it applies to Defendant. Even if the Government could somehow prove to the Court that the wholesale felonization of the peaceable possession of an entire category of arms to be consistent, this case presents something far more peculiar: an administrative agency's unilateral declaration that an alleged drawing of a component—a component the possession of which subjects the holder to lengthy prison terms—is the component itself. There can be no historical justification, consistent with the "unqualified command" of the Second Amendment, plus the clear metes of the First, that could justify such a prosecution. Should any exist, the Government bears the burden to prove it. *Bruen* at *15 ("Only then may a court conclude

7

that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"); *id.* at *20 ("whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are 'central' considerations when engaging in an analogical inquiry.) (cleaned up) (quoting *McDonald v. Chicago*, 561 U.S. 742 at 767 (2010)).

## II. CONCLUSION

The command of the Second Amendment is clear. Under *Bruen*, consistent with the text of the Constitution and the history and tradition of our Great Nation, it stands to reason that any regulation affecting the peaceable possession of arms—or in this case, something from which the Government alleges an arm may one day be made from—warrants meaningful review. The underlying laws have evaded meaningful scrutiny despite being unprecedented in their severity, and the application thereof to Defendant Hoover—a patriotic American and father who stands accused of talking about a piece of metal with lines drawn on it and faces the complete destruction of his life and livelihood therefrom—demonstrates the severity with which this matter warrants meaningful constitutional review. The standard announced in *Bruen* gives this Court the tools it needs to do so.

**WHEREFORE** Defendant Matthew Raymond Hoover respectfully moves this Honorable Court to dismiss the Indictment (ECF 57) against him in its entity with prejudice, to declare the National Firearms Act facially unconstitutional, or, in the alternative, unconstitutional as applied to Defendant, and for any further relief that this Court deems just and proper.

DATED: July 1, 2022

/s/Zachary Zermay
Zachary Z. Zermay, Esq.
1762 Windward Way
Sanibel, FL 33957
Email: zach@zermaylaw.com
Telephone: 239-699-3107
*Lead Counsel for Defendant*

/s/Matthew Larosiere
Matthew Larosiere, Esq.
6964 Houlton Circle
Lake Worth, FL 33467
Email: larosieremm@gmail.com
Telephone: 561-452-7575
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2022 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/Zachary Zermay
Zachary Z. Zermay, Esq.