# EXHIBIT C

## ATF O 3310.4B -- FIREARMS ENFORCEMENT PROGRAM

ATF O 3310.4B

2/8/89

Includes chgs. 1-17

FIREARMS ENFORCEMENT PROGRAM

FOREWORD

To:   All Law Enforcement Personnel

1.   PURPOSE.

This order provides guidelines for the implementation of the Bureau's Firearms Enforcement Program under the Gun Control Act of 1968 (GCA), as amended, and the National Firearms Act (NFA), as amended

2.   CANCELLATION.

ATF O 3310.4A, Firearms Enforcement Program, dated March 25, 1981; ATF O 7520.1, Procedures for Tracing Firearms, dated August 2, 1976; ATF O 3310.5B, Guidelines Regarding Federal Firearms Licensee Investigations and Investigations at Gun Shows and Flea Markets, dated July 18, 1985; ATF O 7500.1, Firearms Technology Branch Procedures, dated May 16, 1977; ATF O 7540.2, Classification of Belgian FN Light Automatic Carbine (CAL), Caliber 5.56mm (.223), dated June 24, 1982; and ATF O 7540.1A, Classification of Belgian FN Light Semiautomatic Rifle (FAL), Caliber 7.62mm, dated October 29, 1979, are canceled.

Stephen E. Higgins

Director



1. <u>POLICY</u>.

   a.    It is the policy of the Bureau of Alcohol, Tobacco and Firearms to enforce the Gun Control Act of 1968 (GCA), as amended, and to regulate the firearms industry in a professional manner consistent with the intent of the Congress as stated in the preamble of the act. This policy is equally applicable to compliance inspectors carrying out the regulatory and compliance aspects of the legislation and to the special agents enforcing the criminal statutes and supporting other Federal, State, and local enforcement agencies.

   b.    The congressional intent in the enforcement of this legislation is clearly presented in the preamble to the act, which states, "Congress hereby declares that the purpose of this title is to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, transporting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the provisions of this title."

   c.    In order to ensure effective and equitable enforcement of firearms laws and regulations of the firearms industry, ATF has developed specific policy in the following areas:

      (1).    Regulation through licensing, inspection, and education.

      (2).    Enforcement of Federal firearms laws

      (3).    Cooperation with and support to Federal, State, and local agencies (including gun tracing).

      (4).    Firearms seizure policy.

2. <u>REGULATION POLICY</u>.

   a.    The purpose of regulation is to ensure that applicants meet all requirements for obtaining a license and that licensees are aware of their rights and responsibilities for conducting their businesses which include maintaining the necessary records for firearms tracing and other law



enforcement purposes in accordance with the GCA of 1968, as amended.

b.    It is therefore the ATF firearms regulation policy that:

   (1).   Available resources are used to ensure that applicants meet all requirements of the act.

   (2).   Licenses to all qualified applicants are issued promptly and within a 45-day period.

   (3).   Applicants and licensees are advised of their rights and responsibilities as firearms licensees.

   (4).   A program of licensee education by inspection, seminars, distribution of printed material, and periodic correspondence identifying potential problem areas is administered to reinforce the concept that compliance with the act is an integral part of the nationwide crime control effort.

   (5).   Any evidence of criminal involvement by applicants or licensees is referred for criminal investigation.

c.    It is not the policy of ATF to artificially control or otherwise limit the number of complying dealers as that is not the policy reflected in existing statutes.

3.    ENFORCEMENT POLICY.

a.    ATF authority for firearms enforcement is derived from the Federal firearms statutes. The purpose of the legislation is to prevent crime and violence, to halt illegal international and interstate trafficking of firearms, and to keep firearms from the hands of criminals and prohibited persons.

b.    It is therefore the ATF firearms enforcement policy to:

   (1).   Enforce the applicable Federal firearms statutes in a professional manner consistent with the intent of the Congress as expressed in the preamble to the GCA as amended.

   (2).   Emphasize those violations that have the greatest potential to impact on crime and to disrupt illegal firearms activity, which include the following:

      (a).   Armed drug traffickers/organizations and violent criminals identified as being actively involved in violent criminal activities.



    (b).   Criminal firearms traffickers who are significant firearms sources to the criminal element.

    (c).   International Trafficking in Arms (ITAR), which includes the illicit movement of firearms into and out of the United States.

    (d).   Illegal acquisition of firearms by prohibited persons through the knowing falsification of firearms records or straw purchases.

  (3).   Cooperate with other Federal, State, and local enforcement agencies in firearms enforcement, provided the request for assistance is consistent with the cooperation policy outlined below.

c.   Professional and effective enforcement of the firearms laws requires the application of resources to those functions that are of primary importance and have the potential for providing maximum results. The priorities outlined above are consistent with this philosophy.

## 4.   FEDERAL, STATE, AND LOCAL COOPERATION POLICY.

a.   Effective firearms enforcement and regulation cannot be accomplished by ATF alone. In fact, the primary responsibility for the reduction of violent street crime, the illegal intrastate trafficking in firearms, and the enforcement of local gun control statutes is with State and local authorities. At the Federal level, responsibility for firearms enforcement is shared among agencies such as the FBI, Customs, and the Department of State. Good management, common sense, and good law enforcement practices demand the cooperation of all law enforcement organizations at every level to curb illegal trafficking in firearms and to minimize the availability of firearms to the criminal element.

b.   It is therefore the ATF policy on cooperation with other agencies to:

  (1).   Provide technical support to all jurisdictions on a timely basis with particular emphasis on gun tracing.

  (2).   Utilize the unique ATF authority in firearms enforcement to assist other Federal, State, and local authorities, including the U.S. attorney, in their fight against violent crime and organized crime.

  (3).   Cooperate with other Federal agencies and other countries in the fight to suppress illegal international and interstate trafficking of firearms to the extent ATF has jurisdictional authority.

  (4)   The cooperation policy outlined above will ensure the proper



coordination and best application of resources at every level of Government. Services and capabilities of ATF will be available to other jurisdictions in their efforts to accomplish their assigned responsibilities where appropriate and when consistent with the overall ATF policy. If requests for ATF cooperation and assistance are in conflict with ATF policy or priorities and the issue cannot be resolved at the local level, the question should be referred to Headquarters.

5.   FIREARMS SEIZURE POLICY.

a.     In the execution of its firearms enforcement responsibilities, ATF has occasion to seize firearms as evidence and for forfeiture. Title 18 U.S.C. chapter 44 section 924(d), as amended, establishes certain conditions and elements that must be satisfied when ammunition or firearms are seized for forfeiture. These essentials vary according to the offense and include firearms involved, used, or intended to be used in violations that are committed knowingly and/or willfully. (Refer to ATF O 3400.1, Property Taken Into Bureau Custody, for information on seized property.)

b.     It is therefore the ATF firearms seizure policy to:

(1).     Handle and maintain all seized firearms in such a manner as to ensure the preservation of their original condition prior to seizure.

(2).     Seize only those firearms particularly identified as involved or used in criminal offenses. The seizure of firearms based upon an intent that they may be used in an offense shall be made only where the offense is among those specified by section 924(d)(3) and where such intent is demonstrated by clear and convincing evidence. The wholesale seizure of all of the accused defendant's firearms is discouraged, and only those firearms or quantity of ammunition particularly named and individually identified as involved in or used in a violation may be seized.

(3).     Initiate proceedings for judicial or administrative forfeiture of firearms and ammunition within 120 days of such seizure, in compliance with 18 U.S.C. section 924(d).

(4).     Adopt seizures from requesting outside agencies pursuant to 18 U.S.C. section 924(d). The seizure shall not be adopted if more than 75 days have elapsed from when the agency took the firearms into custody.

c.     Further, in the execution of our enforcement responsibilities with regard to



26 U.S.C. chapter 53 section 5842, ATF may seize any firearm involved in violation of the provisions of the chapter.        However, in the absence of criminal intent, other available alternatives should be followed:

(1).    Voluntary abandonment of the firearms to ATF for disposition.

(2).    Allow for the modification of the firearm to remove it from the NFA classification when such modification is done with prior approval of ATF but at the individual's expense. Machineguns are excluded from this provision.

(3).    Donation of the firearm to a Federal, State, or local government agency, museum, or historical society for display purposes, provided the museum or historical society is an instrument of a Federal, State, or local government agency involved in criminal investigations. This is also done at the expense of the organization.

(4).    Refusal to comply with one of the options listed above results in the seizure of the firearm by ATF.

6 - 10  RESERVED

<span style="background:black;color:black">████████████████████████████████████████</span>

11.    <u>INTRODUCTION</u>.

   a.    <u>General</u>.

      (1).    ATF is mandated in the preamble  to the GCA, as amended, to support State and local law enforcement in their fight against crime and violence.

      (2).    According to all sources, firearms continue to be the dominant weapon used in the commission of violent crimes throughout the United States. Firearms are being utilized throughout the United States to commit individual acts of violence, to further criminal enterprises, and as a commodity in organized crime and narcotics related activities. Outside the United States, American firearms are being utilized in acts of international terrorism and major narcotics



trafficking. This is certainly a growing concern. ATF is capable of identifying various types of firearms trafficking operations and impacting on these operations by continuing to aggressively enforce the GCA, as amended.

(3). Historically, ATF has earned a leadership role in the day-to-day fight against violent street crime, working hand-in-hand with State and local law enforcement. This leadership role continues to be demonstrated through such activities as firearms tracing, firearms technology, laboratory examinations, specialized training, and membership on task force and strike force units. ATF alone cannot investigate all firearms violations. The Bureau, however, dramatically impacts on the criminal misuse of firearms by targeting for prosecution violent and dangerous criminals or organizations, armed drug traffickers, interstate and interjurisdictional traffickers of firearms, and international traffickers of firearms. Of particular interest to ATF is the current crime problem caused by the recent proliferation of converted machineguns and silencers.

b. <u>Purpose and Objectives</u>.

(1). The purpose of the Firearms Enforcement Program is to implement both the GCA and the NFA.

(2). The long-range objective of the ATF Firearms Enforcement Program is to reduce the criminal misuse of firearms and to assist State and local law enforcement agencies in their efforts to suppress crime and violence. Through appropriate application of ATF resources, maximum law enforcement effort is focused on those crimes, criminals, or criminal organizations that pose the greatest threat to American society.

c. <u>Achieving Program Objectives</u>.

(1). The major strategy that ATF utilizes to implement the long-range objectives of the ATF Firearms Enforcement Program is the Crime Impact Program (CIP). Through CIP, specific firearms crime problems are assessed and evaluated. The available ATF resources are then focused on the identified firearms crime problems in such a manner as to significantly impact on crime and violence in specific localities.

(2). Law enforcement activities under CIP are reflected in five major



firearms subprograms:

(a).   <u>Dangerous and Special Offenders or Organizations</u>.

1   Through Project Achilles, the subprogram directs applicable firearms statutes against those persons and groups identified as being actively involved in drug trafficking and violent criminal activities. The greatest emphasis is placed on armed and major drug dealers and organizations, terrorists, members of violent extremist groups, violent criminal gangs, and outlaw motorcycle gangs that illegally use or possess firearms. Convictions under 18 U.S.C. sections 924(c) and (e) carry mandatory and enhanced penalties, respectively.

2   Through Project Achilles, this subprogram also concentrates law enforcement efforts on the Organized Crime Drug Enforcement Task Force (OCDETF) targets, DEA Class I violators, major and armed narcotics traffickers, organized crime members and associates, outlaw motorcycle organizations, terrorist/hate groups, felons, recidivists, and violent criminals.

3   Guidelines for the conduct of 18 U.S.C. section 924(c) investigations and reporting procedures for both 18 U.S.C. section 924(c) and (e) are detailed in Chapter D.

(b).   <u>Criminal Firearms Traffickers</u>. This subprogram coordinates the identification and pursuit of significant firearms sources for the criminal element. This subprogram also concentrates law enforcement efforts on interstate thefts, major firearms traffickers, stolen firearms vendors, burglary/fencing operations, and illicit machinegun manufacturers/converters or traffickers.

(c).   <u>International Traffic in Arms (ITAR)</u>.This subprogram oversees the illegal movement of firearms in international traffic. Since ATF has the responsibility in this country for the enforcement of the Federal firearms laws, the Bureau maintains an aggressive commitment and effort aimed at neutralizing the illicit movement of firearms into and out of



the United States. Special emphasis is placed on the international terrorists' and narcotics traffickers' illegal firearms transactions.

(d).   Technical Assistance.

1   This subprogram tests and evaluates firearms, ammunition, and implements of war for proper classification under Federal law; gives technical advice to State, local, and other Federal law enforcement agencies on the technical aspects of firearms; traces firearms to assist Federal, State, and local law enforcement authorities; and provides training on firearms-related investigations to all facets of law enforcement.

2   The Firearms Technology Branch, the National Firearms Tracing Center, and various types of firearms training schools comprise the subprogram of Technical Assistance.

(e).   Restoration of Firearms and Explosives Privileges.

1   This final subprogram provides for the restoration of firearms privileges under certain circumstances. The GCA provides that a prohibited person can make application to the Secretary of the Treasury for relief from the disabilities imposed by Federal laws with respect to the receipt, transportation, shipment, or possession of firearms.

2   A field investigation into the merits of each application is made and, based on the results of the investigation, the Director either grants or disapproves the request for restoration of firearms privileges.

d.   Firearms Programs Coordination and Assessment.  In an effort to further coordinate the firearms enforcement mission and to ensure that Headquarters and field CIP guidelines are compatible, Headquarters provides input to district offices on case report reviews, operational guidelines, and CIP assessments. Because of multidistrict coordination, Headquarters oversight adds uniformity, as well as a team approach, to an otherwise localized CIP process. This input into district office CIP assessments by Headquarters on specific firearms enforcement

programs, such as Top Traffickers, Armed Narcotics Traffickers, Outlaw Motorcycle Gangs, and Terrorist/Hate Groups, assists in providing overall coordination to effectively interdict the flow of firearms to the criminal element. In addition to the conventional law enforcement approaches, ATF continues its public affairs campaign to warn the law enforcement community, as well as the general public, of potential firearms safety and legal problems.

e.    Interagency Cooperation. Recognizing the need for cooperation among various agencies, the Bureau's Firearms Enforcement Program maintains open lines of communication throughout various agencies and organizations that have a vital role in the suppression of crime. Participation on various Federal, State, and local committees and task forces has proven to be an excellent means for ATF to demonstrate this cooperation and provide assistance to agencies having similar interests and goals. ATF also maintains contacts with foreign law enforcement agencies, provides firearms tracing and firearms technology, and exchanges information involving international traffickers of arms.

f.    Public Advisory Practice and Determination.

   (1).    State and local law enforcement agencies, the general public, and representatives of the firearms industry are to be encouraged to seek advice and guidance at the local level. Questions relating to the Firearms Enforcement Program are to be resolved, if possible, at the district level on the basis of the applicable laws and regulations and the established policies and procedures of the Bureau.

   (2).    If in some material aspect any problem presented in a given criminal case is unique or the proper application of laws, regulations, policies, or procedures is doubtful, the matter should be referred through administrative channels to the Associate Director (Law Enforcement) (ADLE) for advice and guidance. Where such a referral is made, complete information to formulate a decision is required.

   (3).    A decision by the Director that reflects the position of the Bureau, with respect to a given situation that establishes the basis for administrative handling of similar matters, is usually made the subject of an ATF ruling and is duly published. Published rulings, while in force, must be considered as precedents for determining proper administrative action in all similar situations.

(10)

(4).   27 C.F.R. section 178.26 provides that the determination of curios and relies under the provisions of the GCA, as Amended, are to be made by ATF. This authority has been delegated to the Associate Director (Compliance Operations). Destructive device determinations are also made by the Associate Director (Compliance Operations) (27 C.F.R. sections 178.27 and 179.24).

(5).   It is incumbent upon special agents to provide substantial evidence that the "combination of parts" (26 U.S.C. section 5845(f)(3)) is designed and/or intended for use as a destructive device. No criminal prosecution is recommended unless these elements of the offense are clearly established by the evidence.

(6).   Experts are available at Headquarters for the identification and classification of firearms. These experts are available for opinions and consultations. Special agents can make use of these experts during criminal investigations if a satisfactory determination cannot be made at a local or district office level. Experts giving testimony on such in criminal investigations referred for prosecution MUST possess and be able to furnish the necessary credentials. All official ATF classifications are made at Headquarters.

12.   LEGAL AUTHORITY.

a.   Laws and Regulations. The Firearms Enforcement Program is based upon the following laws and regulations:

(1)   18 U.S.C. chapter 44, the Gun Control Act of 1968, as amended; 27 C.F.R. part 178, Commerce in Firearms and Ammunition.

(2).   26 U.S.C. chapter 53, National Firearms Act, as amended; 27 C.F.R. part 179, Machineguns, Destructive Devices, and Certain Other Firearms.

(3).   49 U.S.C. chapter 11 and 27 C.F.R. part 72, the Act of August 9, 1939.

(4).   27 C.F.R. part 47, Importation of Firearms and Implements of War.

b.   Miscellaneous Laws. The following laws are applicable to the Firearms Enforcement Program:

(1).   18 U.S.C. section 1001, False or Fraudulent Statements. Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies or conceals a



material fact; makes false, fictitious, or fraudulent statements or representation; or makes or uses a false writing or document shall be fined not more than $10,000, imprisoned not more than 5 years, or both.

(2). <u>26 U.S.C. section 7207, Fraudulent Documents</u>. Any person who willfully delivers or discloses to the Secretary any list, return, account, statement, or other document known to him to be fraudulent or to be false as to any material matter shall be fined not more than $10,000 ($50,000 in the case of a corporation), imprisoned not more than 1 year, or both.

(3). <u>26 U.S.C. section 7206(2). Abetting Fraudulent or False Documents</u>. Any person who willfully aids, assists, procures, counsels, or advises the preparation or presentation under or in connection with any matter arising under the internal revenue laws, a return, affidavit, claim, or other document under this title that is fraudulent or false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document, shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), imprisoned not more than 3 years, or both, together with the costs of prosecution.

(4). <u>18 U.S.C. section 371. Conspiracy</u>. If two or more persons who conspire to commit any offense against the United States defraud the United States or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000, imprisoned not more than 5 years, or both.

13. <u>PROSECUTORIAL CRITERIA</u>.

a. <u>Unlicensed Dealer</u>. It is the Bureau's intent to encourage persons engaged in a firearms business to obtain a license and to comply with the laws and regulations promulgated under the GCA, as amended. Those individuals who may be engaged in the sale of firearms without a license but who lack obvious criminal intent are to be encouraged to apply for and obtain a firearms license wherever possible. Those individuals who can be shown to have a criminal intent to violate the law, who demonstrate a flagrant disregard for the law, and who represent a substantial source of firearms to the criminal element are to be



investigated pursuant to the normal investigative procedures of this Bureau. This decision rests with the individual special agent but is subject to review by his/her supervisor and the special agent in charge (SAC). All investigative reports and any criminal case reports are to document the criminal intent of the unlicensed firearms dealer to violate the law. (Special agents should refer to paragraph 168 of this order for further instructions.)

b.   <u>Firearms Seizure Guidelines</u>. These guidelines pertain to licensee and nonlicensee violations.

   (1).   <u>Policy</u>. The Bureau's discretionary seizure policy is directed at the following areas of concern:

      (a).   <u>Licensed Firearms Dealers</u>. Only those firearms needed as evidence that clearly can be shown to be involved in or used in any knowing or willful violation of the GCA; those firearms clearly can be shown to be subject to forfeiture as stated in Chapter A.5.b., any contraband or stolen firearms, or any firearms carried, used, or intended to be used to commit violent or drug trafficking crimes are to be seized. Compliance Operations shall be notified of the circumstances involved in all investigations of licensed dealers.

      (b).   <u>Unlicensed Firearms Dealer</u>. Only those firearms specifically offered for sale by the unlicensed dealers that clearly can be shown to be involved in or used in any knowing or willful violation of the GCA, any contraband or stolen firearms, or firearms carried, used or intended to be used to commit violent or drug trafficking crimes are to be seized.

      (c).   <u>Prohibited Persons</u>. All firearms found to be in the possession or control of a prohibited person under the act are subject to seizure. However, special agents are to exercise discretion in determining the need to retain or seize for forfeiture. Lack of criminal intent, the nature of a previous conviction, and the length of time since the last conviction may be considerations. If determined appropriate, individuals will be allowed to divest themselves of firearms while applying for relief from disabilities.

   (2).   <u>Other Evidence</u>. Nothing contained in this order precludes special agents from taking into custody or documenting other evidence



relative to violations of the law, e.g., ATF F 4473 (5300-9), Firearms Transaction Record, business receipts, firearms disposition records, and contraband.

(3).  <u>Controls</u>. Exceptions of the above seizure policy must have the prior approval of the Chief, Firearms Enforcement Division.

(4).  <u>Firearms Disposition Guidelines</u>. Firearms taken into Bureau custody from individuals or dealers who are acquitted or where charges are dismissed other than upon motion of the Government are not subject to forfeiture unless there are grounds for forfeiture other than those that are the basis of the criminal charge. These firearms must be returned to the owner/possessor of his/her delegate if the owner/possessor is a prohibited person. Under the GCA, as amended, ATF must initiate forfeiture proceedings within 120 days of the date the firearms are taken into Bureau custody. However, the signing of the declaration of forfeiture, with respect to administratively advertised firearms, will not be accomplished until final disposition of the criminal case. Authority for the Bureau to maintain custody in those circumstances is vested in the AD (Enforcement), and approval must be obtained from his/her delegate, the Chief, Firearms Enforcement Division. (For detailed procedures, see ATF O 3400.1, Property Taken Into Bureau Custody.)

14.  <u>ACCEPTANCE OF REFERRED/ADOPTED CASES (FEDERAL-STATE ASSISTANCE CASES) AND THE VIOLENT CRIME COORDINATOR.</u>

*a.  <u>Definitions</u>. For purposes of this chapter the following definitions are applicable.

(1).  <u>Adopted Case</u>. A case that is brought to ATF by another law enforcement agency for purposes of having an ATF special agent pursue firearms-related charges in Federal court AND where both of the following two conditions apply.

(a).  The defendant has already been arrested for charges related to the case that is being recommended for adoption.

(b).  The processing of the adopted case only involves minimal preparation such as testfiring firearms held as evidence, interviewing the defendant, proving interstate nexus on the firearm, and reviewing the recommending law enforcement



agency's reports.

NOTE: Except as delineated in 14b (below), only violent crime coordinators (VCC) are to process adopted cases.

\*(2)   Referred Case. A case that is brought to ATF by another law enforcement agency for purposes of having an ATF special agent pursue firearms-related charges in Federal court AND where the processing of that case involves additional work, above and beyond the routine work required in an adopted case, to be prepared for Federal prosecution (e.g., the development of additional defendants, the collection of additional evidence for laboratory submission, interviews of multiple witnesses/victims/defendants, crime scene reconstruction, additional surveillance or undercover, service of search warrants, use of an investigative grand jury, analysis of telephone tolls, etc.).

NOTE: Any special agent may process a referred case as referred cases are often an effective method for special agents to establish working relationships with other law enforcement personnel. \*

b.   Designation of the Violent Crime Coordinator.

(1).   In instances where a State, local, or other Federal agency arrests an armed career criminal, armed drug trafficker, or individual who uses a firearm during a Federal crime of violence and requests ATF assistance to have the case prosecuted in Federal court, that case should be processed by the designated VCC.

\*(2)   The number and location of designated VCC in a field division shall be determined by the SAC in consultation with the Deputy Associate Director, Operations. The designation of VCCs should be based on the investigative and prosecutorial priorities and demands within the field division's judicial districts and balanced with efforts to generate investigations in support of ATF's strategic goals.

(3).   The SAC should ensure that only those special agents designated to accept and prepare adopted cases are in fact performing this duty. Exceptions to this follow.

(a).   In field offices or groups consisting of three of less special agents, the SAC may choose not to designate a VCC and instead allow all special agents to accept and prepare



adopted cases as needed.

(b). The SAC may allow non-VCC designated special agents to process adopted cases in instances where substantial followup work and additional         investigation are required, e.g., the adoption can be developed to include additional defendants involved in violations of Federal law, processing the adoption(s) is a planned precursor to a much larger investigation into a criminal organization, processing of the adoption will assist in the success of another ongoing investigation, or processing the adoption will assist in the development of additional original cases.       *

c.   <u>Violent Crime Coordinator Duties.</u>

*(1)   Establish threshold prosecution levels with the U.S. attorney's office to ensure only those adoption cases which the U.S. attorney's office will  prosecute federally are pursued by the VCC in order to best utilize limited resources. This will reduce time spent on preparing cases that will not be prosecuted. *

*(2)   Evaluate and intake all firearms-related cases recommended for prosecution by other local, State, or Federal agencies and determine which judicial system is best suited for that case based on the threshold levels of prosecution previously determined. This will require establishing good rapport and working relationships with the various State, local, and other Federal agencies in the VCCs' areas of jurisdiction.*

*(3)   The VCC may require State and local officers to assist in case preparation on cases those officers are recommending for prosecution; however, maintaining the integrity of the Federal firearms laws by ensuring that each State or local officer recommending a case for prosecution in Federal court has met all the elements of proof. ████████████████████████████████

*(4)   Gather and exchange intelligence derived from observed trends and from defendants. This should be coordinated with the intelligence officer in each field division. Also, interview all adopted case defendants, when legally viable, for illegal firearms trafficking/firearms source information and refer any developed information and any cooperating defendants back to the ATF field offices or the appropriate law enforcement agency for followup



investigative action. During these interviews,

*(5)    Ensure firearms from all adopted cases are traced, thus enhancing the ability of Project LEAD to generate information on illegal firearms trafficking.  *

*(6)    In cities with CEASEFIRE Program capabilities, ensure firearms from all adopted cases are testfired and that the shell casings and projectiles are subjected to Integrated Ballistic Identification System (IBIS) testing, thus enhancing the IBIS data base and increasing the likelihood of ballistic matches. Firearms submitted for testfiring should be testfired by the laboratory personnel, and submission of the firearm should be conducted in accordance with evidence handling procedures found in ATF O 3400.1, Property Taken Into Bureau Custody. Exceptions to this testfiring mandate are listed in this ATF O 3310.4B, chapter B, paragraph 17. This responsibility should be coordinated with the field division CEASEFIRE coordinator.

(7).    Assist in the identification of additional candidates for the Violent Offender Program (VOP) in that area/jurisdiction. This is intended to supplement the submission of VOP candidates to the field division VOP coordinator. The VCC does not take the place of the VOP coordinator.

(8).    Assist in training new or less experienced special agents in case preparation, interviewing, and courtroom demeanor. The VCC will be participating in, or coordinating, a great number of interviews, reports, and trials that will provide tremendous practical training forums for new or less experienced special agents.

(9).    With SAC approval, the VCC may work on other original criminal investigations if the volume of adopted cases are not sufficient to keep the VCC fully occupied.

d.    <u>Procedural Guidelines for the Acceptance of a Referred or Adopted Case By Any Special Agent</u>.

*(1)    Special agents are not to consider the acceptance of a criminal case where they have knowledge or reason to believe that the defendant's constitutional rights   have been violated by the Federal, local, or State officers in their procurement of the evidence



involved.         *

(2). Upon receiving a request to accept a firearms case from a State/local agency, special agents are to obtain complete information relative to the facts and circumstances involved by are not to make any commitment of formal acceptance until the preliminary findings reported by the local officers are evaluated and verified. In addition, the special agent must be assured that the case being referred is, in fact, a Federal violation and that evidence to prove each element of the violation is available.

(3). Special agents are not to accept a seized vehicle when the property's sale value is obviously less than the storage and advertising cost that will be entailed, unless the acceptance of such seizure meets with the approval of the SAC.

(4). In accepting cases, special agents are not to seize any firearms for Federal forfeiture that the seizing agency desires to keep for official use. Once a firearm is seized for Federal forfeiture, it cannot be returned to the originating seizing agency but must be disposed of according to the procedures set out in ATF directives.

(5). Firearms need not be seized for Federal forfeiture from other law enforcement agencies if the necessary arrangements are made to ensure that they are available at the proper time as evidence. Such arrangements can include a voluntary detention agreement.

(6). Where the seizing agency desires to make disposition of a firearm involved in an accepted case, a mutual agreement should be reached that after its use as evidence:

(a). The seizing agency retains custody of the firearm pursuant to authorization to that effect by a court.

(b). The seizing agency will make other disposition of the firearm in accordance with its lawful authority and legal procedures.

(7). If the referring agency seized firearms and ammunition under authority of the GCA, proceedings for the forfeiture of the firearms and ammunition     must be commenced within 120 days of the seizure. ATF shall be notified as soon as possible because our administrative timeframe for initiating forfeiture proceedings within a 120-day period. In situations where, because of the date of the seizure this timeframe cannot be met, the special agent shall not take custody of the seizure and shall inform the seizing agency that



the firearms and ammunition cannot be forfeited under the GCA, as amended.

15. **INTERNATIONAL TRAFFIC IN FIREARMS.**

a. Most firearms are included in the U.S. Munitions List, and importation and exportation of the listed firearms are subject to the provisions of paragraph 38 of the Arms Export Control Act (22 U.S.C. § 2778). This act, with the exception of the import provisions, is administered by the Office of Munitions Control, Department of State, and is enforced by the U.S. Customs Service (USCS).

b. Information concerning the illegal exportation of firearms will be reported immediately to the USCS at the local level and investigative efforts coordinated. However, if the information received concerns a suspect ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A 1978 memorandum of agreement with USCS states that, in dual jurisdictional matters, the initiating bureau is to invite participation in a joint investigation. The inviting agency is the lead agency.

c. Importation procedures are detailed in ATF P 5300.4, Federal Firearms Regulations Reference Guide.

d. Information received at any time that involves matters having direct or immediate affect upon national security shall be reported immediately to the AD(E) through the SAC.

e. Investigations and reports on international illegal trafficking of firearms are detailed in Chapter J, International Traffic in Arms (ITAR).

16. **IDENTIFICATION OF FIREARMS.**

a. When any firearm without a manufacturer's or importer's serial number is brought to the attention of a special agent, it will be inspected to determine whether there is any indication that the serial number originally was stamped but has been altered, obliterated, or removed. Some firearms were legally manufactured without serial numbers and are currently not required to have them.

b. Where evidence exists that a serial number has been altered, obliterated, or removed from a firearm involved in an ATF violation, the firearm shall



be submitted to an ATF laboratory for examination.

c.    When an investigation establishes that no ATF violation is involved, such as the firearm has not affected interstate commerce, the special agent shall determine if there is a State or local prohibition against possession of an unserialized firearm. If there is a prohibition, the matter shall be discussed with the proper authorities. If action is taken at the State or local level, the matter will be considered a referral.

d.    If no action is taken by State or local authorities, or a violation of Federal law has occurred, the special agent will investigate the acquisition and possession of the firearm by the owner to determine if any Federal firearms laws were violated. If the investigation shows no criminal intent to violate the law on the part of the owner of the firearm, the special agent shall:

(1).    Advise the owner of the firearm of State or local law, if any.

(2).    Advise the owner that it is a violation of 18 U.S.C. § 922(k) to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the serial number removed, obliterated, or altered, or to possess or receive any firearm which has had the serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

(3).    With the concurrence of the special agent's immediate supervisor, recommend that the owner have the original serial number, if known, restamped on the firearm along with an ATF serial number issued by the field division. It is not ATF's responsibility to ensure that the firearm's original serial number is restamped on the firearm.

(4).    If the original serial number cannot be determined, recommend that an ATF serial number be stamped on the firearm. A serial number is not required if the firearm was originally manufactured without a serial number.

(5).    If an ATF serial number is to be assigned, the special agent will request on an ATF F 3270.2, Report of Investigation, that the SAC assign an ATF serial number to the firearm, specifically identifying the firearm in the request.

(6).    After the owner has completed the placement of the serial number on the firearm, the special agent will verify the information by inspecting the firearm. The results of this inspection will be reported



to the SAC on ATF F 3270.2. In the case of a previously registered NFA firearm, a copy of the ATF F 3270.2 will be forwarded to the NFA Branch, ATF Headquarters.

(7).   Advise the owner of the firearm that if he/she refuses to have a serial number stamped on the firearm, the firearm is contraband and is subject to seizure and forfeiture by the U.S. Government under 18 U.S.C. chapter 44. If the owner continues to refuse to have a serial number stamped on the firearm, the firearm should be seized and forfeiture proceedings initiated.

e.   When the owner of the firearm with a removed, obliterated, or altered serial number remains in possession of a firearm in order to have a serial number restamped on the firearm, the SAC shall provide the owner of the firearm with written authorization to receive and possess that firearm in order to arrange for a serial number to be restamped.

f.   No serial number will be stamped on a firearm that is:

(1).   Intended for use as evidence.

(2).   To be destroyed.

g.   Each unmarked firearm required to bear a serial number under the provisions of Federal law must be stamped or restamped with a serial number when:

(1).   The firearm's retained for evidentiary use but is no longer needed for that purpose and remains in Bureau custody for official use.

(2).   The firearm is to be transferred to an agency outside the Bureau for official use.

(3).   The firearm is retained for official use by a seizing agency other than the Bureau.

h.   The SAC is authorized to assign and stamp firearms with ATF serial numbers. The serial number shall be composed of the organizational segment code for the issuing division office followed by a sequential number, e.g. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A division office file containing these ATF-issued serial numbers assigned by the division to any firearm is immediately entered into the firearms data base by that division's TECS investigative clerk.

i.   There are some ATF serial numbers that were issued by the regions. Records of those serial numbers issued have been relocated to the

㉑

National Tracing Center. In the event a trace of a weapon with an ATF serial number is initiated and the serial number does not correspond with a number issued as outlined above, the trace shall be referred to the National Tracing Center for a search of the regional files.

17.    <u>TESTFIRING</u>.

a.    Where criminal prosecution of a firearms violation is anticipated, the firearms involved shall be testfired to establish their capability of expelling a projectile by means of an explosive. There are exceptions to this policy. If the case agent believes or has reason to believe that the firearm has been altered, converted, or is unsafe to fire, or that the testfiring will so damage the firearm or destroy its value as evidence, the firearm shall not be testfired. In the case of a large seizure of firearms, every firearm need not be testfired. A representative or random sampling is sufficient. Firearms not testfired are to be examined to determine their capability of expelling a projectile by means of an explosive.

*b.    Special agents often seize, purchase, or otherwise acquire items alleged to be silencers. True silencers are classified as firearms. To refute possible defense contentions that they are not silencers, they shall NOT be testfired in the field. Field testfiring silencers also renders any later laboratory gunshot residue test invalid.   Suspected silencers must be forwarded to the Bureau's Firearms Technology Branch for testfiring.
*

c.    Testfiring shall be accomplished with ammunition containing a known propellant. Commercially purchased or forfeited ammunition may be used for testfires, provided that it is in good condition and is not    handloaded ammunition. In the past, some████████████████was found to be boobytrapped by containing a high explosive rather than a propellant. Special agents shall be alert to the possibility that the same could be true of other ammunition.

d.    Testfiring and examination shall be accomplished under controlled conditions by an individual familiar with that weapon who will be available, if required, to testify concerning the condition and capability of the firearm.

e.    The results of the testfiring and/or examination shall be included in the case report.

18.    <u>BARREL-LENGTH MEASUREMENTS</u>.

The length of the barrel on a rifle or shotgun can determine whether it is a firearm as defined. A special agent in the field can accurately determine the barrel length of a

weapon as follows:

    a.    Examine and ensure that the weapon is unloaded.

    b.    Close the breech, breechlock, or bolt.

    c.    Cock the weapon to withdraw the firing pin.

    d.    Insert a straight rod down the muzzle end of the barrel until contact is made with the face of the bolt, breech, or breechlock.

    e.    Mark the rod at the muzzle end to denote the true barrel length. Removable barrel extensions, poly-chokes, flash hiders, etc., are not a part of the measured barrel length; however, permanently affixed chokes are considered part of the barrel.

    f.    Withdraw the rod and measure.

### 19. MEASUREMENT OF THE OVERALL LENGTH OF A FIREARM.

The overall length of a rifle or shotgun can also determine whether or not it is a firearm as defined. The following method of measuring the overall length of rifles and shotguns is the method approved by the Bureau:

    a.    Examine and ensure that the firearm is unloaded.

    b.    Close the action, if the firearm is of the "break-open" type.

    c.    Lay the firearm to be measured on its side on a table or desk, with the butt of the stock on line with an edge. Keeping the butt against one edge, bring the barrel(s) of the weapon in line and next to the right-angle edge.

    d.    Mark the length of the true muzzle(s) of the barrel(s).

    e.    The overall length of the firearm can now be measured from the muzzle mark to the right-angle corner nearest the butt of the stock. (See Exhibit 1, Federal Firearms Laws.)

### 20. ENTRY-OF FIREARMS INTO THE TECS DATA BASE.

    a.    To allow for the assessment of the various sources of firearms for criminal misuse and to provide investigatory leads, all firearms falling into the following categories are to be entered into the firearms data base of TECS:

        (1).    All firearms used in crimes or where the investigation reveals evidence of criminal involvement. (Entry SFA.) (Example: During a



local police homicide investigation, a crime gun is traced by ATF



(2).   All firearms recovered from prohibited persons or documented as being purchased by a prohibited person and not recovered. ███

(3).   All firearms recovered from or illegally acquired by suspected top firearms traffickers. ███

(4).   All firearms acquired through "straw purchases" and suspected of being provided to the criminal element. ███

(5).   All firearms traced to or acquired at gun shows or flea markets and where the investigation reveals evidence of criminal involvement. ███

(6).   All firearms seized, retained, purchased undercover, and abandoned. ███

b.     It is the responsibility of the district office determining the status of the firearms to enter those firearms into the firearms data base. If an entry is made as a result of a trace or theft report, the additional information shall be entered with a short narrative. ███ Instances of major significance shall be documented on ATF F 3270.2  Report of Investigation, and addressed to the SAC, Firearms Enforcement Branch.

*21.   REPORT, OF LOSS 0113 THE - OF MILITARY MUNITIONS.

a.     In accordance with a memorandum of understanding (MOU) between ATF and the Department of Defense (DOD), the following reporting procedures regarding the theft or other loss of DOD munitions in relation to firearms (Exhibit 18) are to be utilized.

███

b.     A KSAR must be submitted when military firearms and ammunition are recovered. The KSAR must contain any identifying information that is available. A KSAR is not required for military handguns and rifles that are



traced and found not to be on record with the Military Central Weapon Registry because they were removed from inventory records prior to March 1975.

22 - 30 RESERVED

███████████████████████████████████████████

31.    PURPOSES OF THE STATUTE.

The main purposes of the GCA are to:

a.    Deny the acquisition of firearms by certain persons considered by law to be a threat to society.

b.    Regulate the manner in which firearms dealers, manufacturers, importers, and collectors conduct their businesses and restrict the type of person who engages in the business of dealing in firearms.

c.    Provide support to Federal, State, and local law enforcement officials in their fight against crime and violence by regulating importation and interstate traffic of firearms.

d.    Provide for the investigation, apprehension, and prosecution of persons who willfully violate the provisions of the act and ensure the seizure of firearms used, or intended to be used, in violation of the same.

