UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                            Case No:        3:21-cr-00022-MMH-MCR

KRISTOPHER ERVIN
MATTHER RAYMOND HOOVER
_____/

**MOTION *IN LIMINE* TO EXCLUDE TRIAL TESTINMONY OF
GOVERNMENT'S PURPORTED EXPERT WITNESSES**

COMES NOW the Defendants, Kristopher Ervin and Matthew Hoover[1], by and through his undersigned counsel, and hereby respectfully moves this Court in limine to exclude Area Supervisor Ernest Lintner ("SA Lintner") and Firearms Enforcement Officer Cody Toy ("FEO Toy" and when referred to with Linter, the "Purported Experts") testimony from trial. The Government has failed to carry their burden to establish any of the three prongs of the Eleventh Circuit's test for admissibility of expert testimony. Defendant moves to exclude AS Lintner's testimony in its entirety and FEO Toy's testimony outside of his procedures as it pertained to testing the Auto Key Card because the Government has not complied with Rule 16, and because the Government has not established that either AS Lintner or FEO Toy is an expert in any relevant field. The Government has not established AS Lintner has any relevant testimony to the facts at hand that would help the jury understand a complex issue, have not demonstrated that his opinion is based on any sort of reliable principle or method, and on the grounds that the proposed testimony would not help the jury understand the evidence or decide facts at issue. Additionally, the Government has not established that FEO Toy is an expert in a relevant field, and has not

---

[1] In an effort to streamline pleadings and this Honorable Court's review of the relevant legal and factual issues, counsel for Defendants have collaborated and agreed to jointly file this Motion *in Limine*, as the issues presented are essentially identical as to both Defendants.

demonstrated that his opinion is based on any reliable principle or method. Finally, the testimony FEO Toy can provide that would be both relevant and admissible is lay testimony, rather than expert testimony. As such this Honorable Court should not allow such testimony to be bootstrapped with imprimatur of referring to FEO Toy as an expert.

## **LEGAL STANDARD**

The introduction of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702. An expert witness is in contrast to a lay witness, whose testimony is governed by Rule 701, which provides that "a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Fed. R. Evid. 701.  The Supreme Court has determined that it appropriate for the trial court to act a gatekeeper to ensure the relevance and reliability of expert testimony before it is presented to a jury.

The Eleventh Circuit has adopted a three part inquiry in assessing the admissibility of expert witness testimony under Rule 702:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998) (*citing Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993).  This is significant in particular with expert witnesses, as their opinions can carry a great deal of weight and "can be both powerful and quite misleading because of the difficulty in evaluating" the veracity and methods of such opinions.  *Daubert* at 595. "If the government intends to present a witness as an expert in a criminal trial, the government must disclose that witness as an expert prior to trial and provide a written summary of the expected testimony." *United States v. Stahlman*, 934 F.3d 1199, 1219 (11th Cir. 2019) *citing* Fed. R. Crim. P. 16(a)(1)(G); *United States v. Hamaker*, 455 F.3d 1316, 1331 (11th Cir. 2006).  Furthermore, it is inappropriate for expert testimony to be provided where the "expert" testimony is merely lay testimony from an individual with some expert qualifications.  "For an expert's testimony to be admissible under Rule [702], however, it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."

*Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (*collecting cases*).

## GOVERNMENT'S EXPERT DISCLOSURE REGARDING AS LINTNER

Simply put, the Government intends to call AS Lintner to explain the law, rather than as an eyewitness or a true expert witness. An expert witness is not needed to explain the historical regulation of firearms, as the history of firearms regulation in the United States is not a factual issue in this case. *See United States v. Kahn*, 711 F. Supp. 2d 9, 10 (D.D.C. 2010). AS Lintner's purported testimony describing the historical development of firearms and ATF's subsequent classification does not assist the trier of fact in determining any fact relevant to this case. It is axiomatic that a "witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) *citing United States v. Poschwatta*, 829 F.2d 1477, 1483 (9th Cir.1987); *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir.1980). "An expert may not, however, merely tell the jury what result to reach. … merely telling jury what result to reach is not helpful to the jury and therefore is not admissible testimony." *Id.*

