1 IN THE UNITED STATES DISTRICT COURT
 MIDDLE DISTRICT OF FLORIDA
2 JACKSONVILLE DIVISION

3 UNITED STATES OF AMERICA, Jacksonville, Florida

4  -vs- 3:21-cr-22(S2)-MMH-MCR

5 MATTHEW RAYMOND HOOVER, February 22, 2022

6  Defendant. 11:01 a.m. - 11:26 a.m.

7  (Digitally Recorded)

8 _____

9
  **DIGITALLY RECORDED**
10  **INITIAL APPEARANCE AND ARRAIGNMENT**

11
  BEFORE THE HONORABLE MONTE C. RICHARDSON
12  UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17 OFFICIAL COURT REPORTER:

18  Katharine M. Healey, RMR, CRR, FPR-C
  PO Box 56814
19  Jacksonville, FL 32241
  Telephone: (904) 301-6843
20

21

22
  (Proceedings recorded by electronic sound recording;
23  transcript produced by computer.)

24

25

1                    **A P P E A R A N C E S:**

2    GOVERNMENT COUNSEL:

3      **LAURA COFER TAYLOR, ESQUIRE**
       United States Attorney's Office
4      300 North Hogan Street, Suite 700
       Jacksonville, FL 32202
5      laura.c.taylor@usdoj.gov

6
     DEFENSE COUNSEL:
7
       **ZACHARY Z. ZERMAY, ESQUIRE**
8      Zermay Law
       1762 Windward Way
9      Sanibel, FL 33957
       zach@zermaylaw.com
10
       - A N D -
11
       **MATTHEW M. LAROSIERE, ESQUIRE**
12     6964 Houlton Circle
       Lake Worth, FL 33467
13     larosieremm@gmail.com

14

15

16

17

18

19

20

21

22

23

24

25

1  P R O C E E D I N G S
   February 22, 2022                              11:01 a.m.
2                           -   -   -
3          COURT SECURITY OFFICER:  All rise.  The United States
4  District Court in and for the Middle District of Florida is now
5  in session.  The Honorable Monte C. Richardson presiding.
6          Please be seated.
7          THE COURT:  We're in Case Number
8  3:21-cr-22(S2)-MMH-MCR, the United States of America vs.
9  Matthew Hoover.  And who speaks for the United States?
10         MS. TAYLOR:  Good morning, Your Honor.  Laura Cofer
11 Taylor on behalf of the United States.
12         THE COURT:  Welcome, Counsel.
13         And for the defense?
14         MR. ZERMAY:  Your Honor, Zachary Zermay here
15 appearing for Matthew Hoover.
16         THE COURT:  Welcome, Counsel.
17         MR. LAROSIERE:  Good morning, Your Honor.  Matthew
18 Larosiere also for Mr. Hoover.
19         THE COURT:  Welcome.  And Counsel, you have been
20 retained by Mr. Hoover; is that correct?
21         MR. ZERMAY:  That's correct, Your Honor.
22         THE COURT:  All right.  Welcome.
23         And we're here for initial appearance based on a
24 superseding indictment.
25         Mr. Hoover, what's your full name, sir?

```
1              THE DEFENDANT:  Good morning, Your Honor.  Matthew
2    Raymond Hoover.
3              THE COURT:  All right, sir.  And how old are you?
4    You can remain seated and speak into the microphone.
5              THE DEFENDANT:  Sorry.
6              THE COURT:  That's all right.
7              THE DEFENDANT:  Almost 40.
8              THE COURT:  All right.  What's your date of birth?
9              THE DEFENDANT:  1/12/84.
10             THE COURT:  What's your home address?
11             THE DEFENDANT:  401 Chilewski Drive, Coloma,
12   Wisconsin.
13             THE COURT:  How long have you lived at that address?
14             THE DEFENDANT:  I think three years.
15             THE COURT:  How much education have you completed?
16             THE DEFENDANT:  High school.
17             THE COURT:  Are you under the influence of any drugs,
18   alcohol, or intoxicants?
19             THE DEFENDANT:  No.
20             THE COURT:  Are you taking any medications?
21             THE DEFENDANT:  Indigestion.
22             THE COURT:  And have you ever been treated for a
23   mental illness?
24             THE DEFENDANT:  Nope.
25             THE COURT:  All right.  So you understand where you
```

1  are, what you're doing, and the importance of this proceeding?

