UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                            Case No:         3:21-cr-00022-MMH-MCR

KRISTOPHER ERVIN
MATTHEW HOOVER
_____/

## **DEFENDANTS' FOURTH MOTION IN LIMINE**

COMES NOW jointly Defendants, Kristopher Ervin and Matthew Hoover, by and through their respective counsel, and hereby respectfully requests the Court enter an order prohibiting the Government from arguing, placing into evidence, or otherwise eliciting testimony the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has determined that drop-in auto seers, lightning links, or devices similar to the "Auto Key Card" are Machineguns under the National Firearms Act, and in support hereof, further states as follows:

1. In its proffered testimony of FEO Toy with ATF, the Government stated that it intended to elicit testimony that "[u]pon receiving the 3-in-1 Auto Key Card on January 25, 2021, FEO Toy immediately recognized the card as containing etchings for lightning links, which are a category of machinegun conversion devices that have been classified as machineguns by ATF, pursuant to the NFA, since at least the early 1980s." Doc 181 at 2.

2. Additionally, in the proffered testimony of BC Ernest Lintner, also with ATF, the Government further stated that it intended to elicit testimony as follows:

> A lightning link is a type of machinegun conversion device, originally manufactured by S.W. Daniel, Inc., as the M15AC. Lawfully possessed and transferable lightning links exist, which were manufactured prior to May 19, 1986, and properly registered and serialized in the NFA registry. ATF records reflect that several hundred lightning links were registered in the National Firearms Registration and Transfer Record from approximately 1984 to 1986.

> Schematics for the design for lightning links is (sic) available on the internet. Lightning links manufactured subsequent to May 19, 1986, are subject to the same restrictions as any other machinegun or machinegun conversion device as set forth above.

Doc. 180 at 3-4.

3. It is clear that the Government intends to argue that any and all lightning links or drop in auto sears are considered firearms (machineguns) under the National Firearms Act. The Government is, of course, wholly within its right to make such an argument to the jury at trial.

4. However, the Government is further expected to argue that not only are these items machineguns, pursuant to the National Firearms Act and the definitions provided therein, but because the Bureau of Alcohol, Tobacco, Firearms, and Explosives has determined such items are machineguns by executive fiat, which this Honorable Court should not allow.

5. The ability of ATF to determine, in its regulatory capacity, who must pay a tax, does not give it the authority to interpret criminal law. The confusion stems from the statutory scheme and taxing authority Congress provided ATF in its regulation of devices under the National Firearms Act. In its regulatory capacity, ATF must determine what items are subject to regulation and what items it can and should require to register and otherwise collect a tax. If a payer of the Special Occupational Tax (SOT) or a Federal Firearms Licensee (FFL) wishes to argue with or dispute an ATF ruling regarding the taxability of an item, there is an administrative and ultimately judicial process for adjudicating those disputes.

6. Exclusively in its regulatory capacity and absent the above adjudicatory process for disputes, ATF is the sole arbiter of what is taxable under the National Firearms Act as provided for by Congress.

7. In 1981, the ATF examined a series of auto sears and drop in auto sears and determined that they were machineguns under 26 U.S.C. 5845(b) pursuant to ATF Ruling 81-4, a

copy of which is attached to this Motion. What is noteworthy in the ruling, is that the rulemaking authority under which ATF Ruling 81-4 is promulgated is "pursuant to 26 U.S.C. 7850(b)." 26 U.S.C. 7850(b) is under Chapter 80, which provides for general rules and Subchapter A, which is the Application of Internal Revenue Rules. The rulemaking authority and the ability to make a ruling derives entirely from the tax code, not the legality or illegality of any item under the National Firearms Act.

8.  While Congress provided ATF with the ability to determine what was taxable under the National Firearms Act, it did not provide ATF with the ability to determine what qualifies or does not qualify under the criminal statutes. There is not a statute, and Congress has not otherwise provided the authority, for the ATF to make a determination what items are lawful or unlawful under the National Firearms Act. Moreover, it is questionable that such authority would ever be lawful from a separation of powers perspective.

9.  As the Supreme Court has stated, "we have never held that the Government's reading of a criminal statute is entitled to any deference." *United States v. Apel*, 571 U.S. 359, 369 (2014). "As Chief Justice Marshall explained long ago, the rule 'is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.'" *Cargill v. Garland*, 57 F.4th 447, 451 (5th Cir. 2023); *quoting United States v. Wiltberger*, 18 U.S. 76, 96 (1820).

10. In a similar, albeit technically unrelated line of cases, the Circuits are currently split on the issue of ATF changing its determination that "bump stocks" were not firearms under the National Firearms Act for years, but has now changed its mind and determined that they are firearms (machineguns). The Eleventh Circuit has not yet reached the issue and the matter is not

currently before the Supreme Court. *See generally Cargill* at Section 2 (Outlining the current circuit split on the issue of "Bump Stocks".) In this line of cases, there has been a great deal of discussion as to whether ATF is entitled to *Chevron* deference in its determination. However, all of these cases have been as a result of the adjudicatory process discussed *supra*, and the rule of lenity and the failure of Congress to authorize ATF to interpret the criminal component of the statute was not addressed.

11. Thus, allowing the Government to present evidence of ATF's determinations as to the National Firearms Act would be highly misleading to the jury and allow an Executive Agency to solely determine what a criminal statute says. Not only does this present issues of invading the province of the jury and misleading the jury, but it would allow the Government to bolster its case on the back of an ATF determination on an unrelated piece of equipment.

12. The primary question for the jury is if the "Auto Key Card" meets the definition of a machinegun under the National Firearms Act, not the veracity of an interpretation provided by ATF. "If ATF could change the scope of criminal liability by issuing a regulation—free from the taxing obligations of bicameralism and presentment—the Executive could wield power that our Constitution reserves to the Legislature." *Id.* at 470.

13. Allowing argument and testimony that ATF has already "settled the issue" or otherwise implying that Mr. Ervin or Mr. Hoover had an obligation to affirmatively clear their conduct with ATF and would allow the jury to convict for failure to abide by executive fiat, rather than failing to abide by the strictures of the National Firearms Act. Such testimony from these witnesses is not relevant to the offense charged and has a very real possibility of undue prejudice and jury confusion.

14. Allowing such testimony would usurp the role of the jury and "we should feel deep discomfort at allowing an agency to define the very criminal rules it will enforce by implicit delegation. Such a delegation 'turn[s] the normal construction of criminal statutes upside down, replacing the doctrine of lenity with a doctrine of severity.'. The delegation raises serious constitutional concerns by making ATF the expositor, executor, and interpreter of criminal laws." *Aposhian v. Wilkinson*, 989 F.3d 890, 900 (10th Cir. 2021) (Tymkovich, C.J. dissenting) *quoting Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring).

15. Given the lack of probative value such testimony would have before the jury and the undeniable danger of allowing such testimony, this Court should exclude it in its entirety and let the jury decide the issue on the merits of the statute charged.

WHEREFORE, it is respectfully requested this motion be granted and this Honorable Court enter an order prohibiting the Government from arguing, placing into evidence, or otherwise eliciting testimony the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) has determined that drop-in auto seers, lightning links, or devices similar to the "Auto Key Card" are Machineguns under the National Firearms Act.

Respectfully submitted,
**Monroe & King, P.A.**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
Scott Monroe, Esq.
Florida Bar No.: 0086801
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: (1) Laura C. Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, (2) Zachary Z. Zermay, Esq., zach@zermaylaw.com, and (3) Matthew Larosiere, Esq., larosieremm@gmail.com, this 27th day of February, 2023.

                                         /s/ Alex King
                                         ATTORNEY