UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No:        3:21-cr-00022-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN
MATTHEW RAYMOND HOOVER
_____/

**POST-VERDICT MOTION FOR
JUDGMENT OF ACQUITTAL**

COMES NOW the Defendant, Kristopher Ervin, by and through his undersigned counsel, pursuant to Rule 29(c), Fed. R. Crim. P., and hereby respectfully files his Post Verdict Motion for Judgment of Acquittal, and in support hereof, states as follows:

**PROCEDURAL HISTORY**

1. On March 3, 2021, Mr. Ervin was arrested, and a Criminal Complaint was filed against him alleging that he knowingly possessed a firearm as defined under Title 26, United States Code, Section 5845(a) and (b), that is, a machinegun conversion device, that was not then registered in the National Firearms Registration and Transfer Record, as well as a structuring count. Doc. 1.

2. On March 11, 2021, Mr. Ervin was indicted, charging him with the same counts alleged in the Criminal Complaint. Doc. 17.

3. On April 1, 2021, a Superseding Indictment was filed adding 13 additional counts. Doc. 25.

4. On January 26, 2022, a Second Superseding Indictment was filed adding 17 additional counts. Doc. 57. This Superseding Indictment not only contains new allegations but an additional co-defendant who was previously not charged but has been subsequently arrested.

5. On August 31, 2022, a Third Superseding Indictment was filed against the Defendants. Doc. 120.

6. On March 6, 2023, a month before trial was to commence, a Fourth Superseding Indictment was filed. Doc. 204.

7. On April 21, 2023, after a two-week trial, a Jury Verdict was reached (Doc. 263), finding Mr. Ervin guilty on all counts.

8. On May 4, 2023, the Court granted a continuance to file a motion for a judgment of acquittal on or before May 19, 2023.  Doc. 271.

## ARGUMENT

9. Mr. Ervin adopts and incorporates by reference the legal and factual arguments made in Mr. Hoover's Motion for Judgment of Acquittal as to Counts One through Eight and Ten through Twelve of the Fourth Superseding Indictment.

10. Although Mr. Hoover was acquitted of some of the substantive offense counts that Mr. Ervin was acquitted of, and Mr. Ervin was further convicted of possession offenses in Counts Ten through Twelve, Mr. Ervin requests this Honorable Court to consider the legal arguments as to the counts addressed by Mr. Hoover, as they address near identical issues of fact and law.

11. Additionally, Mr. Ervin would supplement said argument with regard to Count Six and Count Nine.  Mr. Hoover was acquitted of Count Six, a substantive transfer offense, and not charged with Count Nine, which charged structuring of currency transactions to avoid a reporting requirement.

12. Count Six alleged a transfer to an individual with the initials J.A.  Unlike all of the other substantive counts two through five, seven, and eight, no individual with the initials J.A.

2

testified at trial. Additionally, witnesses with initials consistent with those alleged in the aforementioned counts testified that they had both ordered and received an "Auto Key Card".

13. However, there is no record evidence that an individual with the initials J.A. actually ordered or received an "Auto Key Card". Furthermore, there is no record evidence that an individual with the initials J.A. who may have ordered an "Auto Key Card" actually existed, as the record was replete with examples of orders made under fictitious names, *nom de guerres,* and other aliases. For example, Government Exhibit 32 at page 1 is a mailing to an individual by the name "John Doe" and Government Exhibit 32 at page 4 is a mailing to an individual by the name "Ole Shoota".

14. There is insufficient record evidence, and no reasonable jury could find beyond a reasonable doubt that a machinegun conversion device was actually transferred to an individual with the initials J.A., as the record does not contain any testimony or documentary evidence that an individual with those initials actually existed or obtained a machine gun conversion device. Although the Government listed an individual by the name of James Acs (Doc. 242 at 2; enumerated paragraph 25), that individual was not called as a witness by either party. Although there is extra record evidence that suggests Mr. Acs was the alleged purchaser in Count Six, there was no evidence in the record that the jury had before it to make that determination. As such, the verdict as to Count Six is wholly unsupported by the record evidence and notwithstanding the other arguments in Mr. Hoover's Motion for Judgment of Acquittal, a Judgment of Acquittal should be entered as to Count Six of the Fourth Superseding Indictment.

