IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No: 3:21-cr-22(s4)-MMH-MCR

KRISTOPHER JUSTINBOYER ERVIN

MATTHEW RAYMOND HOOVER

---

**MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

**AND**

**BRIEF *AMICUS CURIAE* OF ERIC BLANDFORD, ET. AL., IN SUPPORT OF JOHN CRUMP'S EMERGENCY MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF RESPODING TO THE UNITED STATES' MOTION FOR ORDER PROHIBITING DISSEMINATION OF PRESENTENCE INVESTIGATION REPORT**

---

*Amici curiae*[1] respectfully move this Honorable Court for leave to file an *amicus* brief, a copy of which is attached hereto, in support of John Crump's emergency motion to intervene for the limited purpose of responding to the United States' Motion for Order prohibiting dissemination of presentence investigation report. As explained below, Movants have knowledge and expertise relevant to the

---

[1] A full list of *Amici* is attached as Appendix A to the proposed *amicus* brief.

subject matter of this litigation that will aid in the Court's consideration of this matter.

Counsel for amici curiae, has conferred with all counsel of record in this case. Counsel for the Defendants and Intervenor have no objection to the filing of this amicus curiae brief. Counsel for the United States takes no position on the filing of the brief.

## AUTHORITY OF THE COURT TO CONSIDER *AMICUS CURIAE* BRIEF

District Courts have the inherent authority to allow *amici* to assist in a proceeding. *See, e.g., Bayshore Ford Trucks Sales, Inc. v. Ford Motor Co.,* 471 F.3d 1233, 1249 n.34 (11th Cir. 2006) ("[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings."); Order Granting Leave to File Amicus Brief, *Fla. Wildlife Fed'n, Inc. v. Jackson*, No. 4:08-cv-324-RH/WCS (N.D. Fla. Nov. 10, 2009), ECF No. 134 (Hinkle, J.); *United States v. Florida*, No. 4:12-cv-285-RH/CAS, 2012 WL 13034013, at *3 (N.D. Fla. Nov. 6, 2012) (Hinkle, J.).

Because an *amicus* "participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of participation by the amicus." *Resort Timeshare Resales, Inc. v. Stuart*, 764 F. Supp. 1495, 1500-01 (S.D. Fla. 1991) (citation omitted). Courts have found amicus participation particularly appropriate where the amicus "will ensure complete and

plenary presentation of difficult issues so that the court may reach a proper decision" or where a case involves an "issue of general public interest[.]" *Liberty Res., Inc. v. Phila. Hous. Auth.*, 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (internal citations and quotations omitted).

Although the Federal Rules of Civil Procedure do not address amicus briefing, Rule 37.2(a) of the Rules of the Supreme Court of the United States and Rule 29(a)(2) of the Federal Rules of Appellate Procedure both provide for the filing of amicus briefs.  No party's counsel authored this brief in whole or in part. No party, or third person not an *Amici* herein, contributed any money to fund the preparation or submission of this brief.

## INTEREST OF THE *AMICI CURIAE*

These individuals are independent journalists who have joined together and who, like John Crump, are engaged in the essential task of gathering and dissemination of information on various topics of importance to the public. To wit, each of them reports on issues related to the Second Amendment, the right to bear arms, and/or government misconduct and have an army of viewers who rely upon them to ferret out government impropriety. Collectively Amici have over ten

million subscribers and nearly three and a half billion views. The three major news networks' combined primetime viewership is less than four million.[2]

## MEMORANDUM OF LAW

Movants-*Amici curiae* are journalists who are committed to protecting the integrity of the First Amendment right to free press. The freedom of press is integral to the functioning of our democracy and is a foundational tenet of our system of government because it allows "the people" to hold the government accountable. In this case, the government seeks to silence the press, and avoid accountability by discounting the legitimacy of members of the press on the implied premise that, because they are not associated with any "mainstream" or "legacy" news network, they are not legitimate members of the press. The government seeks to diminish the status of freelance reporters who self-publish their content by referring to them pejoratively as "YouTube Personalities."

It is firmly established that the First Amendment's aegis extends further than the text's proscription on laws "abridging the freedom of speech, or of the press," and encompasses a range of conduct related to the gathering and dissemination of information. Indeed, some states explicitly recognize the importance of free speech

---

[2] Fox, MSNBC, and CNN ratings during the March 2023 rating period were 2.09 million viewers, 1.14 million viewers, and 473,000 viewers respectively. ("CNN preaches patience as ratings tank during turnaround" https://apnews.com/article/cnn-ratings-chris-licht-584ea2b45819d2cc416006d7bd8b77e8, last visited August 10, 2023.

and a free press in their state constitutions. "Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse." North Carolina General Statute Art. I, §14 "Every person may speak, write and publish sentiments on all subjects but shall be responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press. . . " Art. I, Sec. 4, Fla. Const.

As the Supreme Court has observed, "the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); see also *Stanley v. Georgia*, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) ("It is ... well established that the Constitution protects the right to receive information and ideas."). An important corollary to this interest in protecting the stock of public information is that "[t]here is an undoubted right to gather news 'from any source by means within the law.' " *Houchins v. KQED, Inc.*, 438 U.S. 1, 11, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 681–82, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)); See also, *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)(right to record law enforcement

for dissemination) and *McDonough v. Fernandez-Rundle*, 862 F.3d 1314 (11th Cir. 2017)(citizen gathering information during a meeting by recording device).

