<pre>
 1                  UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                    JACKSONVILLE DIVISION

 3   UNITED STATES OF AMERICA,        Case No. 3:21-cr-22(S4)-MMH-MCR

 4        Plaintiff,                  August 11, 2023

 5   v.                              1:45 p.m. - 2:20 p.m.

 6   KRISTOPHER JUSTINBOYER ERVIN     Courtroom 10B
     and MATTHEW RAYMOND HOOVER,
 7
          Defendants.
 8   _____

 9
                          MOTION HEARING
10

11         BEFORE THE HONORABLE MARCIA MORALES HOWARD
                 UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18
     OFFICIAL COURT REPORTER:
19
       Katharine M. Healey, RMR, CRR, FPR-C
20     PO Box 56814
       Jacksonville, FL 32241
21     Telephone: (904) 301-6843
       KatharineHealey@bellsouth.net
22

23
                            (Proceedings reported by stenography;
24                           transcript produced by computer.)

25
</pre>

1                        A P P E A R A N C E S

2

3    COUNSEL FOR THE GOVERNMENT:

4    **MICHAEL COOLICAN, ESQUIRE**
     **LAURA C. TAYLOR, ESQUIRE**
5       United States Attorney's Office
        300 North Hogan Street, Suite 700
6       Jacksonville, FL 32202

7

8    COUNSEL FOR DEFENDANT ERVIN:

9    **ALEX KING, ESQUIRE**
        Monroe & King, P.A.
10      1805 Copeland Street
        Jacksonville, FL 32204
11

12
     COUNSEL FOR DEFENDANT HOOVER:
13
     **ZACHARY Z. ZERMAY, ESQUIRE**
14      Zermay Law
        1762 Windward Way
15      Sanibel, FL 33957

16   - A N D -

17   **MATTHEW LAROSIERE, ESQUIRE**
        6964 Houlton Circle
18      Lake Worth, FL 33467

19

20   COUNSEL FOR MOVANT JOHN CRUMP:

21   **STEPHEN D. STAMBOULIEH, ESQUIRE**
         Stamboulieh Law, PLLC
22       P.O. Box 428
         Olive Branch, MI 38654
23

24

25

1           P R O C E E D I N G S

2    April 11, 2023                                    1:45 p.m.

3                        -  -  -

4           COURT SECURITY OFFICER:  All rise.  The United States

5    District Court in and for the Middle District of Florida is now

6    in session.  The Honorable Marcia Morales Howard presiding.

7           Please be seated.

8           THE COURT:  Give me one moment to get my computer to

9    connect, please.

10          All right.  This is Case Number 3:21-cr-22-MMH-MCR,

11   United States of America vs. Kristopher Justinboyer Ervin and

12   Matt Hoover.

13          I have -- Mr. Coolican, are you -- well, I guess

14   you're here.  Mr. Coolican is here along with Ms. Taylor on

15   behalf of the United States and Agent Hooker is with them.

16          Mr. King is here with Mr. Ervin.

17          And Mr. Zermay and Mr. Larosiere are here with

18   Mr. Hoover.

19          We are scheduled for a hearing on the United States's

20   Motion for Order Prohibiting Dissemination of Presentence

21   Report.  It's document number 296, which was filed on August

22   the 7th.

23          Since then I've received two filings that relate to

24   it.  One is Mr. Crump's Emergency Motion to Intervene for the

25   Limited Purpose of Responding to the United States's Motion for

1    Order Prohibiting Dissemination of Presentence Investigation

2    Report.  That's document number 299, which was filed on August

3    the 9th.

4              And then yesterday I received a Motion for Leave to

5    File *Amicus Curiae* Brief in support of Mr. Crump's emergency

6    motion, and that is document number 306.

7              Mr. Coolican, since you're sitting at the first

8    chair, am I to assume that you're addressing these matters

9    rather than Ms. Taylor?