32.    STATUTORY AUTHORITY.

The GCA as amended is codified as 18 U.S.C. chapter 44 sections 921 through 930, and is implemented in 27 C.F.R. part 178.

33.    OFFENSES RELATING TO THE GUN CONTROL ACT, AS AMENDED.

a.    Exhibit 1, Federal Firearms Laws, is a comparison of definition under the GCA and NFA.

b.    Exhibit 2, Statutes Violated–Case Report, Gun Control Act of 1968, as amended, is a charge sheet of various offenses under the GCA.



    c.    Exhibit 3, Prohibited Acts of Licensed Dealers, is a listing of prohibited acts by licensed dealers, individuals, and prohibited persons.

    d.    Exhibit 4, The Gun Control Act of 1968, is an index of the elements of offenses for violations of the GCA.

## 34.   MULTIPLE SALES OF PISTOLS AND REVOLVERS.

The GCA requires that each licensee prepare an ATF F 3310.4, Report of Multiple Sales or Other Disposition of Pistols and Revolvers, whenever the licensee sells or otherwise disposes of, at one time or during any 5 consecutive business days, two or more pistols or revolvers to an unlicensed person. The report is then forwarded to the office specified in ATF P 5300.15, Federal Firearms Licensee Information, no later than close of business on the day that the multiple sale or other disposition occurs (18 U.S.C. S 923(g)(3)). A report is not required to be made where the pistols and/or revolvers are returned to the same person from whom they were received, e.g., pawn redemption or return or repaired pistols/revolvers. When completed, ATF F 3310.4 provides information regarding the transferee's name, address, date of birth, and the quantity and description of the firearms purchased. It also bears the licensee's name, address, Federal firearms license number, and the date the report was completed. The form contains manifold copies so that the dealer may retain a copy of the form for his/her files although maintenance of this form by the licensee is not required by law.

    a.    Examples. The following are some examples of transactions covered by this reporting requirement.

        (1).    A licensee sells two pistols OR two revolvers OR a pistol and a revolver in one transaction to an unlicensed person. This is a multiple sale and must be reported no later than the close of business on the date of the transaction.

        (2).    A licensee sells a pistol on Monday and a revolver on the following Friday to the same unlicensed person. This is a multiple sale and must be reported no later than the close of business on that Friday. If the licensee then sells another pistol or revolver to the same unlicensed person on the following Monday, this constitutes an additional multiple sale and must also be reported.

        (3).    A licensee maintaining business hours ONLY on Saturday sells a revolver to an unlicensed person on Saturday and then sells that same unlicensed person another revolver or pistol on Saturday, 2 weeks later. This constitutes a multiple sale as the sales took place within 5 consecutive business days. Business days are based on those established by the licensee making the sale.



(4). A licensee maintaining business hours on Monday through Saturday sells a revolver to an unlicensed person on Monday and sells another revolver to the same unlicensed person on the following Saturday.

b. Use of Multiple Sales Information

Incoming multiple ██████ sales forms should be reviewed at the receiving office location to determine whether the multiple purchase warrants further investigation. Consideration should be given to the number of firearms purchased, the type of firearms purchased, previous multiple sales reported involving the same purchaser, reputation of the purchaser, and any other information available

c. Filing And Retention Procedures.

(1). A copy of ALL multiple sales forms received by field divisions and field offices MUST be forwarded to the National Tracing Center (NTC) within 5 business days of their receipt.

(2). Copies of those multiple sales forms that have been forwarded to the NTC may also be kept at the field office or field division level for



local reference, at the discretion of the SAC. In this event, the following filing and retention procedures should be followed:

(a).   Multiple sales forms/information should be kept in a manner that facilitates easy retrieval, reference, and investigative use.

(b).   Completed multiple sales forms should be retained for at least 5 years from the date of execution and are to be stored in a locked metal file cabinet or equally secure container.

(c).   Any disposition of multiple sales forms shall be accomplished by destroying the forms in a manner that the information is illegible and irretrievable.

(3).   A copy of ANY multiple sales forms received at the NTC directly from an FFL will be provided to the appropriate field division within 48 hours.

d.   <u>Investigative Activity Reporting</u>. When opening a formal investigation as a result of multiple sales information, or when multiple sales information is used during a formal investigation, the special agent shall place the appropriate code denoting use of multiple sales information on ATF F 3100.7, Investigative Case Summary.

e.   <u>Coordination With Regulatory Enforcement.</u>

(1).   The multiple sales reporting requirement was passed by Congress with the specific intent of providing criminal investigators with information that may be useful in detecting violations of Federal law committed by illegal firearms traffickers. If a licensee mistakenly forwards any ATF F 3310.4 to a Regulatory Enforcement office, that office shall immediately forward this form to the nearest Criminal Enforcement office that is responsible for the area in which the reporting licensee is located.

(2).   If during the review of any multiple sales forms by Criminal Enforcement personnel it is determined that a licensee may be committing noncriminal errors, omissions, or violations, this information should be referred to the appropriate Regulatory Enforcement official.

(3).   Referrals between Criminal Enforcement and Regulatory Enforcement shall be made on an ATF F 5000.21, Referral of Information. In the case of a referral by a special agent, the SAC is



the approving official prior to transmittal. Any pertinent information that cannot be placed on the referral form may be attached to the referral form.

35 – 38 DELETED

39.   TREATMENT OF ATF F 4473 (5300.9). FIREARMS TRANSACTION RECORD, FOR INVESTIGATIVE PURPOSES.

During investigations under the GCA, the special agent often finds that, in order to prove a prohibited person unlawfully acquired a firearm or committed other violations, the licensed firearms dealer from whom the firearm was purchased must be contacted, interviewed, and his/her records examined for the proof necessary to establish the violation ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████ This chapter outlines the procedures to be employed by the special agent for placing into custody, transmitting for examination, safeguarding, and returning such documents. Regulatory Enforcement Inspectors will refer the suspected ATF F 4473 violations to Criminal Enforcement.

40.   AUTHORITY.

27 C.F.R. SS 178.23 and 178.121(b) provide that special agents and inspectors can enter the premises of licensed firearms manufacturers, importers, and dealers for the purpose of examining documents and records required to be kept by the licensee under this part.

41.   VOLUNTARY RELINQUISHMENT OF ATF F 4473 (5300.9) BY LICENSED DEALER.

a.   When the special agent encounters an ATF F 4473 that contains material evidence of a violation, the agent is to secure the document and any substantiating statements from the licensed dealer in order to prove the elements of the violation. Most licensed firearms dealers cooperate with special agents in actions of this type. Upon obtaining voluntary relinquishment of the document from the dealer, the special agent shall:

(1).   Execute ATF F 3240.1, Document Receipt, and fully describe the documents. ATF F 3240.1 is to be placed in the licensed dealer's files in the sequential order of the ATF F 4473 that is being removed.   Photocopies of the form are to be forwarded to the dealer. These copies are to be designated as such and dated and

initialed by the case agent.

(2).  If it is deemed necessary to examine the documents

(3).  Treat the document as "retained" and follow the custodial procedure prescribed in ATF O 3400.1, Property Taken Into Bureau Custody.

(4).  If the document is needed for evidentiary purposes, it shall be submitted, as prescribed, to an   appropriate laboratory for the analysis needed. A  precise record of the chain of custody will be maintained.

(5)  Upon the return of ATF F 4473 from the laboratory, the document shall be returned to the licensed dealer and replaced in the dealer's normal business records, pending any legal proceedings where the dealer might be required to produce the document. The document shall be photocopied prior to its return and the copy placed in the field office investigative file. However, if the special agent has reason to believe that the document would be better protected as evidence in the custody of the Bureau, the special agent is to retain custody and follow the instructions in ATF F 3400.1.

(6).  At the conclusion of all legal actions and the appeal period, the special agent responsible for the retention of the document shall return ATF F 4473 to the licensed dealer from whom it was obtained, execute the "Acknowledgement of Return of Documents" portion of ATF F 3240.1, and place the receipt in the field office investigative file.

b.  27 C.F.R. S 178.124 provides that the dealer must maintain ATF F 4473s in his/her files as a permanent record. Therefore, it is mandatory that the special agent return ATF F 4473 to the licensed dealer when it is no longer needed for examination or evidence. The return of the document must be done in accordance with ATF O 3400.1.

42.  **SEIZURE OF ATF F 4473 (5300.9) FROM AN UNCOOPERATIVE DEALER.**

a.  When a possible violation is discovered and the licensed dealer is unwilling to voluntarily relinquish ATF F 4473, the special agent shall consider obtaining a search warrant in order to seize ATF F 4473 as evidence. In such cases, the special agent shall:



(1). Document the refusal of the licensed dealer to relinquish the record for examination.

(2). Prepare the affidavit and obtain a search warrant for the document.

(3). Search for and seize the document as "retained for evidence" and return a photocopy to the dealer. (See ATF O 3240.1A, Searches and Examinations.)

(4). Maintain a record of the chain of custody

(5). The SAC may, at his/her discretion, authorize the case agent to continue the investigation without providing copies of the seized ATF F 4473s to the dealer

*(6) Upon obtaining SAC authorization, the case agent shall notify the SAC, National Tracing Center, that his/her field office has retained the firearms transaction records. This notification shall be made in writing within 3 days.*

*(7) The seizing field office may be required to assist in the trace of firearms if the situation arises.*

b. When the document is no longer needed as evidence, the return of the document must be in accordance with ATF O 3400.1.

## 43.    INTERSTATE NEXUS

An interstate movement or nexus of firearms is a necessary element of proof of a violation under most portions of the GCA.

a. Prosecutions in GCA cases have successfully proven the commerce element through the use of out-of-business records of Federal firearms licensees (FFL) maintained by ATF in conformance with legal requirements (27 C.F.R. §178.127). The cases of United States v. Johnson, 722 F2d 407 (8 Cir. 1983) and United States v. Veytia-Bravo, 603 F2d 1187 (5 Cir. 1979) found that the out-of-business records were admissible as evidence.

b. The business records of a licensed manufacturer, importer, or dealer that are authenticated by the testimony of a records custodian or other qualified witness can be used to prove the commerce element.





c.  The testimony of an expert from the Firearms Technology Branch can also be used to prove this element.

d.  The testimony of a special agent qualified as an expert on where firearms are manufactured is the preferred alternative to the use of the firearms trace forms. It is the most cost-effective and efficient of all the options.

44.  **CHARGES FOR UNLAWFUL POSSESSION OR TRANSFER OF MACHINEGUNS MADE AFTER MAY 19, 1986.**

The Department of Justice has notified ATF that all cases involving the unlawful possession or transfer of a machinegun made after May 19, 1986, should be charged under 18 U.S.C. § 922(o) and not under the provisions of the National Firearms Act.

45 - 50  RESERVED



51.  **OBJECTIVES**.

The objectives of this program are to reduce armed violent crime and the cost of this crime to the American public by identifying, investigating, and recommending for prosecution in Federal court those individuals who use or carry firearms and are armed career criminals, are actively involved in violent criminal activities and/or drug trafficking, and those individuals who illegally traffic firearms to these criminals. In addition, this program seeks to utilize the criminal intelligence generated through the arrests of numerous armed career criminals and armed drug traffickers to create or enhance illegal firearms trafficking leads. Furthermore, it is the intent of this program to increase State/local awareness of the Federal statute that is aimed at maximizing the sentencing exposure of a three-time convicted felon apprehended in possession of a firearm.

52.  **INVESTIGATIVE GUIDELINES FOR 18 U.S.C. § 924(c)**.

*a.  Overall Goal for 18 U.S.C. 4 924(c): The identification, investigation, and prosecution of criminally active organizations or violent individuals who



use/carry firearms during and in relation to crimes of violence or drug trafficking crimes. ATF's primary interest is with firearms violations that are committed during and in relation to crimes of violence or drug trafficking crimes. It is important that every investigation into violations of 18 U.S.C. § 924(c) has a clear nexus to firearms from the outset of the case. Jurisdiction for the drug trafficking crime or drug trafficking conspiracy rests with the appropriate Federal agency (DEA, U.S. Customs Service, or the FBI).

b.   <u>Specific Objectives</u>.

(1).   To identify, investigate, and recommend Federal prosecution of those individuals who use/carry firearms during and in relation to violent crimes or drug trafficking crimes.

(2).   To develop a coordinated effort with Federal, State, or local law enforcement agencies ███████████████████████████████████████████████████████████████████████████

(3).   To identify, █████████████████████ the source of supply for the firearms recovered ███████████

(4).   To investigate and recommend for prosecution those individuals found to be illegally trafficking firearms to drug traffickers and/or violent criminals.

(5).   To refer all narcotics trafficking information received or developed where no firearms are involved to DEA, U.S. Customs Service, or local law enforcement agencies, as appropriate. Refer to ATF O 3210.7B, Investigative Priorities, Procedures, and Techniques, for specific informational reporting requirements.

c.   <u>Investigation Initiation</u>. The guidelines set forth below in c(1) have been established to allow for adequate control and application of ATF's limited resources. In general, ATF O 3210.7B continues to provide overall guidance for conducting criminal investigations; however, enforcement of 18 U.S.C. § 924(c) requires additional guidelines, training, and increased awareness on the Part of special agents and all levels of management to ensure proper utilization of resources and safe operations. When initiating a 924(c) investigation, the special agent shall place priority on establishing the element of using a firearm during the commission of the violent crime or narcotics trafficking crime. The secondary, although essential,



33

requirement will be establishing that the violent crime or narcotics offense has been committed.

(1).   Special Agent Procedures for Initiating an Investigation.

(a).   All individual suspects are to be completely identified, when possible. Identification information will include the subject's name, address, physical description, date of birth, and criminal history. ████████████████████████████████████████████████████████████████████ This information will be documented on ATF F 3270.2, Report of Investigation, and entered into TECS.

(b).   Undercover contact is permissible with individual suspects to assist in identification and to determine the level of firearms violations ███████████████████████████████████████████████████████ HOWEVER, EXPENDITURES OF ATF FUNDS FOR NARCOTICS WILL NOT BE MADE, NOR WILL ANY SEARCH WARRANTS BE OBTAINED, UNTIL THE NECESSARY IDENTIFYING INFORMATION CONCERNING THE PRESENCE OF FIREARMS HAS BEEN ESTABLISHED. The SAC may waive the requirement to gather identification information if, after reasonable attempts are made, the information cannot be obtained.

(c).   The arrest and conviction record of the individual suspect will be known before the undercover purchase takes place. ██████████████████████████████████████████████████████████████ requirement does not apply to cases involving 18 U.S.C. § 924(c) charges for use of a firearm during a crime of violence nor does it apply to adopted/referred cases processed by a designated VCC. In addition, the following information will be documented on an ATF F 3270.2 and placed in the investigative file: number and types of firearms



███████████████████████████

SAC approval is required to open an investigation that does not meet these standards.

(d).   Ascertain if another law enforcement agency is presently conducting an investigation on the suspect/location. Coordination of efforts with Federal agencies having 21 U.S.C. authority is essential.

(2).   <u>Supervisor/Management Control at Field Level</u>.

(a).   The supervisor is responsible for the special agent's adherence to the standard criteria. SPECIAL EMPHASIS SHALL BE PLACED ON ENSURING EACH INVESTIGATION OPENED HAS A CLEAR INVOLVEMENT WITH FIREARMS FROM THE OUTSET. IN ADDITION, WHERE THE INVESTIGATION IS OF A SINGLE DEFENDANT RATHER THAN MULTI DEFENDANTS OF AN ARMED DRUG TRAFFICKING ORGANIZATION OR GANG, ████████████████████████████

(b).   The RAC/GS is responsible for ensuring that resources, investigative policies, procedures, and techniques are applied correctly and appropriately. RAC/GS approval is required prior to expending ATF funds or obtaining search/arrest warrants in any investigation where a suspect has not been fully identified as required in 52c(1)(a).

(c).   When ATF is requested by the U.S. attorney's office to include a substantive 21 U.S.C. violation in the case report/recommendation for prosecution report, the SAC is to ensure that DEA or U.S. Customs Service is offered the opportunity to participate in the investigation.

d.   <u>Procedural Guidelines</u>.

(1).   <u>Drug Trafficking Crimes</u>. For the purpose of this section of law, "drug trafficking crimes" mean any felony violation that is prosecutable in a Federal court involving the distribution,



manufacture, or importation of any controlled substances. Possession of drugs with the intent to illegally distribute, manufacture, or import and attempts or conspiracies to illicitly distribute, manufacture, or import drugs are also included. Our attention is specifically directed to the DISTRIBUTION or possession with the intent to DISTRIBUTE controlled substances as defined in 21 U.S.C. § 802. (See Schedule of Controlled Substances, 21 CFR § 31308.11 et. seq.)

(2).   <u>Investigation Targets</u>. Investigations shall identify and investigate narcotics dealers or organizations that use or carry firearms. ████

████████████████████████████████

(3).   <u>Special Agent Procedures</u>. Special agents and their supervisors shall keep abreast of all significant case law that may affect the methods used to prove violations of 18 U.S.C. § 924(c) in their judicial districts and nationwide. upon receipt of information that meets current case law standards and the criteria set forth herein



The "drug trafficking" element of proof for 18 U.S.C. § 924(c) violations should be established through investigative techniques that conform to ATF policies, which include, but are not limited to the following.

(a).   The purchase of narcotics ████████████████

(b).   ████████████ receipt of narcotics ████

████████████████████████████████

(c).   ████████████████████████████████

(d).   A taped conversation by an undercover ████ with



drug traffickers █████████████████████████

(e). Surveillance by agents of suspected drug trafficking operations or drug traffickers. ███████████████████████████████████████████████

(f). The ordering of a quantity of narcotics from a firearms violator. ████████████████████████████████████

(4). Authorizations for the use of ATF funds to purchase narcotics in an investigation are as follows:

(a). For an undercover purchase of a substance alleged to be narcotics, the approval of the RAC/GS is required when ATF funds are to be expended.

(b). The SAC can authorize narcotics purchases in any amount █████████████████████████████████████

(c). In an umbrella investigation with multiple suspects, the SAC can authorize agent cashier expenditures ████████████████████████████████████████████

(d). Narcotics purchases, single or cumulative, ███████████ ████████████████████ require the approval of the Chief, Firearms Enforcement Division, for concurrence and then forwarded to the Chief, Special Operations Division, for final approval.

(e). Requests to exceed ███████ in cumulative agent cashier funds in a firearms/narcotics investigation shall be routed to the Chief, Firearms Enforcement Division, for final approval.

e. Narcotics Evidence Testing, Custody, Control, and Storage.



(1).   <u>Special Agent Field Testing Procedures</u>.

(a).   Probable cause to believe that suspected narcotics evidence is a controlled substance is an essential element ███████████ ███████████ Preliminary analysis to determine the identity of a suspected controlled substance may be conducted through the utilization of field test kits. All field divisions were issued test kits, and these should be utilized. If more test kits are needed, they may to be obtained from law enforcement supply stores, or they may be obtained from other law enforcement agencies that investigate narcotics violations on a routine basis. ████████████████████████████ ████████████████████████████

(b).   Field tests are useful for on-the-spot investigative planning and providing probable cause, ████████████ Suspected controlled substances shall be retained, ████ ██████████████ n those instances when the substance cannot be identified through field testing, a sample will be transmitted to the nearest available laboratory for analysis and identification. Refer to 52f(3) of this order for laboratory transmittal procedures.

(c).   Federal, State, and local narcotics investigators who work jointly with ATF are often considered to be experts in the identification of various controlled substances. Special agents may utilize their expertise to establish probable cause in this area. The AUSA can provide further direction in this matter.

(d).   In those instances where ATF is the only investigating agency involved in an 18 U.S.C. § 924(c) violation investigation, field tests will be conducted by the case agent, control      agent, or undercover agent and shall be witnessed by at least one other special agent.

(e).   Identification of suspected controlled substances, such as forms of hallucinogens, pills, tablets, capsules, and marijuana shall be attempted through visual comparison with narcotics reference books.

(f).   A memorandum to the investigative file will be used to



document each preliminary testing and identification of controlled substances. In this report, the special agent shall include the date, time, location, and personnel performing and witnessing the testing.

(2).   Special Agent Procedures for the Purchase or Retention of Narcotics.

    (a).   The case agent is responsible for ensuring the CI and vehicle, if applicable, are searched for contraband prior to the informant's purchase of physical evidence or gathering of recorded evidence▮

    (b).   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮and the information shall be placed permanently in the field office investigative file.

    (c).   Surveillance shall be maintained when an agent or informant is making contact with a suspected narcotics trafficker▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Close visual surveillance is mandatory if it is not feasible to wear electronic surveillance equipment. RAC/GS approval is required if electronic surveillance equipment will not be used during undercover contacts.

    (d).   The special agent is responsible for ensuring the informant and vehicle, if applicable, are searched for contraband immediately after the informant returns from purchasing narcotics. The evidence shall be turned over to the control agent who shall maintain custody of the evidence until it is processed and stored. The informant will then be debriefed in regard to the purchase and observations he/she made during the purchase.

    (e).   Subsequent to completion of an undercover purchase or execution of a search warrant that results in the retention of narcotics, the evidence shall be returned to the field office, where it shall be field tested and processed as soon as possible. Transmittal to a laboratory for analysis and identification should be accomplished if warranted.

    (f).   The special agent is responsible for ensuring the security of the narcotics is constantly maintained. Narcotics evidence



shall not be left unattended for any period of time while in the custody and control of the special agent. Adherence to courtroom presentation procedures and final destruction procedures, as previously described in this paragraph, must be maintained.

(3).    <u>RAC/Group Supervisor Responsibilities</u>.

    (a).    The RAC/GS shall ensure that special agents are aware of and use the proper procedures for handling narcotics evidence obtained as the result of a search warrant execution or undercover purchase.

    (b).    The RAC/GS is responsible for physical maintenance of the evidence vault and narcotics evidence safe. Narcotics evidence must be maintained in the narcotics evidence safe separately from other forms of evidence.

    (c).    The RAC/GS shall ensure that the office weighing scales are calibrated on a yearly basis and are maintained as required. Special agents shall be trained in the proper use of weighing scales.

    (d).    The RAC/GS is responsible for conducting an annual accounting/reconciliation for all narcotics in ATF custody and control at his/her    respective field office or group. The documentation of this accounting and the results shall be completed via memorandum to the appropriate administrative files.

    (e).    The RAC/GS shall monitor evidence handling procedures to ensure compliance with Bureau policy and guidelines.

(4).    <u>Handling Narcotics</u>. Evidence of narcotics violations may consist of drugs, precursor chemicals, equipment, packaging, documents, fingerprints, money, or any other tangible property used to establish a violation of law. Once retained, physical evidence must be handled, controlled, stored, presented, and eventually disposed of in such a manner that will ensure its accountability and integrity. Special agents shall adhere strictly to the procedures for handling narcotics evidence.

(5).    <u>Processing Evidence</u>. Narcotics evidence will, in most narcotics investigations, be taken into custody by the participating agency



that has seizure authority for narcotics and will be processed by that agency. It is strongly recommended that the participating agency take custody of any narcotics evidence if feasible.

When ATF has complete control of an investigation in which suspected controlled substances are purchased or retained during the execution of a search/arrest warrant, the following procedures for handling narcotics shall be used.

(a).    Following field testing, narcotics evidence will be inventoried to determine the gross weight of the evidence to include the substance and container a total count will be made. If the evidence consists of legitimately manufactured drugs in factory-sealed containers and tampering is not evident, the count on the label will suffice. The gross quantity of liquids will be reported by volume, which will be derived in the most accurate and appropriate manner possible. The weights and count totals, along with a description of the evidence, will be entered on the appropriate ATF property form.

(b).    Following completion of the inventory, the evidence and its container or wrapper will be placed in a clear plastic bag that has been designated for evidence. The evidence bag shall then be sealed by a heat sealing device. The sealing will be witnessed by the supervisor or senior special agent and will be documented on the appropriate ATF property form by entering the date, time, location, and persons present. To ensure chain of custody integrity, the appropriate signature will be placed on the ATF property form. Prior to storage, a copy of the completed ATF property form will be taped to the sealed evidence bag.

(c).    Prior to sealing, the special agent shall mark each exhibit for identification with the initials of the agent who acquired the exhibit and the agents or other law enforcement official who witnessed the acquisition or handled the exhibit in any manner, the exhibit number, the investigation number, and the date. The markings, where possible, will be made directly on the exhibit with a permanent marker.

(d).    The evidence custodian and special agent will enter



narcotics evidence into the narcotics safe located in the evidence vault for the field office. Entry of the evidence will be documented in the evidence vault entry control log and on the ATF property form. Removal of evidence will be effected in the same manner.

(6).    Transmittal of Evidence

(a).    All substances taken into ATF custody will be submitted for laboratory analysis or identification. It is essential to know what the substance is that has been taken into custody. Field tests are not conclusive. If it is known that the substance will not be used as evidence, it will be submitted to the laboratory for identification only. Timely transmittal of evidence is advisable to prevent delays in prosecutive action.

(b).    The special agent shall utilize DEA, State, or local law enforcement laboratories that specialize in the analysis of controlled substances and offer these services. Before transmitting evidence, the special agent shall contact the laboratory to obtain information on its transmittal requirements and the sample size required for analysis of the controlled substance.

(c).    Narcotics evidence may be delivered to a laboratory, via registered mail (return receipt), commercial carrier, overnight service, or hand-carried.

(d).    When selecting a method of delivery, the special agent should consider factors to include proximity of the laboratory, availability of personnel to hand deliver, urgency for analytical results, weight and bulk of evidence, and attractiveness of the evidence to theft.

(7).    Opening and Resealing of Evidence. Normally, once narcotics evidence has been sealed, it should not be opened except by laboratory personnel or as required in court proceedings. Proper opening and resealing procedures will ensure the integrity and chain of custody of narcotics evidence. The following procedures will be used when narcotics evidence is opened and resealed:

(a).    Evidence shall be opened in the presence of another special agent or in the absence of an ATF agent, by a law



enforcement officer of another agency. The only exceptions to this shall be the opening of evidence in court at the direction of court officers or if no law enforcement witness is available and the evidence must be opened, the special agent may do so after telephonically advising the RAC of the need to open the evidence and RAC approval is granted.

(b).   Care shall be taken to prevent contamination or spillage of the evidence.

(c).   Upon completing the action for which the evidence bag was opened, the special agent shall place the evidence and all parts of the opened evidence bag into a new evidence bag, which shall be resealed following the appropriate sealing procedures.

(d).   The purpose for opening the evidence, the names of persons present when opened, and the date will be documented on the ATF property form.

(e).   In the event that evidence returned from a laboratory is not sealed, the sealing procedures previously described in 52e(6) will be used to reseal the returned evidence.

(8).   <u>Producing Evidence in Court</u>.

(a).   All evidence required for trial shall be made available at the appropriate time. Coordination with the prosecutor will be maintained to allow for presentation of evidence.

(b).   Further coordination should be accomplished with the prosecutor regarding the court appearance of the chemist to testify. ████████████████████████████████████

(c).   Custody of the evidence will be transferred to the court via the appropriate ATF property form.      If the clerk of the court takes custody of the evidence but does not sign the ATF property form, the case agent will have another agent or responsible person document that he/she witnessed the transfer of evidence. The   case agent will also request that the transfer of evidence be entered in the court record. If the court will not formally accept custody of the evidence, the



case agent will maintain security of the evidence.

(d). Procedures for the return of narcotics evidence from court custody vary among jurisdictions. To ensure proper disposal of evidence upon completion of judicial proceedings, its return to ATF should be encouraged. ████████████ ████████████████████████████████████ ████████████████████████ If the court official does not witness and sign the ATF property form, the case agent will have another agent or responsible person document the form as having witnessed the transfer of evidence.

(e). If the evidence has been opened during court proceedings, the case agent will inventory the contents in the presence of the court official who is returning the evidence. Upon returning to the field office, the case agent will verify the gross weight of the evidence and reseal the evidence bag by using the proper procedures.

(f). The evidence will be returned promptly to the narcotics evidence safe until final disposal.

(9). <u>Annual Evidence Inventories and the Reporting of Discrepancies</u>. ATF O 3400.1, Property Taken Into Bureau Custody, requires that annual evidence audits be conducted for all property under custody and control of ATF. These procedures also will apply to all narcotics evidence retained by ATF. Unresolved discrepancies shall be reported immediately to the SAC. The SAC will then report the facts to his/her respective Deputy Associate Director and the Assistant Director, Office of Inspection. Refer to ATF O 3400.1 for detailed instructions related to annual evidence inventories.

(10). <u>Disposal of Narcotics Evidence</u>.

(a). Emphasis must be placed on the disposing of narcotics as soon as they are no longer needed as evidence. The determination to dispose of narcotics evidence may be made administratively when evidence has been purchased. The prosecutor may determine that the evidence may be disposed of by concluding that the case is not prosecutable or that adjudication is complete and the time for filing an appeal has elapsed.

(b). In those cases where an appeal has been filed, the case



agent will contact the prosecutor every 90 days to ascertain whether the appellate court has ruled on the case. The circumstances of the contact will be documented on ATF F 3270.2 or via a memorandum to the investigative file.

(c). Upon receiving an approved disposition request, final disposition of retained narcotics evidence will be accomplished by releasing the evidence to a law enforcement agency that has narcotics seizure authority. (Most investigations will involve a participating narcotics investigation agency that may take custody of the evidence at the time of seizure). The release of evidence to another agency shall be documented via the appropriate ATF property forms.

(d). In those investigations where ATF purchases narcotics, final disposition and destruction may be accomplished by ATF personnel. Upon final adjudication, approval to destroy purchased narcotics will be requested from the SAC. After approval has been received, controlled substances shall be destroyed by burning in a suitable incinerator, complying with State and local environmental requirements. Certain drug processing chemicals and byproduct chemicals require special disposal methods. Contact should be made with the local DEA or EPA office to determine proper disposal methods. The destruction of all narcotics evidence should be witnessed by two special agents.

(e). Refer to ATF O 3400.1 for further instructions pertaining to the release and disposition of property.

f. <u>Execution of Arrest/Search Warrant</u>

(1). <u>Investigative experience</u> has shown that those violent criminals and narcotics traffickers who use firearms during the commission of illegal activities have displayed little or no respect for the lives and well-being of those who interfere with their illegal activities. Law enforcement personnel have often been among those who have been assaulted when confronting such violent offenders. With this in mind, the safety of law enforcement personnel and innocent bystanders cannot be overemphasized when violence-prone offenders are the subjects of an arrest warrant or search warrant.

(2). <u>Search warrants and arrest warrants</u> are necessary and invaluable



investigative tools. Their planning and execution should be carefully carried out. Such planning and execution demand strict compliance with Bureau guidelines and policy by all participating personnel.

(3).   Evidence Collection.

(a).   Latex gloves should be worn at all times when handling processing narcotics evidence in order to avoid unnecessary contact with the skin.

(b).   During a search warrant execution, suspected narcotics evidence should be photographed, if practical, in its original location before being removed for processing. The special agent shall process the photographs as documentary evidence.

(c).   If suspected narcotics evidence is loose or is in a badly damaged or untenable container, it will be placed in a substitute container. Caution must be taken to ensure that the substitute container is uncontaminated and fully contains and safely preserves the evidence. If a substitute container is used, include the original container as part of the exhibit.

(d).   When searching a location or conveyance, ███████████ ████████████████████████he immediate area for narcotics residue.

(e).   Liquid evidence may be hazardous or nonhazardous depending on the nature of the liquid. The hazardous nature of the liquid must be presumptively identified prior to submission to a laboratory. Consultation with the laboratory or arranging for a chemist to determine the hazardous nature of a liquid may be necessary.

(f).   Preservation of narcotics evidence ███████████████ and development should be contemplated before the evidence is handled.

(g).   The only items that may be seized pursuant to a search warrant are items described in the search warrant, items that are evidence of crimes, items that are circumstantial evidence that a crime has been committed, items that are unlawful to possess, items used to commit the crime, and items that are the fruits of a crime.



(4). <u>Special Agent Arrest/Search Warrant Procedures</u>.

    (a).    The case agent is responsible for coordinating, obtaining, planning, and executing ATF search/arrest warrants relative to the investigation at hand. Coordination with the undercover agent, CI, and other participating law enforcement officers/agencies is essential to this process and shall be accomplished.

    (b).    The undercover agent shall <u>not attempt to arrest violators during a buy/bust operation.</u> ███████████████████ ███████████████████ ideal situations call for the undercover agent not being present when arrest or search warrants are being executed.

    (c).    U.S. currency retained as evidence as the obvious proceeds of narcotics trafficking shall be carefully counted by the special agent at the location where it is found in the presence of the owner, if possible. AS ATF CANNOT FORFEIT U.S. CURRENCY, THE SPECIAL AGENT SHALL COORDINATE FORFEITURE WITH A LAW ENFORCEMENT AGENCY THAT HAS FORFEITURE AUTHORITY. The Internal Revenue Service will be notified of large seizures of currency. Refer to ATF O 3400.1 for specific guidelines concerning the retention or seizure of currency.

(5). <u>RAC/Group Supervisor Responsibilities</u>.

    (a).    The RAC/GS shall authorize the execution of ATF-obtained arrest and search warrants and assign a search leader who is at least at the journeyman level. (NOTE: Exceptions to this requirement may require SAC authorization in sensitive/significant investigations.)

    (b).    The RAC/GS shall review and approve the warrant execution plan and ensure that ATF F 3210.7, Operational Risk Assessment and Plan, is used.

    (c).    The RAC/GS is to ensure the presence of a DEA, State, or local chemist on all search warrants involving clandestine laboratories. Refer to ATF O 3210.7B for specific guidelines



concerning clandestine labs.

g.   <u>Seizure and Forfeiture of Evidence</u>. Narcotics, drug paraphernalia, currency, and vehicles involved in violation of the narcotics laws are subject to seizure and forfeiture. ATF DOES NOT HAVE SEIZURE AUTHORITY FOR NARCOTICS OR CURRENCY/VEHICLES/OTHER PROPERTY GENERATED BY, OR DERIVED FROM, NARCOTICS PROCEEDS. Any of these items encountered by ATF in exercising its statutory jurisdiction may, however, be retained/held by ATF. DEA, FBI, U.S. Customs Service, IRS, or State/local authorities having authority to seize and forfeit these items should be notified immediately when these items are held. These items should be turned over to the appropriate authorities for seizure and forfeiture.  Authority for seizure of firearms used/carried during and in relation to drug trafficking crimes is 18 U.S.C. chapter 44. Authority for seizure of NFA weapons is 26 U.S.C. chapter 53. Refer to ATF O 3400.1 for specific guidelines on the retention or seizure of property.

h.   <u>Coordination of Narcotics Information Referrals</u>.

(1).   Arrests made pursuant to violations of 18 U.S.C. § 924(c) inevitably produce information regarding drug sources. Receipt of information concerning ONLY narcotics violations shall be referred to DEA, U.S. Customs Service, FBI, or State/local agencies. Information received concerning a source of narcotics supply that utilizes firearms necessitates our establishing close coordination with these agencies. This coordination allows the agency with 21 U.S.C. authority to determine the entire scope of an illegal drug trafficking organization.

(2).   Upon receipt of information concerning narcotics violations, the special agent will inform the RAC/GS. The special agent shall notify DEA or the appropriate agency and prepare a memorandum to the investigative file documenting the information referred and the date and the name of the notification.

(3).   If the information being referred was derived from a CI or cooperating defendant, the agency may request use of that individual. If the decision is made to allow the CI or cooperating witness to be used by another agency, the special agent shall accompany the source of information when interviewed by the agency.



█████████████████████████████████

(4).   Upon receipt of information involving the "drug connection" of an ATF defendant alleged to use/carry firearms, the special agent shall notify DEA or the appropriate agency and allow for the establishment of a joint investigation.

(5).   The RAC/GS shall forward the original referral memorandum to the field division office. A copy of the referral shall be maintained in the group/field office investigative files.

i.   <u>Violent Crimes Identified as Within Our Purview as a Result of 18 U.S.C. § 924(c)</u>.

(1).   <u>Violent Crime</u>.

(a).   For purposes of this section of law, a crime of violence is any felony violation of Federal law that has as an element, the use, attempted use, or threatened use of physical force against the person or property of another, or that involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

(b).   Coordination must be established with other agencies that are also responsible for enforcement efforts relating to Federal crimes of violence. 



(2).   <u>State and Local Officers</u>.

(a).   State and local officers may contact ATF with information regarding the arrest of individuals for violent crimes who are in possession of firearms. █████████████████████

(b).   When evidence in an ATF case is retained by an outside agency and that evidence may be needed in Federal court,



the special agent must notify that agency in writing to hold the evidence. Upon completion of all judicial proceedings, the special agent will notify that agency in writing that they may dispose of the evidence. (See ATF O 3400.1 for guidance on the proper notification format.)

j.   <u>Federal Crimes of Violence.</u>

   (1).   **18 U.S.C. § 111** - Assaulting, resisting, or impeding certain officers or employees.

   (2).   **18 U.S.C. § 112** - Protection of foreign officials.

   (3).   **18 U.S.C. § 1201** - Kidnaping

   (4).   **18 U.S.C. § 1203(a)** - Hostage taking.

   (5).   **18 U.S.C. § 2112** - Robbery of personal property of the United States.

   (6).   **18 U.S.C. § 2113** - Bank robbery and incidental crimes.

   (7).   **18 U.S.C. § 2115** - Post office break in.

   (8).   **18 U.S.C. § 2117** - Breaking or entering carrier facilities. (May be useful in investigating interstate theft cases.)

   (9).   **18 U.S.C. § 2118** - Robberies and burglaries involving controlled substances.

   (10).  **18 U.S.C. § 2119** - Carjacking.

   (11).  **18 U.S.C. § 844(f)** - Arson

k.   <u>Definitions for purposes of 18 U.S.C § 924(c).</u>

   (1).   <u>Firearm</u> - Any weapon including a starter gun that is designed to or can be readily converted to expel a projectile by the action of an explosive, the frame or receiver of any such weapon, any firearm muffler or firearm silencer, or any destructive device. ███████

   (2).   <u>Drug Trafficking Crime</u> - Any distribution, manufacture, or importation of any controlled substance that constitutes a felony violation under the Controlled Substances Act (21 U.S.C. 801 et. seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et. seq.),. or the Maritime Drug Law Enforcement Act (46



U.S.C. App. 1901 et. seq.). (18 U.S.C. § 924(c) (2).)

(3).   <u>Distribute</u> - Delivering, other than by administering or dispensing a controlled substance, as defined in 21 U.S.C. § 802(11).

(4).   <u>Manufacture</u> - (21 U.S.C. § 802) The production, preparation, propagation, compounding, or processing of a drug or other substance either directly or indirectly by extracting from substances of natural origin, by independent means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. ███████████████████████ ████████████████████████████████ State or local law by a practitioner as incident to his/her administration, or dispensing of such drug or substance in the course of his/her professional practice. The term "manufacturer" means a person who manufactures a drug or other substance (21 U.S.C. § 802(15)).

(5).   <u>Importation</u> - With respect to any article, any bringing in or introduction of such article into any area, whether or not such bringing in or introduction constitutes an importation within the meaning of the tariff laws of the United States, as defined in 21 U.S.C. § 951(a)(1)

(6).   <u>Controlled Substance</u> - A drug or other substance or immediate precursor that is included in schedules I, II, III, IV, and V of 21 U.S.C. § 802.