AS Lintner was disclosed as an expert in matters regarding the rules and regulations that govern machineguns and other items regulated under the National Firearms Act (NFA), including the procedures that are required to be followed in order to legally manufacture, possess, and transfer both newly-made and pre-1986 machineguns. AS Lintner is also expected to testify regarding the authority FFLs and SOTs possess with regard to manufacturing, possessing, and transferring machineguns. Furthermore, he is also expected to testify regarding the procedures through which SOTs can obtain advice from ATF in order to ensure that they are complying with federal law. None of this testimony is relevant to a question of fact the jury

4

must decide and to the extent this Court believes the jury needs to be instructed on the operation of the law, such instruction is best left to the Court.

The Government has failed to show any area of expertise that is relevant to the issues at hand or that would help the jury understand a complex issue. Instead, the Government seeks to introduce testimony regarding the regulation of firearms in general, including the regulation of machineguns. However, the regulation of machineguns is not at issue in the instant case. The sole issue at hand is whether or not the Defendant possessed or transferred a machinegun. Both the definition of a machinegun and of a firearm can and should be defined and explained by this Court to the jury. Neither definition is complicated, nor do they require a historical background.

AS Lintner's CV does not provide any further clarification as to his expertise in the area of machinegun conversion kits and how they are used to turn a firearm into a machinegun. The only reference to the field of machinegun conversion is a single training attended by AS Lintner in 2009, approximately 13 years ago. AS Lintner makes no mention of additional training or refresher courses in this area.

The Government asserts AS Linter has expertise in "supervising investigators in ATF's Industry Operations Group in Orlando . . . [and has] training and experience as it relates to enforcement of the National Firearms Act ("NFA"), the Gun Control Act ("GCA"), and related regulations" but does not explain how any of these claimed areas of expertise qualify him to render an opinion in this case.

A review of AS Linter's CV does not disclose any basis for concluding that he possesses expertise in making determinations of what is, and is not, a machinegun or instruction to the jury regarding "the rules and regulations that govern machineguns and other items regulated under the NFA." *See* Doc. 55 at 2.

AS Linter represents that from February 2021 until present, and May 2010 until January, 2014, he was an "Area Supervisor" for the ATF, from January 2013 until February, 2021, a "Firearms Specialist" for the ATF, and a from December 2008 until May, 2009, a "National Firearms Act Specialist" for ATF, and from August 2005 until December 2008, an "Industry Operations Investigator" for the ATF. In his role as an "Area Supervisor," he claims that his "[d]uties include reviewing application reports to determine applicant eligibility for firearms and explosives licenses, verify licensee compliance with the Gun Control Act, National Firearms Act, and Safe Explosives Act; review investigation reports to ensure accuracy and consistency between written and database information, contents meet required information in the prescribed format, determine adverse administrative action consistent with agency policy, articulate and submit suggested action to higher authority for further review and final determination." He would also "review travel vouchers for required documentation and compliance with established spending limits, review use and maintenance logs for Government Owned Vehicles, review office procedures for compliance with established standards. Complete and submit personnel performance evaluations." *Id.*

Further, as to AS Linter's job as a "Firearms Specialist," "National Firearms Act Specialist," and "Industry Operations Investigator" there is no explanation to what would qualify him to make a determination as to whether an item is a machinegun. In fact, he appears to have spent his career with the ATF responding "to inquiries from ATF field and Headquarters personnel who need information concerning background check results, NICS policy, procedures, or associated records" (duties as a Firearms Specialist), worked in a community outreach position where he "both orally and in writing to detailed inquiries from the public, firearms industry, field offices, and Headquarters on various matters concerning the National Firearm

6

Registration and Transfer Record, the National Firearms Act, Gun Control Act, Safe Explosives Act" (duties as a National Firearms Act Specialist), and "[c]onduct[ed] inspections of licensees and applicants for federal firearms and explosives licenses" (duties as a Industry Operations Investigator). ATF's self-serving statement that he is an expert, because that is his job title, does not make AS Linter an expert.