2         THE DEFENDANT:  Correct.

3         THE COURT:  All right.  This hearing is to advise you

4  of the charge or charges against you, the rights that you have

5  and what will follow and to consider the issue of bail.

6         You will not be called upon to plea to the charge or

7  charges in the superseding indictment at this time, but a

8  federal grand jury here in Jacksonville has returned an

9  indictment against you.

10         I'll ask that the prosecutor advise you as to what

11  the charge or charges are and the penalties involved, so I want

12  you to listen carefully.

13         Counsel.

14         MS. TAYLOR:  Yes, Your Honor.

15         The indictment charges Mr. Hoover in several counts.

16  Those are Counts One through Seven of the indictment.  There

17  are additional counts that do not relate to Mr. Hoover and they

18  relate, instead, to his codefendant.

19         Count One of the indictment is a conspiracy count.

20  And if it's okay, Your Honor, I will summarize it?

21         THE COURT:  Yes.

22         MS. TAYLOR:  And essentially the conspiracy count

23  charges that beginning in or about October of 2020, and

24  continuing through in or about July of 2021, in the Middle

25  District of Florida, that Mr. Hoover and his co-conspirator,

1   Kristopher Justinboyer Ervin, formed a conspiracy with each

2   other to commit offenses, specifically, to transfer firearms,

3   that is, machinegun conversion devices constituting machineguns

4   as, defined under federal law, and that the machineguns were

5   not registered in the National Firearms Registration and

6   Transfer Record.

7          And the first count further lays out in paragraph six

8   the manner and means of the conspiracy, essentially how the

9   conspiracy worked.

10         And Your Honor, I would just advise the Court I did

11  handle by Zoom the detention hearing in the initial -- up in

12  Wisconsin for Mr. Hoover, and this -- the manner and means were

13  reviewed in detail with him at that time.

14         THE COURT:  Very well.

15         MS. TAYLOR:  And then the next section alleges a

16  number of overt acts.  That's at paragraph seven.  And they

17  continue for several pages of alleged overt acts.  And then

18  that's all alleged to be in violation of Title 18, United

19  States Code, Section 371.

20         If Mr. Hoover were to be convicted of this conspiracy

21  count in Count One he would face a maximum term of imprisonment

22  of up to five years, a fine of up to $250,000, or the Court can

23  impose prison and a fine.

24         A term of supervised release following prison of up

25  to three years could be imposed.  And if Mr. Hoover were to

1 violate the terms and conditions of the supervised release he
2 could be sent back to prison for up to two years and a new term
3 of supervised release could be imposed.

4        And there's a mandatory special assessment of $100.

5        And then Counts Two through Seven, Your Honor, they
6 all charge the same -- the same type of crime but on different
7 dates.  And each of these offenses is charged specific --
8 specific instances of the knowing transfer of unregistered
9 machineguns.

10        And so Count Two is for an offense on November 14th
11 of 2020 to a person with the initials D.S.

12        And Count Three is on November 30th of 2020, and the
13 transfer is alleged to be a person with the initials J.M.

14        Count Four is from December 12th of 2020, and it's
15 alleged to be transferred to a person with the initials R.D.

16        Count Five is a transfer from December 23rd of 2020,
17 and that's alleged to be a transfer to a person with the
18 initials J.A.

19        Count Six is a transfer on January 17th of 2021 to a
20 person with the initials R.W.

21        And then Count Seven is a transfer on or about
22 February 1st of 2021 to a person with the initials A.O

23        And so, again, each of those six counts charges the
24 same type of offense.  And each of those individual offenses
25 carries a maximum term of imprisonment of up to ten years, a

1    fine of up to $250,000, or the Court can impose prison and the

2    fine, a term of supervised release following any term of

3    imprisonment of up to three years.

4             And if Mr. Hoover were then to violate the terms and

5    conditions of the supervised release, he could be sent back to

6    prison for up to two years and a new term of supervised release

7    could be imposed.

8             And the mandatory special assessment is $100.

9             And again, those penalties are for each count

10   individually.