15. With respect to Count Nine, Mr. Ervin was convicted of structuring a cash financial transaction to avoid the filing of a Currency Transaction Report pursuant to 31 U.S.C. §5313, in violation of 31 U.S.C. §5324(a)(3) and (d)(1).

16. The evidence at trial is that on December 28, 2020, after getting into a dispute with his bank about the cashing of a money order for his "Auto Key Card" business, Mr. Ervin demanded to remove all of his money in cash. Such a request would have been well in excess of the reporting requirements for a Currency Transaction Report. Mr. Ervin's request was denied due to what the bank employees testified to, was an insufficient amount of United States Currency to fulfill the requested transaction.

17. The bank employee, after denying Mr. Ervin's request, told him he could take out an amount under the Currency Transaction Report threshold, even though it was Mr. Ervin's stated desire to remove a greater amount of United States Currency than the Currency Transaction Report threshold. According to the testimony regarding the account notes for Community First Credit Union, Mr. Ervin stated "I'll just come back everyday or try other branches until I get it". Government Exhibit 95b.

18. In fact, Mr. Ervin went to another Community First Credit Union branch on December 28 and attempted to withdraw a large sum of United States Currency (the individual who testified could not recall the exact amount and there are no known records regarding the exact amount requested). Mr. Ervin was told that only $5000 was available to him, which he withdrew and a Currency Transaction Report was completed. In the Fourth Superseding Indictment, it is alleged that both the $9000 dollars initially withdrawn on December 28, 2020 and the $5000 withdrawn later that day were structured transactions. However, the record evidence is that Mr. Ervin attempted to withdraw more than $10,000, the amount that triggers the filing of a Currency Transaction Report pursuant to 31 U.S.C. §5313. The only reason the December 28, 2020 transactions were under the reporting amounts was due to a lack of liquidity from the financial institution, not a desire to structure a transaction to avoid a reporting requirement.

19. Although Mr. Ervin returned, as he stated he would, each day to withdraw more funds, there is no record evidence that Mr. Ervin was attempting to avoid the reporting requirement, but merely to retrieve his money from a bank with which he was having a dispute. He withdrew the same amount of money, the amount he had been allowed to withdraw on December 28, 2020, everyday the bank was open until he drew the account down, as he stated he would.

20. There was testimony from Ms. Amy Sarkese that Mr. Ervin at one point inquired about the reporting requirement, she stated that she did not recall when it was. Ms. Sarkese further testified on cross examination that she would have noted a conversation about the reporting requirements in the bank system, as was her practice. She further testified that the conversation must have occurred after the time period the withdrawals alleged to be structuring in Count Nine were to have taken place, as there were no notes about it in Government Exhibit 95b, which has a last note date of 02/02/2021, which is almost a full month after January 6, 2021, the last day an alleged structured transaction took place.

21. The Government has argued that the fact Ms. Sarkese offered at all times to only provide a currency amount under the reporting amount is immaterial, as Mr. Ervin need not know the actual reporting requirement in order to commit a structuring offense. However, the law does, in fact, require such knowledge, as the Supreme Court has stated an "intent to require for conviction proof that the defendant knew not only of the bank's duty to report cash transactions in excess of $10,000, but also of his duty not to avoid triggering such a report." *Ratzlaf v. United States*, 510 U.S. 135, 146–47 (1994). In this case, a conviction is unsupported by the record and this Honorable Court should enter a Judgment of Acquittal as to Count 9.

WHEREFORE, it is respectfully requested that this Honorable Court grant this motion and acquit Mr. Ervin of all charges.

Respectfully submitted,

**Monroe & King, P.A.**

  /s/ Alex King
Alex King, Esq.
Florida Bar No.: 0086034
Scott Monroe, Esq.
Florida Bar No.: 0086801
1805 Copeland Street
Jacksonville, Florida 32204
Tel: (904) 355-7777
E-mail: Admin@MonroeKingLaw.com
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by email to: Laura Cofer Taylor, Esq., Office of the United States Attorney, Laura.C.Taylor@usdoj.gov, this 19th day of May, 2023.

  /s/ Alex King
ATTORNEY