Therefore, "Gathering information about government officials in a form that can readily be disseminated to others serves as a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs'" *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). Moreover, as the Supreme Court has noted, "[f]reedom of expression has particular significance with respect to government because '[i]t is here that the state has a special incentive to repress opposition and often wields a more effective power of suppression.'" *First Nat'l Bank,* 435 U.S. at 777 n.11, 98 S.Ct. 1407 (alteration in original) (quoting Thomas Emerson , *Toward a General Theory of the First Amendment* 9 (1966)). This is particularly true of law enforcement officials, who are granted substantial discretion that may be misused to deprive individuals of their liberties. Cf. *Gentile v. State Bar of Nev.,* 501 U.S. 1030. 1035-36 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (observing that "[t]he public has an interest in [the] responsible exercise" of the discretion granted police and prosecutors). Ensuring the public's right to gather information about their officials not only aids in the uncovering of abuses, see id. at 1034–35, 111 S.Ct. 2720 (recognizing a core First Amendment interest in "the dissemination of information relating to alleged governmental misconduct"), but also may have a salutary effect on the functioning

of government more generally, see *Press–Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (noting that "many governmental processes operate best under public scrutiny").

The First Amendment right to gather news is, as the Court has often noted, not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of "the press." *Houchins*, 438 U.S. at 16, 98 S.Ct. 2588 (Stewart, J., concurring) (noting that the Constitution "assure[s] the public and the press equal access once government has opened its doors"); *Branzburg*, 408 U.S. at 684, 92 S.Ct. 2646 ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally.").

Moreover, changes in technology and society have made the lines between private citizen and journalist exceedingly difficult to draw. The proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper. Such developments make clear why the news-gathering protections of the First Amendment cannot turn on professional credentials or status.

John Crump is a professional journalist. It is of no significance that Mr.

Crump also publishes his content on YouTube or his own website. Because "we the

people" are the press, there is no requirement that he possess press credentials from

the New York Times in order to be considered a legitimate news outlet. Even so,

Mr. Crump is a regular contributor to One America News Network and has written

extensively for AmmoLand Shooting Sports News[3]. Mr. Crump's writing has

reported on this case, and this content has been viewed by thousands of readers.[4]

He is a journalist who has a constitutional right to report upon these events.

## CONCLUSION

This Court should reject the government's invitation to trample on the First

Amendment right to free press and deny the government's motion.

Respectfully submitted this 10th day of August 2023.

/s/ Eric J. Friday_____
Kingry & Friday
Eric J. Friday
Fla. Bar No.: 797901
1919 Atlantic Blvd.
Jacksonville, FL 32207

---

[3] See https://www.ammoland.com/author/johncrump/.
[4] See, e.g., https://www.ammoland.com/2021/12/motion-to-dismiss-in-lightning-linkcase-has-been-denied/#axzz89ooWMZXo;
https://www.ammoland.com/2022/08/uncovered-documents-destroy-governments-caseautokeycard/#
axzz89orIyLkj; https://www.ammoland.com/2023/04/documents-proveatfs-flip-flops-on-nfa-definitions/#axzz89ooWMZXo;
https://www.ammoland.com/2023/04/wrap-up-of-week-one-in-the-autokey-cardtrial/#
axzz89ooWMZXo; https://www.ammoland.com/2023/04/justin-ervin-andmatthew-hoover-crs-firearms-found-guilty-in-the-autokey-card-case/#axzz89ooWMZXo.

Tel.: 904-722-3333
Service@ericfriday.com
efriday@kingryfrinday.com

Ronald J. Shook II (NC #43407)
The Law Offices of Ronald J. Shook
121 E. Main Ave.
Gastonia, NC 28052
Tel. 704.671.2390
Fax. 704.671.4431
ron@rjshooklaw.com

## CERTIFICATE OF SERVICE

I, Eric Friday, hereby certify that I have on this day, caused the foregoing document or pleading to be submitted to the Middle District of Florida's online portal for filing, which, once filed, will appear on this Court's CM/ECF system which will send a notice and copy of the document to all counsel of record. Given the emergent nature of the relief requested, undersigned caused this Motion to be sent to the following counsel of record by email:

Laura Cofer Taylor: Laura.C.Taylor@usdoj.gov

Alex King: Admin@MonroeKingLaw.com

Zachary Zermay: ach@zermaylaw.com

Matthew Larosier: larosieremm@gmail.com

Dated: August 10, 2023.

/s/ Eric Friday

### *Appendix A*

1. Eric Blandford – "Iraqveteran8888"
2. Paul Glasco – "Legally Armed America"
3. Jared Yanis – "Guns and Gadgets 2nd Amendment News"
4. Hank Strange- @hankstrange
5. Patrick James – "Baby Face P"
6. Tim Harmsen – "Military Arms Channel"
7. Clint Morgan – ClassicFirearms
8. John Mullally – "KB32 Tactical"
9. Micah Young – "2a Edu"
10. John Correia – "Active Self Protection"
11. Mark Davis – "DLD After Dark"
12. Kenneth Graham – "Marine Gun Builder"
13. Scott Wilson – "Drop It Like It's Scott"
14. Curtis Hallstrom-"VSO Gun Channel"
15. Mark Dickinson-"James Madison Audits"
16. Joel Persinger- "GunGuyTV"
17. John Keys and Shermichael Singleton- "GunsOutTV"