10             MR. COOLICAN:  I am, Your Honor.

11             THE COURT:  All right.  Mr. Coolican, the United

12   States's motion sought relief with respect to Mr. Hoover, but

13   it also -- well, as a basis for the additional relief against

14   Mr. Crump and Mr. Hughes, the motion only discussed the belief

15   that Mr. Hoover's disclosure of the PSR was improper, but it

16   didn't discuss any authority for the prohibition against the

17   further disclosure of that information by third parties that

18   have already received it.

19             Are you still pursuing that relief?

20             MR. COOLICAN:  Your Honor, I -- having reviewed that

21   motion closely, and we're talking about 296, the relief

22   requested was not prior restraint on Mr. Crump or any other

23   person who operates on YouTube or the press in general.  If

24   such individuals are just lawfully exercising their First

25   Amendment rights, we have no issue with them.

1          To the extent the motion did seek an order requiring

2    anyone who without authorization received the PSR, that they

3    destroy it and certify that they destroyed it, we're

4    withdrawing that request.

5          So we're seeking no relief as to anybody other than

6    the parties to this case.

7          THE COURT:  That sure isn't what it sounded like in

8    the motion, Mr. Coolican.

9          I can certainly understand why the United States

10   would withdraw the request that individuals who possessed a

11   copy of the PSR be ordered to withdraw it and confirm its

12   destruction in writing.  I don't think there's any legal

13   authority that would have supported that request.

14         Why was that request included in the motion to begin

15   with?

16         MR. COOLICAN:  Your Honor, I'm not in a position to

17   discuss the internal deliberations of the United States

18   Attorney's Office.

19         THE COURT:  All right.  So maybe I need to talk to

20   Ms. Taylor.  Ms. Taylor can explain to me why she requested

21   relief that isn't authorized by law and is the entire reason

22   that Mr. Crump filed his motion to intervene, that the *amicus*

23   are here, and that my office spent -- my law clerk spent the

24   last two days working on this and I have spent about a day and

25   a half, because we, frankly, found -- were highly skeptical

1  that there was any basis for the relief that was being

2  requested.  But I'm not -- I have to follow the rule of law,

3  and I'm required to rule on the motions that are presented to

4  me, and so we looked at the authority, and I had to consider

5  the arguments that were made.

6           And so I would -- I would like to understand why

7  that -- you only have to look so far as the *Pentagon Papers*

8  case to understand that there was no basis for this relief to

9  have been requested.

10          MR. COOLICAN:  Your Honor, we've withdrawn the

11  request.  I don't think if you engage with Ms. Taylor she has

12  any additional authority to reveal the internal deliberations

13  of the U.S. Attorney's Office.

14          THE COURT:  I'm not asking for the reason why it was

15  withdrawn.  I think the reason why it was withdrawn is fairly

16  self evident, and that's -- that is, there isn't legal

17  authority for it.  I guess I'm wondering why it was presented

18  in the first place.  And I understand that you may not be able

19  to address that.

20          And I can -- and here's the thing.  I can understand

21  that when Ms. Taylor, and perhaps Mr. Mesrobian, listened to

22  the jail calls and they saw the YouTube video that the PSR had

23  been disclosed that they were disturbed by its disclosure

24  because it is a violation of Judicial Conference policy.

25          And Mr. Hoover, we're going to talk about it because

1    I'm really not happy that you did that.

2              But -- and I can understand that in looking at that,

3    and even in seeing the types of responses it engendered, caused

4    them to want to respond to Mr. Hoover's actions.  I can

5    understand why in responding to Mr. Hoover's wrongful

6    disclosure of the PSR that they didn't immediately think of the

7    First Amendment implications.  That's fair.  It's not great,

8    but it's fair.

9              But as soon as Mr. Crump's counsel filed the motion,

10   I would have thought that the government would have promptly

11   clarified exactly what you just clarified, which is:  We're not

12   seeking any relief as to Mr. Crump or Mr. Hughes.

13             And if that had been done, then certainly Mr. Crump's

14   lawyers wouldn't have been here.  The lion's share of the time

15   that we spent working on it wouldn't have been spent because

16   that was the -- that's the complicated issue in this case.