(7).   <u>Schedules of Controlled Substances</u> - Refer to 21 CFR 1308.11 et seq. for list of controlled substances.

(8).   <u>Violent Crime</u> - Any Federal crime of violence.

(9).   <u>Statutes relating to Federal Drug Trafficking Violations.</u>

    (a).   21 U.S.C. § 841 - Unlawful manufacture and distribution of controlled substances.

    (b).   21 U.S.C. § 952 - Unlawful importation of controlled substances.*

53.   <u>THE 18 U.S.C. 4 924(e) INVESTIGATION.</u>

a.   The most effective approach to this statute is through coordination with



State and local authorities in identifying potential targets.

b.   Coordination with the local AUSA is advisable to determine his/her willingness to seek enhanced sentencing of defendants under this statute.

c.   A person must be convicted under 18 U.S.C. § 922(g) before the enhanced sentencing provisions of 924(e) are applicable.

## 54.   DUAL PROSECUTION.

ATF special agents working closely with State/local authorities present a situation requiring clarification. In recommending cases for Federal prosecution, bear in mind the Department of Justice's dual prosecution policy. This policy precludes the initiation or continuation of a Federal prosecution following a State prosecution for substantially the same act or acts unless there is a compelling Federal interest. While the crimes committed may appear distinct (e.g., a State narcotics violation and a Federal firearms violation), they may be subject to this policy. In any investigation where this situation may exist, the case agent will advise the AUSA of the situation as soon as possible and allow the AUSA to make a determination.

## 55.   REPORTING PROCEDURES.

Reporting statistics for the Achilles Program require that a facsimile message be forwarded from the reporting field division SAC to the Chief, Firearms Enforcement Division, when sentencing occurs. In order to properly capture all pertinent sentencing and investigation information, a standard reporting format for all Achilles sentencing reports will be used. In addition, this message shall include the name(s) of the defendant(s), charges for which the defendant(s) were convicted and sentenced, and the date and location (judicial district) of sentencing, under a caption entitled "SYNOPSIS." A brief overview of the overall investigation that culminated in the sentencing and a listing of all of the defendant's prior felony convictions and/or criminal reputation shall be listed under a caption entitled "NARRATIVE." Sentencing information must be broken down by the length of time sentenced in months for each defendant and for each charge. Sentencing of multiple defendants in the same



investigation may be reported on one message. Only sentencing information directly relating to the charge of 18 U.S.C § 924(c) and 924(e) needs to be reported via this format. (See exhibit 4-1 for an example.) Each field division office is responsible for faxing all "ACHILLES SENTENCING" facsimile messages to the Chief, Firearms Enforcement Division.

## 56.   INFORMATION DEVELOPMENT.

The Achilles Program offers a unique opportunity to gather and develop information/ intelligence on the most violent and active armed career criminals and armed drug traffickers in American society. In order to maximize the potential for gathering this intelligence and enhance other assets unique to ATF the following shall be accomplished:



(a). ███████████████████████████
████████████████████████████
████████████████████████████
██████████ Achilles defendant firearms will add important
information to the ██████████████ trafficking data
████████████████████████████

(b). ██████████████████ Achilles defendants should be
Mirandized and interviewed.
████████████████████████████

(c). AUSAs assigned to prosecute Achilles cases should be
urged to include a formal debriefing requirement/████████
████████████████████████████
████████████████████████████

(d). In those cities with laboratories having
CEASEFIRE/Integrated Ballistic Identification System (IBIS)
capabilities, all firearms recovered in Achilles cases shall be
submitted to those laboratories for spent projectile and
casing analysis.
████████████████████████████





**57 - 60 RESERVED**



61. **HEADQUARTERS PROCESSING OF APPLICATIONS AND APPLICATION INVESTIGATIONS.**

    a.    A person may apply for restoration of firearms and/or explosives privileges pursuant to 18 U.S.C., chapter 44, section 925(c) and 18 U.S.C., chapter 40, section 845(b). Persons inquiring about restoration of privileges shall be advised to write to the Associate Director (Law Enforcement), P.O. Box 784, Ben Franklin Station, Washington, DC 20044.

    b.    A person making application for restoration of privileges must submit ATF F 3210.1, Application for Restoration of Firearms and/or Explosives Privileges, in duplicate; ATF F 3210.3, Authority for Release of Information; and FD-258, Fingerprint Identification Card-Applicant (FBI), in duplicate, to the ADLE. Applications for restoration are not considered if a completed ATF F 3210.3 is not submitted by the applicant.

    c.    An application is to include the following:

        (1).    In the case of an applicant who is an individual, a written statement recommending the granting of restoration from each of three references who are not related to the applicant by blood or marriage and who have known the applicant for at least 3 years.

        (2).    In the case of an applicant under indictment, a copy of the indictment or information concerning the indictment.

        (3).    In the case of an applicant convicted of a crime punishable by imprisonment for a term exceeding 1 year, a copy of the indictment or information on which the applicant was convicted; the judgment



of conviction or record of any plea of nolo contendere plea of guilty, or finding of guilty by the court; and, in the case of an application under chapter 44 any pardon, expunction, setting aside, or other record purporting to show that the conviction was negated or that civil rights were restored.

(4).    In the case of an applicant adjudicated a mental defective or committed to a mental institution, copy of the court order or other entity that made the adjudication or ordered the commitment, any petition that sought to have the applicant so adjudicated or committed, any medical records that reflect the reasons for commitment and/or the diagnoses of the applicant, and any court order or other record that shows the applicant's discharge from commitment and the restoration of his/her mental competency rights.

(5).    In the case of an applicant discharged from the Armed Forces under dishonorable conditions, a copy of the applicant's Summary of Service Record (DD Form 214), Charge Sheet (DD Form 458), and final court-martial order.

(6).    In the case of an applicant who has renounced his/her U.S. citizenship, a copy of the formal renunciation of nationality executed before a diplomatic or consular officer of the United States in a foreign state or an officer designated by the Attorney General when the United States was in a state of war.

d.    Upon receipt of the completed ATF F 3210.1, ATF F 3210.3, and FD-258, the ADLE reviews the ATF F 3210.1 for disabilities that are not susceptible to restoration. If these disabilities are present, the ADLE prepares a letter for the Director's signature which advises the applicant that restoration cannot be granted.

e.    For the remaining eligible applicants, the ADLE has ▮▮▮▮ and ▮▮▮▮ queried. Criminal history record checks are made through ▮▮▮ and/or through submission of fingerprint cards to the FBI for each eligible applicant. The ADLE has each applicant's name queried through the U.S. Secret Service intelligence files.

f.    The ADLE determines, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ or in the case of an application under section 925(c), where there has been a pardon, expunction, setting aside, or restoration of civil rights and the applicant is not ineligible to receive or



possess any type of firearm under the law of the jurisdiction where the proceedings were held. An application for restoration received from such a person is returned with a letter advising the applicant that he/she is not under disabilities.

g.    The ADLE determines, when possible, if the person making application is on probation or parole. If so, the applicant is notified that restoration cannot be granted while he/she is under the supervision of the court, unless a **COMPELLING NEED** can be shown. Mitigating circumstances that would allow examination of *the application while the applicant is under parole or probation include: persons who require a firearm for his/her CURRENT livelihood; e.g., federally licensed firearms dealers, police officers, security officers, trappers, hunting guides, etc. Additionally, *applications for restoration are not considered for 2 years from the date of termination of parole or probation, unless a **COMPELLING NEED** can be shown. Persons desiring restoration in order to go hunting or to teach their family members firearms safety do not fall under the definition of a **COMPELLING NEED.** Most persons on probation or parole are required to adhere to all Federal, State, and local laws and regulations as conditions of their probation or parole under threat of immediate revocation and possible imprisonment. A 2-year evaluation period after the termination of probation or parole is to be utilized by the investigating special agent in order to assess the actual rehabilitation of the applicant.

h.    The application for restoration under chapter 40 or 44 is also reviewed to determine if the applicant is, or may be, subject to a State law that would prohibit possession of explosives or firearms. (See ATF P 5300.5, State Laws and Published Ordinances (Firearms).) On the basis of public interest, restoration under chapter 44 is denied an applicant who cannot possess any type of firearm in his/her State of residence. No investigation is initiated when it is clear that the applicant is subject to a total ban on possessing firearms. The same is true with respect to restoration applications under chapter 40. Applications submitted by persons subject to a partial ban are forwarded for completion.

i.    If, after the preliminary examination, the ADLE determines that an application investigation is required, an ATF F 1325.19, Assignment Control, is prepared by the Firearms Enforcement Branch. The form reflects the title of the investigation, the investigation number assigned by the Firearms Enforcement Branch, and a 90-day due date. The SAC, Firearms Enforcement Branch, forwards the assignment control form, two copies of the application, the original ATF F 3210.3, and any necessary



supporting documents to the SAC of the field division in which the applicant resides. The ADLE also requires that a TECS entry for the new applicant be made.

j.     The ADLE transmits the completed report of investigation and his/her recommendation, along with a letter for the applicant, to the Director for signature. The letter advises the applicant of the decision to grant or deny restoration. The appropriate TECS modification is then made.

62.    <u>FIELD PROCESSING OF APPLICATION INVESTIGATION</u>.

a.     The application is assigned to the field division in whose jurisdiction the applicant resides and is not transferred to another field division without authorization from the SAC, Firearms Enforcement Branch. The field division SAC maintains the ATF F 1325.19 in a tickler file to ensure compliance with the 90-day due date assigned by Headquarters (HQS). A separate due date, within the timeframe assigned by HQS, may be assigned by the SAC. The application package is then forwarded to the appropriate field office (FO) for investigation. A copy of the applicant's ATF F 3210.1, ATF F 3210.3, the FBI report, and any other available information is furnished to the special agent. The special agent obtains the facts concerning the circumstances surrounding the applicant's disability and any facts relating to his/her reputation or character. The facts are obtained to enable the Director to establish, to his/her satisfaction, that the circumstances of the applicant's conviction, record, and reputation indicate that he/she is not likely to act in a *manner dangerous to public safety and that the granting of the restoration is not contrary to the public interest.

b.     The RAC/GS immediately assigns restoration investigations upon receipt of the package from the SAC. The RAC/GS is responsible for ensuring that the due date assigned by the SAC is met.

c.     The special agent determines if the applicant is subject to any State law that imposes a total or partial ban on the applicant's possession of firearms and/or explosives If the applicant is under a total ban, the investigation will be terminated.

*d.     If, at any time during the investigation, the special agent      determines that an applicant is subject to disabilities not subject to restoration, he/she



shall terminate the investigation. Upon the termination of such an investigation, the special agent shall return the file to the SAC with a closing report on ATF F 3270.2.

e.  Upon completion of the field investigation, ATF F 3270.2 will be routed through normal channels to HQS. In the event that the 90-day due date cannot be met, the SAC is to ensure that the assigned special agent prepares and submits a status report on ATF F 3270.2 to the SAC, Firearms Enforcement Branch. The narrative shall justify the delay and identify the date the field investigation was initiated, the amount of time already expended on the investigation, and the date the assignment was last worked. The closing statement shall indicate the expected completion date of the assignment. HQS requests for additional investigation will be completed within 30-days of the request date.

63.  <u>Restoration of Privileges Report Format</u>.

The special agent will obtain the facts concerning the circumstances surrounding each conviction of a felony or a crime of violence by the applicant and facts relating to his/her reputation and character. The facts obtained will be sufficient to enable the Director to establish, to his satisfaction, that the circumstances regarding the conviction and the applicant's record and reputation are such that the applicant will or will not be likely to act in a manner dangerous to public safety and that the granting of relief would or would not be contrary to the public interest. Every effort will be made to personally interview the applicant at the start and the end of the restoration investigation. The results of restoration investigations will be reported on ATF F 3270.2 and ATF F 3270.3 in the following manner:

a.  Block 1 will normally be checked "Routine." On some occasions, restoration of privileges investigations meet the criteria for being designated a "sensitive" or "significant" investigation. (See ATF O 3210.7B for a detailed description of situations meeting the sensitive and/or significant requirements.)

b.  Block 2 will be addressed to the Director, Washington, DC, on all final reports of restoration of privileges investigations, including those that are terminated early.

c.  Block 3 will contain the full name of the special agent conducting the restoration of privileges investigation and the field division to which he/she is assigned.

d.  Block 4 will contain the full name of the applicant being investigated.

e.  Block 5 will contain the HQS assigned case number. There are no



instances where the FO case number will be used to report a restoration of privileges investigation. should a restoration investigation evolve into a criminal investigation, the restoration investigation will be closed with a full explanation and a FO case number assigned to cover the criminal matter.

f.    Block 6 - the appropriate item(s) from the column will be checked.

g.    Block 7 - the appropriate LEMIS code(s) will be entered in this block. Restoration of privileges can be under the firearms program, explosives program, or both at the same time. This will be dictated by the type of restoration requested by the applicant.

h.    Block 8 - reporting special agent will check "Other" and type in "Restoration" in the space provided.

i.    Block 9 will be completed using the following statement and in the order shown:

(1).    General Statement. This statement is not identified by caption. The following statement with the applicable selections will be the general statement:

This report relates to an investigation into the merits of an application for restoration of (firearms and/or explosives) privileges as filed under (Title 18 U.S.C. chapter 44 and/or Title 18 U.S.C. chapter 40) by (applicant's full name), (mailing address), (home telephone number), and (work telephone number).

(2).    Pre-investigation Interview of Applicant. The applicant will be contacted in person and the application discussed with him/her. If possible, this contact should be conducted at the applicant's residence. In the case of a corporate applicant, the corporate official submitting the application will be contacted in person. The special agent conducting the interview will cover the following topics with the applicant:

(a).    The applicant will be asked for his/her version of the conviction(s) for which he/she is seeking restoration of privileges. This information, along with the official version(s), will be reported under the caption in paragraph (3) below.

(b).    The applicant will be asked if he/she has received or possessed any firearms and/or explosives since the date the disability was imposed. If the applicant is in possession of firearms and/or explosives, he/she will be instructed to



immediately divest themselves of same.



(c).   The applicant will be asked if he/she is taking any prescribed medication(s) in connection with a physical or mental condition.

(d).   The applicant should be advised that the nature of his/her firearms and/or explosives disabilities will be disclosed to all affected individuals.

(e).   Any omissions on the applicant's application should be determined, as well as changes of address, employer, etc. that have taken place since the date the application was filed.

(3).   <u>Conviction(s) for Which Restoration is Sought</u>. Under this caption, information surrounding the applicant's conviction(s) is reported. For all felony convictions, the sample paragraph below will be completed and a narrative of the official version and the applicant's version of the felony reported.

A certified copy of conviction will be submitted by HQS. If a certified copy of the conviction is not forwarded from HQS, a regular copy of the conviction may be obtained, or the investigating agent may obtain necessary information by telephone or through personal examination of the records. If a copy of the conviction is not obtained, list the name and title of the record keeper supplying the information:

On _____ , _____ was



            (date)                 (applicant's name)

convicted of a felony, _____, a

(type of felony)

violation of _____ in _____,

  (cite statute)        (location of court)

docket/court number _____. The applicant

(number)

was sentenced to _____.

(state sentence given)

On _____ the applicant was finally released

(date)

from prison/probation/parole.

(4).   <u>Other Arrests and Convictions</u>. When additional arrests and/or convictions are detected during the course of the investigation, a summary paragraph for each will be entered under this caption. While they may not be disabling in themselves, the total criminal activity of the applicant should be considered in making a recommendation to grant or not to grant restoration. The applicant's version of these incidents may also be included here, if known.

(5).   <u>Interviews of Character References</u>. If a character reference, neighbor, or any other person interviewed during the restoration investigation requests confidentiality, have the following caption typed immediately after the person's name in capital letters: "CONFIDENTIALITY REQUESTED."   *

The following will preface each interview narrative:

On _____, _____, _____,

(date)       (name)     (vocation)

at _____, _____,

(address)         (telephone)

was interviewed. Mr./Mrs./Ms. _____, advised

(name)



(text will include relationship and time known)

(a).　At least two of the listed character references will be interviewed, verifying their signed statements regarding the applicant. Special agents will conduct detailed interviews of each character reference in an effort to determine any evidence of the applicant's involvement with firearms, drugs, abuse of alcohol, and/or violent abusive behavior. Specifically ask references if they recommend restoration of firearms and/or explosives privileges to applicant.

(b).　At least three developed character references will be interviewed. The developed reference should not be a prior or present employer or supervisor of the applicant. If the applicant has a business or is a corporation, interviews with competitors should be conducted. Determine whether the developed references have any information regarding the applicant's involvement with firearms, drugs, abuse of alcohol, and/or violent abusive behavior. Specifically ask references if they recommend restoration of firearms and/or explosives privileges to applicant.

(c).　If the applicant is married, the spouse of the applicant should be privately interviewed, if possible, to obtain the spouse's opinion of the applicant's character. Former spouses for a period covering the last 10 years should also be interviewed regarding the applicant's character. other family members should not be interviewed unless circumstances should warrant it, as in the case of a family member who was also the victim of the applicant's criminal activities. Victims who are minors should not be interviewed. Their recommendations should be carefully weighed in view of their particular perspective. Specifically ask each person interviewed if they recommend restoration of firearms and/or explosives privileges to applicant.

(d).　All references should be interviewed in person and asked if they recommend restoration of the applicant's firearms and/or explosives privileges.

(6).　<u>Current Employment Check</u>.

(a).　Complete name, address, and type of business where applicant is employed. Interview of employer and/or



supervisor.

(b). Personnel file, if one is maintained by employer, must be reviewed.

(c). Statement as to whether or not the use of, carrying of, or access to firearms and/or explosives is required for applicant's job.

(7). <u>Employment History</u>. If applicant has been employed by his/her present employer for less than 2 years, the previous employer will be contacted and information (as outlined in paragraph 63i(6) above) obtained.

(8). <u>Neighborhood Investigation</u>. The confidentiality caption should be used for those who request their names not be used. The following will preface each interview narrative:

On _____, _____, _____,
      (date)        (name)      (vocation)
at _____, _____,
            (address)        (telephone)
was interviewed. Mr./Mrs./Ms. _____, advised
(name)
                   (text will include time known)

(a). Attempts to locate the applicant's residence(s) and interview neighbors should be made covering the last 5 years, or the period of time from the applicant's last felony conviction, or release from a penal institution, whichever is the shorter period of time.

(b). Specifically ask neighbors if they recommend restoration of firearms and/or explosives privileges to the applicant.

(c). Provide a statement as to whether the applicant's income (determined in 63i(6) and (7) above) appears adequate to support his/her lifestyle.

(9). <u>Law Enforcement Record Checks</u>. Special agents will conduct interviews of law enforcement officers in the area in which the applicant currently resides to determine if the applicant is presently under investigation for any crimes



The following will preface each interview narrative:

On _____, _____, _____,
       (date)        (name)       (vocation)
at _____, _____
          (address)         (telephone)
was interviewed. Mr./Mrs./Ms. _____, advised
(name)
(text of interview)

(a).    A record search of State, county, and local police agencies will be made covering the geographic areas where the applicant has resided for the past 5 years or since his/her last felony conviction. ████████████████████████████

████████████████████████████████████████████

(b).    The name and address of applicant will be run through the intelligence files of Federal agencies, including the U.S. Secret Service and EPIC, and State, county, and local agencies in the geographic areas where the applicant has resided during the last 5 years for any intelligence of criminal activity engaged in by applicant.*

*(c)    The applicable probation/parole officer(s) will be interviewed, if possible. A review of the file(s) will also be conducted to obtain additional information about the applicant's conviction(s). ████████████████████████████

████████████████████████████████████████████

(d).    The prosecutor, case agent, and/or arresting officer for each disabling felony will be interviewed ████████████████████

████████████████████████████████████████████

(e).    The victim, if applicable, and/or any of the applicant's criminal accomplices in the disabling offense(s) will be interviewed, if possible. Specifically ask each of them if he/she recommends restoration of the applicant's firearms and/or explosives privileges.

(10).    <u>Mental Competency</u>.

    (a).    A mental competency check will be conducted on all

⑥④

applicants. If any mental incompetency is discovered, complete facts concerning any commitment or adjudication of incompetency should be reported. Obtain documents showing the date, proceedings, name and location of the court, and present status of applicant, if discharged. If a commitment was not made by a court, show full facts incident to the commitment. If possible, obtain medical or psychiatric reports concerning the applicant's condition, progress, etc.

(b).    An interview of the applicant's psychiatrist and/or attending physician will be conducted. The special agent will request him/her to provide a letter regarding his/her recommendation of the applicant's suitability for restoration of firearms and/or explosives privileges.

(c).    If the applicant is currently committed or adjudicated mentally incompetent, the investigation should be terminated and a report will be forwarded with the documentation attached.

(d).    If no evidence is discovered, the following statement will be entered: *

";On _____, the records of _____,
          (date)                                              (agency name)
at _____, _____
                   (address)                              (telephone)
were checked by Mr./Mrs./Ms. _____,
                                                        (name)
and no evidence of mental incompetency was discovered pertaining to the applicant in this investigation."

(11).    Additional Information.

(a).    Ascertain if the applicant is/is not under any State or local disability. If the applicant is under a State or local disability, describe the type of disability and cite the law covering the disability.

(b).    Frequently, applicants indicate that they have served in the armed services. In those instances where the special agent has reason to believe that the applicant may have been convicted of a military crime or dishonorably discharged, he/she will make every effort to verify the information



65

(c).    Information developed dealing with the military service of the applicant, and/or pertinent information that does not fit any of the other captions, should be shown under this caption.

(12).  <u>Post-Investigation Applicant Interview.</u>

    (a).    The special agent will conduct a followup personal interview of the applicant to clear up any inconsistencies or conflicting information uncovered during the investigation. The applicant should be afforded the opportunity to have his/her questions answered, with certain restrictions:

        1    special agents will not speculate as to whether the application will be approved or denied.

        2    Special agents have no idea how long it will take for a final decision to be made on the application; therefore, they should not volunteer a time estimate if asked by the applicant.

        3    Information received by the special agent from interviews conducted during the investigation should not be discussed with the applicant. No information should be disclosed which might identify a confidential source.

    (b).    At a minimum, the date and place of interview will be shown under this caption.

(13)   <u>Recommendation:</u> The **ONLY** recommendation regarding the applicant's suitability for restoration of firearms and/or explosives privileges will be made by the SAC as follows:

"I do/do not recommend that the applicant's firearms and/or explosives privileges be restored."



(signature)

j.    Blocks 10, 11, and 12 will be completed by the special agent who



conducted the investigation.

k.     Blocks 13, 14, and 15 will be completed by the RAC/GS who reviewed the report.

l.     Blocks 16, 17, and 18 will be completed by the SAC who approved the report and made the recommendation in block 9.

64.   APPROVAL, DENIAL, TERMINATION, AND REAPPLICATION CRITERIA.

a.     Investigations shall be terminated and a closing ATF F 3270.2 forwarded through channels by the assigned special agent with an explanation of the reasons for termination in the following instances:

   (1).   Applicant is seeking restoration of explosives privileges under 18 U.S.C., chapter 40, section 845(b), which only provides for restoration of privileges to those persons who are convicted felons or who are under a felony indictment.

   (2).   Restoration of privileges under chapter 40 will not be granted if the applicant falls within any of the following categories:*



   *(3)   Title 18, U.S.C., section 925(c) provides that any person who is prohibited from possessing, shipping, transporting, or receiving firearms can make application for restoration of privileges. However, in the interest of public safety, restoration of privileges, under chapter 44, will not be granted if the applicant falls within any of the following categories:*





(4). If an application is forwarded to the field and the investigating special agent discovers that the applicant is subject to a State law that totally prohibits the applicant from possessing firearms and/or explosives, the investigation shall be terminated with a closing ATF F 3270.2. The ATF F 3270.2, addressed to the Director, shall completely detail the reasons and laws that prohibit the person from possessing firearms and/or explosives. Application investigations shall be completed for persons only partially prohibited from possessing firearms and/or explosives.

(5). Restoration investigations can be terminated if the investigating special agent finds the applicant unavailable for interview. The investigating agent shall attempt to contact the applicant by telephone, if feasible, at various times of the day for 2 weeks. If no contact is established, the agent shall send a certified letter to the applicant return receipt *requested, requesting that the, applicant contact the agent within 5 days of the letter's receipt. The application investigation can be terminated with a closing ATF F 3270.2 documenting the above attempts to contact the applicant.

b. SACs are to ordinarily recommend ███████

(1). If, in the case of an applicant for restoration of explosives privileges, the applicant is under another Federal disability; e.g., fugitive from justice. Title 18 U.S.C. section 845(b) pertains only to applicants who have been indicted for or convicted of a crime punishable by imprisonment for a term exceeding 1 year.

(2). If the applicant is still imprisoned.

(3). If the applicant is still on probation or parole.

(4). If the applicant's final and complete release from prison, parole, or probation arising from conviction is less than 2 years prior to his/her application.

(5). If the applicant is a recidivist, unless at least 10 years have elapsed since the applicant's last conviction or imprisonment, and there is no indication that the applicant might return to criminal activities.



(6).   If the applicant's record and reputation are such that a reasonable doubt exists as to whether the applicant can possess a firearm and/or explosive without a likelihood of acting in a manner dangerous to the public safety or that the granting of his/her restoration of privileges would be contrary to the public interest.

(7).   If the applicant's disabling conviction was for a violent crime, sex offense, serious drug offense, or for violation of the Federal firearms laws, a complete investigation will be done unless other factors are discovered that support termination of the investigation. The recommendation for approval for a restoration applicant in one of these categories must be based on a thorough investigation establishing the following:

    (a).   The nature of the crime, the facts and circumstances surrounding the crime, █████████████████████████████████████████

    (b).   Substantial evidence of rehabilitation, including positive evidence that the applicant has become a responsible, law-abiding citizen who will not return to criminal activity is evident.

    (c).   There is no indication of transgressions, ████████████████████

(8).   If the applicant knowingly made a false statement of a material fact in the application.

    (a).   Title 18 U.S.C. sections 842(a)(2) and 924(a) make it an offense for any person to knowingly make false statements or representation in applying for restoration of privileges under the provisions of 18 U.S.C. chapter 40 or chapter 44.

    (b).   If, during the course of the investigation of the merits of the application the special agent uncovers evidence that the applicant knowingly made a false statement of a material fact, such evidence shall be included in the report.

*c.   SACs are to ordinarily recommend granting restoration of privileges if the offense for which the applicant was convicted or the degree of participation therein ████████████████████████████████████████████



d.     If, during the conduct of the application investigation, the applicant decides to withdraw the application, his/her reapplication for restoration within a period of 1 year from the date of withdrawal would not ordinarily be accepted. Withdrawals are accomplished by obtaining a signed and dated letter or affidavit from the applicant and forwarding the withdrawal, along with a closing ATF F 3270.2, through channels to HQS.

*e.     If an application for restoration is denied by the Director, the reapplication within a period of 2 years from the date of denial          would not ordinarily be permitted.*

65.  EFFECTS OF PARDONS, THE YOUTH CORRECTIONS ACT, FEDERAL JUVENILE DELINQUENCY ACT. EXPUNCTIONS, AND RESTORATION OF CIVIL RIGHTS PROCEEDINGS ON RESTORATION APPLICATIONS.

a.     Presidential Pardons. Under 27 CFR section 178.142, a pardon granted by the President of the United States regarding a conviction for a crime punishable by imprisonment for a term exceeding 1 year shall remove any disability that otherwise would be imposed by the provisions of this part with respect to that conviction.

(1).     Proclamations 2676 (60 Stat. part 2, 1335) and 3000 (67 Stat. c.23) grant a general pardon to certain persons who served in the Armed Forces during a specified period of World War II and the Korean War. The person must have been discharged or separated from this active duty under honorable conditions. The pardons granted by the proclamations apply only to Federal convictions for crimes committed prior to entry on qualifying active duty, except on qualifying active duty, except for the crime of impeachment and convictions for violations committed during active duty in the Armed Forces. To qualify for the pardons granted by these proclamations, a person must have served on active duty for a period of 1 year or more, and part of this service time must come within the dates prescribed by the proclamation. The dates are as follows:

(a).     World War II: July 29, 1941, to December 24, 1945

(b).     Korean War: June 25, 1950, to December 24, 1952

(2).     In addition to paragraph 65(a)(1) above, Proclamation 4483 (42 Fed. Reg. 4391 (1977) grants full, complete, and unconditional



pardon for all persons who may have committed and were thereafter convicted (irrespective of the conviction date) of any offense between August 4, 1964, and March 28, 1973, in violation of the Military Selective Service Act. All persons convicted of or who may have committed any offense that involved force or violence in violation of the Military Selective Service Act and/or connected with duties or responsibilities arising out of employment as agents, officers, or employees of the Military Selective Service System are not pardoned under this proclamation.

b.   <u>Governor's Pardons and Expunction of State Convictions</u>.

   (1).   <u>Explosives</u>. A Governor's pardon or expunction of a State conviction does not remove explosives disabilities imposed by chapter 40 upon persons having been convicted of a felony.

   (2).   <u>Firearms</u>. A pardon granted by the Governor of a State or other State pardoning authority with respect to a conviction or an expunction of a State conviction removes any disability which was imposed by the provisions of chapter 44 on the convicted person unless:

      (a).   The pardon or expunction expressly provides that the person may not ship, transport, possess, or receive firearms.

      (b).   The person is prohibited by the law of the jurisdiction in which the criminal proceedings were held from receiving or possessing any firearms.

c.   <u>Restoration of Civil Rights</u>.

   (1).   <u>Explosives</u>. A restoration of civil rights does not remove explosives disabilities imposed by chapter 40 upon persons having been convicted of a felony.

   (2).   <u>Firearms</u>. A person's Federal firearms disabilities under chapter 44 will be removed only pursuant to a "restoration of civil rights" if the person lost civil rights in the State in which the person was convicted and such rights were restored under a State restoration statute, either automatically or by affirmative action imposed by a court, board, or other authority AND the person is not otherwise prohibited by the law of that State from receiving or possessing firearms. Also, a "restoration of civil rights" requires the restoration of ALL civil rights, excluding de minimus rights such as the right to



hold an occupational license. If the person did not lose any civil rights or firearms rights as a result of the conviction or the State has no procedure for restoration of these rights, Federal firearms disabilities may only be removed by obtaining restoration from ATF. In those States where restoration of firearms rights is automatic e.g., the lapse of a prescribed period of time, a permit is required to receive or possess firearms which may be withheld because of the prior conviction or the circumstances thereof, the person's Federal firearms disabilities would not be removed until the permit is obtained.

d.  <u>Federal Youth Corrections Act</u>. Under 18 U.S.C. section 5021, a person whose conviction is set aside under this act is not considered to have been convicted for purposes of Federal firearms and/or explosives laws. This applies only to convictions set aside under the Federal Youth Corrections Act (YCA). Persons whose convictions are set aside or expunged under State law will still be considered to have been convicted for purposes of Federal explosives laws. (NOTE: The YCA was repealed by the Comprehensive Crime Control Act of 1984 (pub L. 98-473). However, the repeal of the act does not change the status of those who had his/her conviction(s) set aside while that act was in force.)

e.  <u>Federal Juvenile Delinquency Act</u>.

(1).  The Federal Juvenile Delinquency Act (FJDA), 18 U.S.C. section 5031, defines a juvenile as any person who has not attained his/her 18th birthday. Juvenile delinquency is defined as a violation of the law(s) of the United States committed by a juvenile that is not punishable by death or life imprisonment.

(2).  Unless the Attorney General's discretion expressly determines otherwise, a juvenile who allegedly committed one or more acts in violation of a Federal law, not punishable by death or life imprisonment, is to be proceeded against as a Juvenile delinquent, if he/she consents to such procedure. In that event, he/she shall be proceeded against by information, and no criminal prosecution will be instituted for the alleged violation.

(3).  An individual adjudicated as a juvenile delinquent under the FJDA does not incur the disabilities imposed by the Federal firearms and/or explosives laws. For purposes of enforcing the Federal firearms and/or explosives laws, an FJDA conviction does not constitute a conviction of a crime punishable by imprisonment for a



term exceeding 1 year.

66  -  70  RESERVED

████████████████████████████████████████

71.    PURPOSE.

This chapter establishes procedures for all ATF personnel to follow when obtaining a firearms trace. The objective of this chapter is to ensure the uniform use of the National Tracing Center (NTC).

72.    BACKGROUND.

A "gun trace" is the transfer history of a firearm from the manufacturer, through the importer, and wholesale and retail dealer, to an individual. This is accomplished by proper identification of the firearm and the serial number. The NTC is equipped f or and capable of quick, nationwide access to these records. The needed information can usually be obtained very quickly due to the regulations as they relate to recordkeeping under the GCA. In October 1972, all tracing of firearms was centralized at ATF Headquarters.

████████████████████████████████████████

*73.    PROCEDURES.

All firearms trace requests are to be made in the following manner:

　　a.    ATF F 7520.5, Request for Tracing Firearms, dated September 1992, shall be used as a worksheet to record identifying and descriptive information on the firearm to be traced and to record the results of the trace (see Exhibit 6). Information in all parts of ATF F 7520.5 shall be as complete as possible and submitted in the same order as shown on the form. In all cases, the name of the special agent or other ATF official originating the trace, the field office, and the organizational code must be included in the request. Obsolete forms are not to be used, as they are not processed by the NTC.*

　　*b.    Before making the firearms trace request, the special agent MUST initiate





an inquiry with ▮▮▮ and ▮▮▮▮▮▮ inquiries are not made by NTC personnel.*

*c.    For statistical purposes, the actual originator of the trace request must be furnished. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

d.    All requests for tracing firearms shall be made to the NTC Special agents and other law enforcement officials may contact the NTC through (1) fax, (2) the TECS system, or (3) directly by an 1180011 telephone number when urgent circumstances warrant. Generally, no more than four urgent requests are accepted. Mailed trace requests must be properly documented on ATF F 7520.5 in order for each firearm to be traced. No other written form of request is honored unless a request is made in writing to the SAC, NTC.

e.    The NTC will advise the special agent, who is submitting a request, of the results of the trace. It is the responsibility of the requester to make the necessary contact with the industry in his/her area to conclude the investigation.

f.    <u>Non-ATF Law Enforcement Trace Requests</u>.

    (1).    The NTC will directly advise non-ATF law enforcement officials, who are submitting requests, of the results of EXPEDITE and ROUTINE traces. This includes those cases where police departments make EXPEDITE and ROUTINE firearms trace inquiries directly to the NTC, via the National Law Enforcement Telecommunication System (NLETS), telephone, or fax.

    (2).    The NTC will transmit, via fax, all URGENT traces, submitted by non-ATF law enforcement officials, to the appropriate field division to ensure proper notification to the requesting agency. This includes those cases where police departments make URGENT firearms trace inquiries directly to the NTC, via the National Law Enforcement Telecommunication System (NLETS), telephone, or fax. This is being done in an effort to provide an avenue for joint participation in investigative matters of jurisdictional interest to ATF.

    (3).    When transmitting an URGENT trace result, the NTC firearms tracing technician will notify the appropriate field division of the URGENT trace request result by contacting the division operations



officer, assistant special agent in charge, or special agent in charge, respectively in that order.

g.   Whenever possible, the requesting agent/officer is to personally inspect firearms to provide as complete a description as possible. In some cases, an exporter or importer's name is on a firearm instead of the actual manufacturer's name. This must be determined before a firearm can be traced. ███████████████████████████████████████████
███████████████████████████████████████████

h.   The NTC will provide, at the request of the field division SAC, the results of all non-ATF trace requests for police departments in the SAC's area of responsibility.        *

**74 - 80  RESERVED**

███████████████████████████████████████████████

### 81.   NATIONAL FIREARMS ACT (NFA) AND RELATED STATUTES.

The purpose of the National Firearms Act (NFA) is to provide strict controls over so-called "gangster-type" weapons. Those weapons are defined under 26 U.S.C. sections 5845 (a), (b), (c), (d), (e), and (f). It is based on the Federal taxing power. The act levies a special occupational tax on all persons engaged in business as an importer, dealer, or manufacturer of these weapons. It also imposes a tax on the "making" and "transferring" of such firearms. These controls are implemented by the registration requirements for these firearms

a.   Statutory Authority. 26 U.S.C. chapter 53 and 27 C.F.R. part 179. Prosecutive discretion is delegated by 26 U.S.C. section 5557(a) which authorizes agents to investigate violations and recommend prosecution where it appears warranted.

b.   Investigative Priorities. In order to implement and carry out the intent of the law, priority for investigation of alleged violations involving NFA firearms shall be assigned as specified in ATF O 3210.7B, Investigative



Priorities, Procedures and Techniques.

c.   <u>Seizure of Firearms</u>. A firearm involved in any NFA violation or the regulations issued thereunder is subject to seizure and forfeiture under 26 U.S.C. section 5872 and 18 U.S.C. section 924(d). (See Chapter A.)

d.   <u>Seizure of Vehicles</u>. Any vessel, vehicle, or aircraft used to transport, carry, convey, conceal, or possess any firearm that is in violation of any NFA provision, or the regulations issued thereunder is subject to seizure and forfeiture under 49 U.S.C. section 781(a).

82.   <u>REGISTRATION OF NATIONAL FIREARMS ACT FIREARMS</u>.

a.   <u>Amnesty Period Registration</u>. Section 207 of Title II of the GCA provides that any person who possesses a firearm, as defined in 26 U.S.C. section 5845(a), that is not registered to him/her in the National Firearms Registration and Transfer Record (NFRTR), is to register each firearm with the Secretary of the Treasury or his/her delegate during the period of November 2 through December 1, 1968.

b.   <u>Post-Amnesty Registration</u>.

(1).   Unregistered firearms in the possession of any person after the amnesty period or subsequently acquired or made by him/her in violation of the NFA cannot be registered and must be abandoned or seized. In certain nonwillful technical violations, permission to alter the weapon may be granted and the weapon removed from the firearm category of the NFA.

(2).   In the event a request to register a firearm is made by a person who, at the time, has the firearm in his/her possession, the special agent is to advise the person of ALL the following options prior to requiring him/her to make a decision as to which course to follow:

(a)   Voluntarily abandon the firearm to ATF for disposition.

(b).   Request modification of the firearm to remove it from the NFA at his/her expense.

(c).   Donate the firearm to a Federal, State, or local government agency or museum for display purposes at his/her expense. (See paragraphs 82(b)(5)(a) and 82(b)(6).)

(d).   Seize the firearm as a violation of the NFA.



(e).   Refusal by the person to comply with one of the options listed in (a), (b), or (c) above results in the seizure of the firearm by the special agent as listed in option (d) above.

(3).   In the event a request to register a firearm is not made in person (e.g., telephone inquiry) or if it is made in person but the firearm is not in his/her possession, the special agent is to advise the person of ALL the options described in paragraph 82(b)(2) above. In no instance is information relative to the registration of a Title II firearm to be given telephonically. If the person refuses to comply with options (a), (b), or (c) of paragraph 82(b)(2), he/she is to be warned that continued retention of the firearm is a violation of law and he/she may be subject to civil and criminal penalties. The refusal by the owner to voluntarily abandon, modify, or donate an unregistered firearm should not signal the initiation of an investigation unless the type of firearm he/she allegedly possesses and other pertinent facts known to the special agent dictate that an investigation is warranted.