As the Government itself explained, none of those positions authorize AS Linter to "make classification decisions regarding machineguns -- that role is designated to specialists at the Firearms and Ammunition Technology Division (formerly the Firearms Technology Criminal Branch)." AS Linter has never had a role at that division, has never received the advanced training provided to ATF's Firearms Enforcement Officers who are charged with making machinegun classifications, and has never been tasked by ATF with making determination decisions about machineguns. AS Linter lists only a single training course that appears to relate to machineguns.

AS Linter's CV reflects that while he may have expertise in certain areas not relevant here - such as reviewing travel vouchers and reviewing the use and maintenance logs for Government Owned Vehicles - there is no basis for concluding that he possesses knowledge and expertise about machineguns and the NFA that would assist the jury. His testimony should, therefore, be excluded on the basis that the Government has failed to meet his burden to demonstrate that Linter "is qualified to testify competently regarding the matters he intends to address." *See Stahlman*, 934 F.3d at 1219; *Frazier*, 387 F.3d at 1260.

AS Lintner's production of prior testimony lends no additional relevant information to machinegun conversion. AS Lintner specifically named testimony in his CV seem to be centered

around the regulation and policies for FFL license holders and SOTs as it pertains to machineguns, of which AS Lintner may be an expert.

The Government has failed to provide or demonstrate that AS Lintner's opinion is based on reliable principles or methods. The Government simply states that AS Lintner is an expert in these irrelevant fields without showing how that applies to the particular case. The Government has not provided a report authored by AS Lintner about his opinion or how it was reached, as his opinion is only general information about the firearm world and the regulations surrounding the ownership, transfer, possession, or purchase of said firearms. AS Lintner has conducted no tests as to these devices and does not possess any knowledge that would assist the jury in making factual determinations, only legal conclusions.

"[O]pinion testimony, whether offered by a lay witness pursuant to [Rule 701], or by an expert pursuant to [Rule 702], ... is not properly received 'merely [to] tell the jury what result to reach.' " *United States v. Hawkins*, 934 F.3d 1251, 1266 (11th Cir. 2019). In short, the Government is asking this Court to instruct the jury that AS Lintner is an expert, allow him to explain the law, and then summarize that Defendants violated the law. "If such testimony were allowed, 'there would be no need for the jury to review personally any evidence at all. The jurors could be 'helped' by a summary witness for the Government, who could not only tell them what was in the evidence but tell them what inferences to draw from it.'" *Id. quoting United States v. Grinage,* 390 F.3d 746, 750 (2d Cir. 2004) (addressing summation evidence in drug cases where government experts provide summation evidence).

### GOVERNMENT'S EXPERT DISCLOSURE REGARDING FEO TROY

The Government also disclosed FEO Toy as an expert expected to testify at trial. FEO Toy's, *curriculum vitae* states that from February 2016 until the present day, he served as a

8

"Firearms Enforcement Officer" for the ATF. FEO Toy's CV does not disclose any basis for concluding that he possesses expertise in making determinations of what is, and is not, a machinegun or testify as to what etchings are recognizable "as a 'Lightning Link,'" that the ATF has declared by administrative fiat that it is a "type of machinegun conversion device that has been classified as a machinegun by ATF, pursuant to the NFA, since at least the early 1980s," his conclusion that he "classified the Auto Key Card as a machinegun," or opine about the "requirements for marking machineguns, including the stage of manufacture at which such markings are required, and the procedures for obtaining marking variances."