11            If Mr. Hoover were to be convicted of the seven

12   counts in which he's charged in this indictment, and if the

13   Court were to order that his sentences should run consecutive

14   to one another rather than concurrent, his maximum term of

15   imprisonment would be 65 years; the maximum fine would be

16   $1.75 million, or the Court could impose prison and a fine.

17            A term of supervised release of up to three years

18   could be imposed following a prison term.  And then if he were

19   to violate the terms and conditions of the supervised release,

20   he could be sent back to prison for up to 14 years and a new

21   term of supervised release could be imposed.

22            And a cumulative special assessment would be $700.

23            And then additionally, on page -- beginning on page

24   16 the indictment contains forfeiture provisions.  I believe

25   the only specific forfeiture is property of Mr. Ervin, not of

1  Mr. Hoover.  But there are a number of forfeiture provisions as

2  well.

3         THE COURT:  All right.  Thank you, Counsel.

4         Mr. Hoover, do you understand the charges against

5  you, sir?

6         THE DEFENDANT:  Yes, I do.

7         THE COURT:  And do you also understand the maximum

8  penalties possible?

9         THE DEFENDANT:  Yes, I do.

10        THE COURT:  Okay.  I do need for you to listen as I

11 advise you of your rights.  You do have a constitutional right

12 to remain silent.  You don't have to make any statement, nor do

13 you have to give a statement at any time to any law enforcement

14 officer.

15        If you do make a statement, anything you say can and

16 will be used against you in court.  If you already made

17 statements in the past to law enforcement you need not make any

18 statements in the future.

19        So do you understand your right to remind silent,

20 sir?

21        THE DEFENDANT:  Yes, I do.

22        THE COURT:  Also, you have a right to be represented

23 by an attorney in all proceedings in this case.  And you do

24 have retained counsel.  If there comes a time you can no longer

25 afford to retain counsel, you need to bring that to the

1  attention of the Court.

2          Do you understand, sir?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  What's the government's position with

5  regard to bail?

6          MS. TAYLOR:  Your Honor, Mr. Hoover elected to have

7  his detention hearing in Wisconsin.  I did seek detention,

8  which was not -- not granted.  The judge in Wisconsin imposed

9  certain conditions of bond, I believe one of which related to,

10 you know, a requirement that Mr. Hoover not attempt to

11 intimidate or interfere with any potential witnesses in this

12 case.

13         Although there are six -- yeah, six counts where

14 specific transfers to individual purchasers are alleged in the

15 indictment, the actual list of purchasers is in excess of a

16 thousand people.  And so I think what the judge in Wisconsin

17 had envisioned is that we would file under seal a list of the

18 individual people who attempt -- because any of those

19 purchasers potentially could be a witness in this case.

20         So I certainly can pull together the list of all

21 purchasers and put that under seal.  I think it will also be

22 fairly clear within the discovery who's a potential witness and

23 who's a purchaser here, and that Mr. Hoover is on notice that

24 he should not in any way attempt to intimidate or threaten any

25 of those potential witnesses.

1    And Your Honor, before -- I guess before we move too
2  much further, another issue that I --
3    THE COURT:  So that I'm clear, you're asking that the
4  conditions of release be continued with regard to Mr. Hoover
5  here in the Middle District?
6    MS. TAYLOR:  At this point I still continue to
7  believe that he should be detained.  However, he's had the
8  hearing and I was ruled against, so that's where we're at, Your
9  Honor.
10    THE COURT:  Counsel, do you wish to be heard?
11    MR. ZERMAY:  No, Your Honor, not at this time.
12    THE COURT:  Okay.  Anything else, Ms. Taylor?
13    MS. TAYLOR:  Yes, Your Honor.  The other issue that I
14  think the Court needs to address rather early on is Mr. Zermay
15  and Mr. Larosiere had previously represented Mr. Hoover's wife
16  when she was subpoenaed before the grand jury here in
17  Jacksonville, and I think that that raises potential issues
18  with conflict.  She was subpoenaed as a witness last summer.
19  And she, in my view, is still a witness in the case.
20    I have concerns based on videos that Mr. Hoover
21  posted online that he was attempting to interfere with her
22  testimony as a witness.  He essentially stated that he had
23  coached her.  Whether that was, you know, hyperbole by
24  Mr. Hoover -- because I think he's a little bit of a
25  provocateur in his videos -- or not, but that was his

1  statement, was that he had made her watch I think a hundred

2  hours of video of Hillary Clinton testifying to prepare her to

3  come in to the grand jury.  And so I have concerns about

4  whether he is going to continue to attempt to coach her or

5  otherwise interfere with her testimony.