17   Addressing Mr. Hoover's actions is not complicated, but

18   addressing what relief there might be as to the others was

19   complicated.  And so I would have thought it would have been

20   withdrawn timely instead of waiting until this hearing.

21             MR. COOLICAN:  I understand, Your Honor.

22             Your Honor, I should just add that notwithstanding

23   the fact that we're withdrawing that request for relief, we

24   would certainly think it would be the decent and proper thing

25   to do for Mr. Crump or other individuals who were not

 1    authorized to receive that PSR to voluntarily destroy it.  They

 2    weren't authorized to receive it.  It's not their document.  It

 3    wasn't Mr. Hoover's document to distribute.  It's the Court's

 4    document.  It was filed under seal.  It was prepared by the

 5    Court's probation officer.

 6            So notwithstanding the fact that we aren't seeking

 7    judicial relief, we would hope that they would do the right

 8    thing under the circumstances given the sensitive nature of

 9    that document.

10            But I understand the Court's position.  We've

11    withdrawn the request for relief and that's where we are at

12    this point, Your Honor.

13            THE COURT:  All right.  Let me look through my notes

14    because we're not starting where I thought we were going to

15    start.

16            Mr. Coolican, let me let you take your seat for a

17    moment.

18            MR. COOLICAN:  Thank you, Your Honor.

19            THE COURT:  Mr. Coolican, let me get some

20    clarification as to what relief the government is actually

21    seeking at this point before I go further.

22            MR. COOLICAN:  Your Honor, we're still seeking an

23    order from the Court clarifying, if there were any doubt for

24    Mr. Hoover and his counsel, that the PSR is not a public

25    document, it's not for public distribution, and that Mr. Hoover

1    and Mr. Hoover's wife and the defense team are prohibited from

2    distributing it publicly, or to any third parties who are not

3    authorized by the Court to receive it.

4            THE COURT:  All right.  We'll get back to Mr. Hoover

5    shortly.

6            Who is here on behalf of Mr. Crump?  Do I have

7    Mr. Phillips or -- I think there are three lawyers that

8    appeared.  Mr. Phillips, Mr. Olson, and Mr. -- boy --

9    Stamboulieh?

10           MR. STAMBOULIEH:  Stamboulieh, Your Honor.

11           THE COURT:  And you're Mr. Stamboulieh?

12           MR. STAMBOULIEH:  Yes.

13           THE COURT:  All right.  Mr. Stamboulieh, the

14   government has withdrawn the request for any relief as to your

15   client, so it would seem to me that I can simply deny the

16   emergency motion to intervene as moot.

17           As I mentioned earlier, there wasn't any authority

18   for the request to begin with, so I wasn't inclined to grant

19   it, but I didn't want to deny the request without allowing you

20   to be present.

21           Is there any reason why I shouldn't simply deny that

22   motion as well as the motion for leave to file the *amicus*

23   briefs as moot?

24           MR. STAMBOULIEH:  May I come to the podium, Your

25   Honor?

1           THE COURT:  Yes, you may.

2           MR. STAMBOULIEH:  Just briefly.  Thank you.

3           Thank you, Your Honor.  Stephen Stamboulieh for

4    Mr. Crump.

5           Just briefly, Your Honor, and I understand what the

6    Court said about why the government could have taken these

7    comments and the first thing they did was wanting to address

8    the comments with the Court rather than look at the First

9    Amendment.  But they failed to look at the First Amendment, and

10   so Mr. Crump has spent a lot of money getting multiple

11   attorneys very, very quickly to do something.  I flew

12   yesterday, landed, and now I'm going to fly back home tonight.

13          I don't know that there's any provision for the

14   government's counsel to be hit with fees, but that's something

15   that I think the Court -- if they are going to deny this

16   motion, because --

17          THE COURT:  If you want to research whether you have

18   an ability to do that, you can research it.  That's not -- I

19   don't provide legal advice and I'm not taking up a request like

20   that that hasn't been previously presented.  So I'm already --

21          MR. STAMBOULIEH:  Yes, ma'am.

22          THE COURT:  I'm clearly not giving them the relief,

23   so I don't know that there's much more that needs to be said on

24   behalf of your client, although I do want to -- is Mr. Crump

25   here?