(4).   Occasionally, a special agent can determine through an investigation that the acquisition or possession of a firearm bears no prosecutive merit. ██████████████████████████████ The agent is to note the attorney's name and the date he/she obtained the declination and is to convey this information to the case agent for inclusion in his/her report.

(5).   Occasionally, cases that lack prosecutive appeal involve a firearm proven to be of historical significance or suitable for official use.

(a).   The person in possession of the firearm may request permission from ATF to donate the firearm to a museum or historical society. In this instance, the person is to be told which organizations are entitled to receive the donation. The definition of such organizations are contained in 27 C.F.R. section 179.104, which states, "Any State, any political subdivision thereof, or any official police organization of such a government entity engaged in criminal investigations . . . .";

(b).   ATF recognizes ONLY those historical societies and museums that are an instrument of a Federal, State, or



political subdivision. A NONGOVERNMENTAL museum or historical society does not fall within this classification.

(6).   If the firearm is to be donated for display to a Federal, State, or political subdivision thereof, such as a Federal, State, or county museum or an official police organization, the following procedure is to be followed:

(a).   The firearm shall be taken into custody and ATF F 3400.1, Notice of Abandonment of Property, completed with the addition of a phrase added after the section 11. . . in order that appropriate disposition may be made thereof by the Bureau of Alcohol, Tobacco and Firearms." The additional phrase is to read "to the following recipient a State or political subdivision or approved organization." (See Exhibit 7.)

(b).   If the donation is to a State or political subdivision thereof or an official police organization, forward a copy of ATF F 3400.1 and ATF F 10 (7560.10) (Exhibit 16), Application for Registration of Firearms Acquired by Certain Governmental Entities, to the recipient advising them that they are the designated beneficiary of the donor. The recipient is to be advised to complete the ATF F 10 and file it with ATF, Firearms and Explosives Division (Compliance), NFA Branch, along with the copy of ATF F 3400.1. The NFA Branch is to notify the SAC when registration is effected by forwarding the approved ATF F 10 to the district concerned.

(c).   Upon receipt of ATF F 10, the SAC is to advise the recipient of where and when the approved ATF F 10 and the firearm can be claimed. The original and copies of ATF F 3400.1 are to be marked with the inscription:

Figure 1. Inscription

| "This firearm, registered with ATF on _____, has been donated to _____ on this date."

Signature of receiving official--date (donee) |
| --- |

(d).   If the firearm is to be donated to a FEDERAL museum or



agency, there is no requirement that it be registered. The SAC, when requesting disposition of the firearm, is to recommend it be disposed of to the recipient designated on ATF F 3400.1.

(7). If, for some reason, the Government entity refuses to accept the firearm or ATF denies approval of the donation, the special agent will inform the donor of these facts. He/she is then to execute a new ATF F 3400.1 following normal procedures. If the donor objects and refuses to execute the ATF F 3400.1, the special agent shall seize the firearm and retain it pending formal forfeiture proceedings.

(8). Any State or political subdivision or any entity of the same which is engaged in criminal investigations that acquires a firearm by abandonment or forfeiture and desires the firearm for official use must register the firearm to that State or political subdivision by filing ATF F 10 (27 C.F.R. section 179.104). The firearm shall be registered to that governmental agency "For Official Use Only" and is not subject to transfer into commercial channels.

83. **REMOVAL OF A WEAPON FROM THE "FIREARMS" NFA CATEGORY.**

a. Under 26 U.S.C. section 5845(a), the Director is authorized to remove certain firearms from the NFA that are found to be primarily collector's items and are not likely to be used as weapons.



b. When a person desires to modify an NFA weapon, he/she shall be instructed to submit the request and describe in detail the proposed modification and the reason why to the Chief, Firearms Technology Branch. The Chief, Firearms Technology Branch, will contact the SAC having jurisdiction who is to follow the below procedures.

c. Unregistered firearms to be modified and removed from the purview of the NFA are to be retained in conformance with ATF O 3400.1. They are not to be left in the custody of the possessor in the interim period, nor are they to be returned to the owner until after modification procedures are approved and modification has been completed. All arrangements and payment for the modification of the firearms are the sole responsibility of



the owner. These arrangements shall be made within a reasonable period of time after the detention. The designated licensee with whom the owner arranged the modification procedure must obtain the firearm from ATF and, after the modification is completed, the firearm shall be returned to ATF for inspection by the ATF agent charged with the custody of the firearm. If the modification is completed to the satisfaction of the ATF agent, the firearm may be returned to the owner and a receipt obtained.

d.  Complete and accurate documentation justifying removal of such firearms in the case of nonwillful violations, must be obtained. Care and discretion shall be used in selecting those nonwillful cases in which removal authorization may be warranted.

e.  Where the facts and circumstances warrant, a firearm may be removed from   the "firearms" classification under the NFA. Removals may be accomplished in one of the following manners:

   (1).  Complete destruction

   (2).  Alteration by removing the feature or features that cause the weapon to be classified as an NFA firearm.

   (3).  The modification of a device (including bombs, grenades, artillery shells) so that it no longer fits within the definition of a "destructive device" or becomes a device which the Secretary finds is not likely to be used as a weapon.

f.  Removal of objectionable features may include:

   (1).  The removal of M-16 parts, e.g., bolt carrier assembly, hammer, 3-position safety selector lever, trigger, and disconnector, or combination of those parts and auto sear from an AR-15 rifle.

   (2).  The replacement of a short barrel or addition of a permanent extension to a short barrel. Acceptable means of permanently attaching an extension to a barrel are to be listed, such as high temperature silver, solder, gas, or electric steel-seam weld. Alterations are to be made so that the overall length is not less than 26 inches and the barrel(s) is/are not less than 16 inches for rifles or 18 inches for shotguns.

   (3).  The reaming of a chamber on a pistol, for example, the reaming of an Hand;R Handy Gun. A rifled sleeve can be silver soldered or welded into the barrel so that a conventional pistol cartridge can be used, provided the original shotgun chamber is reamed out prior to



sleeving. This reaming of the chamber precludes removal of the sleeve and reuse of the weapon with a shotgun shell.

(4). Removal of the attaching lug or the welding closed of the attaching slot on certain handguns to prevent the attaching of a shoulder stock if the shoulder stock is available.

(5). Separation of the shoulder stock from the firearm and the disposition of either the weapon or the shoulder stock by sale, or otherwise, to another person.

(6). There is no restriction against possessing components of ammunition for destructive devices.

(7). Mortars and certain other destructive devices can be removed from the provisions of the NFA by the following means:

(a). Cut a hole equal to the diameter of the bore through one side of the barrel on a 90-degree angle to the axis of the bore. The hole is to be drilled in the chamber or high pressure area of the barrel.

(b). Weld the barrel to the receiver or breech ring, by means of a gas or electric steel seam weld.

(c). Weld an obstruction into the barrel so as to preclude the introduction of a round of ammunition.

g. Weapons removed from the purview of the NFA are no longer subject to any of the registration or transfer requirements of the act; they may continue to be firearms under Title I of the GCA, however.

h. Registered firearms or destructive device requests are to be treated as follows:

(1). Any person who desires to avail himself/herself of this removal privilege must submit a written request to the Director, Attn: Chief, Firearms Technology Branch. The weapon must be described fully and the proposed alterations shown. If the Chief, Firearms Technology Branch, is satisfied that the proposed alterations remove the weapon from the purview of the NFA, he/she is to approve the request and have the weapon examined by a special agent upon completion of the alteration. A special agent's report certifying that the firearm is removed from purview must be forwarded to the NFA Branch to document the NFRTR. Notification to the owner that the record has been noted should be requested in



(2).   It is to be the sole responsibility of the owner to make such modifications as are necessary and to notify ATF, so that the weapon can be examined and certified by a special agent.

84.   <u>EVIDENCE OF REGISTRATION</u>.

a.   A person who possesses an NFA firearm that is registered as required MUST be able to produce evidence of the registration.

b.   When a possessor of an NFA firearm claims it is registered to him/her but cannot produce official registration, the firearm shall be retained and a request for a record search made to determine the status of the involved firearm.

c.   A registered NFA firearm with an incorrect serial number must be brought to the attention of the NFA Branch for corrective action.

85.   <u>NATIONAL FIREARMS REGISTRATION AND TRANSFER RECORD</u>.

a.   The statute authorizes and requires that a central record be set up and maintained for registrations of firearms not in the possession or control of the United States. This central record is located and maintained in Bureau Headquarters, NFA Branch, Firearms and Explosives Division.

b.   The record contains the official data regarding lawful registrations and transfers of NFA firearms to persons or entities. An official certification from this record or an official certification in the absence of a record is admissible in the U.S. courts for evidentiary purposes under Fed R. Crim. P. 27 and Fed R. Civ. P. 44. The introduction into evidence of such certification does not require the personal appearance of a custodian of the NFA Registration and Transfer Record. For certifications of nonregistration of NFA firearms, see ATF O 5320.1, National Firearms Act Branch.

c.   The record is set up with the capability of determining if a described firearm is registered or if any firearm is registered to a specifically named party. A complete, accurate description of the firearm and/or the correct spelling of the name of the party is critical to an accurate determination of registration status.

86.   <u>NATIONAL FIREARMS REGISTRATION AND TRANSFER RECORD SEARCHES AND NFA CERTIFICATION REQUESTS</u>.



a.  **Record Searches**. The National Firearms Registration and Transfer Record (NFRTR) can be searched by name or serial number. The search can be mad( by a district office via an automated query or through a telephone request to the NFA Branch. All requests to the Branch are to be handled as routine unless otherwise specified by the requestor. A verbal response to requests will be provided and, subsequently, a copy of ATF F 7520.6, NFA Records Search, containing the results of the search is to be furnished. The copy of the records search is sufficient for a case report.

b.  **Name Search**.

   (1). For the NFA Branch to conduct a thorough name search, in addition to    the complete name (including variant spellings), the information listed below should be included:

   (a).  Date of birth.

   (b).  Aliases.

   (c).  Trade name.

   (d).  Address.

   (e).  Social security number.

   (f).  Place of business or employment.

   (2). If the result of the name search is negative, the requestor will be advised accordingly. If there is a "hit" or possible name match determined, then the requestor will be furnished with whatever information is found. By providing a complete name and date of birth, name matches can be eliminated, especially in common surnames.

c.  **Serial Number Search**.

   (1). For the NFA Branch to conduct a thorough search, the information listed below, if available, shall be included with the serial .number:



████████████████████

    (a).    Type of firearm.

    (b).    Manufacturer.

    (c).    Model.

    (d).    Caliber/gauge.

    (e).    Barrel length.

    (f).    Overall length.

    (g).    Any other identifying information.

(2).    The requestor is to be advised of the results of the search. If a record(s) is found, the information about the firearm(s), including the name of the registrant(s), will be furnished.

d.    **District Office Searches.**

    (1).    Any district office with the appropriate equipment and passwords can access the NFRTR for a name or serial number search through the DATATRIEVE procedures. Procedures and guidelines are available through the Office of Law Enforcement.

    (2).    A name search request via DATATRIEVE results in a listing of any names in the NFRTR within the boundaries established by the requestor ████████████████████████████████████████████████████████████████████████████████████████

    (3).    The serial number search request provides the same information, except the listing is of all firearms registered under the specified serial number.

    (4).    The NFA Branch must be contacted to determine if any further information is available.

e.    **Records Searches Outside Duty Hours.**

    (1).    A telephone recording system is available to accept messages



concerning routine priority record searches during nonduty hours If sufficient information is contained in the message, the search will be conducted the next business day and the results furnished. If there is insufficient information, contact will be made the next business day with the requestor.

(2).    NFA Branch personnel are available outside normal duty hours to conduct record searches that require immediate response. The duty officer may be reached by contacting the ATF Communications Center. The Communications Center then will contact the duty officer at home and forward the requestor's call. In the event of this type of request, the requestor is to expect an hour's response time.

87.    <u>CERTIFICATIONS</u>.

a.    As custodian of the NFRTR, the NFA Branch provides certifications pertaining to the registration status of a person or a firearm for use in Federal court. The certificate is made when the case is ready to go to trial. Until that time, the copy of the records search suffices.

b.    The use of the information in the certification is restricted as outlined in paragraph 88.

c.    A request for a certificate may be made by telephone to the NFA Branch. The requestor shall provide the complete name(s) of the person(s), any aliases, the information pertaining to the firearm(s), and the charge so that the certificate is correctly worded.

d.    Because of limitations in our system, we cannot certify as to the payment of the making or transfer tax or as to the filing of an application.

e.    Certifications as to payment of Special Occupational Taxes may be obtained from the Special Occupational Tax Processing Unit, P.O. Box 2655, Cincinnati, Ohio, 45201. Special Occupational Taxes paid prior to July 1, 1987, were paid to Internal Revenue Service and not ATF. Certifications covering this period must be addressed to the disclosure office of the appropriate service center.

88.    <u>DISCLOSURE OF INFORMATION</u>.

a.    The disclosure of information from the NFRTR is severely restricted by the provisions of 26 U.S.C. section 6103. Disclosure may be made only to Federal agencies and then only for official duties.



b.    All requests from Federal agencies for NFA registration information shall be handled by the district office SAC responsible for the area where the request originated. Upon receipt of requests for an NFA check, the SAC will initiate a query ████████████████████████████████████████

████████████████████████████ the SAC shall notify the requesting Federal agency. Because of the restrictions contained in 26 U.S.C. section 6103, the SAC must instruct the requesting Federal agency that disclosures to State or local agencies are prohibited.

c.    The requesting Federal agency must also provide written assurances of compliance with the safeguard requirements enumerated in 26 U.S.C. 6103(p)(4).

d.    Specifically, the requesting Federal agency must assure that it establishes and maintains a permanent system of standardized records with respect to any request. ████████████████████████████████████████

████████████████████████████████████████

████████████████████ The agency shall furnish a report to the Secretary, at such time and containing such information as the Secretary may prescribe, that describes the procedures established and utilized by the requesting Federal agency for ensuring the confidentiality of returns and return information. Finally, the requesting Federal agency must return the information (along with any copies made therefrom) upon completion of use, or otherwise make such returns or return information undisclosed, or ensure that all safeguard requirements continue to be met.

89.    <u>REFERRAL OF NFA CASES TO STATE/LOCAL AGENCIES</u>.

a.    NFA cases may be referred to State and local authorities for prosecution so long as no reference is made in the case report as to the registration status of the firearm or to a particular NFA violation; ████████████

████████████████████████████████████████

b.    In those States where registration of the firearm with the Bureau is an affirmative defense to a possession violation under State law, it is desirable that the case be referred without checking the registration status of the firearm in the NFRTR. In such a case, the State or local authorities will be advised that the registration status of the firearm has not been



determined. In those cases where the registration status is checked, the State and local authorities will be advised that the special agent is precluded by law and regulation from revealing the registration status of the firearm.

c.    Under no circumstances should a case be referred for State prosecution in a firearms possession case where the special agent has learned the subject is in possession of the NFA firearm ███████████████

## 90.    NATIONAL FIREARMS ACT OFFENSES.

Exhibit 8, National Firearms Act Offenses, provides a list of various NFA offenses. Exhibit 9, Statutes Violated--Case Report, lists the primary elements of proof. Several of the sections of the statute are listed more than once to more clearly describe the several offenses involved and define the elements of proof as to each.

## 91.    NATIONAL FIREARMS ACT INVESTIGATIONS REPORTING REQUIREMENTS.

If a person or firm who is the target of an NFA investigation is suspected by the case agent of attempting to transfer or dispose of weapons ███████████████

a.    The GS/RAC will notify the SAC. The SAC shall utilize a █████ message to notify the NFA Branch ███████████████

*b.    The notification shall be addressed to the Chief, Firearms and Explosives Regulatory Division, ATTN: Chief, NFA Branch, INFO: Special Agent in Charge, Firearms Enforcement Branch.*

c.    The notification will provide enough identifying and background data that the NFA Branch can determine the identity and license status of each person or firm involved.

d.    The GS/RAC shall utilize a █████ message to notify the NFA Branch when there is no longer a need to restrict the approval of the transfers or other dispositions of NFA weapons involved in the criminal investigation.

## 92.    EXCEPTIONS.

The National Firearms Act is generally inapplicable to Puerto Rico. This is based upon 48 U.S.C. § 734, which provides that the statutory laws of the United States have the same force and effect in Puerto Rico as in the United States, except for the Internal



Revenue Laws and 26 U.S.C. § 7701(a)(9), which includes only the States and the District of Columbia in the term "United States." However, 26 U.S.C. § 5844, which limits the importation of weapons into the United States or territories thereof, and § 5853, which concerns transfer taxes and exemptions, does apply in Puerto Rico.

**\*93.   POLICY CONCERNING REGISTERED NFA FIREARMS, WHICH ARE NOT PROPERLY IDENTIFIED.**

This situation was created as a result of the enactment of 18 U.S.C. § 922(o) that consequently led to a substantial number of NFA firearms being registered prior to the May 19, 1986, effective date ███████████████████████████████████████

   a.   Special agents who encounter an NFA weapons that does not match the description(s) on the ATF F 1, Application to Make and Register a Firearm, or ATF F 2, Notice of Firearms Manufactured or Imported, as contained in the National Firearms Registration and Transfer Record, should seize the firearm(s), and documents relating to the firearm(s), under the provisions of 26 U.S.C. § 5872 and institute forfeiture procedures as prescribed in ATF O 3400.1, Property Taken Into Bureau Custody.

   b.   However, if the circumstances surrounding the individual's acquisition or possession of the firearm(s) indicate that prosecution would not be warranted, special agents should first consider taking the firearm(s) through an abandonment procedure. ███████████████████████████

   c.   Inspectors who encounter NFA firearms that do not match the description contained on ATF F 1 or ATF F 2 should immediately refer the information to law enforcement, via telephone, and should followup this action with ATF F 5000.21, Referral of Information.\*

**94 - 100   RESERVED**



101.   <u>OBJECTIVES</u>.

The objectives of this program are to detect and prevent thefts of firearms and ammunition while in interstate commerce, to deny the criminal element potential sources of stolen firearms, and to perfect criminal cases and obtain court convictions against those individuals or groups responsible for such thefts.

102.   <u>JURISDICTION</u>.

a.     ATF derives its jurisdiction for the investigation and prosecution of thefts of firearms and/or ammunition from 18 U.S.C. § 922(j), which states, "It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowingly or having reasonable cause to believe that the firearm or ammunition was stolen." The Crime Control Act of 1990 amends the commerce element to only require proof that the firearm at some prior time moved in interstate commerce. Additionally, our jurisdiction is expanded if the interstate theft involved a violation of 18 U.S.C. § 2117, breaking or entering *of carrier facilities, and/or robbery of federally licensed premises, and the violator used or carried a firearm. These elements satisfy the definition of "violent crime" under 18 U.S.C. § 924(c).*

b.     Other Federal agencies, such as the U.S. Postal Service, USCS, and FBI, also have jurisdiction in thefts from interstate or foreign commerce.

   (1).   The U.S. Postal Service has jurisdiction in thefts from the mails.

   (2).   The USCS often has jurisdiction in thefts from shipments moving in foreign commerce.

   (3).   The FBI has jurisdiction in thefts from interstate or foreign commerce under 18 U.S.C. § 659 and other statutes.

c.     ATF may investigate thefts of firearms and/or ammunition from the mail if requested by, and in coordination with, the U.S. Postal Service. Field division SAC approval is required for such an investigation.

d.     Conflicts involved with the investigation of thefts of firearms and/or ammunition in which ATF has concurrent jurisdiction with USCS or the FBI are to be handle on a SAC-to-SAC basis. Relatively few ATF interstate



theft investigations fall within the purview of USCS laws.

e.    At a meeting of the directors of ATF and FBI, held in October 1973, it was agreed that both bureaus were to be able to conduct investigations and perfect cases involving thefts of firearms and ammunition from interstate shipments without incurring any conflict. The General Crimes Section, Department of Justice, favorably reviewed ATF's Firearms Interstate Theft Project and stated that it does not conflict with the jurisdiction provinces of the above-mentioned Federal agencies.

103.   <u>INVESTIGATIVE PROCEDURES AND REPORTING REQUIREMENTS</u>.

*a.    <u>Bureau Headquarters</u>. Within the Firearms Division, the Firearms Interdiction Program Manager (IPM), Firearms Enforcement Branch, provides oversight for the following procedures:

(1).   Theft reports from FFLs will be received either through the local ATF field office or by the Intelligence Division, National Communications Center, via an assigned toll-free number.

(2).   Upon receipt from an FFL or an interstate carrier of a report of theft, the IPM is to review the report to ensure that the data is accurate and complete.

(3).   The intelligence clerk assigns an investigation number (IN) to the investigation and enters the data from the ATF F 3310.6, Interstate Firearms Shipment Report of Theft/Loss, into              and/

(4).   After the entry of the data into        and        , a fax message is prepared by the intelligence clerk. The fax message is then reviewed and approved by the IPM notifying the appropriate field division of the theft. If the firearms reported stolen or lost are from an interstate shipment, the fax message will be addressed to the field division where the shipment originated. If the location of the theft is known, the matter shall be referred to the SAC having



jurisdiction for the area. Fax messages that identify thefts from FFLs will be forwarded to the field division having jurisdiction for the area where the dealer is located.

(5).   The IN log book, which is maintained by the intelligence clerk, contains the Headquarters IN, the name of the carrier or FFL, the date assigned, and the number of firearms involved.

(6).   Upon receipt of firearms theft-related reports from the field divisions, the IPM reviews the documents for information and forwards the reports to the intelligence clerk for inclusion in the firearms theft file.*

b.   <u>Special Agent in Charge</u>. The field division SAC is responsible for the following:

(1).   Upon receipt of notification, by fax message, of a firearms theft or loss, the SAC will initiate, if warranted, an investigation by referring the matter to the appropriate RAC/GS.

*(a)   If a reported theft is proven erroneous, the investigating special agent will report his/her findings, via ATF F 3270.2, Report of Investigation, and prepare a case summary, ATF F 3100.7, closing the investigation with a disposition of ▮ in block 11. The ATF F 3270.2 will be forwarded to the IPM requesting the reported stolen firearms to be removed from ▮▮▮ and ▮▮▮

(b).   If a theft of less than 10 firearms is verified, an investigation is not required unless the SAC determines an investigation is warranted by the circumstances.          *

(c).   A theft of 10 firearms or more requires that the SAC initiate an investigation, reporting his/her findings, via ATF F 3270.2, within 30 days.

(d).   The amount of investigative time expended is determined by the investigative leads developed. All initial case summaries, ▮▮▮ and ▮▮ entries, and removals of thefts reported under this program are performed at Headquarters.

(2).   Initial investigative activity will be reported using the assigned Headquarters IN. However, a field division IN may *be issued whenever it is deemed appropriate by the SAC. The special agent will reference the Headquarters IN in the opening paragraph of the



ATF F 3270.2 in order that cross*referencing of reports may occur.

(3). The SAC will receive from the Systems Support Branch quarterly reports of investigations assigned to his/her *division

(4). In cases where a field division receives information of firearms thefts directly from FFLs, carriers, consignees, or shippers, the division will accept the report.

    (a). An ATF F 3310.6 shall be requested as a followup from the reporting party when the theft is from an interstate shipment.

    *(b) When the theft/loss is reported directly to the field division from an FFL, the field division may provide a report to the IPM or refer the caller to the toll-free telephone number to report the theft/loss.*

    (c). Theft reports taken by the field divisions are to be forwarded to the IPM, who will assign an IN number upon receipt.

(5). Reports of investigations shall be reviewed by the SAC for completeness and inclusion of the Headquarters IN and forwarded to Bureau Headquarters, Firearms Enforcement Branch, Attn: Firearms Interdiction Program Manager.

c. Special Agent. The special agent is responsible for the following:

  *(1) Upon being assigned an investigation of a theft or loss of firearms or ammunition, the special agent shall substantiate that the firearms were actually stolen.

    (a). If suspects are identified, the agent will conduct an investigation in an effort to perfect a criminal case against those responsible for the theft.

    (b). If the theft cannot be substantiated, the special agent will report his/her findings via ATF F 3270.2, prepare ATF F 3100.7 and close the investigation with a disposition of 01 in block 11, and request, via ATF F 3270.2, that the firearms



be removed from ████ and ████

(2).   Upon receipt of notification of an ████ "hit" by another agency, the special agent in the division where the firearm was discovered shall contact the locating agency within 3 BUSINESS DAYS to ascertain the circumstances surrounding this recovery.

(3).   The recovering field division shall be notified of the recovery by the Headquarters Communication Center, via fax message.

(a).   An informational fax message shall be sent to the field division where the firearm was initially reported stolen, if not the same as the recovering division.

(b).   If it appears that a violation of the GCA occurred, the special agent shall substantiate the findings ████████████ ████████████████████████████ ████████ The recovering law enforcement agency will be notified that the firearm is not needed by ATF, and the firearm may be disposed of in accordance with their established policy.

1   In each instance, the agent shall prepare an ATF F 3270.2 outlining the investigative activity and results.

2   This ATF F 3270.2 will be forwarded to the Headquarters IPM. A copy of the ATF F 3270.2 shall also be forwarded to the attention of the SAC in the field division where the theft was initially reported. The ATF F 3270.2 shall contain the Headquarters IN.

*(4)   The local police department has jurisdiction in all criminal activities occurring within their geographic territory. Therefore, if the local police department was not previously notified, the special agent is to notify them of reports of thefts or losses received by ATF from FFLs and carriers.

(5).   Special agents are often contacted directly by individuals wishing to report a theft or loss of firearms from an interstate shipment. The agent shall take the information and provide the individual with an ATF F 3310.6 where an interstate theft is involved and request that the information be mailed directly to the IPM. In the case of a theft from an FFL, the agent will take the information and provide a detailed report, via ATF F 3270.2, to the IPM. The IPM will assign



an IN, which will be cross referenced in any future reports.   *

(6).   Reports of investigations shall be completed within assigned due dates and shall contain the Headquarters IN.

**\*104.   FIREARMS TRAFFICKING.**

a.   Objectives. The objectives to be achieved through firearms trafficking investigations are to identify and eliminate illegal sources of firearms, deny access to firearms by the criminal element, perfect criminal cases and obtain court convictions against those individuals and groups responsible for the illegal trafficking in firearms. *

b.   Jurisdiction.

(1).   The GCA is the recognized definitive legislation       that is directed toward firearms-related violence       and illegal firearms trafficking. In the preamble of the GCA, Congress clearly *stated that this Nation's policy was "to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence." ATF derives its jurisdiction for the investigation and prosecution of firearms trafficking violations from the GCA, including amendments.

(2).   Many State and local agencies have enacted legislation aimed at limiting access to firearms by prohibited persons and those who would profit by circumventing these prohibitions. Frequently, however, the firearms are trafficked into these areas with strict gun control laws.

c.   Investigative Procedures and Reporting Requirements.

(1).   Bureau Headquarters. Within the Firearms Division, the IPM provides oversight for the following procedures:

(a).   The IPM will receive, from the Intelligence Division, Systems Support Branch, the quarterly statistical reports

(b).   The IPM reviews the reports to ensure the data is accurate and complete. The reports will then be transmitted to the SAC of the field division having responsibility for the area indicated on each report.



identified and transmitted along with this report.

(2). <u>Special Agent in Charge</u>. The field division SAC is responsible for the following:

    (a). Upon receipt of the quarterly statistical report, he/she will review it ▌

    (b). The SAC will initiate, if warranted, an investigation by referring the matter to the appropriate RAC/GS.

(3). <u>Special Agent</u>. The special agent is responsible for the following:

    (a). When assigned or upon initiating a firearms trafficking investigation, the special agent will make an effort to perfect a criminal case against those responsible for the illegal firearms trafficking.

    (b). The special agent will ensure that all reports are complete and accurate including ATF F 3100.7, Field 16, identifying firearms source State and/or country involved in the trafficking investigations. ▌ State may not be known at the time the investigation is initiated. This information will be reported as updated information when acquired, on the ATF F 3100.7 and ATF F 3270.2 ▌

**105 - 110 RESERVED**

**121. <u>PURPOSES OF THE STATUTE</u>.**

**The main purposes of the act are to:**



    a.      Control the import and export of defense articles and services.

    b.      Provide foreign policy guidance to persons of the United States involved in the export and import of these articles and services.

    c.      Designate those articles and services on the U.S. Munitions List.

    d.      Disseminate regulations for the import and export of those items on the list.

    e.      Regulate manufacturers, exporters, or importers of defense articles and services.

    f.      Provide penalties for those who willfully violate the provisions of the act and guidance for seizure and forfeiture of articles in violation of the act.

## 122.  STATUTORY AUTHORITY.

The Arms Export Control Act of 1976, as amended, is codified as 22 U.S.C. section 2778 and is implemented in 27 C.F.R. part 47. ATF administers only the import provisions of the act.

## 123.  OFFENSES RELATING TO THE ACT.

Exhibit 10, Arms Export Control Act Offenses, provides a charge sheet of various offenses under the act. Exhibit 11, Arms Export Control Act, As Amended, Offenses, provides the elements of proof.

## 124.  SEIZURE AUTHORITY.

Merchandise imported into the United States in violation of the act, or the value thereof, shall be forfeited to the United States under the authority of 18 U.S.C. section 545. Forfeiture is not dependent upon conviction. The geographical term "United States" includes the 50 States, the District of Columbia, Puerto Rico, and its possessions.

125 - 130 RESERVED



131.   PROGRAM DESCRIPTION.

The International Traffic in Arms (ITAR) Program is a continuing endeavor by ATF to combat the illegal movement of firearms, explosives, and ammunition in international traffic. These firearms, explosives, and ammunition are smuggled from the United States and used throughout the world to commit acts of international terrorism, to subvert restrictions imposed by other nations on their residents, and as a commodity in organized crime and narcotics-related activities. The ITAR Program is an aggressive commitment and effort to neutralize the illegal movement of firearms, explosives, and ammunition out of the United States.

132.   PROGRAM OBJECTIVES.

ATF recognizes that its jurisdiction is limited and that its activities may often be merely supportive of other Federal agencies. Within the Bureau's authority, the objectives of the ITAR Program are to:

a.      Sensitize all sources of criminal intelligence to the need for continuous information relative to illegal international trafficking in firearms, explosives, and ammunition.

b.      Establish close personal liaison with foreign, Federal, State, county, and local law enforcement agencies, particularly those most likely to encounter information relative to illegal international trafficking, e.g., U.S. Customs Service, Federal Bureau of Investigation, and Drug Enforcement Administration intelligence, terrorists, and narcotics units.

c.      Debrief information sources and report relative information on ATF F 3270.2 and/or ATF F 3270.1, Personal History/TECS Input.

d.      Identify and investigate persons, licensees, and unlicensed dealers whose acts relate to the illegal movement of firearms, explosives, and ammunition in international traffic.

e.      Utilize the Bureau's capability in tracing firearms and explosives to develop investigative leads for the benefit of Federal, State, county, local, and foreign law enforcement agencies:

   (1).   By tracing firearms and explosives relating to this program that are recovered in the United States.

   (2).   By tracing firearms and explosives referred to ATF when recovered in foreign countries.

f.      Develop criminal cases against traffickers identified as foreign nationals who are acquiring firearms for illegal exportation, either in person or



through U.S. citizens. ███████████████████████████

██████████████████████████████████████████████

g.   Develop criminal cases against individuals who have been identified ████
     ████████████

h.   Cooperate with foreign law enforcement officials in developing cases to be
     tried in foreign countries.

i.   Refer nonjurisdictional violations and information to the appropriate
     agencies.

## 133.   REPORTING PROCEDURES AND RESPONSIBILITIES.

All special agents involved in investigations of international trafficking of firearms,
explosives, and ammunition are to be aware of the importance of properly reporting
ITAR information to ensure that it is accurately tracked ████████████████

a.   When preparing an ATF F 3270.2 for an ITAR investigation, the special
     agent is to identify it as such by checking the proper box in section 8 of
     the form.

b.   When preparing an ATF F 3100.6 to open an ITAR investigation, the
     special agent shall enter Bureau project code ██ in column ██

c.   When preparing ATF F 3270.1, Personal History/████ Input, for an ITAR
     suspect, the special agent shall include the applicable profile codes in
     block ███ of the form.

d.   When completing ATF F 3100.7, Investigative Case Summary, for the
     submission of an ITAR case report, the special agent shall include the
     profile code for international trafficker ██████████████████

e.   When a foreign national is arrested or detained as a result of an ATF
     investigation, including ITAR investigations, the SAC is responsible for
     immediately informing the ADLE of this action. ████████████████

██████████████████████████████████████████████

**134 - 140  RESERVED**



141. <u>BACKGROUND</u>.

Firearms-related violence is one of this Nation's primary concerns. ATF, in response to this problem and the fact that illegal firearms trafficking investigations often exceed the jurisdictional boundaries' expertise and resources of other State, local, and Federal agencies, employs a comprehensive national firearms trafficking effort designed to impact armed violent crime rates by reducing the illegal supply of firearms available to violent criminals, gang offenders, and juveniles. This effort complements ATF's long standing efforts to reduce armed violent crime through direct investigation and prosection of armed violent criminals. Striking a balance between the two approaches will best serve both efforts. As information from the firearms recovered during the arrests of armed violent criminals and gang offenders is entered into Project LEAD (the illegal firearms trafficking information system), the illegal firearms trafficking effort will increase in effectiveness. Conversely, as the illegal firearms trafficking efforts becomes more effective, the availability of secondary market firearms to the violent criminals, gang offenders, and juveniles will be reduced.

142. <u>OBJECTIVES</u>.

The objectives of the illegal firearms trafficking project are to reduce armed violent crime rates by imprisoning those illegal firearms traffickers who make firearms available to violent criminals, gang offenders, and juveniles. This is accomplished through the use of the Bureau's unique assets (Project LEAD, the NTC, firearms licensing, CEASEFIRE, firearms import information, inspection information, and the National Firearms Registration and Transfer Record) to focus efforts and limited resources in areas where the maximum impact can be achieved. This includes the identification; investigation; and recommendation for prosecution of those individuals who are illegally supplying firearms to violent criminals, gang offenders, and juveniles as well as interdiction efforts.

143. <u>DEFINITIONS</u>.

    a.    <u>Acquisition/Disposition Log</u>. A log or bound book maintained by all Federal firearms licensees (FFLs) which records the receipt (date and source) and disposition (date and transferee) of all firearms as well as a complete description of the firearms.

    b.    <u>ATF Form 3310.4, Multiple Sales Report</u>. A form completed by all FFLs whenever they transfer two or more handguns within a 5-business day



period to the same individual. The form contains full identifying information concerning the purchaser, the firearms, the date of transfer, and the FFL. FFLs are required by Federal law **(18 U.S.C. § 923(g)(3))** to forward this form to ATF and the designated chief law enforcement official in that area.

c. <u>ATF Form 4473, Firearms Transaction Record</u>. A form maintained by all FFLs that is completed to document the transfer of a firearm(s) to an unlicensed individual.     The form is completed by both the purchaser and the FFL and     contains full identifying information about the purchaser,     the firearm, the date of transfer, and the FFL number.

d. <u>ATF Form 5300.35, Statement of Intent to Obtain a Handgun(s)</u>. A form maintained by all FFLs to document a handgun purchaser's personal identifying data to be used for a criminal records and background check where the chief law enforcement officer of an area chooses to do so.

e. <u>Comprehensive Tracing</u>. This is the systematic tracing of ALL recovered crime guns in a geographic area (e.g., town, county, or metropolitan area). Comprehensive tracing allows for thorough crime gun trend analysis and firearms trafficking pattern analysis.

f. <u>Crime Gun</u>. For purposes of firearms tracing, a crime gun is any firearm that is illegally possessed, used in a crime, or suspected to have been used in a crime. This may include firearms found abandoned if it is suspected they were used in a crime or illegally possessed.

g. <u>Engaged in the Business</u>. A person who devotes time, attention, and labor to dealing (manufacturing/importing/ repairing/pawnbrokering) firearms as a regular course of trade or business with the "principal objective of livelihood and profit" through that labor. This does not include occasional sales/purchases of firearms for enhancement of a personal collection or for hobby. **(Defined in 18 U.S.C. § 921(a)(21).)**

h. <u>Federal Firearms Licensee (FFL)</u>. An FFL is any person, partnership, or business entity holding a valid license issued by ATF under the authority of 18 U.S.C. chapter 44, that allows them, to "engage in the business" of dealing, manufacturing, importing, repairing, or pawnbrokering firearms. By law, all FFLs must keep records of their firearms transactions.

i. <u>Firearms Dealer</u>. Any person (licensed or unlicensed) "engaged in the business" of dealing, manufacturing, importing, repairing, or



pawnbrokering firearms/ ammunition. **(Defined in 18 U.S.C. § 921(a)(11).)**

j.   Firearms and Explosives Licensing Center. Located in Atlanta, Georgia, the ATF Firearms Licensing Section receives and processes requests for FFLs and contains information on all active licenses, active license addresses, responsible persons associated with the license, doing business as (d.b.a.) names, corporate names, licensee telephone numbers, FFL photographs, and fingerprints for recent applicants or renewals, etc.

k.   Firearms Trace. The tracking of a recovered crime-related firearm's history from its source (manufacturer/ importer) through the chain of distribution (wholesaler/ retailer) to the individual who procures the firearm. Firearms trace requests may be submitted to the NTC on an ATF Form 3312.1, Crime Gun Information Referral/Request Form.

l.   Firearms Trafficking Corridor. A route of transportation that is frequently used by illegal firearms traffickers to transport/move firearms from a source area to a market area.

m.   Firearms Trafficking Gateway. A border crossing point, port of entry, airport, busport, or train station that is frequently passed through by illegal firearms traffickers during their transportation of firearms from a source area to a market area.

n.   Firearms Trafficking Study. A study and analysis of firearms information pertaining to recovered crime guns in a specific geographic location, over a set period of time, to determine trends and patterns in firearms crimes, firearms recovery locations, and illegal firearms trafficking indicators that can be used to formulate enforcement strategies and focus resources.

o.   Flea Market. A one-time or recurring event that provides a public exhibition, forum, or market place for general merchandise, second-hand articles, antiques, and other miscellaneous commercial goods where the primary purpose is the sale of merchandise other than firearms but whose merchandise may include new and/or used firearms, ammunition, and firearms accessories.

p.   Gun Show. Any exhibition of firearms, ammunition, and accessory items



at a fairground, convention hall, or similar setting (e.g., local armory). Such shows are usually publicized as gun shows or are in connection with some other lawful activity such as a coin and gun show. The shows may be conducted under the auspices of a commercial venture or formalized by the national, State, or local associations/organizations of firearms collectors or individuals. They are often open to the public, and an admission fee may be charged. Gun shows generally benefit those concerned by providing them with a common ground for the display of firearms, ammunition, and accessories in exchange for trade, purchase, or sale; or they may be devoted to the competitive or other sporting use of firearms in the community. A flea market is not a gun show. **(Defined in 27 CFR § 178.100 (b).)**

q.   Illegal Firearms Diversion. The movement of a firearm(s) from the legal to illegal marketplace, through an illegal method or for an illegal purpose. This definition includes international; interstate and intrastate firearms trafficking; stolen firearms cases; illegal NFA weapon transfers; straw purchases; unlicensed transactions; and unrecorded or misrecorded sales by a licensed manufacturer, retailer, or wholesaler/ distributor.

r.   Illegal Firearms Trafficking. Illegal firearms diversion that is done for purpose of profit, power, prestige, or supplying firearms to the criminal element or juveniles.

s.   Illegal Firearms Trafficking Indicator. A unique factor or circumstance that is believed to be associated with illegal firearms diversion or trafficking.