The Government provided the reports signed by FEO Toy in which he describes the steps he took in evaluating and manipulating the AKC and placing the cut-outs into an AR-15 style rifle. However, the Government's disclosure fails to provide any information regarding FEO Toy's expertise in this area that differs from that of a lay person. A further review of FEO Toy's CV does not provide much clarification in the matter either. FEO Toy's CV lists a plethora of firearm related classes, but nothing sheds any light on his knowledge regarding conversion devices. FEO Toy's primary expertise in in the identification of firearms, generally. Although the definition of a firearm includes "machineguns", FEO Toy's CV does not establish that he is an expert in the field of conversion devices. Simply stated, FEO Toy can identify a "machinegun" in the general sense, yet he has no discernable expertise in specific field of conversion devices. Although defined as a machinegun, these are clearly separate fields as FEO Toy took a specific class on conversion devices. However, it is impossible to determine any level of expertise from a single class.

FEO Toy's proposed testimony is that "he was able to use a commonly-available Dremel tool to cut the etched lines of the Auto Key Card" the only qualifications that it was able to

demonstrate by way of his CV is that he allegedly "built" an AR-15 receiver and silencer "using websites such as youtube.com for instructions[.]" Respectfully, it does not require any expertise to use a basic tool to cut a piece of metal. FEO Toy simply took a piece of metal handed to him and manipulated it to fit in a firearm to produce a desired result of multiple fired rounds with a single trigger pull. To allow the witness to testify as an expert and classify the device under a particular designation as a Lightning Link would seek invade the province of the jury and is not necessary for the overall understanding of an issue before the jury. Although FEO Toy may be able to provide testimony under Rule 701 as a lay witness, nothing he did requires expert testimony or would necessitate him being declared an expert, as his factual testimony does not require any technical expertise. Indeed, it is anticipated that the Government may try to present witnesses wholly lacking in any demonstrable expertise who were able to do exactly FEO Toy did with the Dremel.

### **THE GOVERNMENT HAS NOT ESTABLISHED THAT THE PURPORTED EXPERTS RELIED ON APPROPRIATE AUTHORITIES IN FORMING THEIR OPINIONS**

The Government's disclosure provides no basis whatsoever for their proffered opinions that Auto Key Cards are machineguns, the opinion on what the law is (and historical basis such interpretation), or their errant legal conclusions. It is concerning that the Government offers AS Linter to opine about the "rules and regulations that govern machineguns and other items regulated under the NFA . . . regarding the authority FFLs and SOTs possess with regard to manufacturing, possessing, and transferring machineguns . . . procedures through which SOTs can obtain advice from ATF . . . [and] the history of Lightning Links and their classification as machineguns." The Government have thus failed to meet its burden to demonstrate the reliability of AS Linter's methodology in forming his opinions under the second prong of *Stahlman,* 934 F.3d at 1219.

Further, as to FEO Toy, the Government disclosed that FEO Toy reached his conclusions without engaging in any sort of method or process that is sufficiently reliable. To wit, it disclosed that the "design etched onto the surface of the Auto Key Card devices submitted to him was immediately recognizable as a 'Lightning Link' [by Toy and that] "he was able to use a commonly-available Dremel tool to cut the etched lines of the Auto Key Card and thereby cut the Lightning Link from the surrounding material." The Government has thus failed to meet their burden to demonstrate the reliability of Toy's methodology in forming his opinions under the second prong of *Stahlman*, 934 F.3d at 1219.  The Purported Experts' testimony should, therefore, be excluded on this ground as well.  *See Cook* 402 F.3d at 1111 ("[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained." (internal quotations omitted)).

## CONCLUSION

The Government has failed to establish any of the three prongs necessary for the admissibility of their Purported Experts' proposed testimony.  The proposed testimony is either wholly irrelevant, inappropriate, or not expert testimony.  As such, this Honorable Court should exclude the testimony of AS Lintner in its entirety and preclude the Government from presenting FEO Toy as an expert witness, limiting his testimony to his observations and factual involvement as lay witness.

Respectfully submitted,

**Monroe & King, P.A.**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
Scott Monroe, Esq.
Florida Bar No.: 0086801
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: (1) Laura C. Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, (2) Zachary Z. Zermay, Esq., zach@zermaylaw.com, and (3) Matthew Larosiere, Esq., larosieremm@gmail.com, this 21st day of October, 2022.

  /s/ Alex King
ATTORNEY