6          She -- although at this time I do not intend to add

7  her to the indictment, I certainly think there's also a

8  prosecutable theory under which she could be added as a

9  defendant to the indictment.

10         And all of that is just background to say, Your

11 Honor, that I think the Court needs to address with Mr. Hoover

12 the potential conflict issue and whether it's a waivable

13 conflict, and if so, whether he is fully informed of the

14 conflict and chooses to waive it.

15         THE COURT:  Mr. Hoover, do you understand the

16 situation?

17         THE DEFENDANT:  Yes, I do, Your Honor.

18         THE COURT:  And Counsel, let me hear from you first.

19 Do you believe -- what's your issue with regard to any possible

20 conflict?  What's your position on this?

21         MR. ZERMAY:  Your Honor, I'm going to defer to my

22 co-counsel on this.  He's thoroughly prepped on the argument.

23         MR. LAROSIERE:  Pleasure, Your Honor.

24         THE COURT:  Yes.

25         MR. LAROSIERE:  So we had spoken to the Florida Bar,

1   we had spoken with our clients.  We cannot undertake to imagine

2   a position that we would take that would be adverse to our

3   former client.

4           Also, I'm a well-published expert specifically in the

5   National Firearms Act.  There are very limited options for

6   Mr. Hoover for counsel that has such experience with the

7   National Firearms Act.  And I think that if Mr. Hoover is

8   comfortable with us representing him, he should be able to do

9   that.

10          As far as the -- any potential conflict, of course a

11  future conflict is not presently waivable, and it is -- since

12  it is not foreseeable, it is not a present conflict.

13          And in the event that such were to happen, for

14  example, the opportunity to cross-examine the ex-wife,

15  Mr. Zermay was thoroughly screened from the matter.  In fact,

16  neither of us have any specifically privileged information from

17  our previous client, and so we just cannot undertake to see any

18  issue that would not be waivable.

19          THE COURT:  Mr. Zermay, you had no contact with the

20  wife?

21          MR. ZERMAY:  Your Honor, my firm sent her a retainer

22  agreement.  That's the extent of my interaction with his wife.

23          THE COURT:  Okay.  So, again, Mr. Hoover, you

24  understand the potential conflict that may arise in this case?

25          THE DEFENDANT:  Yes, I do, Your Honor.

1    THE COURT:  And, I mean, there could be a scenario

2    where, as Ms. Taylor indicates, that your wife could be called

3    as a witness, or, as she indicated, hasn't been ruled out the

4    possibility that your wife may down the road be a codefendant.

5    Do you understand, sir?

6    THE DEFENDANT:  Yes, I do, Your Honor.

7    THE COURT:  And if that's the case, if, for example,

8    your wife is called as a witness for the United States, she

9    should -- or could be subject, of course, to cross-examination

10   by your counsel.  And obviously her interests and your

11   interests would be different.

12   Do you understand, sir?

13   THE DEFENDANT:  Yes, I do, Your Honor.

14   THE COURT:  And given the pitfalls that may arise

15   with regard to any potential conflicts that you have, you still

16   wish to proceed with current counsel?

17   THE DEFENDANT:  Yes, I do, Your Honor.

18   THE COURT:  Any other inquiry you would like to

19   request on that from the Court, Ms. Taylor?

20   MS. TAYLOR:  I don't believe so at this time, Your

21   Honor.

22   You know, as I said, I think, as I perceived it,

23   Mr. Larosiere did accompany Mrs. Hoover to the grand jury and

24   participated in a prep session and was available to advise her

25   as she was testifying before the grand jury.

1        Mr. Zermay, I guess his involvement was somewhat

2   less.  He did not actually come to the courthouse for the grand

3   jury appointment.