1          MR. STAMBOULIEH:  He's not here, Your Honor.

2          THE COURT:  Okay.  I do have some comments that I'm

3   going to want you to share with him, though, but go ahead.

4          MR. STAMBOULIEH:  Yes, ma'am.  And what I would --

5   have suggested to the Court was instead of just withdrawing the

6   relief, something that we just learned about today, is that

7   they should withdraw the motion and refile it, because it does

8   contain some language about Mr. Crump that I don't think is

9   very flattering to him.  They just call him a YouTube

10  personality.

11         And I understand why they're doing that, but he is a

12  journalist, and it would be nice for them to say, "Yes, he is a

13  journalist and he has a right to do the things that he did,"

14  even though the defendant may not have had, legally, a right or

15  violated some policy or whatever.

16         But I think it would be a better and make a cleaner

17  record if they would withdraw it and refile it.  And I know

18  that might be a procedural thing that this Court doesn't want

19  to --

20         THE COURT:  Again, there wasn't a motion requesting

21  that relief.

22         But let me just point out, Mr. Crump may not

23  appreciate being referred to as a YouTuber.  I don't know, I

24  think there are a lot of people that consider that a

25  compliment.  But I can assure you that Ms. Taylor also doesn't

1  like being referred to as evil.  And so while both sides here

2  are engaging in language that is perhaps unnecessary, I'm not

3  intending to address that.

4        MR. STAMBOULIEH:  Thank you, Your Honor.

5        That's all.  Thank you.

6        THE COURT:  Let me talk to you, though, about

7  Mr. Crump's postings.  And I was kind of hoping that he might

8  be here.  And I'll ask you to request a transcript of this

9  portion of my remarks and share them with him.

10        I understand that Mr. Crump has a platform and he has

11  an audience and he shares his views and he exchanges ideas.

12  And that is his right under the First Amendment.

13        Now, some of the comments that are flowing from

14  those, from his reports, some of the comments directed at

15  Ms. Taylor are vile.  They are hateful.  They're really

16  horrific.  I doubt that the people who are typing those things

17  from the anonymity of their computers would say those things

18  out loud to an individual's face.  But that's what the internet

19  requires -- or, I'm sorry, that's what the internet allows.

20        I know that Mr. Crump disagrees with Ms. Taylor's

21  position, he may even dislike her, but those comments are

22  really horrific.

23        And I understand that Mr. Crump has "liked" some of

24  the comments.  Now, I don't know which comments he's "liked,"

25  but when he's "liking" a comment he's expressing agreement with

1   it.

2          And I watched the videos of Mr. Crump, the ones that

3   were presented, and he seems like an individual who is

4   reasonable in his view of the facts and opinions as he sees

5   them.  He seems genuinely concerned about the fate of his

6   friend, Mr. Hoover.  I don't think that Mr. Crump would say any

7   of those things himself.

8          And so maybe Mr. Crump should consider, if he's

9   "liking" the horrible, vile comments -- things like hoping that

10  Ms. Taylor has pancreatic cancer or that she dies -- perhaps

11  you could suggest to him that maybe he doesn't want to do that.

12         As a young lawyer, I was taught that I shouldn't put

13  in writing or in a letter or a pleading anything that I

14  wouldn't want to say to my mother.  You may have heard that

15  yourself.

16         And I understand that Mr. Crump can't control what

17  his viewers are saying, but he can refrain from encouraging it

18  to the extent that they're saying things that are really just

19  beyond the pale.

20         I had to speak yesterday over at the state

21  courthouse.  I was asked to speak on the future of the rule of

22  law, and I was speaking to an audience of lawyers and judges.

23  And so I talked about what lawyers and judges have to do.  I

24  wasn't speaking to the media, but if I had, I would have -- I

25  would have commented as well that the future of the rule of law

1   depends on our ability to engage in civil discourse.