████████████████████████████████████████████████

t.   Inspection Warrant (FFL). An inspection warrant is necessary in those instances when an FFL refuses to permit a lawful inspection of his/her business. An inspection warrant is obtained under ATF's statutory authority contained in the Gun Control Act (GCA) **(18 U.S.C. § 923(g)).**

u.   Market Area. An area where firearms acquired in a source area are unlawfully marketed and/or transferred to the criminal element/prohibited persons/juveniles. Factors that foster a market area include lack of FFLs/flea markets/gun shows in an area and strict or thorough State/local gun laws that limit firearms possession and availability. (NOTE: A MARKET AREA'S SOURCE MAY BE IN THE SAME



CITY/COUNTY/STATE OR IT MAY BE IN A DIFFERENT
CITY/COUNTY/STATE. FIREARM SOURCES/MARKETS ARE DEFINED
AS AREAS, NOT STATES.)

v.    <u>National Tracing Center (NTC)</u>. The ATF NTC is the only facility/operation
in the world that traces the history of firearms recovered in crimes and
from juveniles for any Federal, State, or local law enforcement agency in
the United States or abroad; stores information concerning the multiple
sale of firearms, suspect guns, stolen firearms, and firearms with
obliterated serial numbers; and is also the only repository for all FFL
out-of-business records.

w.    <u>Notice of Unlicensed Firearms Dealing Violation</u>. An ATF notice of
unlicensed firearms dealing violation may be served by a special agent on
an individual who may unknowingly be engaged in the business of dealing
in firearms without a license. Service of this notice satisfies the
willful/knowingly requirement of the dealing in firearms without a license
statute should a criminal case need to be perfected against an individual
who continues to engage in unlicensed firearms dealing after being
served notice.

x.    <u>Principal Objective of Livelihood and Profit</u>. The intent of the sale or
disposition of firearms is predominantly one of obtaining livelihood and
pecuniary gain, as opposed to other intents, such as liquidating a personal
firearms collection. **(Defined in 18 U.S.C. § 921(a)(22).)**

y.    <u>Probable Cause Warrant (for an FFL)</u>. A probable cause warrant is
necessary for the premises of an FFL in those instances where a special
agent has probable cause to believe that evidence of a violation of law
exists on the premises of an FFL. A probable cause warrant may be
obtained under rule 41 of the Federal Rules of Criminal procedure.

z.    <u>Project LEAD</u>. ATF's automated illegal firearms trafficking information
system that provides investigative leads to investigators by analyzing
crime gun trace data, suspect gun information, stolen firearms
information, and multiple sales information to identify recurring trends and
patterns that may indicate illegal firearms trafficking.

aa.    <u>Query Management Facility (OMF) Run</u>. An inquiry/run of the data
contained in ATF NTC's Firearms Tracing System (FTS) mainframe
computer



and patterns in firearms activity by FFLs where as Project LEAD is more useful in determining trends and patterns of firearms activity by unlicensed persons. QMF information can be particularly valuable to inspectors for use in identifying inspection needs and to special agents conducting a criminal investigation involving an FFL.

bb.   Reasonable Cause Warrant (for an FFL). A reasonable cause warrant is necessary to conduct an FFL inspection in those instances where a special agent has less than probable cause but more than mere suspicion to believe that evidence of a violation of law exists on the premises of an FFL.

cc.   Secondary Source or Market. This is a source of used firearms that may be legal or illegal. Secondary sources often include gun shows, flea markets, pawn shops, and unlicensed/private sales and tranfers.

dd.   Source Area. An area where illegal firearms traffickers have easy access to large numbers of firearms that they can readily acquire and transport to other locations for unlawful resale and/or transfer to the criminal element/ prohibited persons/juveniles. Factors that foster a source area include abundance of FFLs/flea markets/gun shows in an area, relaxed or nonexistent State/local gun laws, and proximity to urban centers or other locations where guns are sought commodities.

ee.   Straw Purchase. The acquisition of a firearm(s) from an FFL by an individual (the "straw") done for the purpose of concealing the identity of the true intended receiver -of the firearm(s).

ff.   Suspect Gun. An uncovered firearm(s) that is suspected to have been illegally trafficked or diverted (e.g., multiple sales reports and FFL records indicate that an individual has purchased 25 firearms, 15 of which have been recovered in crimes, traced, and entered into Project LEAD, and 10 of which have not been recovered; therefore, they are listed as suspect guns. It is suspected that these remaining firearms have also been illegally trafficked.)

gg.   Suspect Guns Data Base. A data base maintained by ATF's NTC that contains identifying information relative to firearms suspected of being illegally trafficked but have not been recovered as of yet. This information is submitted by special agents/investigators during their investigations. Should a suspect gun be recovered and traced, the Suspect Guns Data



███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████ The investigator is then able to contact the trace requester and obtain information surrounding the firearm's use in a crime and recovery.

hh.  **Time to Crime.** The period of time (measured in days) between a firearm's acquisition from a retail market and law enforcement's recovery of that firearm during use, or suspected use, in a crime. ████████████████

███████████████████████████████████████████
███████████████████████████████████████████

ii.  **Time to Sale.** The period of time (measured in days) between the shipment of a firearm from a wholesaler to a retail FFL and the sale of the firearm by that retail FFL. ████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

144. **JURISDICTION.**

a.  The GCA is the Federal legislation that is directed toward firearms-related violence and illegal firearms trafficking. In the preamble of the GCA, Congress clearly stated that this Nation's policy was "to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence." ATF derives its jurisdiction for investigation of illegal firearms trafficking violations from the GCA and its ~ various statutory enhancements and amendments that have been enacted through the passage of a number of crime bills, such as the Violent Crime Control and Law Enforcement Act of 1994. Statutes particularly useful in the investigation of illegal firearms trafficking violations include, but are not limited to, 18 U.S.C. §§ 922 and 924. For a detailed description of the various statutes and their elements of proof, see exhibit 4 of this order. Additionally, 18 U.S.C. §§ 2 (aiding and abetting), 371 (conspiracy), 1715 (unlicensed person shipping concealable firearms through the U.S. mail), 1001 (false statements and entries, e.g., false entries in dealer records or false statements to special agents or inspectors), and 2117 (breaking and entering at a carrier facility) are also useful in illegal firearms trafficking investigations.

b.  The National Firearms Act (NFA), 26 U.S.C. chapter 53, also provides



several statutes that are useful in illegal firearms trafficking cases involving the unlawful transfer/trafficking of NFA weapons.

c.   Many State and local bodies of government have enacted ordinances and statutes with civil and criminal provisions designed to limit access to firearms by juveniles, prohibited persons, and potential illegal firearms traffickers. Frequently, however, the presence of strong State or local ordinances and statutes will result in creating an illegal secondary market fed by illegal firearms traffickers who will unlawfully bring firearms to that area from a market area for unlawful resale/transfer.

145.   <u>GENERAL INVESTIGATIVE PROCEDURES, DUTIES, AND RESPONSIBILITIES (FIREARMS TRAFFICKING COORDINATOR/PROJECT LEAD COORDINATOR).</u>

a.   <u>Special Agent In Charge (SAC) Responsibilities</u>.

(1).   Each SAC should, at his/her discretion, meet with his/her respective U.S. attorneys and reaffirm the importance of ATF's illegal firearms trafficking efforts , ensure their support and participation, and keep them apprised of new developments regarding trafficking trends and patterns within the field division. (This duty may be delegated to an ASAC, RAC, or G/S.) SACs are encouraged to bring a representative from the office of Assistant Chief Counsel and their respective district director (DD) to this meeting. Assistant U.S. attorneys who are unfamiliar with the prosecution of illegal firearms trafficking cases should be encouraged to contact ATF Assistant Chief Counsel Offices for more insight into proving these cases in court. Should the U.S. attorney's office request training on illegal firearms trafficking, inquiries as to available training or training materials should be directed to the Office of Training and Professional Development, Bureau Headquarters. In addition, all SACs should encourage their respective U.S. attorneys to require that before a defendant is allowed to enter a guilty plea in any firearms violation case, the defendant must be debriefed by an ATF special agent for illegal firearms trafficking intelligence.

(2).   Each SAC should, at his/her discretion, meet with his/her law enforcement counterparts at the State/local level to coordinate illegal firearms trafficking efforts.



███████████████████████████████████

Should any law enforcement officials request training on illegal firearms trafficking or assistance in establishing a system to more efficiently trace firearms, inquiries for assistance should be directed to the Office of Training and Professional Development, Bureau Headquarters, or the NTC.

(3).  Each field division SAC will designate one ASAC in his/her field division to be the firearms trafficking coordinator (FTC). Upon any change in designation of the FTC, the SAC shall provide the new FTC designation information to the Chief, Firearms Enforcement Division via memorandum.

b.  **ASAC/FTC Duties And Responsibilities Are As Follows:**

(1).  The FTC should continuously assess illegal firearms trafficking trends within his/her field division utilizing ███████████ ████████████████████ State/local police department intelligence, and RE intelligence and determine the proper course of action to address the problem █████████████████

████████████████████████████████████

(2).  The FTC should coordinate the dissemination and follow up on all outgoing and incoming collateral requests or leads regarding illegal firearms trafficking from other field divisions or the NTC.███

████████████████████████████████████

(3).  The FTC should coordinate the CE effort with the area RE efforts through the RE FTC. This coordination may include assignment of inspectors to firearms trafficking task forces to perform FFL inspections where necessary and where legally appropriate; provide RE with any information that may assist them in identifying specific FFLs for inspection ████████████████████

████████████████████████████████████



should be forwarded via an ATF F 5000.21, Referral of Information.

c.   <u>RAC/GS Duties And Responsibilities</u>:

(1).   The RAC/GS should ensure that all special agents under his/her supervision are aware of and adhere to their responsibilities for the proper coordination of illegal firearms trafficking intelligence and investigations, the proper reporting and coding procedures associated with the completion of ATF F 3100.7, Case Summary, and the importance of firearms tracing.

(2).   The RAC/GS should ensure that all illegal firearms trafficking information developed by the designated field office/group VCC, during the processing of adopted cases, is appropriately disseminated and/or followed up. (See chapter B of this order for more information on adopted/referred cases and the duties of the VCC.)

d.   <u>Special Agent Duties And Responsibilities</u>:

(1).   The case special agent, upon identifying an individual suspected of illegal firearms trafficking (someone trafficking in GCA, NFA, or stolen firearms), or an address associated with illegal firearms trafficking activity, is to conduct a records check on the individual or address in ▆▆▆▆ to determine if an open investigation already exists. 

(a).   Should ▆▆▆ checks reveal no open investigations on the individual or address in question and the special agent intends to open an investigation. ▆▆▆▆▆▆▆▆▆▆

(b).   Should ▆▆▆ checks reveal an open investigation exists relative to the suspect individual or address, the special agent is to contact the case agent or receiver of the referral and coordinate investigative efforts. Coordination of efforts and sharing of intelligence are essential to special agent safety, effective investigations, and the efficient use of resources.

(2).   The case special agent is responsible for knowing and properly



using the Bureau Program Codes, Case Profile Codes, and Investigative Technique Codes appearing on the ATF F 3100.7 so proper tracking of illegal interstate/intrastate firearms trafficking cases.

(3).   Special agents should attempt to debrief, when legally possible, all arrested defendants regarding their knowledge of illegal firearms trafficking activities.

(4).   Special agents should use all resources available to determine if firearms suspected of being illegally trafficked have been recovered in crimes.

(5).   In the event a special agent refers an FFL for prosecution and the U.S. attorney's office declines to pursue prosecution, the special agent will forward an ATF F 5000-21 through the field division office to the RE DD's Office having jurisdiction over that FFL for their appropriate follow up. The referral should include all pertinent information regarding the alleged violations committed by the FFL. The field division office shall forward a copy of the referral of information to the Chief, Firearms Enforcement Division who will subsequently disseminate this information to the Chief, Firearms and Explosives Regulatory Division.

## 146.   <u>PROJECT LEAD SECURITY</u>.

Project LEAD is the exclusive property of ATF. Distribution of Project E-LEAD software outside of ATF is strictly prohibited. All offices are re encouraged to work with and share information/investigative leads with other Federal, State, and local law enforcement agencies; however, Project LEAD software and data extract disks are the property of ATF and cannot be released outside the agency. When Project LEAD disks are not in use, the RAC/GS or Project LEAD coordinator shall ensure all disks are stored in a locked file. Computers with Project LEAD information shall not be left on while unattended for any period of time. Information concerning private individuals is contained in Project LEAD, and this information must be protected against unwarranted



dissemination.

147. <u>COORDINATION OF PROJECT LEAD INFORMATION WITH REGULATORY ENFORCEMENT</u>.

Project LEAD primarily focuses on recurring trends and patterns that may indicate illegal firearms trafficking activity by unlicensed individuals, ███████████████

███████████████████████████████████████████████████████

148. <u>"WEAPONS TRANSFERS"</u>.

   a. <u>Considerations</u>. During the course of illegal firearms trafficking investigations, special agents may become aware of, observe, or encounter situations where an individual(s) will take delivery of firearms, or transfer firearm(s) to others. In these instances, the special agent may exercise the following options:

      (1). In cases where probable cause exists to believe a violation of law has occurred and the special agent determines there is a need to intervene in the weapons transfer ███████████████ the special agent shall do so but should place concerns for public safety and the safety of the involved special agents as the primary determining factor in exercising this option.

      (2). In other cases, immediate intervention may not be needed or desirable, and the special agent may choose to allow the transfer of firearms to take place ███████████████████

███████████████████████████

   b. <u>Alternative Intervention Methods</u>. In the event it is determined by the special agent that a weapons transfer should not take place, the special agent may consider alternative methods of intervention other than arrest and/or search warrants that will prevent the culmination of the weapons transfer but allow the investigation to continue undetected. ███████████

███████████████████████████████████████████████████████



interventions may include, but are not limited to:

(1).  A traffic stop

(2).  If the firearms are being shipped out of the United States via a common carrier via checked luggage or freight, the firearms may be seized/or recovered by the special agents, in coordination with the U.S. Customs Service under border search authority, without detection by the traffickers.



(3).  If the firearms are being shipped via the U.S. mail, coordination with the U.S. postal inspectors will assist the special agents in recovery of the firearms without detection by the traffickers.

(4).  If the special agent chooses to arrest the individual(s) with the



firearm(s), the possibility exists that a debriefing of this individual will yield other members of the organization.

149. **FEDERAL FIREARMS LICENSEES (FFLS).**

This paragraph sets forth policy and procedures for obtaining licensee warrants and conducting criminal investigations of licensed persons, their agents or employees, and business entities engaged in the firearms business.

    a.     In passing the GCA, as amended, Congress declared that the purpose of the act was to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence while not placing undue Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms for lawful activity.

    b.     Most persons licensed to engage in the firearms business are pursuing their interests for lawful purposes. It is the policy of ATF to initiate criminal investigations of licensees only when there is reason to believe that they are engaged in criminal activity such as dealing in stolen/contraband firearms or ammunition, knowingly supplying firearms to criminals, terrorists, gang offenders, or juveniles, or engaged in such willful and flagrant violations that it can be reasonably assumed that the firearms will find their way into the hands of criminals, terrorists, gang offenders, or juveniles.

    (1).     The GCA provides misdemeanor penalties for licensees who make false statements or representations with respect to information required in their records (18 U.S.C. § 922(m)).

    (2)     Where evidence supporting prosecution does not meet established prosecutorial thresholds or the violations are minor or technical in nature, the information shall be referred, through the SAC, to the appropriate RE DD for administrative action.

    (3)     Where CE is notified by RE that it has attempted to acquire the records of an FFL who has terminated his/her business, failed to renew his/her license, or failed to respond to official



correspondence for license renewal, CE efforts should be made and coordinated with RE to obtain the FFL's records and forward them to the NTC Out-of-Business Records Center in Falling Waters, West Virginia.

c.   Most licensees cooperate with ATF in exercising lawful inspection access to their premises. When a licensee refuses voluntary inspection and requires a warrant, the special agent shall obtain one in conformance with this chapter. If, after the warrant is obtained, the licensee continues to refuse ATF access to records and inventory, the special agent shall advise the licensee of the following statutes:

   (1).   18 U.S.C. § 1509 Obstruction of court orders (misdemeanor).

   (2).   18 U.S.C. § 111 Obstruction of a Federal agent (felony).

   (3).   18 U.S.C. §§ 923(g)(1)(B) and 924(a)(1)(D) Obstructing the examination of inventory and records (felony).

d.   Where the license continues to refuse admittance to the business premises, the special agent is precluded from using force to gain entrance under an Inspection or Reasonable Cause Warrant. However, the special agent may summarily arrest the licensee or choose to initiate contempt proceedings and/or coordinate a licensee revocation with RE at a later date. The possibility of summary arrest must be discussed with the SAC prior to execution of an Inspection or Reasonable Cause Warrant.

150.   <u>WARRANTLESS INSPECTIONS.</u>

a.   The GCA places certain restrictions on ATF's ability to inspect the inventory and records of a licensee, whether at the licensed premises or authorized gun shows. A warrant is required to conduct an inspection EXCEPT under the following conditions:

   (1).   <u>Inspection to Ensure Compliance With the Recordkeeping Requirement.</u> This inspection may be conducted without prior notice, but ATF is limited to only ONE INSPECTION FOR ANY 12-MONTH PERIOD DURING BUSINESS HOURS.

      (a).   Prior to any desired inspection, the RAC/GS must contact the appropriate RE area supervisor to ensure that an annual regulatory inspection has not been conducted during the previous 12 months.

      (b).   Efforts must be made to have an RE inspector conduct the



desired inspection with a special agent. The special agent is to obtain from the inspector a completed copy of the inspection report package or any other documents relating to the inspection for inclusion in the field office investigation file.

(c).  In the event no inspector is available and after advising the area supervisor of such, a special agent is to conduct the inspection

The special agent must complete an inspection report package in a timely manner. This report shall be forwarded by the RAC/GS to the area supervisor for inclusion in the licensee's file. A copy of this report shall be maintained in the field office investigation file.

(2).  <u>Inspection During Business Hours in the Course of a Criminal Investigation of a Person Other Than the Licensee</u>. ATF F 5000.21, which documents the nature of this licensee contact, shall be forwarded by the RAC/GS to the area supervisor for inclusion in the licensee's folder. For example, an informant alleges that a terrorist bought a handgun in the fall of last year. A survey of XYZ's records is undertaken. ATF F 5000.21 (Figure 2) shall reflect the licensee's name, address, and narrative.

Figure 2. Notification

"Inspection conducted in the course of a criminal investigation of a person other than the licensee (IN, if available) on ___(date)___ by Special Agent ___(name)___ "

(3).  <u>Inspection During Business Hours in the Course of Firearms Trace</u>. ATF F 5000.21, which documents the nature of this licensee contact, shall be forwarded by the RAC/GS to the area supervisor for inclusion in the licensee's folder.



licensee's name, address, and narrative as shown in Figure 3.
THIS NOTIFICATION APPLIES ONLY TO TRACES CONDUCTED
IN PERSON ON THE PREMISES AND NOT TRACES
CONDUCTED BY TELEPHONE.

Figure 3. Notification

"Inspection conducted in the course of tracing  (firearm description)   on  (date)  by

Special Agent _____   (name)   .

b.      In the event a licensee refuses to permit a lawful inspection, the special
agent is to withdraw from the license's premises and obtain an
INSPECTION WARRANT.

c.      Where an inspector is refused lawful access, the RAC/GS shall honor the
direct request from the affected area supervisor for assistance in obtaining
an INSPECTION WARRANT. Procedures outlined in paragraph 151 shall
be followed.

151.   INSPECTION WARRANT.

Circumstances may be encountered where a licensee refuses to allow a lawful
inspection of his/her records or inventory. This requires that ATF obtain an
INSPECTION WARRANT based on the statutory authority of the GCA. Other
circumstances may require the obtaining of a REASONABLE CAUSE WARRANT
where reasonable cause exists to believe that there is evidence of violations of the GCA
on the licensed premises. Prior to obtaining these types of warrants for a licensee's
premises where the licensee is neither a suspect as defined in paragraph 149b nor the
focus of the criminal investigation, approval for a "LICENSEE WARRANT" must be
obtained from the SAC. THE GUIDELINES IN THIS PARAGRAPH DO NOT APPLY
WHEN CONDITIONS PERMIT THE WARRANTLESS OR CONSENSUAL
INSPECTION OF A LICENSEE AS OUTLINED IN PARAGRAPH 150.

a.      A verbal request for authorization is to be submitted by the RAC/GS to the
SAC containing the following information:

(1).     Complete identification of the licensee.

(a)     Name and trade name.

(b).     Address.

(c).     Federal license number.



(d).   Business hours

(2).   Type of warrant to be obtained, e.g., INSPECTION or REASONABLE CAUSE.

(3).   Facts supporting the need for the warrant

(4).   Judicial district where the warrant will be obtained.

(5).   Projected time and date the warrant will be executed.

(6).   Investigation number.

(7).   Anticipated problems.

b.   If the SAC concurs with the request, following execution of the warrant, the special agent shall complete a Report of Investigation, and place the words "LICENSEE WARRANT" under the "Description of Activity" section of the report. The report shall include the following information. A copy of the warrant is to accompany this report.

(1).   Items 1, 3, and 4 as listed in paragraph 150a.

(2).   Date and time warrant authorized by assistant U.S. attorney (identify).

(3).   Date and time of authorization by U.S. magistrate or U.S. district court judge (identify).

(4).   Date and time of execution of warrant.

(5).   Date and time of exit from licensed premises.

(6).   Evidence taken into Bureau custody from licensed premises.

(7).   Participating special agents, inspectors, and other law enforcement officers.

(8).   Licensee/employees present during execution of warrant.

(9).   Incident/problems encountered.

(10).   Miscellaneous information of relevance, but which cannot be listed on the report of investigation, should be listed in an accompanying memorandum.

c.   In the case of a significant incident occurring during execution of the warrant, it is incumbent upon the special agent, through the RAC/GS, to verbally apprise the SAC of the incident. Any incident reported must be



transmitted by SAR to the Chief, Intelligence Division (ATTN: Investigations Tracking Branch). The special agent shall thoroughly document the incident in item 9 of paragraph 151b.

d.    If information is developed indicating that the licensee is involved in criminal activity, the procedure for obtaining licensee investigation authorization shall be followed.

e.    When a licensee refuses to comply with a lawful inspection request, this requires that the special agent obtain a licensee warrant. A copy of the report of investigation prepared as directed under paragraph 151b shall be referred by the SAC to the RE DD for possible administrative action.

## 152.   REASONABLE CAUSE WARRANT.

The GCA provides for the issuane of a search warrant based on reasonable cause where there is evidence to believe a violation of the GCA has occurred and that this violation may be found on the licensee's premises.

a.    In cases where the licensee is not a suspect or focus of the criminal investigation, the procedures described in paragraph 150 shall be followed.

b.    Where the licensee is a criminal suspect or focus of an investigation, the procedure for obtaining licensee investigation authorization shall be followed prior to following paragraph 150.

c.    The REASONABLE CAUSE WARRANT is obtained when the special agent has less than probable cause but more than mere suspicion. Where probable cause does exist that the licensee is involved in criminal activity, a PROBABLE CAUSE WARRANT under Rule 41 of the FRCP is always obtained.

## 153.   INITIATING A LICENSEE INVESTIGATION-AUTHORIZATION.

An investigation of a licensee may be initiated when there is reason to suspect that the licensee is engaged in criminal activity. The purpose of the investigation is to verify such information and determine if criminal prosecution should be pursued. A written request seeking authority to pursue a licensee investigation must be submitted and approved by the SAC before any significant investigative activity occurs.

a.    A memorandum requesting authorization must be prepared and shall contain the following information:

(1).    Complete identification of the licensee, including his/her Federal



license number.

(2). Concise statement of the alleged violations.

(3). Source of the information, as well as any background information known concerning the reliability of the source.

(4). Any other pertinent information that may appear in ▮▮▮▮ or in the licensee's files, such as allegations of previous violations of laws or regulations.

(5). The words "FIREARMS LICENSEE INVESTIGATION" will be placed at the top of the memorandum, which requests approval.

(6). If time does not permit a written request, a telephonic request to the SAC, followed by a written request (memorandum), is permitted.

b. The memorandum requesting authorization must be accompanied by an ATF F 5000.21 and addressed to the appropriate RE DD. The referral shall include:

(1). Names and identifying data concerning the subject of the investigation.

(2). Request for copies of all reports relating to the licensee.

(3). Request for notification from the licensing supervisor of any official contact with the licensee.

c. Where the request does not justify an investigation, the SAC shall return it to the field office for clarification.

d. Where justified, authorization for a FIREARMS LICENSEE INVESTIGATION shall be given by the SAC, which is evidenced by his/her endorsement at the bottom of the request. The SAC then forwards the ATF F 5000.21 to the RE DD. As indicated earlier, the SAC may telephonically authorize an investigation before receiving a written request.

## 154. LICENSEE INVESTIGATION – REPORTING.

a. When conducting a licensee investigation, the assigned special agent shall prepare a report of investigation within ▮ days of any reportable investigative activity. The words "FIREARMS LICENSEE INVESTIGATION" will be placed at the top of the report of investigation. Further, if no reportable investigative activity occurs within a ▮ day



period, the assigned special agent shall provide input to the RAC for status notes to be placed in the management log.

b.    Quarterly status notes are required to be placed in the management log for investigations for which an ATF F 3200.14, Recommendation for Prosecution report, has been prepared and submitted, or for investigations that have been adjudicated and are under appeal.

c.    The SAC shall ensure timely reporting via SAR to the Chief, Intelligence Division (ATTN: Investigations Tracking Branch) of any significant/sensitive enforcement activity, e.g., making arrests, executing warrants, or any significant judicial activity.

d.    Upon initiating an FFL investigation, the SAC will notify the Firearms and Explosives Licensing Center (with an informational copy to the National Tracing Center), via telecommunications message, that an investigation is being conducted. The message should contain the FFL's name, business name, FFL number, investigation number, and case agent. (See Exhibit 19.) Note that ███████████████████████████████████

████████████████████████████████████████████████

TO CONTACT THE LICENSEE. THE NTC FAX NUMBER IS 1-800-578-7223.

155.   **LICENSEE INVESTIGATION – CLOSING.**

a.    The assigned special agent may recommend closing an investigation at any time a determination is made that the allegations against the licensee cannot be substantiated. As with any other investigation, the SAC is the approving official for the closing of the investigation.

b.    Where violations of law by the licensee are substantiated, the assigned special agent may recommend:

(1).    Misdemeanor or Felony Prosecution. Requires SAC approval.

(2).    Referral for Administrative Action. Requires approval of the SAC and recommendation to the RE DD

c.    Upon learning of the FFL's final conviction, or closing of the investigation, the SAC will prepare a telecommunications message addressed to the Firearms and Explosives Licensing Center with an informational copy to the National Tracing Center, advising that the FFL has been convicted and/or the investigation has been closed. In addition to the name of the



FFL and case number, the telecommunications message will also include the licensee's FFL number. (See exhibits 20 and 21.)

d.    The SAC shall also ensure that the RE DD is aware of the closed status of the licensee investigation.

## 156.   GUN SHOWS, FLEA MARKETS, AND UNLICENSED FIREARMS DEALERS.

This paragraph formalizes policy and establishes procedures for conducting criminal investigations of unlicensed firearms dealers, including those that conduct such illegal business at gun shows or flea markets. ATF's policy is to target for investigation only those persons who are engaged in criminal activity such as dealing in stolen or contraband firearms/ ammunition, knowingly supplying firearms to criminals, terrorists, gangs, and juveniles, or dealing in such a willful and flagrant manner that reason dictates there is a high probability the firearms will work their way unrecorded into the hands of criminals, terrorists, gang offenders, and juveniles.

## 157.   GUN SHOW/FLEA MARKET INVESTIGATIONS - AUTHORIZATIONS AND REPORTING.

A flea market or gun show investigations present situations that are normally not encountered in licensee investigations. Whereas an FFL has one primary location from which he/she does business, a person illegally selling firearms at a gun show or flea market may travel to several of these markets or shows on a regular basis. Additionally, some flea markets or gun shows are scheduled on a recurring basis for one particular day of the week or month.

a.    Upon obtaining verbal authorization from their G/S or RAC, special agents may attend gun shows and flea markets for the purposes of observing potential violations of the Federal firearms laws that merit further investigation. When seeking this authorization, the special agent shall advise the G/S or RAC of the name and location of the flea market or gun show as well as the date the special agent plans to attend.

(1).    If authorization is granted and attendance at a gun show or flea market determines investigation is warranted of a subject that is known to be a licensed firearms dealer, authorization by the SAC to conduct a licensee investigation must be obtained. See paragraph 153 of this chapter for authorization procedures.

(2).    If authorization is granted and attendance at a gun show or flea market determines investigation is warranted of a subject that is not a licensed firearms dealer, the special agent shall prepare an opening report of investigation, with the words "GUN SHOW



INVESTIGATION" or "FLEA MARKET INVESTIGATION" appearing at the top of the report, within 5 days of any reportable investigative activity.

b.  The SAC is the approving official for all significant/ sensitive enforcement activities such as issuing notices, summonses or subpoenas, making arrests, or executing warrants on the gun show or flea market premises, or their adjacent parking lots. If exigent situations require immediate action and SAC approval has not been obtained, such actions should be taken only when there is a potential threat to public safety, where subsequent action is impractical. The SAC shall be notified, as soon as possible, of any such enforcement action with a followup notification to the Chief, Intelligence Division (ATTN: Investigations Tracking Branch).

158.  GUN SHOW/FLEA MARKET INVESTIGATION-CLOSING.

a.  The assigned special agent may recommend closing an investigation after all investigative activity has been concluded at the gun show/flea market. Once a criminal violation is established regarding a subject of the titled gun show/flea market investigation, a separate investigation number is to be obtained. As with any other investigation, the SAC is the approving official for the closing of the investigation.

b.  Where violations can be proven, the SAC may recommend the case for prosecution.

c.  The closing report/memorandum will include the identity of any persons who are suspected to be involved in illegal activities, including FFLs, but no evidence could be obtained. The closing report/memorandum should also include all persons who were issued notices as proscribed in paragraph 159. The closing report will also transmit ATF F 5000.21 addressed to the appropriate RE DD, referring those FFLs observed or suspected of not complying with regulations.

159.  NOTICE OF UNLICENSED FIREARMS DEALING VIOLATION.

a.  Due to the willful aspect of dealing in firearms without a license, the SAC may authorize the warning and documentation of unlicensed dealers



under circumstances where:

(1).    Persons who clearly are ignorant of the law, lack criminal association, intent, or history.

(2).    Unlicensed dealers who engage in a firearms dealing business but fail to provide admission of willfulness, or the investigation did not otherwise establish willfulness.

b.    When such warnings are appropriate, prepare a Notice of Unlicensed Firearms Dealing Violations similar to the recommended wordage in exhibit 12. Exhibit 13, ATF F 7, Application for License under 18 U.S.C. Chapter 44, Firearms, is an attachment to the notice. The SAC shall sign the original and may delegate authority to sign such notice as appropriate. A copy of the original shall be served by an assigned special agent who shall use the utmost tact and discretion. The special agent shall obtain the signature of the unlicensed dealer on the copy of the notice acknowledging receipt. Where a subject declines to sign, the special agent shall so indicate on the copy. The original shall be left with the subject and a copy attached to the Report of Investigation for. inclusion in the field office investigative file. The suspected unlicensed dealer will be listed as suspect 02, 03, etc., under the authorized gun show IN unless a prior IN on the suspect exists, or preponderance of evidence exists to justify a separate IN assignment.

c.    The names of all suspected unlicensed dealers are to be checked in Project LEAD, multiple sale records ███████ licensing, and other appropriate data bases maintained by the Intelligence Division.

d.    All of those served shall be fully identified for entry into ███████ All vehicles known to be used by the subject are to be included. The narrative of the ███████ entry is to summarize the unlicensed dealing allegation and contain the caption as shown in Figure 4.

Figure 4.  Caption

┌─────────────────────────────────────────────────────┐
│ SUBJECT SERVED WITH NOTICE OF UNLICENSED            │
│                                                     │
│ FIREARMS DEALING VIOLATION ON ____(date)____ BY     │
│                                                     │
│ SPECIAL AGENT ____(name)____ AT (location)    .     │
└─────────────────────────────────────────────────────┘

e.    Several ways in which the notice may be used include:



(1).    <u>Referral-Notification</u>. Where a general complaint is received from the public or industry and there is no criminal intelligence to warrant indepth investigative activity, a special agent may simply be permitted to contact the subject and serve notice.

(2).    <u>Offer-Notification</u>. Where undercover negotiations showed the dealer lacked criminal intent by offering noncontraband firearms, a special agent is authorized to identify himself or herself and serve notice.

(3).    <u>Buy-Notification-Buy</u>. Where a special agent made undercover buys but the unlicensed dealer failed to give admissions or where the investigation did not otherwise establish willfulness. ████████████████████████████████████████████████████████████████

f.    Every effort, to include recommendation for prosecution, needs to be expended on those persons who continue to deal without a license once notice is given.

160.    <u>INTERDICTION PROCEDURES AND TECHNIQUES.</u>

One of the stated objectives of ATF's illegal firearms trafficking efforts is to deny violent criminals, gang offenders, and juveniles access to firearms by reducing the availability of illegal secondary market firearms. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

a.    The field division SACs or their designees may provide a listing of area FFLs to State/local law enforcement officials for their information and to assist in ensuring the licensees are in compliance with State/local tax, zoning, and other laws.

b.    Individuals who appear to be engaged in the business of dealing in firearms without a license should be served with a "Notice of unlicensed Firearms Dealing Violation" (see exhibit 12) in accordance with the



provisions and requirements of paragraph 159 of this chapter.

c.  In areas where gun shows and/or flea markets are a supply for illegal secondary market firearms sales, a RAC/GS or senior special agent may request, via memorandum, SAC approval to meet with a gun show or flea market owner/manager/operator/promoter to enlist his/her cooperation in pursuing an interdictive course of action. The authorization request shall identify the gun show or flea market, the name of the owner/manager/operator/ promoter, the nature of the current problem at the gun show or flea market (this may be a general statement that does not identify any specific instances of violations or suspected violators) and the proposed course of action or discussion. Interdictive courses of action may include, but are not limited to the following:

(1)  Establish open lines of communication with the owner/manager/operator/promoter to foster a cooperative atmosphere between ATF and the designated event and to promote a better understanding of the Federal firearms laws as they apply to gun shows/flea markets and the duty of ATF to enforce those laws.

(2)  Provide owners/managers/operators/promoters with advisories (see exhibits 22 and 23 of this order) outlining the Federal firearms laws as they apply to gun shows or flea markets, and request that the owners/managers post these advisories in conspicuous locations in the gun show or flea market.

(3)  Establish an ATF informational booth staffed by CE and RE personnel at the gunshow or flea market. These individuals could provide gunshow and flea market patrons with information on Federal firearms laws and regulations and promote compliance. These individuals could also pass out brief outlines of Federal laws and regulations applicable to gunshows and flea markets. (See exhibits 22 and 23.)

d.  The presence of an RE inspector shall be requested for any SAC authorized meetings with gun show/flea market owners/managers/operators/promoters. *

161 - 170  RESERVED



171. <u>GENERAL</u>.

    a.    The Firearms Technology Branch is under the administrative supervision of the Chief, Firearms Division. The Branch places primary emphasis on the examination and testing of evidence and provides technical support to ATF through the examination and classification of firearms and ammunition.

    b.    In keeping with the Branch's service concept by fulfilling the advisory function to the Director and his staff, the Branch shall be maintained at a high level of competence with adequate equipment. The services must be readily available to all divisions of ATF and whenever possible, to other Treasury agencies, and other Federal, State, and local law enforcement agencies.

172. <u>SCOPE OF SERVICES</u>.

    a.    The Branch shall provide technical services for the Bureau, other Treasury agencies, and Federal, State, and local agencies that are seeking assistance in problem areas where firearms enforcement analysts have a high degree of training, experience, and proficiency. Subject to approval by the Chief, Firearms Division, the Branch may assist State and local governmental agencies in technical matters, provided such assistance does not conflict or interfere with Branch service to Federal agencies. Such assistance to State and local authorities generally is confined to matters and materials in which Federal and non-Federal agencies have a common interest.

    b.    Branch personnel shall give recommendations on the classification of various firearms to the Bureau's Firearms Classification Panel which is chaired by the Chief, Firearms Division. The panel is composed of members from Chief Counsel, the Firearms Technology Branch, and any other branch or division having an interest in specific matters considered by the panel.

    c.    To the extent practical, Branch personnel shall collaborate with professional societies and industry to further their knowledge in specialized areas of interest to ATF. Branch projects may be initiated in conjunction with the work of professional societies where the results may



further the interest of the Government.

d.  Where questions arise in connection with submitted requests, analysts may discuss these matters with submitting officers by telephone; however, caution must be exercised to ensure that the caller is identified and authorized to receive information of a sensitive nature.

173.  <u>AREAS OF RESPONSIBILITIES.</u>

a.  The major Branch activities consist of giving technical advice; sharing the responsibility for carrying out various programs and policies of        ATF; performing statistical compilations of the production, importation, and exportation of firearms in the United States; giving expert testimony in court and at hearings; testing and determining the classification of newly designed firearms; evaluating firearms for importation; determining whether firearms are antiques, curios, or relics; evaluating marking variances for firearms; carrying out research; conducting industry visits; training Branch personnel; collecting and maintaining a firearms reference collection; and aiding other ATF personnel when requested.

b.  The Branch Chief is responsible for the management of the Branch and shall assign and direct its various activities. He/she shall set work priorities and determine the man-hours to be applied to various projects. He or she may delegate duties and responsibilities to qualified assistants, provided such duties can be redelegated by the Branch Chief. Branch operations must meet such standards as may be prescribed by the Chief, Firearms Division.

c.  The Branch Chief is jointly responsible with the appropriate analyst for establishing a training program for Branch personnel that will ensure that all firearms enforcement analysts and aides achieve and maintain a high degree of proficiency in their particular areas. Special emphasis shall be placed on problem areas peculiar to the Branch.

d.  With the consent of the Chief, Firearms Division, matters involving services to local, State, or Federal agencies shall be handled directly by the Branch Chief, provided ATF policies are followed.

e.  Firearms enforcement analysts are to have a working knowledge of the laws and regulations administered by ATF relative to the work performed by the Branch. Analysts are to be familiar with inspection procedures prescribed for use by Compliance inspectors. Analysts are to assist in compliance investigations where their special training and experience will be helpful. They are to be qualified to act as instructors in classes on



technical subjects concerning firearms that are conducted for ATF personnel and other law enforcement agencies.

f.  Firearms enforcement analysts shall have a working knowledge of the rules of evidence. They shall be skilled in gathering evidence, training others to do so, examining and testing evidence in the Branch, and defending their findings in a court of law while testifying as expert witnesses.