4        But my concern would be if we get to a trial down the

5   road, or a hearing even, and she's called to testify and

6   there's information that they know about her that could be used

7   for cross-examination, and then Mr. Hoover is potentially

8   prejudiced because they're unable to use that information

9   because it's also attorney/client privileged information.  And

10  so that was where I saw the potential conflict, Your Honor.

11       THE COURT:  Counsel, do you have any response to

12  that?

13       MR. LAROSIERE:  Again, Your Honor, I repeat that

14  under the course of my representation at the grand jury

15  investigation, I did not gain anything that I could believe

16  could possibly come into play.  It is, in fact, my position

17  that I have no specific privileged information whatsoever.

18       Just informing somebody of how the rules work and to

19  tell the truth I don't think is uniquely prejudicial to anyone.

20       THE COURT:  All right.  I believe Mr. Hoover

21  understands the potential conflict, or potential dilemma that

22  he may face.  But based on counsel's representations to the

23  Court, he does not foresee any potential pitfall in

24  representing Mr. Hoover.

25       Mr. Hoover -- I do find that he has waived any

1    possible conflict of interest at this point.

2           With regard to the issue of bail, the Court will

3    reinstate or just continue the conditions that were set by the

4    Court in Wisconsin.

5           Any additional discovery that needs to be turned over

6    at this point?

7           MS. TAYLOR:  Your Honor, I addressed that with

8    Mr. Zermay and Mr. Larosiere.  We have the discovery ready.

9    I'm just waiting on a disk for them.  So as soon as they can

10   get me a disk drive for the discovery it will be given to them.

11          THE COURT:  All right.  Very well.  Anything else I

12   need to address at this time?

13          MR. ZERMAY:  Yes, Your Honor.  It's our understanding

14   that there's a trial coming up in April, and defense counsel

15   respectfully requests more time to prepare for the trial in the

16   matter.  We suggest a period of roughly six months because we

17   have a number of --

18          THE COURT:  Hold on one second.

19          All right.  One more moment.

20      (Pause in proceedings.)

21          THE COURT:  I found it.  All right.  Go ahead,

22   Counsel.  I cut you off.

23          MS. TAYLOR:  Your Honor, as I was just discussing

24   with Mr. Zermay, we do have currently I believe a March 21st

25   hearing in front of Judge Howard in which I believe she was

1  anticipating addressing these timing issues.

2         I think it would be more appropriate for the request

3  for a continuance and a briefing schedule I think to be in

4  front of her, particularly because Mr. King is not here --

5         THE COURT:  That's right.

6         MS. TAYLOR:  -- to represent Mr. Ervin's interests

7  today.

8         THE COURT:  That's right.  And why don't we proceed

9  with the arraignment.  Is that agreeable to counsel?

10         MR. ZERMAY:  Yes, Your Honor.

11         THE COURT:  Okay.  So Mr. Hoover, you understand --

12  and what I'll do is just go ahead and advise you of your

13  additional rights that you are entitled to under the

14  Constitution.

15         You do have a right to plead guilty, and by doing so

16  admit to the truth of the charges against you.  And you have a

17  right to plead not guilty as well and maintain that plea.

18         By pleading not guilty you're entitled to various

19  rights.  First of all, you're entitled to a jury trial by a

20  jury of 12, all of whom would have to agree on your guilt

21  before you could be convicted of an offense.

22         Do you understand, sir?

23         THE DEFENDANT:  Yes, I do.

24         THE COURT:  You're also presumed to be innocent,

25  which means it's the burden of the United States to prove your

1  guilt beyond a reasonable doubt.  You don't have to prove that

2  you're innocent.

3          Do you understand, sir?

4          THE DEFENDANT:  Yes, I do, Your Honor.

5          THE COURT:  Also, if your case went to trial, you

6  have a right to confront your accusers.  They have to come into

7  court and testify in your presence.  And through your attorney

8  you could cross-examine those witnesses and object to any

9  evidence offered by the United States in this case.

10          Do you understand, sir?

11          THE DEFENDANT:  Yes, I do, Your Honor.

12          THE COURT:  Further, if your case went to trial you

13  could present witnesses in your own defense.

14          Do you understand, sir?

15          THE DEFENDANT:  Yes, I do, Your Honor.

16          THE COURT:  Also, if your case went to trial you have

17  the right to testify.  And you have a right not to testify as

18  well.