2         And every day throughout the United States of America

3   in courtrooms lawyers engage in civil discourse to resolve

4   problems, great and small.  They present arguments, they follow

5   the rule, they argue the law, they argue the facts, they listen

6   respectfully to one another, and they accept disappointing and

7   unfavorable decisions gracefully.

8         And we need to see that in the media, too.  We need

9   to see civilized discussions and not engage in personal

10  ad hominem attacks on our adversaries or on the

11  decision-makers.

12        Everybody should express their views, but they should

13  do so respectfully and should encourage civil discourse, not

14  encourage hateful, vile hate speech.

15        The rule of law and adherence to it is critical to

16  the promises of our Constitution and the First Amendment and

17  the Second Amendment and all the things that you're fighting

18  for.  That's all protected by the rule of law.

19        The rule of law is what would have prohibited the

20  injunction that was originally sought, or that appeared to have

21  been sought.  That's what would have protected Mr. Crump's and

22  Mr. Hughes's rights.  But that means that we have to defend the

23  rule of law in all circumstances, even when we don't

24  necessarily agree with the outcome that it requires.

25        So I would just ask you to tell Mr. Crump that I

1    appreciate his work.  I understand that he's a member of the

2    media.  He's engaging in his conduct.  But I would ask him to

3    try to make sure -- and there was -- try to think about civil

4    discourse and also try not to encourage some of the hatred that

5    is being generated in the comments to his posts.

6              MR. STAMBOULIEH:  Yes, Your Honor.  I will get a copy

7    of the transcript and make sure he receives it.

8              THE COURT:  Thank you.

9              MR. STAMBOULIEH:  Thank you, Your Honor.

10             THE COURT:  Now, Mr. Coolican, I'm ready to talk

11   about Mr. Hoover.

12             I am somewhat concerned -- let me start -- well, I

13   think before I hear from you as to why I should order further

14   relief from Mr. Hoover, maybe I should talk to Mr. Hoover about

15   my views of what he's already done.

16             Yes, Mr. Larosiere?

17             MR. LAROSIERE:  Just identifying to you that I'm the

18   counsel for today for Hoover.

19             THE COURT:  Okay.  So I know -- so I don't

20   inadvertently call on Mr. Zermay because he's sitting at that

21   end of the table?

22             MR. LAROSIERE:  Correct, yeah.  The earlier

23   communication about being at the edge made me want to just

24   stand up for that.

25             THE COURT:  Fair enough.

1            Mr. Hoover, that was dumb.  Releasing your

2    presence report, you knew that it was protected.  It says it

3    right on the -- I think it's the third page.  It was evident in

4    your conversation with your wife that you knew you weren't

5    supposed to release it.

6            And by releasing it and providing it to your friends

7    and encouraging them to discuss its content, that was in

8    blatant violation of the Court's rules.  And it shows contempt

9    for the Court and for the rule of law.

10           And you're not doing yourself any favors by that.

11   You're coming before the Court in about a month for sentencing.

12   And some of the things that the Court has to consider in

13   determining an appropriate sentence, one of them is the extent

14   to which the sentence is necessary to promote respect for the

15   law.  And what are you doing between the time of your

16   conviction and the time that you appear for sentencing, but

17   you're showing that you don't respect the Court or its rules by

18   disseminating the presentence report.

19           And perhaps you think the presentence report is just

20   about you and if you want to share your information you can

21   share your information, but that's not the way it works.

22           First of all, it's a Court document.  It belongs to

23   the Court.  It is prepared for the Court to assist the Court in

24   determining an appropriate sentence.

25           There's a lot of information that goes into a

1    presence report.  A lot of confidential information about

2    you and about your family.  And the reason for that is the

3    Court is supposed to consider everything about an individual,

4    everything that caused you to be where you are when you're at

5    sentencing.

6            We need to consider the entire person and all your

7    history, everything that went into the moment that we are

8    determining an appropriate sentence.  And when you share that

9    information, what you're doing is you're disclosing the content

10   of that report that was intended only for the purposes of the

11   Court for sentencing.  But you're also -- we now have a record.

12   These -- all of these filings are public knowledge.  We now

13   have a record of presence reports being disclosed.