## 174.  PERSONNEL ACTION.

Administrative supervision of the Branch is provided by the Branch Chief. The Branch Chief shall consult with the Chief, Firearms Division, on all matters relating to personnel actions taken within the Branch, e.g., recruiting, hiring, promotion, awards, adverse action.

## 175.  EXAMINATIONS.

a.  Scope of Examinations

(1).  Examinations of firearms and related items shall include determinations, when applicable, as to the identity, date, and place of manufacture of various firearms; their classification under the provisions of the GCA; and their conformity to applicable laws and regulations. Other examinations or determinations may be performed when considered necessary by the analyst. Any examination that reveals an apparent criminal violation of the GCA shall be referred ▮▮▮▮▮▮▮

(2).  Inspectors and special agents shall indicate on ATF F 3270.2, or other appropriate transmittal, the purpose for which the sample was submitted. Any such transmittal shall be as complete as possible and include a complete mailing address. If applicable, the requested determinations shall be made, but the analyst is not necessarily limited in his/her examination. If other significant or relevant information is suggested by the examination, it should be determined and reported.

(3).  In addition, the Firearms Technology Branch examines samples of firearms and related items submitted by industry to determine their compliance with regulations, classification, and importability.

(4).  Inquiries and requests submitted by the general public and industry concerning the classification or determination status of firearms are also responded to by firearms enforcement analysts. Their findings



         shall be recorded and presented to the Firearms Classification
         Panel for action if necessary.

    (5).    Any examination or determination that results in the issuance of an
           ATF formal ruling will be published in the ATF Bulletin.

b.    <u>Examination of Samples</u>. A firearms enforcement analyst, in performing
an examination, is not generally bound by any prescribed procedure but
may use or develop any method suitable to the problem at hand. His/her
own experience or special knowledge may suggest the method of
approach.

c.    <u>Machineguns, Short-Barreled Rifles, Short-Barreled Shotguns, and
Weapons Made from Rifles or Shotguns</u>. Analysts shall examine and
determine the classification of the sample, cite the applicable section of
the law, and testfire, if requested. The analyst shall determine if a
particular sample is safe to fire prior to conducting any testfiring.

d.    <u>Silencers</u>. Analysts are to examine and test silencers by utilizing
prescribed methods to determine if the submitted sample meets the
definition of silencer. The test will include a comparison firing of the
silencer and an unsilenced weapon to determine the amount of reduction
and a physical examination of the construction of the sample.

e.    <u>Other NFA Firearms</u>. All other NFA firearms shall be tested and examined
utilizing the prescribed methods to determine the classification under the
law and any other information requested.

    (1).    If a suspected silencer is accompanied by a firearm, the firearm
           shall also be sent to Bureau Headquarters.

    (2).    An ATF F 3270.2 shall accompany the items forwarded for testing.
           It shall be submitted, in triplicate, filled out as completely as
           possible, and shall include the requester's return address and a list
           of requested actions.

    (3).    EXPLOSIVES OR EXPLOSIVE RESIDUES SHALL NOT BE
           SUBMITTED TO BUREAU HEADQUARTERS.

f.    Firearms evidence requiring latent print, serial number restoration, and/or
toolmark examination should be sent to the ATF Forensic Laboratory in
either Rockville, Maryland; Atlanta, Georgia; or Washington, DC.
Evidence requiring these types of examination should b sent to the



forensic laboratory prior to being sent to the Firearms Technology Branch to avoid contamination of fingerprints or toolmarks.

176. <u>RESEARCH</u>.

    a.    <u>General</u>. The Branch may initiate research and collaborative studies. An extensive research program must have prior approval of the Chief, Firearms Division. The results of research projects may be submitted for publication after review and approval by the Associate Director (La Enforcement) and the Assistant Director (Congressional and Media Affairs).

    b.    <u>Technical and Media Affairs</u>.

        (1).    Carrying out technical and historical research is considered an essential function in the development of firearms enforcement analysts. One of the best methods for maintaining proficiency in the firearms field is through a program of library reading and research combined with technical examination and experimentation.

        (2).    Analysts shall be encouraged to devote a part of their time to reading technical periodicals and carrying out research projects assigned to them on the basis of their education, training, and experience. These projects will be within the needs of the Bureau

177. <u>ADVISORY SERVICES</u>.

    a.    <u>Bureau Field Offices</u>. The Branch Chief and senior analyst officers are the principal technical advisers for ATF officials throughout the Burea concerning firearms. Questions of a technical nature shall be referred to them for an oral or written opinion or decision.

    b.    <u>Headquarters</u>. The Branch Chief and senior analyst officers shall provide technical assistance and advice to any division or branch as needed. Analysts may be assigned to assist other branches on specific projects or problem areas dealing with the technical aspects of firearms.

    c.    <u>Other Government Agencies</u>. Technical information requested by other governmental agencies may be supplied upon the approval of the Chief, Firearms Division, when the information is within the scope of Branch activity and specialization.

    d.    <u>Industry</u>. Approval of designs, markings, and other technical aspects of firearms is performed by the Branch. The Branch also provides advice to industry on ATF requirements. Analysts, when contacted by



representatives of industry, can also provide information regarding technical matters within the area of the Branch's functions.

178.  **INDUSTRY VISITS**.

    a.    <u>Industrial Plant Premises</u>.

        (1).    Visits to industrial plant premises with which ATF offices are concerned are important activities of the firearms enforcement analyst. To properly perform his/her functions, the analyst must be familiar with and understand the various industrial operations concerning the manufacture of firearms. Analysts are to visit premises that are subject to inspections by ATF officers in order to obtain background information on plant operations. Such visits shall be coordinated through the appropriate SAC office or RDC.

        (2).    Analysts shall assist inspectors and special agents in making inspections if requested to do so.

        (3).    If the need arises during a plant visit, the analyst may instruct, for example, the proprietors of a firearms manufacturing plant, on the accepted location for serial numbers and other markings on firearms and may give advice on other technical matters. This aid and advice must follow guidelines established by the Director.

        (4).    Analysts are to visit industrial premises to familiarize themselves with the manufacturer of subcomponents for firearms that are produced by casting or pressing.

    b.    <u>Illicit Operations</u>.

        (1).    When requested, analysts shall visit locations where illegal firearms have been seized. The visit will assist special agents in the identification and classification of the seized material.

        (2).    Analysts not in the special agent GS-1811 classification are not to be utilized in active investigatory duties prior to arrests, search warrants, or seizures.

179.  **TRAINING**.

    a.    <u>General</u>. Branch training programs shall be directed toward improving proficiency in areas that deal with the technical aspects of firearms, the development of techniques used in evaluating and operating equipment, the increase in working knowledge of the laws and regulations



administered by ATF, and the development of techniques used when providing testimony in court as an expert witness.

b.    <u>Branch Training Program</u>. Administrative and managerial capabilities of analysts and aides shall be recognized and developed. The aim of branch training is to increase the professional stature of the individual to make him/her better fitted to take full advantage of promotional opportunities. This training will continue throughout his/her career.

c.    <u>Orientation of New Personnel</u>. A new analyst or aide is to be given a thorough orientation of the branch, particularly the duties he/she is expected to perform. New analysts shall be assigned to work directly with an experienced or senior analyst until such time that the new employee demonstrates that he/she can perform his/her duties with a minimum of supervision.

180.    <u>TECHNICAL AND INDUSTRY MEETINGS</u>.

a.    <u>General</u>. Analysts and aides are expected to take an active part in associations and societies in their fields of specialization.

b.    <u>Attendance Criteria.</u>

(1).    Often several analysts will request permission to attend the same meeting. In making recommendations for attendance to the Chief, Firearms Division, the following criteria will be used by the branch Chief. Is the requester:

(a).    presenting his/her own technical paper at the meeting,

(b).    an officer of the society,

(c).    a dues-paying member of the society, or

(d).    invited to speak to a scientific group on his/her specialty? In making recommendations for attendance, care must also be taken to rotate personnel wherever possible so that one person does not attend the same meeting year after year. In most cases, one person from the branch may be authorized to attend a particular meeting.

(3).    Care should be taken to attend only those meetings that will be beneficial to the branch functions.

181.    <u>BRANCH FACILITIES, EQUIPMENT, AND MATERIAL</u>.



a.    Library Maintenance.

   (1).    The branch shall maintain an adequately stocked library of
          reference material. Library space and fixtures shall meet the needs
          of the branch for study and research. The library shall contain
          up-to-date copies of books and periodicals covering a wide range
          of technical information on firearms and other related information.
          The library shall also contain technical files relating to all firearms
          manufacturers and importers, including technical data on all
          firearms produced and/or imported by the various firms.

      (a).    Subscriptions shall be maintained with all major publications
             dealing with firearms (domestic and foreign).

      (b).    Subscriptions shall also be maintained with any professional
             journals dealing with material of branch interest.

      (c).    Regulations and rulings administered by ATF, as well as
             industry circulars, manuals, etc., will be maintained in a
             manner that permits easy access.

   *(2)    New and updated reference materials shall be ordered as they
          become available and as funding is available.*

b.    Firearms Reference Collection. The branch shall maintain a firearms
     reference collection that will consist of as many variations of firearms and
     ammunition as possible.

     The Chief, Firearms Technology Branch (FTB) shall be responsible for
     ensuring that:

   (1).    The acquisition of firearms will be made only from ATF Law
          Enforcement divisions.

   (2).    FTB will refer all offers made to them for abandonments and
          donations to the Chief, Firearms Division, who will approve or
          disapprove acceptance.

   (3).    If an abandoned or donated firearm is approved for acceptance,
          the appropriate enforcement field division will be tasked with
          processing the documentation required to place these firearms into
          Government service. These firearms will be placed into



Government service via ATF F 1850.23, Release and Receipt of Property, which will be signed by the SAC of the field division and forwarded to the Chief, Firearms Division. After ATF F 1850.23 is signed by the Chief, Firearms Division indicating receipt of the firearm, the form will be forwarded to the Chief, FTB, who will forward the original form to the submitting field division and a copy to the Accountable Officer (Chief, Property and Fleet Management Section) for inclusion in the property inventory.

(4).     If a firearm has been seized and forfeited to ATF and is desired for inclusion in the reference collection, the Chief, FTB will coordinate the acquisition of the desired firearm with the Seized Property Section, Planning and Analysis Division. ATF F 1850.23 will be forwarded to the Accountable Officer.

(5).     Requests for FTB to make a firearm for use as an undercover prop, for court presentation, or any other purpose must be approved by the Chief, Firearms Division.

(6).     If a firearm is submitted for examination and cannot legally be returned, FTB will notify the submitter of the options for lawful disposition of the firearm. If the submitter does not provide instructions for lawful disposition of the firearm within 60 days, the matter will be referred to the Firearms Enforcement Branch for coordination with the Washington Field Division and processing forfeiture and disposition of the firearm.

(7).     Any transfer of a reference collection firearm requires the approval of the Chief, Firearms Division. Subsequently, the Chief, FTB will complete and forward ATF F 1850.37, ITEMS Property Transfer Transaction Record, or ATF F 1850.23 to the Chief, Facilities Management Branch (FMB). The transfer of firearms is only authorized to branches and divisions within ATF or to other Federal agencies. Firearms shall not be transferred or donated to State or other non-Government agencies. NOTE: The transfer of NFA firearms outside of ATF must be approved by the ADLE.

(8).     When a reference collection firearm, including any firearm manufactured by FTB, is no longer required by the Bureau, the firearm shall be reported as excess to the Accountable Officer for disposal action. The Accountable Officer will follow firearms disposal restrictions as set forth in ATF O 1850.2B. A request for destruction will be made as follows:          *



(a). All requests to destroy reference collection firearms will be made, via memorandum, from the Chief, Firearms Division to the Chief, Administrative Programs Division, ATTN: Chief, FMB. The memorandum must include the following information about the firearms:

    1    Make.

    2    Model.

    3    Serial number.

    4    Manufacturer.

    5    PIIN or Firearms Technology Branch tag number.

    6    Brief description of firearm (e.g., barrel length, blue steel, stainless steel, semiautomatic, automatic, etc.).

(b). The Chief, FMB will issue ATF F 1850.2, Report of Destruction, authorizing the Chief, Firearms Division to destroy the firearms.

(c). The Chief, FTB will ensure that the firearms are destroyed according to Bureau policy and that ATF F 1850.2, certifying destruction, is returned, through the Chief, Firearms Division, to the Chief, FMB who will remove the firearms from the Inventory Tracking and Equipment Management System (ITEMS).

(d). Once the Chief, FTB is notified by the Chief, FMB that the destroyed firearms have been removed from ITEMS, the Chief, FTB will remove the firearms from the reference collection inventory data base.

(9). All NFA weapons will be queried in the National Firearms Registration and Transfer Record (NFRTR) by the Firearms Enforcement Branch project officer responsible for the Washington Field Division and noted as such on ATF F 1850.23 or ATF F 1850.2 prior to destruction.

(10). If a reference collection firearm is a NFA firearm registered in the NFRTR and is destroyed, the Firearms Enforcement Branch project officer responsible for the Washington Field Division will request its removal from the NFRTR.



(11). The security of firearms shall meet the requirements of ATF O 3400.1, Property Taken Into Bureau Custody, chapter C, paragraph 23(b).

(12). An inventory of the firearms reference collection will be conducted annually at the direction of the Chief, Firearms Division, or as required by the Accountable Officer. *

c. Branch Supplies and Equipment.

(1). The Chief, FTB shall be responsible for ensuring that an adequate stock of tools, cleaning equipment, office supplies, etc., is maintained and that repairs to instruments and equipment are made promptly. He/she shall be responsible for keeping test instruments and equipment updated and properly calibrated.

(2). When practical, supplies and instruments shall be selected from those listed on GSA schedules. For reasons of economy, time, and funds, the Chief, FTB will establish blanket purchase order agreements with at least two firearms supply houses for the purchase of tools, cleaning equipment, small quantities of ammunition, and other expendable items, ensuring that ATF procurement rules and procedures are followed.

182. TESTING EQUIPMENT.

a. General. The Branch shall maintain a stock of precision measuring tools and precision sound level meters for use in testing.

b. Calibration of Sound Level Meters. Sound level meters shall be returned to the manufacturer at least annually for calibration and inspection. The Chief, FTB shall maintain a log of calibration dates and ensure that sound level meters and their backup systems are calibrated when required.

183. COURT APPEARANCES.

a. Principles to be Followed. The analyst or aide presenting evidence as an expert witness shall be able to testify in a competent and authoritative manner. Statements will be clear and distinct and made in a courteous and dispassionate manner. Prior to the trial or hearing, the analyst or aide shall review and organize his/her analytical data and exhibits and give thought to theoretical questions that may arise in the trial.

b. Opposing Technical Testimony. Should opposing technical testimony be



presented in a trial or hearing, the analyst shall make himself/herself available to the Government attorney in preparing questions for crossexamination or organizing rebuttal testimony.

184. RECORD, REPORT, STORAGE, AND DISPOSITION OF SAMPLES.

    a.    Criminal Law Enforcement Samples.

        (1).    Since physical evidence samples submitted to the Branch are frequently used in court cases, special care must be observed in handling and storing them.

        (2).    The evidence technician shall promptly and carefully open all packages and enter all available information in the evidence logbook concerning each sample and prepare a case jacket that shall contain all information relating to the case. The evidence technician shall assign a Branch control number to the evidence.

        (3).    The Branch Chief shall assign the project to an analyst.

        (4).    Upon receipt of the evidence, the designated technician shall immediately sign and date all evidence tags or otherwise identify all items.

        (5).    A file of post office registry receipts shall be maintained by the evidence technician. The receipts shall be identified by the registry number or Branch number.

    b.    Safekeeping of Samples.

        (1).    The receipt, identification, disposition, and storage of samples must be recorded as provided in this chapter. Extreme care shall be taken so that no samples are lost, that each one can be promptly obtained when needed, and that the chain of custody of evidence is maintained.

        (2).    For the most part, physical evidence shall be returned to the submitting officer soon after the report of technical examination is made. Physical evidence shall be returned by registered or certified mail return receipt requested, or approved common carrier. If the samples shall be stored for any reason, they shall be stored numerically by category in a vault or evidence storeroom that is provided with a lock to which only the analysts and Branch Chief have keys. Fire regulations may require the availability of an emergency key. Whenever a sample is released to a person



outside the technical staff, a receipt shall be obtained. This does not apply if samples are surrendered to the courts as evidence, as exhibits in a trial, or for other court purposes. A notation shall be made to this effect in the evidence log. The storeroom shall be neatly arranged to prevent the accumulation of miscellaneous items that would result in a fire hazard. When any danger to the security of the evidence arises, the Branch Chief shall be advised without delay.

c.   <u>Numbering and Dating of Samples</u>. Stamp the date of receipt and affix the Branch number on the letter of transmittal that is accompanying the sample. Indicate the Branch number on an identification tag and attach it to the sample. Execute the first open "chain of custody" block on the evidence tag, if a tag is provided.

d.   <u>Recording Evidence in Logbook</u>. Incoming evidence shall be assigned a Branch number and recorded in the evidence logbook to show the Branch number, a description of the item, the date received, the IN, and its disposition.

e.   <u>Analyst's Report of Technical Examination</u>. Results of an analysis or examination of evidence shall be reported on ATF F 7540.1, Firearms Technology Branch Report of Technical Examination. (See Exhibit 15). The report shall contain adequate information to identify the sample and its source. The results of the analysis shall be shown in detail, and conclusions by the analyst shall answer clearly the questions submitted with the evidence. Continuation sheets may be used on long reports. The original technical report shall be signed by the analyst and initialed by the Branch Chief or, in his/her absence, the designated reviewing officer.

f.   <u>Disposition of Evidence</u>.

(1).   Upon completion of examination and preparation of report, the evidence shall be returned to the submitting officer unless other instructions are received.

(2).   All evidence shall be returned via registered mail, return receipt requested, or approved common carrier. The evidence technician shall package and address the evidence, assign a registered number, and see that the evidence is delivered to the post office. The firm mailing book will serve as a receipt of acceptance by the post office.

g.   <u>Disposition of Importation Evaluations</u>. All firearms received for



importation evaluation shall be returned via registered mail, return receipt requested, or approved common carrier to the Customs port of entry that released the item unless other instructions are received.

h.   Disposition of Industry Samples. Samples submitted by industry for classification or determination are to be requested for retention in the firearms reference collection. If not retained, the items shall be returned to the sender via registered mail, return receipt requested, or approved common-carrier. If the submitted sample is found to be subject to the NFA, it may be returned only if the submitter is a properly licensed manufacturer or Class II importer of NFA weapons or upon the registration of the sample in the NFRTR.

185.   FILES AND REPORTS.

a.   Information Files. The Branch shall maintain files from which information concerning classifications, correspondence, court attendance, examinations, travel, and other official activities can be quickly obtained.

b.   Filing of Reports of Examination. Reports of examination shall be filed by the name of the submitting agent.

c.   Formal Correspondence. Responses to all formal correspondence shall be assigned to the various analysts by the Branch Chief. The format for all correspondence prepared by the Branch shall be in compliance with ATF H 1325.1B, ATF Correspondence Handbook.

   (1).   Legibly handwritten and typed drafts of correspondence shall be due to the Branch Chief for review within 5 working days of initial assignment, court appearances and special projects permitting. Correspondence requiring extensive research or testing may be given additional time if requested by the analyst.

   (2).   Distribution of copies of formal correspondence shall be in compliance with ATF and Branch policy.

d.   Miscellaneous Reports and Data. The Branch Chief shall file miscellaneous technical data, research reports, and items which might be classified as encyclopedic material so that they are readily available to the analysts.

e.   Monthly Status Report. At the end of each month, the Branch is to furnish a report to the Chief, Firearms Division, outlining significant activities.



186.   BRANCH SAFETY AND SECURITY.

a.   General. Safety Program, excerpted, ATF O 2902.2, is incorporated to ensure that Branch personnel have ready access to the standards of safety and security to which they are required to adhere.

   (1).   Branch supervisors are responsible for the day-to-day operation of Branch safety programs within their respective areas. They are responsible for every reasonable precaution to prevent injuries. Supervisors are to consider Branch safety a basic part of their jobs and are to make every effort possible to correct safety hazards and to reduce accidents through such methods as:

      (a).   Enforcement of compliance with specific safety instructions

      (b).   Prompt investigation and analysis of accidents with corrective action when necessary.

      (c).   Periodic inspections of space where a potential hazard exits.

   (2).   The Branch Chief is responsible for designating one person as safety officer to coordinate the Branch safety programs.

   (3).   Safety standards covering all practices and procedures shall be formulated, approved, and posted. Specific procedures for testfiring all weapons shall also be posted.

b.   Visitor Safety.

   (1).   Visitors to the Branch will be limited when possible and shall be escorted at all times. For the safety of visitors and Branch personnel, conferences with visitors shall be held in a separate area from the work or testfire areas, such as in a reception or conference room.

   (2).   If tours of visitors are to be conducted through the Branch, a designated area should be provided for such tours without disruption of normal Branch operating and safety procedures.

   (3).   The evidence pickup and receipt area shall be accessible without entry to Branch working areas.

187 - 190  RESERVED

(139)

191. <u>OBJECTIVES.</u>

The objectives of the VOP are to identify, investigate, and prosecute the top violent criminals in the United States. It is also the intent of this program to enhance police officer safety by alerting law enforcement personnel who are making an inquiry through ▮▮▮ that the subject of the inquiry has a criminal history of armed violence and, in some cases, violent assaults on police officers.

192. <u>INVESTIGATIVE GUIDELINES OF 18 U.S.C. § 924(e).</u>

In 1984, the Armed Career Criminal Act was enacted and gave ATF the capability to remove armed career criminals from society. In this respect, 18 U.S.C. § 924(e) calls for 15 years' mandatory imprisonment for any defendant who is convicted for possession of a firearm under 18 U.S.C. § 922(g) and who has three previous State or Federal convictions for a violent felony or serious drug offense, or both. It is significant that this statute does not allow for parole, probation, or early release. In addition, the statute provides for a maximum fine of $250,000.

193. <u>PROGRAM CRITERIA.</u>

    a.    Under the program, which began in March 1992, the most significant career criminals in the United States with a criminal history of violent assaultive behavior and a propensity to possess and use firearms in their violent criminal activities are entered into NCIC's ATF Violent Felon File. Each field division SAC is required to submit a predetermined number of subjects to the Firearms Enforcement Division for inclusion in the VOP. Before being placed in the ATF VOP, the subject must meet ALL four of the following criteria:

        (1).    A minimum of three prior felony convictions,



        (2).    A felony conviction for a violent crime when a firearm or other weapon was used.



(3). On or around December 8, 1993, the NCIC Policy Advisory Board, modified criterion number 3. Specifically, criterion number 3 no longer requires that the subject has a conviction for a crime when he/she injured or killed his/her victim. Instead, at least ONE of the following is required in order to satisfy this criterion:

(a). The subject has a conviction for a crime.

(b). The subject has been arrested and charged with a crime

(c). The subject has been convicted of a crime on three or more occasions

(4). The subject has been on probation/parole or released from prison within the last 5 years.

b. When one of the violent felony offenders is encountered by a law enforcement officer AND is in possession of a firearm, ATF is immediately contacted by that law enforcement agency.

(1). ATF's National Command Center in Washington, DC, will respond to the inquiring law enforcement agency within 10 minutes.

(2). An ATF special agent will respond to the contacting department to assist in the investigation of the violent offender for violations of the Federal firearms laws.

194. <u>REPORTING PROCEDURES.</u>

When a subject who is in the VOP is arrested, convicted, and sentenced, a KSAR should be immediately forwarded to the Firearms Enforcement Division.

195 - 200  RESERVED





**201.  BACKGROUND.**

The Anti Car Theft Act of 1992, H.R. 4542, caused ATF to establish guidelines and procedures regarding investigations of carjackings.  Since, by definition, the carjacking statute applies ONLY to carjackings in which the defendant is armed with a firearm, in all instances, a violation of the Federal firearms has occurred as well.  The purpose of this chapter is to set forth investigative guidelines consistent with the Bureau's enforcement of the Federal firearms laws.

**202.  JURISDICTIONAL RESPONSIBILITIES.**

    a.    All investigations of carjackings in which ATF participates will be governed by the following:

        (1)    The Federal Bureau of Investigations (FBI) is charged with the responsibility to investigate violations of Federal law relative to motor vehicle theft, including 18 U.S.C. § 2119, which is the codified H.R. 4542

        (2)    ATF is responsible for enforcing Federal firearms laws as they relate to carjackings, including but not limited to 18 U.S.C. §§ 922(g) and 924(c).

    NOTE:   In contrast to the penalty imposed under 18 U.S.C. § 2119 of up to 15 years' incarceration, the mandatory sentencing provisions under 18 U.S.C § 924(c), particularly if an NFA firearms is used, are significant additional offenses that will subject violent carjackers to prolonged incarceration.

        (3)    It was Congress' intention when enacting the carjacking provisions of the Anti Car Theft Act of 1992 to combine the expertise of ATF and the FBI in supporting the efforts of State and local police agencies, which have the PRIMARY RESPONSIBILITY for dealing with this offense.

        (4)    Investigations of juvenile carjacking suspects should be handled at

the local level unless specifically requested by the U.S. attorney.

(5)    Any information that is received by ATF concerning carjacking violations will be coordinated with the FBI as soon as possible.

203.    <u>SAC RESPONSIBILITIES.</u>

a.    It is the SAC's discretion concerning whether ATF will be a participant in a carjacking task force, whether multimission and inclusive of carjacking or those established exclusively to target armed carjacking.

b.    The SAC will determine if an ATF role in a carjacking investigation is in the best interest of the field division and ATF. If ATF's participation is determined to be appropriate, the investigation will be conducted cooperatively in the national interest to support State, local, and other Federal law enforcement agencies.    *

204 - 210  RESERVED

Exhibit 1

## FEDERAL FIREARMS LAWS

| GUN CONTROL ACT (GCA) | NATIONAL FIREARMS ACT (NFA) |
|---|---|

FIREARM:

(A) Any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive;

(B) the frame or receiver of any such weapon;

(C) any firearm muffler or firearms silencer; or

(D) any destructive device. Such term does not include an antique firearm.

FIREARM:

(1). A shotgun having a barrel or barrels of less than 18 inches in length

(2) a weapon made from a shotgun if such weapon made as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length

(3) a rifle having a barrel or barrels of less than 16 inches in length;

(4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length;



(5) any other weapon as defined in subsection 5845(e);

(6) a machinegun;

(7) any silencer as defined in 18 U.S.C. section 921; and

(8) a destructive device.  The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary or his delegate finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

GUN CONTROL ACT (GCA)                    NATIONAL FIREARMS ACT (NFA)

SHOTGUN:

A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile from each single pull of the trigger.

SHORT-BARRELED SHOTGUN:

A shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches.>

SHOTGUN:

A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

FEDERAL FIREARMS LAWS

GUN CONTROL ACT (GCA)          NATIONAL FIREARMS ACT (NFA)

RIFLE:

A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.



## SHORT-BARRELED RIFLE:

A rifle having one or more barrels less than 16 inches in length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than 26 inches.

## RIFLE:

A weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger and shall include any such weapon which may be readily restored to fire a fixed cartridge.

## MACHINEGUN:

Any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

## FEDERAL FIREARMS LAWS

## GUN CONTROL ACT (GCA)          NATIONAL FIREARMS ACT (NFA)

## FIREARM SILENCER AND

## FIREARM MUFFLER:

Any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication.

## "ANY OTHER WEAPON":

Any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or



weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)          NATIONAL FIREARMS ACT (NFA)

**ANTIQUE FIREARM:**

(A)  Any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

(B)  Any replica of any firearm described in subparagraph (A) if such replica--

    (i).    is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

    (ii)    uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

**ANTIQUE FIREARM:**

Any firearm not designed or redesigned for using rim fire or conventional centerfire ignition with fixed ammunition and manufactured in or before 1898 (including any matchlock, flintlock, percussion cap, or similar type of ignition system or replica thereof, whether actually manufactured before or after the year 1898), and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

**UNSERVICEABLE FIREARM:**

A firearm which is incapable of discharging a shot by means of an explosive or incapable of being readily restored to a firing condition.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)          NATIONAL FIREARMS ACT (NFA)

**DESTRUCTIVE DEVICE:**

(A)    Any explosive, incendiary, or poison gas--

    (i).    bomb,

    (ii)    grenade,



  (iii)  rocket having a propellant charge of more than four ounces,

  (iv)  missile having an explosive charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses.

(B)  Any type of weapon (other than a shotgun or a shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and

(C)  Any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

DESTRUCTIVE DEVICE:

(1). any explosive, incendiary, or poison gas

  (A) bomb,

  (B) grenade,

  (C) rocket having a propellant charge of more than four ounces,

  (D) missile having an explosive or incendiary charge of more than one-quarter ounce,

  (E) mine, or

  (F) similar device,

(2). any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shot shell which the Secretary or his delegate finds is generally recognized as particularly suitable for sporting purposes; and

(3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device although originally designed for use as a weapon, which is redesigned for use as a signaling pyrotechnic, line throwing, safety, or similar device; surplus ordinance sold, loaned, or given by the Secretary of the Army pursuant to 10 U.S.C sections 4684(2), 4685, or 4686; or any other device which the Secretary of the Treasury or his delegate



finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.>

## FEDERAL FIREARMS LAWS

**GUN CONTROL ACT (GCA)        NATIONAL FIREARMS ACT (NFA)**

DESTRUCTIVE DEVICE:

The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon; any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordinance sold, loaded, or given by the Secretary of the Army pursuant to the provisions of 10 U.S.C. sections 4684(2), 4685, or 4686; or any other device which the Secretary of the Treasury finds is not likely to be used as a weapon, is an antique, or is a rifle which the owner intends to use solely for sporting purposes.

## FEDERAL FIREARMS LAWS

**GUN CONTROL ACT (GCA)        NATIONAL FIREARMS ACT (NFA)**

AMMUNITION:

Ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.

ARMOR PIERCING AMMUNITION:

A projectile or projectile core which may be used in a handgun and which is constructed entirely (excluding the resence of traces of other substances) from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium. Such term does not include shotgun shot required by Federal or State environment or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the Secretary finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core which the Secretary finds is intended to be used for industrial purposes, including a charge used in an oil and gas well perforating device.

Comment:Although there is no definition of ammunition listed in Title II, there are references under "Destructive Devices" concerning missiles, rockets, etc.

## FEDERAL FIREARMS LAWS

**GUN CONTROL ACT (GCA)        NATIONAL FIREARMS ACT (NFA)**

PERSON AND WHOEVER:



Include any individual, corporation, company association, firm, partnership, society, or joint stock company.

SECRETARY OR SECRETARY OF THE TREASURY:

The Secretary of the Treasury or his delegate.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)        NATIONAL FIREARMS ACT (NFA)

DEALER:     (Licensed Dealer)

(A)  Any person engaged in the business of selling firearms at wholesale or retail,

(B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or

(C) any person who is a pawnbroker.  The term "licensed dealer" means any dealer who is licensed under the provisions of the GCA, as amended.

COLLECTOR: (Licensed Collector)

Any person who acquires, holds, or disposes of firearms as curios or relics, as the Secretary shall by regulation define, and the term "licensed collector" means any such person licensed under the provisions of the GCA, as amended.

PAWNBROKER:

Any person whose business or occupation includes the taking or receiving, by way of pledge or pawn, of any firearm as security for the payment or repayment of money.

DEALER:

Any person, not a manufacturer or importer, engaged in the business of selling, renting, leasing, or loaning firearms and shall include pawnbrokers who accept firearms as collateral for loans.

TRANSFER:

Transfer and the various

derivatives of the word, shall include selling, assigning, pledging, leasing, loaning, giving away or otherwise disposing of an NFA firearm.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)        NATIONAL FIREARMS ACT (NFA)



IMPORTER: (Licensed Importer)

Any person engaged in the business of importing or bringing firearms or ammunition into the United States for purposes of sale or distribution; and the term 'licensed importer' means any such person licensed under the provisions of the GCA, as amended.

IMPORTER:

Any person who is engaged in the business of importing or bringing firearms into the United States.

## FEDERAL FIREARMS LAWS

| GUN CONTROL ACT (GCA) | NATIONAL FIREARMS ACT (NFA) |
|---|---|

MANUFACTURER: (Licensed Manufacturer)

Any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution;. and the term "licensed manufacturer" means any such person licensed under the provisions of the GCA, as amended.

MANUFACTURER:

Any person who is engaged in the business of manufacturing firearms.

MAKE:

Make and the various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm.

## FEDERAL FIREARMS LAWS

| GUN CONTROL ACT (GCA) | NATIONAL FIREARMS ACT (NFA) |
|---|---|

WITH THE PRINCIPAL OBJECTIVE OF LIVELIHOOD AND PROFIT:

This means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection, provided that proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism. For purposes of this paragraph, the term "terrorism" means activity, directed against United States persons, which—

(A) is committed by an individual who is not a national or permanent resident alien of



the United States

(B) involves violent acts or acts dangerous to human life which would be a criminal violation if committed within the jurisdiction of the United States and

(C) is intended--

    (i) to intimidate or coerce a civilian population;

    (ii) to influence the policy of a government by intimidation or coercion; or

    (iii) to affect the conduct of a government by assassination or kidnapping.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)    NATIONAL FIREARMS ACT (NFA)

**ENGAGED IN THE BUSINESS:**

This means

(A) as applied to a manufacturer of firearms, a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured;

(B) as applied to a manufacturer of ammunition, a person who devotes time, attention, and labor to manufacturing ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of ammunition manufactured;

(C) as applied to a dealer engaged in the business of selling firearms at wholesale or retail, a person who devotes time, attention and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms, but the term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement or a personal collection or for a hobby, or who sells all or part of his/her personal collection of firearms.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)    NATIONAL FIREARMS ACT (NFA)

**ENGAGED IN THE BUSINESS:**

As applied to a dealer engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, a person who devotes



time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms;

(E)     As applied to an importer of firearms, a person who devotes time, attention, and labor to importing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms imported; and

(F)     As applied to an importer of ammunition, a person who devotes time, attention, and labor to the importation of ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the ammunition imported.

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)       NATIONAL FIREARMS ACT (NFA)

INTERSTATE AND FOREIGN COMMERCE:

Includes commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between places within the same State but through any place outside of that State. The term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and the possessions of the United States (not including the Canal Zone).

## FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)       NATIONAL FIREARMS ACT (NFA)

PROHIBITED PERSON:

An individual who:

(1).     is under indictment for, or has been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year; (2) is a fugitive from justice; (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act; (4) has been adjudicated as a mental defective or has been committed to any mental institution; (5) who, being an alien, is illegally or unlawfully in the United States; (6) who has been discharged from the Armed Forces under dishonorable conditions; or (7) who, having been a citizen of the United States,



has renounced his citizenship.

## FUGITIVE FROM JUSTICE:

Any person who has fled from any State to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding.

Comment:    It would be unlawful for any person to transfer a firearm to "Prohibited Person" listed in title I.

An individual under indictment for a crime punishable for a term exceeding 1 year is not prohibited from possessing a firearm.

### FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)      NATIONAL FIREARMS ACT (NFA)

## PUBLISHED ORDINANCE:

A published law of any political subdivision of a State which the Secretary determines to be relevant to the enforcement of this chapter and which is contained on a list compiled by the Secretary, which list shall be published in the Federal Register, revised annually, and furnished to each licensee under this chapter.

### FEDERAL FIREARMS LAWS

### GUN CONTROL ACT (GCA)      NATIONAL FIREARMS ACT (NFA)

## INDICTMENT

An indictment or information in any court under which a crime punishable by imprisonment for a term exceeding 1 year may be prosecuted.

## CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING 1 YEAR:

Does not include (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of 2 years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the laws of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside, or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of chapter 44, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.



Exhibit 2

## STATUTES VIOLATED--CASE REPORT

## GUN CONTROL ACT OF 1968, AS AMENDED

### 18 U.S.C. CHAPTER 44

<u>Section 922(a).</u>     It shall be unlawful.          <u>Penalties</u>

(1).(A) For any person except a licensed importer,
licensed manufacturer, or licensed dealer to
engage in the business of importing,
or dealing in firearms,
or in the course of such business to
ship, transport, or receive any firearm
in interstate or foreign commerce.

Section 924:

(a)(1)(D); willfully manufacturing,
violates; maximum
$5,000 fine or 5 years'
imprisonment or both.

(1).(B) For any person except a licensed importer
or licensed manufacturer to engage in
the business of importing or manufacturing
ammunition, or in the course of such
business to ship, transport, or receive
any ammunition in interstate or foreign
commerce.

Same as above.

(2).     For any licensee under the provisions of
this chapter to ship or transport firearms
in interstate or foreign commerce to any
person other than a licensee.

Same as above.

(3).     For any person, other than a licensee
to transport into or receive in the State
where he resides any firearm purchased
or otherwise obtained outside the state
unless it is a rifle or shotgun sold or
delivered in person by a licensee in
compliance with the laws in both the
purchaser's and licensee's states.

Same as above.

(4).     For any person, other than a licensee to
transport in interstate or foreign commerce
any destructive device, machinegun
short-barreled shotgun, or short-barreled
rifle, except as specifically authorized by



the Secretary.

(5). For any person other than a licensee to deliver any firearm to any person (other than another dealer) who the transferor knows or has reasonable cause to believe any other State than that in which the transferor resides.

(a)(1)(B); knowingly violates; maximum $5,000 fine or 5 years' imprisonment, or both. resides in

(6). For any person in connection with the any firearm or ammunition knowingly to make use of a false or fictitious oral or written statement or false, fictitious, or misrepresented identification intended to or likely to deceive a licensee with respect to the lawfulness of the sale or other disposition of a firearm or ammunition.

(a)(1)(D); willfully acquisition of violates; maximum $5,000 from a licensee, fine or 5 years' imprisonment or both.

(7). For any person to manufacture or import ammunition, except that not apply to--

(a)(1)(D); willfully armor-piercing violates; maximum $5,000 this paragraph shall fine or 5 years' imprisonment.

(A) the manufacture or importation of such ammunition for the use of the agency thereof or any State or any d epartment, agency, or political subdivision thereof;

(B) the manufacture of such ammunition for the purpose of exportation; and

(C) any manufacture or importation for the purposes of testing or experimentation authorized by the Secretary; and

(8). For any manufacturer or importer to sell or deliver armor piercing ammunition, that this paragraph shall not apply to--

(a)(1)(D); willfully violates; maximum $5,000 except fine or 5 years' imprisonment, or both.

(A) the sale or delivery by a manufacturer or importer of such ammunition for



use of the United States or any
department or agency thereof or
any State or any department, agency,
or political subdivision thereof;

(B)     the sale or delivery by a manufacturer or
importer of such ammunition for the
purpose of exportation;

(C)     the sale or delivery by a manufacturer or importer of such ammunition for
the purposes of testing or experimenting authorized by the Secretary.