19          Do you understand, sir?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  And you're also entitled to a speedy

22  trial, which means the case should go to trial within 70 days

23  from today, which is your arraignment date.

24          Do you understand, sir?

25          THE DEFENDANT:  Yes, I do.

1      THE COURT:  Do you understand all the rights I've

2   explained, sir?

3      THE DEFENDANT:  Yes, I do.

4      THE COURT:  And do you waive -- Counsel, do you waive

5   a formal reading of the indictment at this time?

6      MR. ZERMAY:  Yes, Your Honor.

7      THE COURT:  And how does your client plead at this

8   time, sir?

9      THE DEFENDANT:  Not guilty.

10      THE COURT:  All right.  The Court will enter a not

11   guilty plea on your behalf, sir, with regard to the charge or

12   charges in the indictment.

13      And this case is set before Judge Howard.  She asks

14   that all discovery motions be filed by March 8th.  That's

15   March 8th for discovery motions.

16      All dispositive motions, motions to suppress, and

17   other non-discovery motions are to be filed by March 22nd.

18      There is a status conference date of April 18th at

19   3 o'clock.  That's April 18th for the status conference.

20      And a trial date is set for May 2nd at 9 o'clock.

21      If this case results in a change of plea, Judge

22   Howard asks that it be scheduled as soon as possible before the

23   magistrate judge.

24      And if there is a request to continue it, as

25   indicated by counsel, that should be addressed by Judge Howard.

1          Anything else I need to address at this time?

2          MS. TAYLOR:  Your Honor, I believe -- I believe we do

3   still have, actually, an earlier status, which was the March

4   21st, although we're going to be asking to move it back a week

5   or two just --

6          THE COURT:  Okay.

7          MS. TAYLOR:  -- for personal reasons, but -- but --

8          THE COURT:  So there's a March 20th -- I mean a --

9          MS. TAYLOR:  Yes.  We had previously -- we previously

10  had set a special status in anticipation of going to trial.

11         THE COURT:  Okay.

12         MS. TAYLOR:  And then essentially -- and we had set a

13  briefing schedule for all motions, pretrial motions.  And those

14  were held in abeyance, but --

15         THE COURT:  What time is that hearing?

16         MS. TAYLOR:  That, I'm not sure.  But it was -- I

17  believe it was March 21st.  And she did -- when she granted the

18  latest continuance, she did keep --

19         THE COURT:  Madam Deputy, do you have the time?

20         COURTROOM DEPUTY:  1:30.

21         THE COURT:  1:30.  Okay.

22         MS. TAYLOR:  And then, Your Honor, I wasn't sure -- I

23  don't recall if the Court addressed the Notice of Acceptance of

24  General Discovery.  I was handed that by Mr. Zermay, but I

25  wasn't sure if he gave one to the courtroom deputy.

1          THE COURT:  Yes, the Court is in receipt of the

2    Notice of Appearance of Counsel, but -- you have that.  Bring

3    them both forward, Counsel.

4          The Court is in receipt of the Notice of Acceptance

5    of General Discovery filed by counsel on behalf of Mr. Hoover,

6    and that will be docketed as such.

7          And Ms. Taylor, you indicated you have a disk to turn

8    over eventually?

9          MS. TAYLOR:  Yes.  As soon as we get the media from

10   Mr. Zermay or Mr. Larosiere we are ready to provide discovery.

11         THE COURT:  Excellent.  Very well.

12         Anything else we need to address, Counsel?

13         MR. ZERMAY:  Not at this time, Your Honor.

14         MS. TAYLOR:  I think that finally covers it.

15         THE COURT:  Okay.  All right.  Court will be in

16   recess.

17         COURT SECURITY OFFICER:  All rise.

18      (The proceedings concluded at 11:26 a.m.)

19                           -     -     -

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2     UNITED STATES DISTRICT COURT)

3     MIDDLE DISTRICT OF FLORIDA )

4

5          I, court approved transcriber, certify that the

6     foregoing is a correct transcript from the official electronic

7     sound recording of the proceedings in the above-entitled

8     matter.

9

10         DATED this 31st day of October 2022.

11

12                         /s/ Katharine M. Healey
                           Katharine M. Healey, RMR, CRR, FPR-C
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25