14           The probation officers that prepare these presence

15   reports, they rely completely on the willingness of individuals

16   to talk to them.  And individuals who see that presence

17   reports can be disclosed readily, they're not going to be

18   willing to talk to probation officers.  We're going to lose

19   the -- we may lose important truthful information that's

20   necessary.

21           You are undermining the confidence of the community

22   in the confidentiality of presence reports.  And that hurts

23   the Court.  And that hurts future defendants that will be in

24   your position later, needing the Court to have full, complete,

25   accurate information for their sentencing.  That is the

1  consequence of your decision, selfishly, in your case to

2  disclose your presentence report.

3      So you're not helping yourself by doing that.  Do you

4  understand these things?

5      MR. LAROSIERE:  Your Honor, if I may provide some

6  needed context.

7      One of the most fascinating things about my client's

8  life story is that he very recently taught himself to read.  I

9  think if you -- if we look at the timing, even in the

10  government's motion, my client may not actually have had the

11  paper document in his hands.  And I think that the reason it

12  may have been disclosed to his wife was for the limited purpose

13  of helping him to check over those facts.

14      All that to say I think that it's possible that --

15  and again, stressing that it is -- I think it is very -- it is

16  a very positive thing that my client took affirmative steps to

17  become more literate.  I fear that my client did not understand

18  that what he was doing was prohibited.

19      THE COURT:  His wife seemed to understand it.  And

20  she was even afraid that you were going to yell at her for

21  that.

22      DEFENDANT HOOVER:  They actually -- Ms. Taylor and

23  him have the one thing in common:  they both don't like Crump

24  at all.  Like he doesn't like it if anything goes to Crump.

25      THE COURT:  Okay.

1    DEFENDANT HOOVER:  It's not that I thought it was

2 private.  She was worried about him getting mad at her because

3 he doesn't like Crump, not even a little.

4    THE COURT:  Well, let's not hurt Mr. Crump's

5 feelings.

6    MR. LAROSIERE:  For the record, I do like Mr. Crump.

7    THE COURT:  You heard that the government is seeking

8 to have Mr. Hoover prohibited from any further disclosure of

9 his presentence report.

10    What's Mr. Hoover's position with regard to a request

11 that he, perhaps, agree that he will not further --

12  (Mr. Larosiere confers with defendant Hoover.)

13    THE COURT:  You can't talk to him and me at the same

14 time.

15    MR. LAROSIERE:  So sorry, Your Honor.

16    THE COURT:  Let me finish and then you can confer

17 with him.

18    I guess I'm wondering do I need to rule on that

19 request, or does Mr. Hoover simply want to agree that he has no

20 intention of further disseminating the presentence report?

21    Go ahead and speak to your client.

22  (Mr. Larosiere confers with defendant Hoover.)

23    MR. LAROSIERE:  Mr. Hoover has absolutely no problem

24 agreeing to do so.  And he expresses that if he had understood

25 this, he would have never been in this position, and that he

1  sincerely regrets any damage done to the facilities of -- you

2  know, that enable this presentence report, which he's actually

3  very thankful for.

4         THE COURT:  And I want clarification on one thing.

5         It appears that Mr. Hoover disclosed what Mr. Ervin's

6  guidelines were, but -- and I'm assuming that that's because

7  Mr. Ervin told Mr. Hoover what his guidelines were.  But it

8  doesn't appear -- was anything beyond just the arguable

9  guidelines disclosed with regard to Mr. Ervin?  In other words,

10 was the actual content of the PSR disclosed?

11         MR. LAROSIERE:  No, Your Honor.

12         THE COURT:  And can you please confirm that with

13 Mr. Hoover.

14    (Mr. Larosiere confers with defendant Hoover.)

15         MR. LAROSIERE:  So as I was indicating earlier, as I

16 understand, Mr. Ervin didn't even have a copy of his PSR at

17 the --

18         THE COURT:  You mean Mr. Hoover?

19         MR. LAROSIERE:  No, I actually mean both of them.

20         THE COURT:  Okay.

21         MR. LAROSIERE:  Neither of them had physical copies

22 of their PSR during this time, they just knew what was told to

23 them.  So even after the video was released the only thing that

24 had been discussed was potential sentence lengths.