Section 922(b).   It shall be unlawful for any
licensee to sell or deliver:

(1).    Any shotgun, rifle or ammunition for a          (a)(1)(D); willfully
shotgun or a rifle to any person under the                  violates; maximum $5,000
age of 18, and any firearm or ammunition                    fine or 5 years
other than shotgun or rifle to any person       imprisonment or both. under the
age of 21, knowing or having
reason to believe the person is not of
proper age.

(2).    Any firearm to any person where the             Same as above.
purchase or possession of such firearm
would be in violation of any State law or
published ordinance at the place of sale,
delivery or other disposition.

(3).    Any firearm to any person who the licensee      Same as above.
knows or has reasonable cause to believe
does not reside in the State in which the
licensee's place of business is located
unless it is a rifle or shotgun sold or
delivered in person by the licensee in
compliance with the laws in both the
purchaser's and licensee's States.

(4).    To any person any destructive device,           (a)(1)(D); willfully machinegun,
short-barreled shotgun, or                      violates; maximum $5,000 short-barreled rifle,
except as                       fine or 5 years'
specifically authorized by the Secretary.       imprisonment or both.

(5).    Any firearm or armor-piercing ammunition to     (a)(1)(D); willfully
any person unless the licensee notes in his             violates; maximum $5,000



records the name, age, and place of residence of such person.

fine or 5 years' imprisonment or both.

<u>Section 922(c).</u> A licensed importer, dealer may sell a firearm to a person who does not appear in person at the licensee's business premise only if:

Same as above. manufacturer, or

(1). The transferee submits a prescribed sworn which includes the name of the principal law enforcement officer of the locality to which the firearm will be delivered.

Same as above. statement

(2). The transferor has, prior to the shipment or delivery of the firearm, submitted by registered or certified mail (return receipt requested), a copy of the prescribed sworn statement and a description of the firearm to the principal law enforcement officer of the locality to which the firearm will be delivered; and

(3). The transferor has delayed shipment for a period of 7 days following receipt of the notification of the acceptance or refusal of delivery of the prescribed sworn statement.

Same as above

<u>Section 922(d).</u> It shall be unlawful for any person to sell or dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

(1). is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for year;

(a)(2); knowingly violates; maximum $5,000 fine or a term exceeding 1 10 years' imprisonment or both.

(2). is a fugitive from justice;

(3). is an unlawful user of, or addicted to, any controlled substance;

(4). Has been adjudicated as a mental defective or has been committed to



any mental institution;

(5).    who, being an alien, is illegally or unlawfully in the United States;

(6).    who has been discharged from the Armed Forces under dishonorable conditions, or

(7).    who, having been a citizen of the United States, has renounced his citizenship.

Section 922(e).    It shall be unlawful for person knowingly to deliver any package containing a firearm or ammunition to a for delivery in interstate person other than a licensee without written notice to the carrier that such firearm or ammunition is being shipped

(a)(1)(D); willfully any violates; maximum $5,000 fine or 10 years' common carrier imprisonment or both. commerce to a

Section 922(f).    It shall be unlawful for any common carrier to transport in interstate commerce any firearm or ammunition with knowledge or reasonable cause to believe it in violation of 18 U.S.C. chapter 44.

(a)(1)(B); knowingly violates; maximum $5,000 fine or 5 years' imprisonment or both.

Section 922(g).    It shall be unlawful for any person–

(a)(2); knowingly violates maximum $5,000 fine or 10 years' imprisonment or both.

(1).    who has been convicted in any court of a crime punishable by imprisonment for a term exceeding 1 year;

(2).    who is a fugitive from justice;

(3).    who is an unlawful user of or addicted to any controlled substance;

(4).    who has been adjudicated as a mental defective or has been committed to a mental institution.



(5).    who, being an alien, is illegally or unlawfully
in the United States;

(6).    who has been discharged from the
Armed Forces under dishonorable
conditions, or

(7).    who, having been a citizen of the United
States, has renounced his citizenship
to ship or transport in interstate or foreign
commerce, or possess in or affecting
commerce, any firearm or ammunition; or
to receive any firearm or ammunition which has
been shipped or transported in
interstate or foreign commerce.

Section 922(h).    It shall be unlawful for
any individual, who to that individual's
knowledge and while being employed for any
described in any paragraph of
subsection (g) of this section, in the
course of such employment--

(a)(2); knowingly violates;
maximum $5,000 fine or
10 years' imprisonment or person
both.

(1).    to receive, possess, or transport any
firearm or ammunition in or affecting
interstate or foreign commerce; or

(2).    to receive any firearm or ammunition
which has been shipped or transported
in interstate or foreign commerce.

Section 922(i).    It shall be unlawful for
any person to transport or ship in interstate
or foreign commerce any stolen firearm or
stolen ammunition, knowing or having
reasonable cause to believe the firearm
or ammunition was stolen.

Same as above.

Section 922(j).    It shall be unlawful for any
person to receive, conceal, store, barter,
sell or dispose of, pledge, or accept as
security for a loan any stolen firearm or
ammunition which is in interstate commerce,
knowing or having reason to believe the firearm

Same as above



or ammunition was stolen.

Section 922(k).     It shall be unlawful for any
person knowingly to transport, ship, or receive
interstate or foreign commerce any firearm
which has had the importer's or manufacturer's
serial number removed, obliterated, or altered.

(a)(1)(B); knowingly
violates; maximum $5,000 in
fine or 5 years'
imprisonment or both.

Section 922(l).     Except as provided in section
925(d), it shall be unlawful for any person
knowingly to import any firearm or ammunition
the United States in violation of 18 U.S.C.
chapter 44, or to receive any such firearm or
ammunition so imported.

(a)(1)(C); knowingly
violates; maximum $5,000 into
fine or 5 years'
imprisonment or both.

Section 922(m).     It shall be unlawful for any
licensee knowingly to make any false entry,
or fail to make any appropriate entry, or fail
to maintain any record he is required to keep
pursuant to 18 U.S.C. section 923 or
regulations promulgated thereunder.

Section 922(n).     It shall be unlawful for any
person who is under indictment for a crime
punishable by imprisonment for a term exceeding
1 year to ship or transport in interstate or
foreign commerce any firearm or ammunition or
receive any firearm or ammunition which has
been shipped or transported in interstate or
foreign commerce.

(a)(1)(D); willfully
violates; maximum $5,000
fine or 5 years'
imprisonment or both.

Section 922(o).     It shall be unlawful for any
person to transfer or possess a machinegun
unless it was lawfully possessed prior to
19, 1986, or transferred or possessed under     both.
authority of a governmental agency.

(a)(2); knowingly violates
maximum $5,000 fine or
10 years' imprisonment or May

Section 922(p).     It shall be unlawful for any
person to manufacture, import, sell, deliver,
possess, transfer, or receive any firearm that,
after removal of grips, stocks, and magazines,
is not as detectable as the security exemplar by walk
through metal detectors calibrated and operated

(f); knowingly violates;
maximum .$5,000 fine or
5 years' imprisonment or
both.


160

to detect the security exemplar or any major component of which, when subjected to inspection by types of X-ray machines commonly used at airports does not generate an image that accurately depicts the component. This section does not apply to firearms that (1) are imported for examination for compliance with this section, or (2) are certified by the Defense Department or CID as necessary for military or intelligence applications, or (3) were imported into or manufactured in the United States prior to the enactment of this section.

Section 923(h).     Licenses issued shall be kept posted and kept available for inspection on the premises covered by the license.

(a)(1)(D); willfully violates; maximum $5,000 fine or 5 years, imprisonment or both.

Section 923(i).     Licensed importers and licensed manufacturers shall identify, by means of a serial number engraved or cast on the receiver or frame of the weapon. . . . each firearm imported or manufactured by such importer or manufacturer.

(a)(1)(D); willfully violates; maximum $5,000 fine or 5 years' imprisonment or both.

Section 924(a)(1)(A).     It is unlawful to knowingly make any false statement or representation with respect to the infor-mation required to be kept in the records of a licensee or in applying for any license or exemption or relief from disability.

(a)(1); knowingly makes; $5,000 fine or 5 years' imprisonment or both.

Section 924(a)(2)(A).     It is unlawful for any licensee to knowingly make any false statement or representation with respect to the information required to be kept in the records of a licensee.

(a)(2); knowingly makes; $1,000 fine or 1 year's imprisonment or both.

Section 924(b).     It is unlawful for any person with intent to commit an offense therewith punishable by imprisonment for a term exceeding 1 year or with knowledge or reasonable cause to

Not more than a $10,000 fine and not more than 10 years' imprisonment.



believe that an offense punishable by imprisonment
for a term exceeding 1 year is to be committed
therewith to ship, transport, or receive a firearm
or any ammunition in interstate or foreign
commerce.

<u>Section 924(c)(1).</u>   Whoever, during and in
relation to any crime of violence or drug
trafficking crime which may be prosecuted
in a court of the United States, uses or
carries a firearm, shall be sentenced
to . . . .                                                    5 years' imprisonment.
If the firearm is a machinegun or is
equipped with a silencer shall be sentenced
to . . . .                                                    30 years' imprisonment.
In the case of a second or subsequent
conviction under this subsection such
person shall be sentenced to                    20 years' imprisonment
and if the firearm is a machinegun or is
equipped with a silencer should be sentenced
to . . . .                                                    Life without release.

<u>Section 924(e)(1).</u>   Any person who has three
previous convictions for a violent felony or
serious drug offense or both and has shipped,     Not more than a $25,000
transported, or received interstate or                fine and not less than
possesses in or affecting commerce any firearm          15 years' imprisonment.
or ammunition shall be sentenced to . . . .

<u>Section 924(f).</u>       Whoever, with the intent to
engage in conduct which:
(1).     Constitutes an offense listed in section
         1961(1),
(2).     Is punishable under the Controlled
         Substances Act (21 U.S.C. section 802 et seq.),
         the Controlled Subs * tances Import and Export
         Act (21 U.S.C. section 951 et seq.), or the
         Maritime Drug Law Enforcement Act (46 U.S.C.
         App. 1901 et seq.),
(3).     Violates any State law relating to any
         controlled substance (as defined in



section 102(6) of the Controlled Substances
Act (21 U.S.C. 802(6)), or

(4).      Constitutes a crime of violence,

travels from any State or foreign country into any
other State and acquires, transfers, or attempts to
acquire or transfer, a firearm in such other State
in furtherance of such purpose shall be sentenced     10 years' imprisonment or
to . . . .                                            $5,000 fine or both.

<u>Section 924(g).</u>     Whoever knowingly transfers a
firearm knowing that such firearm will be used to
commit a crime of violence or drug trafficking     10 years' imprisonment or
crime shall be sentenced to . . . .               $5,000 fine or both.

<u>Section 929.</u>   Whoever, during and in relation
to any crime of violence or drug trafficking
crime, uses or carries any handgun loaded with     Not less than 5 years'
armor-piercing ammunition.       imprisonment.

<u>Section 930(a).</u>   Whoever knowingly possesses or
causes to be present a firearm or other dangerous
weapon in a Federal facility, or attempts to do so,    1 year's imprisonment or
shall be sentenced to . . . .                  $5,000 fine or both.

<u>Section 930(b).</u>   Whoever, with intent that a
firearm or other dangerous weapon be used in the
commission of a crime, knowingly possesses or
causes to be present such firearm or dangerous
weapon in a Federal facility, or attempts to do so,    5 years' imprisonment or
shall be sentenced to                              $5,000 fine or both.

Exhibit 3

PROHIBITED ACTS OF LICENSED DEALERS.

A licensed firearms importer, manufacturer, dealer and/or collector MAY NOT:

1.      Willfully ship/transport in interstate or foreign commerce firearms to a
         nonlicensee, 922(a)(2).

EXCEPT:   (1) Does not preclude licensee from returning a firearm or replacement



firearm to a person from whom it was received, 922(a)(2)(A), and (2) does not preclude a licensee from mailing a firearm to any officer, employee, agent, or watchman for use in connection with his official duty, 922(a)(2)(B), 18 U.S.C. section 1715.

2.   Willfully sell handgun/ammunition to persons under 21 years of age, 922(b)(1).

3.   Willfully sell long-gun/ammunition to person under 18 years of age, 922(b)(1).

4.   Willfully sell firearms in violation of State law, 922(b)(2).

5.   Willfully sell/deliver any firearm to a nonresident, 922(b)(3).

EXCEPT:   (1) Does not apply to the sale/delivery of a rifle or shotgun to a nonresident if the transferee meets in person with the transferor to accomplish the transfer and the sale is in accordance with the law of both States, 922(b)(3)(A); and (2) does not apply to the loan or rental of a firearm to any person for temporary use for lawful sporting purposes, 922(b)(3)(B).

6.   Willfully sell machineguns, short-barreled shotgun or rifles, or destructive devices without U.S. Treasury permission, 922(b)(4).

7.   Willfully sell any firearm or armor-piercing ammunition without recording purchaser's name, address, and age, 922(b)(5).

8.   Willfully sell to a person who DOES NOT appear at a dealer's business, 922(o), unless:

   a.   Buyer completes Part II of ATF Form 4473 Part II.

   b.   Dealer submits Form 4473 to chief law enforcement officer where buyer lives.

   c.   Dealer delays delivery for at least 7 days in order to give the chief law enforcement officer an opportunity to object.

9.   Knowingly sell firearms/ammunition to prohibited persons, 922(d).

10.   Willfully deliver any package containing firearms/ammunition, without written notice, to common carrier for delivery to nonlicensee in another State, 922(e).

EXCEPT:   Any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common carrier may deliver the firearm or ammunition to the pilot, captain, conductor, or operator.

11.   Knowingly transport/ship any stolen firearm/ammunition in interstate commerce, 922(i).

12.   Knowingly sell, receive, conceal, or store stolen firearm/ammunition in interstate


164

commerce or accept stolen firearm/ammunition in interstate commerce as security for a loan, 922(j).

13. Knowingly ship/transport/receive firearm in interstate commerce with serial number removed, obliterated, or altered, 922(k).

14. Knowingly import firearms/ammunition illegally, or willfully receive firearm/ammunition illegally imported into U.S., 922(l).

EXCEPT: With permission from U.S. Treasury for scientific research; firearm is unserviceable curio/museum piece; except for machinegun, firearm is suitable for sporting purposes; or was previously taken out of U.S., by the person who is bringing it in, 925(d).

15 Willfully fail to keep his/her license posted and available for inspection, 923(h).

16. In the case of importers and manufacturers, willfully fail to identify a firearm imported or manufactured by such import or manufacturer with a serial number, 923(i).

VIOLATION OF THE ABOVE:   Violations of sections 922(d), (g), (h), i), (j), and (o)--$5,000/10 years. All others--$5,000/5 years.

17 Knowingly make false entry or fail to keep required records, misdemeanor up to $1,000/1 year, 922(m).

## PROHIBITED ACTS OF INDIVIDUALS

An unlicensed person may not:

1. Willfully engage in the business of importing, manufacturing, or dealing in firearms unless licensed, 922(a)(1)(A).

2. Willfully engage in the business of importing, or manufacturing ammunition, unless licensed, 922 (a)(1)(B).

3. Willfully transport into or receive in his State of residence a firearm obtained in another State, 922(a)(3).

EXCEPT:   Receipt of firearm by bequest or intestate succession, or the legal purchase in another State of long-gun, 922(b)(3).

4. Willfully transport in interstate commerce a machinegun, destructive device, short-barreled shotgun, or short-barreled rifle unless authorized by U.S. Treasury, 922(a)(4).

5. Willfully transfer, sell, trade, give, transport, or deliver a firearm to an unlicensed



person who resides in another State, 922(a)(5).

EXCEPT:    Transfer of firearm made to carry out bequest or intestate succession, or loan or rental of firearm for lawful sporting purposes.

6.    Knowingly make a false oral/written statement or give false identification t a licensee in connection with an acquisition of a firearm, 922(a)(6).

7.    Knowingly sell or dispose of firearms or ammunition to a prohibited person, 922(d).

8.    Willfully deliver or cause to be delivered to a common carrier, without written notice, a package containing a firearm or ammunition for transportation in interstate or foreign commerce to an unlicensed person, 922(e).

9.    While employed by a prohibited person knowingly receive, possess, or transport a firearm in or affecting interstate or foreign commerce; or receive a firearm or ammunition which has been shipped or transported in interstate or foreign commerce, 922(h).

10    Knowingly transport or ship a stolen firearm or ammunition in interstate or foreign commerce, 922(i).

11.    Knowingly receive, conceal, barter, store, sell, dispose of, pledge, or accept as security for a loan any stolen firearm/ammunition which is moving as, or is a part of, interstate or foreign commerce, 922(j).

12.    Knowingly ship, transport, or receive in interstate or foreign commerce, a firearm whose serial number has been removed, obliterated, or altered, 922(k).

13.    Knowingly import or bring a firearm/ammunition into United States without authorization, or willfully receive firearm/ammunition illegally imported into the United States, 922(l).

14.    Knowingly transfer or possess a machinegun, 922(o).

EXCEPT:    (1) For a transfer to or by, or possession by or under the authority of Federal or State agencies, and (2) any lawful transfer or lawful possession of a machinegun lawfully possessed before May 19, 1986.

15.    Knowingly make a false statement or representation with respect to the information required (1) in the records of a licensee, or (2) in an application for a license, or (3) exemption or relief from disability, 924(a)(1)(A).

VIOLATION OF THE ABOVE:    Violations of sections 922(d), (g), (h), (i), (j), and (o)-45,000/10 years. All others-45,000/5 years.

166

16. Knowingly ship, transport, or receive a firearm or ammunition in interstate or foreign commerce with intent to use in a felony or with knowledge or reasonable cause to believe that a felony is to be committed with the firearm or ammunition, 924(b).

17. Travel into a State and acquire a firearm with intent to engage in (a) a RICO crime, (b) a drug trafficking crime, or (c) a crime of violence, 924(f).

18. Transfer a firearm knowing that it will be used in a crime of violence or a drug trafficking crime, 924(g).

VIOLATION OF THE ABOVE:    Up to $10,000/10 years

19. Use or carry a firearm during and in relation to a Federal crime of violence or Federal drug trafficking crime, 924(c)(1).

VIOLATION OF THE ABOVE:

   a. First offense:

      (1). Firearm, 5 years.

      (2). Firearm equipped with a silencer, 30 years.

      (3). Machinegun, 30 years.

   b. Second or subsequent conviction:

      (1). Firearm, 20 years.

      (2). Firearm equipped with a silencer, life without release.

      (3). Machinegun, life without release

   c. Sentence cannot be probated, be suspended, or run concurrently with any other sentence, and there is no eligibility for parole.

20. Use or carry a handgun loaded with armor-piercing ammunition during and in relation to a Federal crime of violence or Federal drug trafficking crime, 929.

VIOLATION OF THE ABOVE:    5 to 10 years. Sentence cannot be probated, be suspended, or run concurrently with any other sentence, and there is no eligibility for parole.

21. Manufacture, import, ship, sell, deliver, possess, transfer, or receive any firearm that, after removal of grips, stocks, and magazine is not as detectable as the security examplar by walk-through metal detectors calibrated and operated to detect the security exemplar, or any major component of which, when subjected



to inspection by types of x-ray machines used at airports, does not generate an image that accurately depicts the shape of the component, 922(p).

EXCEPT:   Does not apply to any firearm manufactured in, imported into, or possessed in the United States prior to enactment; or any firearm certified by Defense or CIA as necessary for military or intelligence applications; or firearms permitted conditional importation for examination.


PROHIBITED ACTS OF PROHIBITED PERSONS:

In addition to the above prohibited acts of individuals, a prohibited person may not knowingly ship, transport, possess, or receive a firearm or ammunition in or affecting interstate or foreign commerce, 922(g) and 922(n).

EXCEPT:   A person under indictment may legally possess a firearm.

VIOLATION OF THE ABOVE.

Up to 5 years/$5,000

Exhibit 4

THE GUN CONTROL ACT OF 1968

18 U.S.C. CHAPTER 44

1.   <u>Section 922(a)(1)(A).</u>

   a.   <u>Description.</u> Willfully engaging in business as an importer, manufacturer or dealer in firearms without a license as required by 18 U.S.C. section 923(a).

   b.   <u>Elements.</u>

      (1).   Accused willfully committed act.

      (2).   Accused engaged in the business as charged.

      (3).   Place of engaging in business

      (4).   Time or dates of engaging in business.

      (5).   Nonlicensed status of accused.

      (6).   Proof of the profits from the sales of the firearms that were sold for criminal purposes or terrorism.



2.    <u>Section 922(a)(1)(A)</u>.

    a.    <u>Description</u>. Willfully engaging in business as an importer, manufacturer or dealer in firearms; shipping, transporting, or receiving any firearms in interstate or foreign commerce; and not being licensed under the act o the business in which engaged.

    b.    <u>Elements</u>.

        (1).    Accused willfully committed act.

        (2).    Accused engaged in the business as charged.

        (3).    Accused shipped, transported, or received firearms in interstate or foreign commerce.

        (4).    Dates of shipment, transportation, or receipt.

        (5).    Place of shipment, receipt, or transportation.

        (6).    Nonlicensed status of accused.

3.    <u>Section 922(a)(1)(B)</u>.

    a.    <u>Description</u>. Willfully engaging in business as an importer or manufacturer in ammunition without a license as required by 18 U.S.C section 923(a).

    b.    <u>Elements</u>.

        (1).    Accused willfully committed act.

        (2).    Accused engaged in the business as charged.

        (3).    Place of engaging in business.

        (4).    Date of engaging in business

        (5).    Nonlicensed status of accused.

4.    <u>Section 922(a)(1)(B)</u>.

    a.    <u>Description</u>. Willfully engaging in business as an importer or manufacturer in ammunition; and shipping, transporting, or receiving ammunition in interstate or foreign commerce.

    b.    <u>Elements</u>.

        (1).    Accused willfully committed act.



    (2).   Accused engaged in the business as charged

    (3).   Accused shipped transported, or received ammunition in interstate or foreign commerce.

    (4).   Date of shipment, receipt, or transportation.

    (5).   Place of shipment, receipt, or transportation.

    (6).   Nonlicensed status of accused.

5.    <u>Section 922(a)(2).</u>

    a.   <u>Description</u>. Licensed importer, manufacturer, dealer, or collector willfully shipping or transporting in interstate or foreign commerce any firearm to any person other than a licensed importer, manufacturer, dealer, or collector.

    b.   <u>Elements</u>.

        (1).   Accused willfully committed act

        (2).   Licensed status of accused.

        (3).   Accused shipped, transported, or received ammunition in interstate or foreign commerce.

        (4).   Place of shipment or transportation.

        (5).   Date of shipment or transportation.

        (6).   Nonlicensed status of person firearm shipped or transported to.

    c.   <u>Exceptions</u>.

        (1).   Return of a firearm or a replacement firearm of the same kind and type to a person from whom it was received.

        (2).   Mailing of a firearm to an officer, agent, or watchman (18 U.S.C. section 1715) engaged in guarding Government property for official use by such officer, agent, or watchman.

6.    <u>Section 922(a)(3).</u>

    a.   <u>Description</u>. Unlicensed person willfully transporting into or receiving in the State of residence a firearm purchased or otherwise obtained outside such State.



b.  Elements.

    (1).  Accused committed act

    (2).  Nonlicensed status of accused

    (3).  Accused transported into or received in State of residence a firearm

    (4).  Date of transportation or receipt

    (5).  Place of transportation or receipt.

    (6).  Accused purchased or otherwise obtained firearm outside State of residence.

    (7).  Accused acquired the subject firearm after December 15, 1968. (This involves proof of date of acquisition.)

c.  Exceptions.

    (1).  Firearm was obtained by bequest or intestate succession in a State other than the State of residence of the person obtaining the firearm. Such person can transport or receive the firearm in his State of residence if it is lawful for the person to purchase or possess firearm in that State.

    (2).  Firearm is a rifle or shotgun obtained in conformity with 18 U.S.C. section 922(b)(3); that is, it was obtained in conformity with laws of both the State and 18 U.S.C. section 922(c), or it was borrowed o rented for temporary use for sporting purposes.

7.  Section 922(a)(4).

a.  Description. Unauthorized transportation in interstate or foreign commerce of NFA firearm by person not licensed under the GCA of 1968 (silencer and any other weapon not covered).

b.  Elements.

    (1).  Nonlicensed status of accused as importer or manufacturer or collector.

    (2).  Accused knowingly transported in interstate or foreign commerce a destructive device, machinegun, short-barreled shotgun, or a shortbarreled rifle.

(171)

(3).   Date or dates of transportation.

(4).   Places of transportation.

c.   <u>Exception</u>. Transportation was specifically authorized by the Secretary of the Treasury (26 C.F.R. section 179-130, et seq.).

8.   <u>Section 922(a)(5)</u>.

a.   <u>Description</u>. Unlicensed person transferring, selling, trading, giving, transporting, or delivering a firearm to an unlicensed person knowing or having reasonable cause to believe such person resides in a State other than that in which the transferor resides.

b.   <u>Elements</u>.

(1).   Nonlicensed status of accused (transferor).

(2).   Transferee is unlicensed

(3).   Accused willfully committed act.

(4).   Receiver (transferee) resides in State other than that in which the transferor resides (place of business if transferor is a corporation or other business entity).

(5).   Accused transferred, sold, traded, gave, transported, or delivered a firearm to the receiver (transferee).

(6).   Date of sale, trade, etc.

c.   <u>Exceptions</u>.

(1).   Transfer, transportation, or delivery, if any, was made to carry out a bequest of the firearm to or an acquisition by intestate succession of the firearm by a transferee who is permitted to acquire or possess a firearm under the laws of his/her State of residence.

(2).   Acquisition of this firearm by the transferee was a loan or rental o the firearm for temporary use for lawful sporting purposes.

9.   <u>Sections 922(a)(6)</u>.

a.   <u>Description</u>. Knowingly make false or fictitious oral or written statement in connection with the acquisition or attempted acquisition of any firear or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector.



b. <u>Elements</u>.

    (1). Accused knowingly committed act

    (2). Accused made false or fictitious oral or written statement.

    (3). Statement regarded the acquisition or attempted acquisition of a firearm or ammunition.

    (4). Statement material to the lawfulness of the sale or other dispositio of the firearm or ammunition.

    (5). To whom was statement made

    (6). Date of statement.

    (7). Place of making statement and of submission of statement

    (8). Licensed status of person to whom statement was made

10. <u>Section 922(a)(6)</u>.

a. <u>Description</u>. In connection with the acquisition or attempted acquisition of any firearm or ammunition, the accused furnished or exhibited false, fictitious, or misrepresented identification intended or likely to deceiv a licensed person with respect to any fact material to the lawfulness under this act of the sale or other disposition of such firearm or ammunition.

b. <u>Elements</u>.

    (1). Accused knowingly committed act

    (2). Accused furnished or exhibited false, fictitious, or misrepresented identification.

    (3). Identification was intended or likely to deceive the licensed person

    (4). Deception material to the lawfulness under the GCA for the sale or other disposition of the firearm or ammunition.

    (5). Deception regarded the acquisition or attempted acquisition of a firearm or ammunition.

    (6). Date of furnishing or exhibiting the false, fictitious, or misrepresented identification.

    (7). Place where false, fictitious or misrepresented identification was furnished or exhibited.



11.  Section 922(b)(1).

   a.  <u>Description</u>. Licensed person willfully selling or delivering any firearm or ammunition to an individual, knowing or having reasonable cause to believe such person is less than 18 years of age.

   b.  <u>Elements</u>.

      (1).  Accused was licensed importer, licensed manufacturer, licensed dealer, or licensed collector.

      (2).  Accused willfully committed act.

      (3).  Accused sold or delivered a firearm or ammunition to an unlicensed individual. (License matter of defense.)

      (4).  Individual under 18 years of age.

      (5).  Knowledge of accused as to age of individual.

      (6).  Date of sale or delivery.

      (7).  Place of sale or delivery.

12.  Section 922(b)(1).

   a.  <u>Description</u>. Licensed person willfully selling or delivering firearm, other than shotgun or rifle, or ammunition for a shotgun or rifle, to nonlicensed individual, knowing or having reasonable cause to believe that such person is less than 21 years of age.

   b.  <u>Elements</u>.

      (1).  Accused was a licensed importer, licensed manufacturer, licensed dealer, or licensed collector.

      (2).  Accused willfully committed act.

      (3).  Accused sold or delivered a firearm, other than a shotgun or rifle, or ammunition for other than a shotgun or rifle, to an individual.

      (4).  Individual was under 21 years of age.

      (5).  Purchaser not licensed under the GCA. (Matter of affirmative defense.)

      (6).  Knowledge of accused as to age of individual



(7).    Date of sale or delivery.

(8).    Place of sale or delivery.

13.    <u>Section 922(b)(2)</u>.

    a.    <u>Description</u>. Licensed person willfully selling or delivering any firearm to an unlicensed person in a State where the purchase or possession by such person of such firearm is in violation of any State law or any published ordinance applicable at the place of sale, delivery, or other disposition.

    b.    <u>Elements</u>.

        (1).    Licensed status of accused.

        (2).    Accused willfully committed act.

        (3).    Accused sold or delivered a firearm to another person.

        (4).    Nonlicensed status of purchaser. (Matter of affirmative defense.)

        (5).    Place of sale, delivery, or other disposition.

        (6).    Date of such sale, delivery, or other disposition.

        (7).    Law or published ordinance applicable at the place of sale, delivery or other disposition making purchase or possession by the purchaser unlawful.

        (8).    Accused knew or had reasonable cause to believe that the purchase or possession by the purchaser would not be in violation of such law or such published ordinance.

14.    <u>Section 922(b)(3)</u>.

    a.    <u>Description</u>. Licensed person willfully selling or delivering firearm to an unlicensed person whom the licensee knows or has reasonable cause to believe does not reside in the State in which the licensee's place of business is located.

    b.    <u>Elements</u>.

        (1).    Licensed status of accused

        (2).    Accused willfully committed act.



(3). Accused sold or delivered a firearm to another person.

(4). Nonlicensed status of purchaser. (Matter of affirmative defense.)

(5). Purchaser did not reside in State in which accused's place of business was located.

(6). Accused knew or had reasonable cause to believe that purchaser did not reside in State in which accused's place of business was located

(7). Date of sale or delivery.

(8). Place of sale or delivery.

(9). Location of accused's place of business.

c. Exceptions.

(1). Sale or delivery of rifle or shotgun by licensee if licensee meets in person with nonresident transferee to accomplish transfer; and sale, delivery, and receipt comply fully with legal conditions of sale in both such States, 922(b)(3)(A).

(2). Delivery of such firearm by the licensee was a loan or rental of a firearm to a person for temporary use or for lawful sporting purposes, 922(b)(3)(B).

(3). Accused was returning firearm or replacement firearm of the same kind and type to a person from whom it was received. (Matter of affirmative defense--exception appears in section 922(a)(2)(A).

15. Section 922(b)(4).

a. Description. Licensed person willfully selling or delivering to an unlicensed person any destructive device, machinegun, short-barreled shotgun, or short-barreled rifle without specific authority from the Secretary.

b. Elements.

(1). Licensed status of accused.

(2). Accused willfully committed act

(3). Accused sold or delivered to another person a destructive device machinegun, short-barreled shotgun, or short-barreled rifle.



    (4).    Nonlicensed status of purchaser. (Matter of affirmative defense.

    (5).    Sale or delivery not specifically authorized by the Secretary of the Treasury or his/her delegate (27 C.F.R. part 178).

    (6).    Detailed description of the firearm as a covered weapon.

    (7).    Date of sale or delivery.

    (8).    Place of sale or delivery.

c.    Exception. Purchaser was a research organization designated by the Secretary or his/her delegate (27 C.F.R. part 178). (Matter of affirmative defense.)

16.    Section 922(b)(5).

a.    Description. Licensed person willfully selling any firearm or armorpiercing ammunition and failing to show in his/her required records the name, age, and place of residence of the purchaser, if an individual; or the identity and principal and local places of business, if a corporation or other business entity.

b.    Elements.

    (1).    Licensed status of accused.

    (2).    Accused willfully committed act.

    (3).    Accused sold or delivered any firearm or armor-piercing ammunition

    (4).    Name and address or addresses of the purchaser as an individual, corporation, or other business entity.

    (5).    Date of sale or delivery

    (6).    Place of sale or delivery.

    (7).    Failure to show in the required records the name, age, and place of residence of the individual purchaser or the identity and places of business of purchaser as may be applicable. (Omission of one would be offense.)

17.    Section 922(c).

a.    Description. Accused, a licensed person, willfully selling firearm to an unlicensed person who did not appear in person at the licensee's

business premises and who did not submit to accused a sworn statement as to age, in compliance with requirements of chapter 44 of 13 U.S.C.; as to lawfulness of receipt of subject; and as to the name, title, and address of principal law enforcement officer of locality where firearm is to be delivered (form of statement section 922(c)(1)).

b.    Elements.

    (1).    Licensed status of accused

    (2).    Nonlicensed status of purchaser

    (3).    Accused willfully committed act

    (4).    Accused sold firearm to purchaser who did not appear in person at licensee's place of business.

    (5).    Accused did not require purchaser to furnish sworn statement described in section 922(c)(1).

    (6).    Date and place of sale.

    (7).    Date and place of delivery.

18.    Section 922(c).

a.    Description. Accused, a licensed person, willfully selling a firearm to an unlicensed person who did not appear in person at the licensee's place of business and making of shipment or delivery of the firearm prior to forwarding, by registered or certified mail (return receipt requested), a copy of the sworn statement, prescribed by section 922(c)(1) to chief law enforcement office of the transferee's place of residence and prior to return of the statement due to refusal of the named addressee to accept such a letter.

b.    Elements.

    (1).    Licensed status of accused.

    (2).    Nonlicensed status of purchaser.

    (3).    Accused willfully committed act

    (4).    Accused sold a firearm to purchaser who did not appear in person at licensee's place of business.

    (5).    Accused made shipment or delivery of the firearm without first sending sworn statements (required by 922(c)(1)) by registered



mail, return receipt requested, to the chief law enforcement office in the purchaser's place of residence, or accused made shipment or delivery of the firearm without obtaining the return receipt showing delivery of the sworn statement and without obtaining return of the letter transmitting the sworn statement showing refusal of addressee to accept such letter (section 922(c)(2)), or accused failed to delay the shipment or delivery of the firearm for a period of at least 7 days following receipt of notification of the acceptance or refusal of delivery of the statement, as provided in section 922(c)(3).

(6). Date and place of sale.

(7). Date and place of delivery.

(8). Disposition of sworn statement (section 922(c)(1) by accused if paragraph 18(b)(4) applies), or proof of delivery of the sworn statement to the accused.

19. <u>Section 922(d).</u>

a. <u>Description</u>. Any person willfully selling or disposing of a firearm or ammunition to a person, knowing or having reasonable cause to believe that such person (1) is under indictment for or has been convicted of a crime punishable by imprisonment for a term exceeding 1 year, (2) is a fugitive from justice; (3) is an unlawful user of or addicted to any controlled substance, as defined in section 102 of the Controlled Substances Act, 21 U.S.C. section 802, (4) has been adjudicated as a mental defective or has been committed to any mental institution, (5) is an alien illegally or unlawfully in the U.S.; (6) has been discharged from the Armed Forces under dishonorable conditions; (7) has renounced his/her U.S. citizenship.

b. <u>Elements</u>.

(1). Accused knowingly committed act.

(2). Accused sold or disposed of a firearm or ammunition to person who he/she knew or had reason to believe was under indictment for or convicted of a crime punishable by imprisonment for a term exceeding 1 year, as defined in 18 U.S.C. section 921(a)(20), is a fugitive from justice, is an unlawful user of or addicted to any controlled substance, as defined in 21 U.S.C. section 802, is a mental defective or has been committed to a mental institution, is an illegal alien, has been dishonorably discharged, or has



renounced his/her U.S. citizenship.

 (3).  Date and place of sale.

 (4).  Proof of status of purchaser in prohibited class.

 (5).  Nonlicensed status of purchaser to whom section 925(b) applies (Matter of affirmative defense.)

 (6).  Purchaser not granted relief from his/her Federal firearms disabilities under 18 U.S.C. section 925(c).

20.  <u>Section 922(e)</u>.

 a.  <u>Description</u>.  Willfully delivering or causing to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce to a nonlicensed person any package or other container in which there is a firearm or ammunition and failing to give the carrier written notice that such firearm or ammunition is being transported or shipped.

 b.  <u>Elements</u>.

  (1).  Accused willfully committed act

  (2).  Accused delivered package containing firearm or ammunition to a contract or common carrier.

  (3).  Package shipped in interstate or foreign commerce.

  (4).  Shipped to an unlicensed person.

  (5).  Date and place of delivery to the carrier.

  (6).  Accused failed to give written notice of the contents of the package.

 c.  <u>Exception</u>. Accused was a passenger owning or legally possessing the firearm or ammunition being transported who delivered the firearm or ammunition to the custody of the pilot, captain, conductor, or operator of the common carrier for the duration of the trip.

21.  <u>Section 922(f)</u>.

 a.  <u>Description</u>. Common or contract carrier transporting or delivering in interstate or foreign commerce any firearm or ammunition knowing or having reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of this act.



b.   Elements.

    (1).   Accused was a common or contract carrier. (It is probable that the accused will be an employee, and we will therefore charge aiding and abetting under 18 U.S.C. section 2.)

    (2).   Transported and delivered firearm or ammunition in interstate or foreign commerce.

    (3).   Date and place of receipt by carrier

    (4).   Date and place of delivery by carrier, if any

    (5).   Name and address of delivery, if any.

    (6).   Basis of shipment, transportation, or delivery in violation of act.

    (7).   Basis of belief that carrier or employee knew or had reasonable cause to believe such was unlawful under the act.

22.   Section 922(g).

a.   Description. Knowingly shipping, transporting, possessing, or receiving firearm or ammunition in interstate or foreign commerce by person who has been convicted of a crime punishable by imprisonment for a term exceeding 1 year, is an unlawful user of or is addicted to any controlled substance, as defined in 21 U.S.C. section 802, has been adjudicated as a mental defective or committed to a mental institution, is a fugitive from justice, is an illegal alien, has been dishonorably discharged from the Armed Forces, or who has renounced his U.S. citizenship.

b.   Elements.

    (1).   Accused knowingly committed.

    (2).   Accused shipped, transported, possessed, or received a firearm or ammunition in interstate of foreign commerce.

    (3).   Accused was person who (a) had been convicted of a crime punishable by imprisonment for a term exceeding 1 year, as defined in 18 U.S.C. section 921(a)(20), (b) was an unlawful user of or addicted to any controlled substance, as defined in 21 U.S.C. 802, (a) had been adjudicated a mental defective or committed to a mental institution, (d) was a fugitive from justice, (e) was an illegal alien, (f) had been dishonorably discharged from the Armed Forces, (g) or had renounced his U.S. citizenship.



(4).   Dates and places of shipment, transportation, possession, or receipt.

23.   Section 922(h).

a.   Description. Any individual who, to that individual's knowledge and while being employed by a prohibited person as defined in 18 U.S.C. section 922(g), willfully receives, possesses, or transports a firearm or ammunition in or affecting interstate or foreign commerce, or receives any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

b.   Elements.

(1).   Accused's employer is a prohibited person as defined in 18 U.S.C. section 922(g).