25         THE COURT:  And so Mr. Hoover agrees to the entry of

1  an order prohibiting him from any further disclosure of his

2  presentence report?

3        MR. LAROSIERE:  Absolutely, Your Honor.

4        THE COURT:  All right.  Mr. Coolican, is there

5  anything else, then, that I need to address?

6        MR. COOLICAN:  No, Your Honor.

7        THE COURT:  Mr. King, your client's -- I guess his

8  guidelines were disclosed.  Is there anything -- at least I

9  didn't see anything more than what his potential guideline

10 calculation was addressed.

11       And I guess for purposes of the record, I did -- as

12 was noted on the docket, I was presented with the exhibits for

13 the hearing that the United States intended to present.

14       And I did review those.  So I did see the two YouTube

15 postings, I did hear the calls.  I could not read the comments.

16 I read the comments that were in the motion.  The comments that

17 were in Exhibits, I think it was, 6 and 8, they're too small.

18 I blew them up as big as I could, I couldn't read them.

19       But as I indicated, I read what was in the motion,

20 and the comments are vile and horrific.  And I can't imagine

21 anybody thinking such thoughts, much less typing them.

22       But we should be clear for the record that I did

23 review that information.  But having reviewed that, I'm not

24 aware of anything other than what his arguable guideline

25 calculation was pursuant to the presentence report.  So is

1    there anything else that I need to address with regard to

2    Mr. Ervin?

3              MR. KING:  No, Your Honor.

4              THE COURT:  All right.  Give me a moment.

5         (Pause in proceedings.)

6              THE COURT:  And obviously counsel should be aware

7    that it's counsel's obligation not to disclose the contents of

8    any presentence report, whether it's a preliminary or final

9    presentence report.

10             And I think in an abundance of caution -- I don't

11   know that there will be further filings, but in an abundance of

12   caution, I'm going to direct the probation office to provide

13   presentence reports or any further information only to counsel.

14   And I will rely on counsel to assure that that information is

15   not disseminated improperly.

16             Any objection to that, Mr. King?

17             MR. KING:  No, Your Honor.

18             THE COURT:  Mr. Larosiere?

19             MR. LAROSIERE:  No, Your Honor.

20             THE COURT:  Mr. Coolican?

21             MR. COOLICAN:  No, Your Honor.

22             THE COURT:  All right.  Then is there anything else

23   from anybody present that I need to address at this time?

24        (No response.)

25             THE COURT:  For purposes of the record, then, the --

1    Mr. Crump's emergency motion and the motion to file *amicus*

2    briefs are denied as moot in light of the United States's

3    withdrawal of its request for any affirmative relief as to

4    those individuals.

5         I'm going to deny the motion for protective order as

6    well.  But with the agreement of all parties, I'm going to

7    order Mr. Hoover not to further disseminate any copies of his

8    presentence report.

9         Is that consistent with my rulings, Mr. Coolican?

10        MR. COOLICAN:  It is, Your Honor.

11        THE COURT:  And, I'm sorry, I further direct the

12   probation office to provide all further information or filings

13   from that office to counsel only.

14        Anything else, Mr. King?

15        MR. KING:  No, Your Honor.

16        THE COURT:  Mr. Larosiere?

17        MR. LAROSIERE:  No, Your Honor.  Thank you.

18        THE COURT:  We're in recess.

19        COURT SECURITY OFFICER:  All rise.

20      (Proceedings concluded at 2:20 p.m.)

21                              -    -    -

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER


UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA )


        I hereby certify that the foregoing transcript is a true

and correct computer-aided transcription of my stenotype notes

taken at the time and place indicated herein.


        DATED this 14th day of August, 2023.


                        /s/ Katharine M. Healey
                        Katharine M. Healey, RMR, CRR, FPR-C
                        Official Court Reporter