(2).   Accused had knowledge that employer is a prohibited person.

(3).   Act committed in the course of employment.

(4).   Accused knowingly committed act.

(5).   Accused received, possessed, or transported any firearm.

(6).   Date and places of receipt, possession, or transportation of firearm by accused.

(7).   How firearm affected interstate commerce

24.   Section 922(i).

a.   Description. Knowingly transporting or shipping in interstate or foreign commerce any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

b.   Elements.

(1).   Accused knowingly committed act.

(2).   Accused transported or shipped firearm or ammunition in interstate or foreign commerce.

(3).   Dates and places of transportation or shipment

(4).   Firearm or ammunition was stolen.

(5).   Accused knew or had reasonable cause to believe firearm or



ammunition was stolen.

25. <u>Section 922(j).</u>

    a.    <u>Description</u>. Knowingly receiving, concealing, storing, bartering, selling, disposing of, pledging, or accepting as security for a loan any stolen firearm or stolen ammunition which was moving as or was a part of interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

    b.    <u>Elements</u>.

        (1).    Accused knowingly committed act.

        (2).    Accused received, concealed, stored, bartered, sold, disposed of pledged, or accepted as security for a loan a firearm or ammunition.

        (3).    Firearm or ammunition was stolen.

        (4).    Firearm was moving in interstate or foreign commerce at time of receipt, etc., by the accused.

        (5).    Date and place of receipt, etc., by the accused.

        (6).    Basis of belief that the accused knew or had reasonable cause to believe that the firearm or ammunition was stolen.

26. <u>Section 922(k)</u>.

    a.    <u>Description</u>. Knowingly transporting, shipping, or receiving in interstate or foreign commerce any firearm from which the importer's or manufacturer's serial number has been removed, obliterated, or altered.

    b.    <u>Elements</u>.

        (1).    Accused knowingly committed act.

        (2).    Accused transported, shipped, or received a firearm in interstate or foreign commerce.

        (3).    Dates and places of transportation, shipment, or receipt by the accused.

        (4).    Serial number of firearm was removed, obliterated, or altered prior to interstate transportation, shipment, or receipt by accused.

27.   Section 922(1).

    a.   Description. Knowingly importing or bringing into the United States, or any possession thereof any firearm or ammunition with such importation not being authorized by the Secretary or his/her delegate, in accordance with 18 U.S.C. section 925(d).

    b.   Elements.

        (1).   Accused knowingly committed act

        (2).   Accused imported or brought into the United States or into possession of the United States a firearm or ammunition.

        (3).   Date and place of importation.

        (4).   Importation not authorized by the Secretary or his/her delegate (See 18 U.S.C. section 925(d) and 27 C.F.R. section 178.112.)

    c.   Exception. The accused or the importation was exempt under 18 U.S.C section 925(a). (Matter of affirmative defense.)

28.   Section 922(l).

    a.   Description. Willingly receiving any firearm or ammunition that has been imported or brought into the United States or any possession thereof in violation of 18 U.S.C. chapter 44.

    b.   Elements.

        (1).   Accused willingly committed act

        (2).   Accused received an imported firearm or ammunition.

        (3).   Firearm or ammunition imported in violation of 18 U.S.C. chapter 44. (Cover nature of violation.)

        (4).   Date and place of importation. (Absence of compliance might meet this requirement if the firearm was manufactured after the effective date of the act.)

        (5).   Date and place of receipt by the accused

29.   Section 922(m).

    a.   Description. Licensed person knowingly makes false entry in records required under 18 U.S.C. section 923.



184

b. <u>Elements</u>.

(1). Licensed status of accused or status of employee who aided or abetted a licensed person. (Show location of business.)

(2). Accused knowingly committed act.

(3). Accused made false entry in record. (Description of entry and falsity.)

(4). Date of entry.

(5). Record required by 18 U.S.C. section 923 or regulation promulgated thereunder. (This includes the record required under 18 U.S.C. section 922(c).)

(6). Show truth to compare with the false entry

30. <u>Section 922(m)</u>.

a. <u>Description</u>. Licensed person knowingly fails to make appropriate entry in records required under 18 U.S.C. section 923.

b. <u>Elements</u>.

(1). Licensed status of accused or status of employee who aided and abetted a licensed person. (Location of business.)

(2). Transaction occurred which was required to be recorded.

(3). Date of "omitted entry" transaction.

(4). Knowledge of accused as to transaction and obligation to record

(5). Reasons, if any, why transaction was not recorded. (This is not necessarily a part of the case.)

31. <u>Section 922(m)</u>.

a. <u>Description</u>. Licensed person knowingly fails to properly maintain records required by 18 U.S.C. section 923.

b. <u>Elements</u>.

(1). Licensed status of accused or status of employee who aided and abetted a licensed person.

(2). Required transaction record. (Show dates of transactions.)



(3).   Knowledge by accused of transaction and of obligation to keep records.

(4).   Warnings, if any, as to requirements of keeping records. (Not part of case but does affect prosecution.)

32.   Section 922(n).

a.   Description. Willfully shipping, transporting, or receiving any firearm or ammunition in interstate or foreign commerce by person who is under indictment for a crime punishable by imprisonment for a term exceeding 1 year.

b.   Elements.

(1).   Accused willfully committed act.

(2).   Accused shipped, transported, or received a firearm or ammunition in interstate or foreign commerce.

(3).   Accused was under indictment for a crime punishable by imprisonment for a term exceeding 1 year.

(4).   Dates and places of shipment, transportation, or receipt.

33.   Section 922(o).

a.   Description. Knowingly and unlawfully possessing or transferring a machinegun.

b.   Elements.

(1).   Accused knowingly committed act.

(2).   Possessed or transferred a machinegun.

(3).   Date and place of possession or transfer

c.   Exceptions.

(1).   A transfer to or by, or possession by or under, the authority of Federal or State agencies.

(2).   Any lawful transfer or possession of a machinegun that was lawfully possessed before May 19, 1986.

34.   Section 923(h).

186

a.  <u>Description</u>. Willful failure of licensed person to keep license posted and available for inspection.

b.  <u>Elements</u>.

    (1).  Licensed status of accused.

    (2).  Accused actively engaged in business.

    (3).  Accused willfully committed act.

    (4).  License not posted or available for inspection.

    (5).  Date and place of offense.

35.  <u>Section 923(i)</u>.

a.  <u>Description</u>. Willfully manufacturing or importing firearm by licensed person and failing to identify such firearm by means of a serial number engraved or cast on the receiver or frame as required.

b.  <u>Elements</u>.

    (1).  Licensed status of accused as manufacturer or importer

    (2).  Accused willfully committed act.

    (3).  Accused manufactured or imported firearm.

    (4).  Date of such manufacture or importation.

    (5).  Absence of serial number.

36.  <u>Section 924(a)(1)(A)</u>.

a.  <u>Description</u>. Accused knowingly makes a false statement or representation with respect to the information required in the records of a licensee, in the application for a license, or exemption of relief from disability.

b.  <u>Elements</u>.

    (1).  Accused knowingly committed act

    (2).  Accused made a false statement or representation

    (3).  Statement or representation was in connection with the information required in the records of a licensee, in the application for a license, in the application for an exemption from the GCA, or in the

application for relief from disability.

(4). Statement material to the lawfulness of the transaction or application.

(5). To whom was statement or representation made.

(6). Date of statement or representation.

(7). Place of making statement or representation or submission of the statement or representation.

(8). False statement or representation in connection with the records of a licensee, the licensed States, or the person to whom the statement or representation was made.

37. <u>Section 924(a)(2)(A)</u>.

a. <u>Description</u>. Licensee knowingly makes a false statement or representation with respect to the information required to be kept in his records.

b. <u>Element</u>.

(1). Licensed status of accused.

(2). Accused knowingly committed act

(3). Accused made false statement or representation with respect to information required to be kept in his records.

(4). Statement material to the lawfulness of the transaction.

(5). To whom was the statement or representation made.

(6). Date of statement or representation.

(7). Place where statement or representation was made or submitted.

38. <u>Section 924(b)</u>.

a. <u>Description</u>.   Knowingly shipping, transporting, or receiving in interstate or foreign commerce a firearm or ammunition with intent to   use such in an offense punishable by imprisonment for a term exceeding 1 year or with knowledge or reasonable cause to believe that such an offense is to be committed therewith.



b.   <u>Elements</u>.

(1).   Accused knowingly committed act.

(2).   Accused shipped, transported, or received firearm or ammunition in interstate or foreign commerce.

(3).   Date of such shipment, transportation, receipt of firearm or ammunition.

(4).   Interstate journey.

(5).   Intent to use firearm or ammunition in felony.

(6).   Knowledge or reasonable cause to believe that felony is to be committed therewith.

39.   <u>Section 924(c)(1)</u>.

a.   <u>Description</u>.   Accused used or carried a firearm during and in relation to a Federal crime of violence or Federal drug trafficking crime.

b.   <u>Elements</u>.

(1).   Accused used or carried a firearm during and in relation to a Federal crime of violence or Federal drug trafficking crime.

(2).   Description of the relationship of firearm to the crime.

(3).   Description of the crime, including statutory citation.

(4).   Date and place of commission of crime.

(5).   Document prior conviction if this is a second or subsequent violation under this section.

40.   <u>Section 924(e)(1)</u>.

a.   <u>Description</u>. Accused, who has three prior convictions for a violent felony or serious drug offense or both, and who knowingly shipped, transported, received, or possessed any firearm or ammunition in interstate or foreign commerce in violation of section 922(g).

b.   <u>Elements</u>.

(1).   Accused knowingly committed act.

(2).   Accused shipped, transported, received, or possessed a firearm or



ammunition in interstate or foreign commerce in violation of section 922(g).

    (3).    Document three prior convictions for a violent felony, serious drug offense, or both.

    (4).    Dates and places of shipment, transportation, receipt, or possession of firearm.

    (5).    Predicate offenses committed on occasions different from each other.

41    <u>Section 924(f)</u>.

    a.    <u>Description</u>. Accused, with intent to engage in conduct which is (1) a RICO crime, (2) a drug trafficking crime, or (3) a crime of violence, traveled into a State and acquired a firearm in furtherance of such purpose.

    b.    <u>Elements</u>.

        (1).    Date of interstate travel.

        (2).    Description of crime engaged in or intended to be engaged in.

        (3).    Description of relationship of firearm to crime.

        (4).    Date, time, and place accused acquired firearm.

        (5).    Accused knowingly committed act.

42    <u>Section 924(g)</u>.

    a.    <u>Description</u>. Accused transferred a firearm knowing that it will be used in a crime of violence or drug trafficking crime.

    b.    <u>Elements</u>.

        (1).    Date and place accused transferred firearm.

        (2).    Accused had knowledge or reasonable cause to believe that firearm was to be used in a crime of violence or drug trafficking crime.

        (3).    Description of relationship of firearm to crime.

        (4).    Accused knowingly committed act.



43.    <u>Section 929</u>.

    a.    <u>Description</u>. Accused used or carried a firearm and is in possession of armor piercing ammunition capable of being fired in that firearm during and in relation to a crime of violence or Federal drug trafficking crime.

    b.    <u>Elements</u>.

        (1).    Accused used or carried a firearm and is in possession of armor piercing ammunition capable of being fired in that firearm during and in relation to a Federal crime of violence or Federal drug trafficking

        (2).    Certification by Firearms Technology that ammunition is armor piercing.

        (3).    Description of the relationship to the crime.

        (4).    Description of the crime, including statutory citation.

        (5).    Date and place of commission of crime.

44.    <u>Section 930(a)</u>.

    a.    <u>Description</u>. Accused possessed, or caused to be present, a firearm or dangerous weapon in a Federal facility.

    b.    <u>Elements</u>.

        (1).    Accused knowingly committed act.

        (2).    Documentation that facility is a Federal facility as defined by section 930(e)(1).

        (3).    Date, time, and place of possession.

        (4).    How accused caused firearm to be present if not possessed.

        (5).    Accused in not excepted individual as defined by section 930(c)(1).

        (6).    Documentation that notice was posted at such facility or accused had actual notice of law.

45.    <u>Section 930(b)</u>.

    a.    <u>Description</u>. Accused possessed, or caused to be present, a firearm or dangerous weapon in a Federal facility with intent that the firearm or

(191)

5,000 FINE

COUNT V (18 U.S.C. § 924(e))   -        200 MONTHS' INCARCERATION

6

0 MONTHS' SUPERVISED

R

ELEASE

DOE, JANE:  COUNT VII (18 U.S.C. § 924(c))   60 MONTHS' INCARCERATION

2

4 MONTHS' SUPERVISED

R

ELEASE

## NARRATIVE:

1. THE RICHARD ROE INVESTIGATION CENTERED ON THE ARMED DRUG TRAFFICKING ACTIVITIES OF THE ROE ORGANIZATION, WHICH WAS A MAIN SOURCE OF NARCOTICS IN THE SOUTH FLORIDA AREA. MEMBERS OF THE ORGANIZATION ARE SUSPECTED OF COMMITTING NUMEROUS UNSOLVED DRUG-RELATED SHOOTING INCIDENTS AND HOMICIDES. DURING THIS INVESTIGATION, A TOTAL OF 11 FEDERAL SEARCH AND ARREST WARRANTS WERE EXECUTED, AND A TOTAL OF 28 FIREARMS, 4 VEHICLES, 2 PROPERTIES WORTH $600,000, $120,000 IN U.S. CURRENCY, AND 11 KILOGRAMS OF COCAINE WERE SEIZED. AN ADDITIONAL FIVE DEFENDANTS WERE ARRESTED AND HAVE CHARGES PENDING IN BOTH STATE AND FEDERAL COURT.

2. RICHARD ROE HAS PRIOR FELONY CONVICTIONS TO INCLUDE ARMED ROBBERY (1981), AGGRAVATED ASSAULT (1983), FIRST-DEGREE DRUG TRAFFICKING (1987), AND AGGRAVATED ASSAULT WITH A WEAPON (1991).

3. JANE DOE HAS NUMEROUS PRIOR ARRESTS FOR NARCOTICS OFFENSES BUT NO PRIOR FELONY CONVICTIONS.

SPECIAL AGENT IN CHARGE                    (NAME  OF INCUMBENT)

_____

RELEASING SIGNATURE                          DATE/TIME

EXPEDITE _____ IMMEDIATE _____ ROUTINE_____

Exhibit 6

Exhibit 6



Exhibit 7

Exhibit 8

### NATIONAL FIREARMS ACT OFFENSES

### 26 U.S.C. CHAPTER 53

1.      <u>26 U.S.C. section 5802.</u>

      a.     <u>Description.</u>

Licensed and registered firearms manufacturer, importer, or dealer having change in location or trade name and commencing operations at new location or in new trade name without prior approval of the Secretary.

      b.     <u>Elements.</u>

           (1).     Accused engaged in the business charged.

           (2).     Dates of transaction charged as engaging in business.

           (3).     Descriptions of transaction charged.

           (4).     Other factors that are present to show an engaging in business when only a single transaction is charged.

           (5).     Place of engaging in business

           (6).     The filing of the registration at one address or showing one name or trade name.

           (7).     Change in location or in trade name.

           (8).     Date of change in location or trade name.

           (9).     Operations at new location or in new trade name.

           (10).     Failure to have approval of Secretary or delegate of application for amendment of registration prior to commencement of operations at new location or in new name.

2.      <u>26 U.S.C. section 5802.</u>

      a.     <u>Description.</u> Person engaged in business as a manufacturer, importer, or dealer who had a change in location or in trade name and failed to file an



application to amend his registration as required.

b.   Elements.

(1).   Accused engaged in the business charged.

(2).   Dates of transaction charged as engaging in business.

(3).   Descriptions of transactions charged.

(4).   Other factors that are present to show an engaging in business when only a single transaction is charged.

(5).   Place of engaging in business.

(6).   The filing of the registration at one address or showing one name or trade name.

(7).   Change of location or trade name.

(8).   Date of change in location or trade name.

(9).   Operations at new location or in new trade name.

(10).   Failure to file amendment to registration to show name.

3.   26 U.S.C. section 5841.

a.   Description. Failure of manufacturer to register the manufacture of a firearm as required by 26 U.S.C. section 5841 and 26 C.F.R. section 179.103.

b.   Elements.

(1).   Manufacturer was qualified under 26 U.S.C. section 5801

(2).   Manufacturer made firearm.

(3).   Date of manufacture.

(4).   Place of manufacture.

(5).   Date manufacturer required to register such manufacture.

(6).   Failure to register such manufacture. (Offense would be in Washington, DC.)

4.   26 U.S.C section 5841.

a.  <u>Description</u>.  Failure of importer to register an imported firearm as required by 26 U.S.C. section 5841 and 26 C.F.R. section 179.112.

b.  <u>Elements</u>.

    (1).  Qualified or nonqualified status of importer.

    (2).  Firearm was imported.

    (3).  Date of release from U.S. Customs.

    (4).  Place of release.

    (5).  Location of importer's premises.

    (6).  Date importer required to register importation.

    (7).  Nonregistration. (Offense would be in Washington, DC.)

5.  <u>26 U.S.C. section 5861(a)</u>.

a.  <u>Description</u>. Engaging in business of an importer, manufacturer, or dealer in firearms without having paid the occupational tax required b 26 U.S.C. section 5801.

b.  <u>Elements</u>.

    (1).  Accused engaged in the business charged.

    (2).  Dates of transaction charged as engaging in business

    (3).  Descriptions of transaction is charged.

    (4).  Other factors that are present to show an engaging in business when only a single transaction is charged.

    (5).  Place of engaging in business

    (6).  Failure to pay the occupational tax (26 U.S.C. section 5801) for the business charged.

c.  <u>Exception</u>. Accused is a person conducting a firearm manufacturing business exclusively with or on behalf of the United States or any department, independent establishment, or agency thereof, and the accused has been relieved of such liability by the Director (26 U.S.C. section 5851; 26 C.F.R. section 179-33).

6.  <u>26 U.S.C. section 5861(a)</u>.



a. <u>Description</u>. Engaging in business as a manufacturer, importer, or dealer in firearms without having registered as required by 26 U.S.C section 5802.

b. <u>Elements</u>.

    (1). Accused engaged in the business charged.

    (2). Dates of transaction charged as engaging in business.

    (3). Descriptions of transactions charged.

    (4). Other factors that are present to show an engaging in business when only a single transaction is charged.

    (5). Place of engaging in business

    (6). Failure of accused to register as required.

        (a). If offense is failure to register on first engaging in business, show failure such and date of commencement.

        (b). If offense is failure to register on or before July 1 of current year, show this.

7   <u>26 U.S.C. section 5861(b)</u>.

a. <u>Description</u>. Accused received or possessed a firearm transferred to him in violation of the provisions of 26 U.S.C. chapter 53.

b. <u>Elements</u>.

    (1). Accused received a firearm or possessed a firearm.

    (2). Date of receipt or date of possession.

    (3). Place of receipt or place of possession.

    (4). Description of firearm as one covered by the act.

    (5). Transfer of firearm to the accused.

    (6). The transferor had not filed a written application for such transfer and registration on the form prescribed and prior approval of the application was not obtained before delivery to transferee.

8.   <u>26 U.S.C. section 5861(b)</u>.

a. <u>Description</u>. Accused received or possessed a firearm transferred to him



in violation of the provisions of 26 U.S.C. chapter 53.

b. <u>Elements</u>.

    (1). Accused received a firearm or possessed a firearm.

    (2). Date of receipt or date of possession

    (3). Place of receipt or place of possession.

    (4). Description of firearm as one covered by the act

    (5). Transfer of the firearm to the accused.

    (6). The tax payable on the transfer had not been paid as one required by law.

9. <u>26 U.S.C. section 5861(b)</u>.

a. <u>Description</u>.Accused received or possessed a firearm transferred to him in violation of the provisions of 26 U.S.C. chapter 53.

b. <u>Elements</u>.

    (1). Accused received a firearm or possessed a firearm.

    (2). Date of receipt or date of possession.

    (3). Place of receipt or place of possession

    (4). Description of firearm as one covered by the act.

    (5). Transfer of the firearm to the accused.

    (6). Transfer was made prior to approval of the application by the Secretary or his delegate. (Application was filed.)

10. <u>26 U.S.C. section 5861(c)</u>.

a. <u>Description</u>. Accused did receive or possess a firearm made in violation of provisions of 26 U.S.C. chapter 53.

b. <u>Elements</u>.

    (1). Accused received a firearm or possessed a firearm.

    (2). Date of receipt or date of possession.

    (3). Place of receipt or place of possession



(4). Description of firearm as one covered by the act

(5). History of firearm

 (a). When made

 (b). Where made

 (c). By whom.

(6). Absence of compliance with section 5822

 (a). Failure to file application to make and register the firearm.

 (b). Failure to pay the making tax and place tax stamp on application.

 (c). Making the firearm prior to obtaining approval of the application.

NOTE: The items shown as 6(a), (b), and (c) above are possible ways of causing the making of the firearm to have been unlawful. Any one of these would support an offense; however, it is possible that two or more would still constitute only a single offense. Section 5822 requires other things than the three shown, but ATF takes theposition that if the maker files an application, he/she would identify the firearm to be made, and identify himself/herself as required.

11. <u>26 U.S.C. section 5861(d)</u>.

 a. <u>Description</u>.Receiving a firearm that is not registered to the accused

 b. <u>Elements</u>.

  (1). Accused received a firearm.

  (2). Date of receipt.

  (3). Place of receipt.

  (4). Firearm not registered to accused.

  (5). Name of transferor, if known.

12.<u>26 U.S.C. section 5861(d)</u>.

 a. <u>Description</u>. Possession of a firearm that is not registered to the accused.



b.   <u>Elements</u>.

     (1).   Accused possessed a firearm.

     (2).   Date of possession.

     (3).   Place of possession.

     (4).   Firearm not registered to accused

     (5).   Name of transferor, if known.

     (6).   If there is no indication that the firearm was acquired by transfer, name of maker and date of making.

     (7).   Any indication of importation. Was the accused ever out of the United States?

     NOTE:     (5), (6), and (7) are not necessary elements of this offense.

13.   <u>26 U.S.C. section 5861(e)</u>.

a.   <u>Description</u>. Accused transferred a firearm in violation of provisions of 26 U.S.C. chapter 53.

b.   <u>Elements</u>.

     (1).   Accused transferred a firearm.

     (2).   Name of transferee.

     (3).   Date of transfer.

     (4).   Place of transfer.

     (5).   Noncompliance with provisions of 26 U.S.C. section 5812 on transfer.

         (a).   Nonpayment of transfer tax

         (b).   No written application for transfer and registration.

         (c).   Transfer before approval of this application.

     (6).   Was transferor in legal possession. (If possession was illegal, it is possible that Haynes v. United States, 390 U.S. 85 (1968 apply if compliance with section 5812 would violate the accused's fifth admendment privilege against self-incrimination.)

14. <u>26 U.S.C. section 5861(f)</u>.

    a.   <u>Description</u>. Making a firearm in violation of provisions of 26 U.S.C. chapter 53.

    b.   <u>Elements</u>.

        (1).   Accused made a firearm.

        (2).   Date of making.

        (3).   Place of making.

        (4).   Noncompliance with 26 U.S.C. section 5822

            (a).   No written application.

            (b).   No tax payment.

            (c).   Firearm made prior to approval of application.

15. <u>26 U.S.C. section 5861(g)</u>.

    a.   <u>Description</u>. Obliterating, removing, changing, or altering the required serial number or other identification of a firearm.

    b.   <u>Elements</u>.

        (1).   Accused obliterated, removed, changed, or altered the firearm serial number or other identification of a firearm.

        (2).   Date of such obliteration

        (3).   Place of such obliteration.

        (4).   Obliterated serial number or identification was a serial number, etc., required under the NFA.

16. <u>26 U.S.C. section 5861(h)</u>.

    a.   <u>Description</u>. Receiving or possessing a firearm having the required serial number or other identification obliterated, removed, changed or altered.

    b.   <u>Elements</u>.

        (1).   Accused received or possessed a firearm.

        (2).   Serial number or other identification was obliterated, removed,



201

changed, or altered.

(3). Serial number or other identification obliterated was one required by NFA.

(4). Date of possession.

(5). Place of possession.

17 <u>26 U.S.C. section 5861(i)</u>.

   a.   <u>Description</u>. Receiving or possessing a firearm that was not identified by a serial number, as required by 26 U.S.C. section 5842.

   b.   <u>Elements</u>.

(1). Accused received or possessed a firearm.

(2). Firearm did not bear the serial number required by 26 U.S.C section 5842.

(3). Date of receipt and/or date of possession

(4). Place of receipt and/or place of possession.

18. <u>26 U.S.C. section 5861(j)</u>.

   a.   <u>Description</u>. Transporting, delivering, or receiving in interstate commerce a firearm that had not been registered, as required by 26 U.S.C. chapter 53.

   b.   <u>Elements</u>.

(1). Accused transported, delivered, or received a firearm.

(2). Interstate commerce

    (a). Transferred from one State to another.

    (b). Delivered from one State to another

    (c). State in receipt of a firearm shipped, transported, or delivered from another State

(3). Date of transportation, delivery, or receipt.

(4). Nonregistration of firearm.



19.   26 U.S.C. section 5861(k).

    a.   <u>Description</u>. Receiving or possessing a firearm that had been imported or brought into the United States in violation of 26 U.S.C. section 5844.

    b.   <u>Elements</u>.

        (1).   Accused received or possessed a firearm.

        (2).   Date of receipt or date of possession.

        (3).   Place of receipt or place of possession.

        (4).   Firearm had been imported or brought into the United States from outside the country.

        (5).   How was such importation in violation of 26 U.S.C. section 5844?

20.   26 U.S.C. section 5861(l).

    a.   <u>Description</u>. Making or causing a false entry to be made in any required application, return, or record, knowing such entry to be false.

    b.   <u>Elements</u>.

        (1).   Accused made, or caused to be made, an entry in an application, return, or record.

        (2).   Date of making such entry.

        (3).   Place of making such entry.

        (4).   Application, return, or record was one required by NFA.

        (5).   Entry was false.

        (6).   Accused knew such entry to be false.

Exhibit 9

STATUTES VIOLATED--CASE REPORT

NATIONAL FIREARMS ACT

26 U.S.C. CHAPTER 53

RE: CHAPTER D

It shall be unlawful:



1    <u>Section 5802</u>.

For any licensed and registered firearms manufacturer, importer, or dealer to change his/her location or trade name and commence operation without notifying and receiving approval of the Secretary of the Treasury.

2.    <u>Section 5841</u>.

For any manufacturer, importer, or maker to manufacture, import, or make a firearm without registering it with the Secretary of the Treasury.

3.    <u>Section 5861</u>.

    a.    To engage in business as a manufacturer, importer, or dealer in firearms without having paid the special tax required.

    b.    To receive or possess a firearm transferred in violation of 26 U.S.C. chapter 53.

    c.    To receive or possess a firearm made in violation of 26 U.S.C. chapter 53.

    d.    To receive or possess a firearm that is not registered to him in the National Firearms Registration and Transfer Record.

    e.    To transfer a firearm in violation of the provisions of 26 U.S.C. chapter 53.

    f.    To make a firearm in violation of 26 U.S.C. chapter 53.

    g.    To obliterate, remove, change, or alter the serial number or other identification required by 26 U.S.C. chapter 53.

    h.    To receive or possess a firearm having the serial number or other identification, as required by 26 U.S.C. chapter 53, obliterated, removed, changed, or altered.

    i.    To receive or possess a firearm that is not identified by a serial number, as required.

    j.    To transport, deliver, or receive any firearm in interstate commerce that is registered as required by 26 U.S.C. section 5841(c) or (d).

    k.    To receive or possess a firearm that was imported or brought into the U.S. in violation of 26 U.S.C. section 5844.

    l.    To make, or cause the making of, a false entry on any application, return, or record required, knowing such entry to be false.

4  <u>Section 5871.</u>    Any person who violates or fails to comply with any provision of this chapter shall upon conviction be fined not more than $10,000, imprisoned for not more than 10 years, or both.

Exhibit 10

ARMS EXPORT CONTROL ACT OFFENSES

1.  <u>22. U.S.C. section 2778(b)(1).</u>

    a.  <u>Description</u>. Person willfully engaged in the business of importing articles on the U.S. Munitions Import List without-registering as required by 22 U.S.C. section 2778.

    b.  <u>Elements</u>.

      (1).  Accused willfully engaged in the business as charged.

      (2).  Dates of transaction charged as engaging in business.

      (3).  Descriptions of transaction charged.

      (4).  Presence of other factors if accused is charged with only one transaction.

      (5).  Place of engaging in business.

      (6).  Failure of accused to register as required.

2.  <u>22 U.S.C. section 2778(b)(2).</u>

    a.  <u>Description</u>. Person willfully imported articles on the U.S. Munitions Import List without a permit as required by 22 U.S.C. section 2778.

    b.  <u>Elements</u>.

      (1).  Accused willfully imported articles.

      (2).  Description of articles imported.

      (3).  Dates of the act.

      (4).  Places of importation.

      (5).  No application for, or issuance of, a permit.

3.  <u>22 U.S.C. section 2778(c).</u>

    a.  <u>Description</u>. Person willfully made an untrue statement of a material fact



or omitted a required or necessary material fact required to be stated therein or necessary to make the statements therein not misleading in a registration or license application or required report.

b. <u>Elements</u>.

    (1).   Accused willfully committed act.

    (2).   Accused made a false statement or failed to make statement as required.

    (3).   Statement was material to the lawfulness of the registration or permit application.

    (4).   To whom statement was made.

    (5).   Date of application.

    (6).   Place where application was filed.

4.   <u>18 U.S.C. section 545</u>.

a. <u>Description</u>. Person fraudulently or knowingly imported any article on the U.S. Munitions Import List into the United States.

b. <u>Elements</u>.

    (1).   Accused fraudulently or knowingly imported article.

    (2).   Importation of article on U.S. Munitions Import List.

    (3).   Description of article.

    (4).   Dates of importation.

    (5).   Places of importation.

5.   <u>18 U.S.C. section 545</u>.

a. <u>Description</u>. Person knowingly received, concealed, bought, or sold an article on the U.S. Munitions Import List that was illegally imported.

b. <u>Elements</u>.

    (1).   Accused knowingly committed act.

    (2).   Accused received, concealed, bought, or sold the article.



(3). Description of the article.

(4). Illegal importation of article.

(5). Date and place of receipt by the accused.

(6). Basis of belief that accused knew or had reasonable cause to believe that the article was illegally imported.

6. <u>18 U.S.C. section 545</u>.

a. <u>Description</u>. Person knowingly, or in any manner, facilitated the transportation, concealment, or sale after illegal importation of any article on the U.S. Munitions Import List.

b. <u>Elements</u>.

(1). Person knowingly committed act.

(2). Accused facilitated the transportation, concealment, or sale of the article.

(3). Description of the article.

(4). Illegal importation of article.

(5). Date and place of accused actions in facilitating the transportation, etc., of the article.

(6). Basis of belief that accused knew or had reasonable cause to believe that the article was illegally imported.

Exhibit 11

ARMS EXPORT CONTROL ACT (AECA), AS AMENDED

<u>22 U.S.C. section 2778</u>.

(b). It shall be unlawful for any person to:

(1). Willfully engage in the business of importing articles on the U.S. Munitions List without registering with the Director, Bureau of Alcohol, Tobacco and Firearms.

(2). Willfully import articles on the U.S. Munitions List without a permit

(c). It shall be unlawful for any person to willfully violate any provisions of this section, make any untrue statement of a material fact, or fail to state a required



or necessary material fact on a registration or permit application. The accused, upon conviction, shall be fined not more than $100,000, imprisoned for not more than 2 years, or both.

The following may be applicable when investigating violations of the AECA:

18 U.S.C. section 545.

(a).    It shall be unlawful for any person to:

      (1).    Knowingly import any article on the U.S. Munitions Import List into the U.S. that is contrary to the law.

      (2).    Knowingly receive, conceal, buy, or sell any article on the U.S. Munitions List that is imported into the United States contrary to the law.

      (3).    Knowingly or in any manner, facilitate the transportation, concealment, or sale after importation or any article on the U.S, Munitions List into the U.S. that is contrary to the law. The accused, upon conviction, shall be fined not more than $10,000, imprisoned more than 5 years, or both.

Exhibit 12

### DEPARTMENT OF THE TREASURY

### BUREAU OF ALCOHOL, TOBACCO AND FIREARMS

### WASHINGTON, D.C. 20226

TO:_____

### NOTICE OF UNLICENSED FIREARMS DEALING VIOLATION

Recently, your participation in the transfer of firearms has come to the attention of the Bureau of Alcohol, Tobacco and Firearms (ATF). ATF is charged with the 5 responsibility of enforcing the Federal firearms laws and, as part of that duty, we must license persons lawfully dealing in firearms as well as prevent unlicensed dealing. We seek the cooperative efforts of the general public in fulfilling this mandate.

Your firearms activity may bring you within the definition of a dealer in firearms as defined by the Gun Control Act of 1968, as amended. This definition ( 18 U.S.C. section 921(a)(21)(c)) includes "a person who devotes time, attention and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms. . ."

To willfully deal in firearms without a license issued by ATF would place you in violation of 18 U.S.C. section 922(a)(1)(A). A sentence of not more than 5 years' imprisonment



and/or a $5,000 fine may be imposed on anyone found guilty of dealing in firearms without a license. Attached to this notice is an ATF F 7, Application for License Under 18 U.S.C. Chapter 44, Firearms. If you conduct firearms activities on a scale that would bring you within the scope of the above definition of a "dealer," then you need to apply for a Federal firearms license. Please feel free to contact the nearest ATF office for assistance.

Sincerely yours,


Special Agent in Charge

Served By:


Special Agent

Date:_____

Location:_____

I acknowledge receipt of this notice.


Date: _____


Exhibit 13

Exhibit 13

Exhibit 13

Exhibit 13

Exhibit 14

Exhibit 15

Exhibit 16

Exhibit 17

Exhibit 17

209

Exhibit 18

## Munition Losses

As appropriate, the ATF Law Enforcement field division office and/or Headquarters Strategic Intelligence Branch, Intelligence Division, shall be provided information by telephone (followed up in writing) from the Department of Defense (DOD) components concerned, of all significant/serious incidents of theft, loss, or unaccounted for arms, ammunition, and explosives materials (AAand;EM) as soon as possible but no later than 72 hours after the occurrence or discovery. Generally, loss or theft of the following AAand;EM shall be considered significant/serious:

a. One or more missile or rocket rounds

b. One or more machinegun(s)

c. One or more automatic fire weapons.

d. Twenty-five or more manually operated weapons

e. Concerning ammunition, reportable incidents do not include losses of the following types of ammunition known to have been expended during training:

    1 Ammunition of .50 caliber and smaller--5,000 rounds or more, except in the case of .38 caliber ammunition, then 20,000 rounds or more.

    2. Larger than .50 caliber--five rounds or more of nonautomatic weapon ammunition.

    3. Larger than .50 caliber--1,000 rounds or more of ammunition for automatic weapons.

    4. Any fragmentation, concussion, or explosive grenade, to include ground burst simulators, or any other type of simulator or device containing explosive materials.

f. One or more mine(s) (antipersonnel and antitank).

g. Demolition explosives including detonation cord, blocks of explosives (C-4), and other types of explosive materials.

Other reportable items are as follows:

a. Armed robberies or attempted armed robberies involving the above items.

b. Forced entries or attempted forced entries in which there is physical



evidence that an attempt was made to acquire the above items being stored

c.  Any evidence of trafficking in the above items or using same to barter for narcotics or any other thing of value to include the taking of AAand;EM across international borders unlawfully, regardless of the quantity of AAand;EM involved.

Exhibit 19

## TELECOMMUNICATION MESSAGE

DATE:    **(ENTER DATE)**

FM:   SAC

     **(ENTER YOUR FIELD DIVISION)**

TO:   FIREARMS AND EXPLOSIVES-LICENSING CENTER ATLANTA, GEORGIA

INFO:    SAC, NATIONAL TRACING CENTER

Subject:    FULL FFL INVESTIGATION

        NAME:     **(ENTER FFL's NAME)**

        C.N.:  **(ENTER CASE NUMBER)**

        FFL#: **(ENTER FFL NUMBER)**

THE **(ENTER YOUR FIELD DIVISION)** HAS INITIATED AN INVESTIGATION ON ABOVE FFL. IF YOU SHOULD HAVE ANY QUESTIONS CONCERNING THIS CONTACT SPECIAL AGENT **(ENTER CASE AGENT)** AT **(ENTER THE CASE AGENT'S TELEPHONE NUMBER)**. PLEASE APPRISE THE CASE AGENT OF ANY CHANGES IN THE LICENSEE'S STATUS OR PENDING ADMINISTRATIVE ACTIONS.


SAC, **(ENTER FIELD DIVISION)**


_____

RELEASING SIGNATURE                              DATE/TIME

EXPEDITE_____ IMMEDIATE_____ ROUTINE_____



Exhibit 20

### TELECOMMUNICATION MESSAGE

DATE:**(ENTER DATE)**

FM:   SAC

      **(ENTER YOUR FIELD DIVISION)**

TO:   FIREARMS AND EXPLOSIVES-LICENSING CENTER

      ATLANTA, GEORGIA

INFO: SAC, NATIONAL TRACING CENTER

Subject:   CONVICTION OF FEDERAL FIREARMS LICENSEE

      NAME:    **(ENTER FFL'S NAME)**

      C.N.:  **(ENTER CASE NUMBER)**

      FFL#: **(ENTER FFL NUMBER)**

THIS IS TO ADVISE YOU THAT THE PROSECUTION OF THE ABOVE-LISTED FEDERAL FIREARMS LICENSEE HAS RESULTED IN A CONVICTION. IF THERE ARE ANY ADDITIONAL QUESTIONS, PLEASE CONTACT **(ENTER CASE AGENT'S NAME AND TELEPHONE NUMBER).**


SAC, **(ENTER FIELD DIVISION)**

_____

RELEASING SIGNATURE                  DATE/TIME

EXPEDITE _____IMMEDIATE _____ ROUTINE_____

Exhibit 21

### TELECOMMUNICATION MESSAGE

DATE:**(ENTER DATE)**



FM:   SAC

(ENTER YOUR FIELD DIVISION)

TO:   FIREARMS AND EXPLOSIVES-LICENSING CENTER

      ATLANTA, GEORGIA

INFO: SAC, NATIONAL TRACING CENTER

Subject:   CLOSING OF FFL INVESTIGATION

       NAME:   **(ENTER FFL'S NAME)**

       C.N.:  **(ENTER CASE NUMBER)**

       FFL#: **(ENTER FFL NUMBER)**

THIS IS TO ADVISE YOU THAT THE INVESTIGATION ON THE LISTED FFL HAS BEEN CLOSED EFFECTIVE **(ENTER DATE THE INVESTIGATION IS CLOSED)**. IF THERE ARE ANY ADDITIONAL QUESTIONS, PLEASE CONTACT **(ENTER CASE AGENT'S NAME AND TELEPHONE NUMBER).**

SAC, **(ENTER FIELD DIVISION)**

_____

RELEASING SIGNATURE                          DATE/TIME

EXPEDITE_____  IMMEDIATE _____  ROUTINE _____

Exhibit 22

Exhibit 23

