1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                       JACKSONVILLE DIVISION

3   UNITED STATES OF AMERICA,        Case No. 3:21-cr-22(S4)-MMH-MCR

4          Plaintiff,                 Thursday, September 7, 2023

5   v.                                11:37 a.m. - 12:44 p.m.

6   KRISTOPHER JUSTINBOYER ERVIN      Courtroom 10B
    and MATTHEW RAYMOND HOOVER,
7
           Defendants.
8   _____

9
                            **SENTENCING**
10                         **(VOLUME 2 of 2)**

11
             BEFORE THE HONORABLE MARCIA MORALES HOWARD
12                  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19  OFFICIAL COURT REPORTER:

20    Katharine M. Healey, RMR, CRR, FPR-C
      PO Box 56814
21    Jacksonville, FL 32241
      Telephone: (904) 301-6843
22    KatharineHealey@bellsouth.net

23

24                         (Proceedings reported by stenography;
                           transcript produced by computer.)
25

1                       A P P E A R A N C E S

2

3    COUNSEL FOR THE GOVERNMENT:

4     **LAURA C. TAYLOR, ESQUIRE**
      **DAVID MESROBIAN, ESQUIRE**
      United States Attorney's Office
5     300 North Hogan Street, Suite 700
      Jacksonville, FL 32202

6

7    COUNSEL FOR DEFENDANT ERVIN:

8     **ALEX KING, ESQUIRE**
9     Monroe & King, P.A.
      1805 Copeland Street
10    Jacksonville, FL 32204

11

12   COUNSEL FOR DEFENDANT HOOVER:

13    **ZACHARY Z. ZERMAY, ESQUIRE**
      Zermay Law
14    1762 Windward Way
      Sanibel, FL 33957
15
     - A N D -
16
      **MATTHEW LAROSIERE, ESQUIRE**
17    6964 Houlton Circle
      Lake Worth, FL 33467
18

19

20

21

22

23

24

25

1       P R O C E E D I N G S

2  September 7, 2023                          11:37 a.m.

3                      - - -

4          COURT SECURITY OFFICER:  All rise.  The United States

5  District Court in and for the Middle District of Florida is now

6  in session.  The Honorable Marcia Morales Howard presiding.

7          Please be seated.

8          THE COURT:  We are back on the record in Case Number

9  3:21-cr-22-MMH-MCR, United States of America vs. Kristopher

10 Justinboyer Ervin and Matthew Raymond Hoover.

11         Ms. Taylor and Mr. Mesrobian are here on behalf of

12 the United States, and returning with them here today are Agent

13 Hooker and Agent Slosson.

14         Mr. King is here with Mr. Ervin.

15         Mr. Larosiere and Mr. Zermay are here with Mr. Hoover

16 and with Ms. Katzenberger.

17         We're scheduled for the imposition of sentence,

18 having heard all of the arguments of the attorneys and having

19 heard from Mr. Hoover and Mr. Ervin, as well as individuals

20 speaking on their behalf yesterday.  And I appreciate

21 everyone's indulgence of giving me the evening to consider all

22 of those arguments.

23         And I'm going to do this a little bit backwards.  I'm

24 going to explain the reasons for my sentence and what it is

25 going to be, and then at the conclusion of the hearing I'll ask

1   Mr. Hoover and Mr. Ervin to come up to the podium and I will

2   formally impose the sentence.

3          In sentencing, the Court's obligation, and what the

4   Court is charged with, is fashioning a sentence that is

5   sufficient, but not greater than necessary, to serve -- to

6   satisfy the statutory purposes of sentencing.

7          And in determining what sentence is sufficient, but

8   not greater than necessary, to do that, the Court is advised by

9   the sentencing guidelines and has to consider the guidelines,

10  which as we all know, at this time the Court has determined are

11  121 to 151 months of incarceration.

12         And the Court has to look at the nature and the

13  circumstances of the offense and the history and

14  characteristics of the defendant, and then has to consider what

15  sentence will satisfy those statutory purposes of sentencing,

16  which include the need to promote respect for the law, the need

17  to reflect the seriousness of the offense, to provide just

18  punishment for the offense, to afford adequate deterrence not

19  just for Mr. Ervin and Mr. Hoover, but adequate deterrence for

20  others who would consider engaging in similar unlawful conduct.

21  The sentence has to protect the public from further crimes.

22  And the Court has to consider what sentences are available and

23  also has to endeavor to avoid any unwarranted sentencing

24  disparity.

25         And so those -- it's kind of a lot of moving parts,

1    but that's the backdrop and that's what the Court is required

2    to do.

3            Now, as I said, the guidelines in this case are 121

4    to 151 months.  But if the Court had rejected the government's

5    arguments and had accepted the calculation submitted by the

6    probation office, which was consistent with what the guidelines

7    would instruct if you rely on the commentary, then Mr. Ervin's

8    guidelines would have been 33 to 41 months and Mr. Hoover's

9    guidelines would have been 27 to 33 months.

10           Had the Court accepted that, then the government

11   argued that the Court should depart upward under 5K2.0(a)(2) or

12   (a)(3).

13           (a)(2) authorizes an upward departure where there

14   exists an aggravating circumstance not adequately taken into

15   consideration by the guidelines.  Specifically here, the

16   absence of an increase for the number of NFA devices.

17           (a)(3) provides for an upward departure for

18   circumstances that are taken into consideration under the

19   guidelines but the circumstance is present in the offense to a

20   degree substantially in excess of that ordinarily involved.

21   And the argument there, I think, being that even if there was

22   an enhancement for 200 firearms, 200 is a fraction of the 6,600

23   that were possessed.

24           And last, they argued under 2K2.1, Note 11, that

25   the -- that recognizes that it would be appropriate to depart

1    if the offense involved multiple NFA weapons.  And I note that

2    that says NFA "weapons," it doesn't say "firearms."

3          And I think if the guidelines -- if I had determined

4    that the guidelines were 33 to 41 for Mr. Ervin and 27 to 33

5    for Mr. Hoover, then an upward departure on any one of those

6    three grounds would have been appropriate; would have been

7    appropriate because the guidelines, as calculated, do not

8    reflect the sheer magnitude and scope of the defendants'

9    proliferation of the machine gun conversion devices.  That

10   simply is not accounted for in the guideline range, a guideline

11   range that is calculated with no increase at all for the number

12   of dangerous devices that the defendants conspired to transfer

13   without registering.

14         So the guidelines, as scored, strictly under the

15   black-and-white of what's in the guideline manual, would be

16   wholly inadequate.  And an upward departure would have been

17   warranted under any one of those three bases because they all

18   really account for the same thing in order to truly reflect the

19   seriousness of the offense conduct.  And we need to consider

20   the offense conduct.

21         Through the conspiracy the defendants filled over

22   1,500 orders for machine gun conversion devices.  I think it's

23   actually over 1,700; but conservatively over 1,500.  Many, if

24   not most, of those orders were for multiple devices.  And the

25   evidence showed the defendants conspired to sell these items,

1   knowing what they were, knowing how they could be used.

2           One really only has to look as far as Mr. Ervin's

3   machine gun fish video that we saw -- too many times during the

4   trial -- and it shows that Mr. Ervin knew what the devices

5   could be used for and what he was selling them to be used for.

6   And his other videos and his statements showed that.  And his

7   cagey responses to his customers's emails showed his knowledge

8   as well.

9           They showed Mr. Ervin carefully trying to walk a fine

10  line of selling and encouraging the purchase of devices,

11  knowing full well what he was selling them to be, but not

12  overtly acknowledging their use and purpose.  And the jury saw

13  through that.  The jury concluded that Mr. Ervin knew full well

14  what he was selling, even if he tried not to directly answer

15  the questions from his customers.

16          And the defendants sold these devices quite

17  recklessly, with no regard for who they might be selling the

18  devices to.  In fact, one of Mr. Hoover's videos specifically

19  encouraged prohibited persons, including convicted felons, to

20  purchase these illegal devices.  That's very serious offense

21  conduct.  It is offense conduct that is extremely dangerous,

22  placing these devices that have brutally lethal capacity in the

23  hands of hundreds of people without any regard for what those

24  people would use those devices for.

25          And again, I'll note that what we're talking about is

1    over 1,500 sales, and then the possession of over 6,000 of

2    these devices that would have been placed in commerce but for

3    the arrest.  And that is just not accounted for at all in the

4    guideline, which is calculated without regard to the number of

5    weapons.

6          But as I indicated, following the dictates of *Dupree*,

7    I determined that I wasn't permitted to rely on the commentary

8    definition of "firearm" because it was inconsistent with the

9    unambiguous guideline in 2K2.1.  And so I determined that the

10   guidelines are actually 121 to 151.

11         Mr. Hoover argues for a downward departure based on

12   his family circumstances under 5H1.6 and under 5K2.0, arguing

13   that his offense conduct reflects aberrant behavior.

14         The reality is that Mr. Hoover's family

15   responsibilities, while certainly very important, and while his

16   absence in the family home without question causes hardship,

17   that is not a circumstance that is present to an unusual degree

18   in this case.  It's not present in any way different than

19   almost every other individual who has a family that is here for

20   sentencing.  And so 5H1.6 would not authorize a downward

21   variance -- or a downward departure on that basis.

22         And a departure for aberrant conduct is warranted

23   where something is inconsistent with an individual's

24   personality.  It's a lapse of judgment.  It's a momentary

25   thing.

1    That's not what this conduct was.  This conduct that

2  Mr. Hoover engaged in was not aberrant, it was him expressing

3  his true beliefs.  And he doubled down even after Mr. Ervin's

4  arrest, indicating his belief in proceeding in the manner that

5  he did.  So it can't be described as aberrant.

6    And so to the extent Mr. Hoover requests a downward

7  departure on the basis of either 5H1.6 or 5K2.0, the Court

8  finds that no downward departure is appropriate, that is, no

9  downward guideline departure.  But I will consider the

10  arguments presented there with respect to a variance from the

11  guidelines.

12    Even with the guidelines at 121 to 151, the

13  government argues for an upward departure of six levels because

14  of the number of devices.  That would drive the guidelines from

15  121 to 151 to 235 to 293 months.  And I think that that

16  sentence would be far, far, far, greater than necessary.  And I

17  don't think that the upward departure is necessary or

18  warranted.  The guidelines of 121 to 151 months are more than

19  sufficient, in my mind, to capture the seriousness of the

20  offense conduct.

21    I recognize that the jury verdict means that each and

22  every one of the devices that were in those cards can

23  theoretically convert a firearm to a machine gun.  That's what

24  the jury reflects, and the Court accepts and respects the

25  jury's verdict.  But I don't think that a guideline that

1    assumes -- that treats each and every one of those as an actual

2    firearm is appropriate.  I don't know that if one had asked the

3    jury that they would have concluded that each one of those

4    cards would have successfully achieved conversion to a machine

5    gun or that they were even convinced that each purchaser really

6    would have tried.

7            Do the defendants get a pass because they made

8    marginally good machine gun conversion devices or because they

9    didn't make great machine gun conversion devices?  No, I don't

10   think they get a pass for that.  But I also don't think they

11   should be held accountable as if every item sold would and

12   truly could be used in the manner for which they were

13   advertised.  And I just -- I don't think that the evidence

14   presented and the facts of this case warrant treating them in

15   that way, and so I decline to depart upward.  I just don't

16   think it's necessary.

17           I think that to the extent the guidelines have to

18   take into consideration the actual offense conduct, I don't see

19   that an upward departure is necessary.  The aggravating

20   circumstances of the offense conduct I think are fully

21   accounted for with the guidelines as they are calculated.

22           So those, I think -- I think that addresses all of

23   the departure motions under the guidelines because the Court,

24   of course, has to start with the guidelines.  So we're back to

25   the guidelines are 121 to 151.

1          And as I indicated yesterday, I am still convinced

2    that a guideline sentence is more than what is necessary in

3    this case.  And I recognize that the government strongly

4    disagrees with that position, and I respect that, but I'm

5    firmly convinced that a guideline sentence is too high.

6          The difficult question, of course, then becomes:

7    What is an appropriate sentence?  What sentence will reflect

8    the seriousness of the offense?  And I've explained already

9    that I think this is a very serious offense.  And what sentence

10   will promote respect for the law?  What will accomplish just

11   punishment?  What will deter others from trying to find a

12   unique way to manufacture these devices and proliferate them

13   but avoid liability themselves?  Because that's what Mr. Ervin

14   and Mr. Hoover were doing.  That's the difficult question that

15   the Court has to answer.

16         In answering it, we have to remember what the case is

17   about and what the case is not about.  I said yesterday that

18   this case is not about the First Amendment.  Neither of these

19   defendants is charged or before the Court based upon their

20   speech.

21         I want to talk about a few of the things that

22   Mr. Ervin said yesterday.  Mr. Ervin, this case is not --

23         DEFENDANT ERVIN:  Your Honor, I was emotional after

24   watching my father speak.  I would like to communicate that --

25         THE COURT:  I understand.

1          DEFENDANT ERVIN:  -- just from my heart.

2          THE COURT:  No, I understand.  And please don't --

3    please don't --

4          DEFENDANT ERVIN:  I just didn't want you to punish me

5    for being emotional because of my father --

6          THE COURT:  I'm not.  And I'm --

7          DEFENDANT ERVIN:  -- because I love him very much.

8          THE COURT:  Of course you do.

9          DEFENDANT ERVIN:  So I just wanted to say that I --

10         THE COURT:  And he loves you very much.

11         DEFENDANT ERVIN:  -- was worked up a little bit and I

12    just -- I -- I understand.  I just wanted you to know that --

13         THE COURT:  Okay.

14         DEFENDANT ERVIN:  -- that was the situation.

15         THE COURT:  I understand.  And I just want to talk to

16    you about some of the --

17         DEFENDANT ERVIN:  Yes, ma'am.

18         THE COURT:  -- beliefs that you expressed, because I

19    want -- I don't want you to misunderstand --

20         DEFENDANT ERVIN:  I don't want to leave something out

21    that needs to be known either.

22         THE COURT:  Okay.  Mr. Ervin, I'm going to stop,

23    okay.

24         DEFENDANT ERVIN:  I understand.  I'm not trying to

25    interrupt you or stop you, I'm just saying, my emotional state

1   and my concern was that maybe I didn't say something that you

2   needed to know.  That was my concern, why I wanted to tell you

3   about me being worked up.

4           THE COURT:  Okay.

5           MR. KING:  Your Honor, I apologize.  Could I have a

6   moment with Mr. Ervin?

7           THE COURT:  Sure.

8     (Mr. King confers with Defendant Ervin.)

9           MR. KING:  Thank you, Your Honor.

10          THE COURT:  You talked yesterday about your passion

11  to cause debate in a public square, and that's great.  But this

12  case isn't about causing debate in a public square, and it's

13  not about wanting to initiate a nationwide debate.  You can

14  tell yourself that that's what this case is about, but it's

15  not.

16          The truth is that you don't need to manufacture a

17  functional, durable, metal auto sear that can actually be

18  converted -- that can actually be used to convert a firearm

19  into a machine gun to cause public debate on whether such an

20  item should be lawful.  You can print it on a T-shirt, you can

21  print it on a hat.  You can do all sorts of things, which I

22  know you did, but you don't -- what you don't have to do is

23  create a machine gun conversion device and sell it to over

24  1,700 people.  That's --

25          DEFENDANT ERVIN:  Your Honor --

1          THE COURT:  No, Mr. Ervin.  At this point you're just

2    going to have to listen, please.

3          DEFENDANT ERVIN:  Ms. Taylor said it was a picture

4    yesterday.  That's all it was.

5          THE COURT:  Mr. Ervin, it's not a picture.

6          DEFENDANT ERVIN:  I understand how you feel, but I

7    disagree.

8          THE COURT:  Mr. Ervin, no, this isn't how I feel,

9    this is what the law says.

10          DEFENDANT ERVIN:  I understand.

11          THE COURT:  Mr. Ervin, I'm going to have to ask you

12    to stop.

13          DEFENDANT ERVIN:  Yes, ma'am.

14          THE COURT:  I'm going to have to ask you to listen.

15          DEFENDANT ERVIN:  Yes, ma'am.

16          THE COURT:  And you told me just a moment ago that

17    you didn't not want to say something that I would need to hear.

18          What would be helpful for you is if you could

19    acknowledge that perhaps you made a mistake and that what you

20    did was unlawful.  But you very clearly don't believe that,

21    which is one of the concerns that I have in imposing a sentence

22    at this time.

23          Don't talk, Mr. Ervin.

24          DEFENDANT ERVIN:  Yes, ma'am.

25          THE COURT:  Okay.  As I was saying, you don't have to

1   make a machine gun in order to initiate public debate about

2   whether one should be legal, just like you don't have to go out

3   and buy fentanyl to argue about its illegality.  And you don't

4   have to use any other illegal drug in order to promote that

5   drugs should be legal.  You don't have to break the law in

6   order to encourage a public debate on the law.  You can debate.

7   That's what words are for.

8          And as I said, you certainly don't have to sell over

9   1,500 of them without any regard to who is buying them and what

10  they might do with them to cause debate in the public square.

11         I understand that you may choose to rationalize your

12  actions by stating that that was your intention, but nothing,

13  and I mean nothing, in the evidence suggests that you were

14  fighting for the legitimacy of the auto sear.

15         To the contrary, you tried to distance yourself from

16  it.  You tried not to allow yourself to be convict- -- to be

17  connected to telling your clients or your customers how to

18  actually convert it to the auto sear.  That's a far cry from

19  suggesting that what you're doing was simply trying to cause

20  public debate.

21         You said yesterday that the government wants to hurt

22  you and your family.  This case is not about the government

23  wanting to hurt you or your lovely family.  They didn't go out

24  and pull Kristopher Ervin's -- Justin Ervin's name out of a

25  hat.  They didn't go on the internet and find you and think:

1    Oh, we need to find something to charge him with.  That's not

2    what happened here.

3            The reason that the government brought the charges is

4    to hold you accountable for the decision you made for your

5    actions.  Now, does that hurt your family?  And does it hurt

6    your family, Mr. Hoover?  Yes, it does.  And I'm sorry.  I

7    often say when I'm imposing sentence that the hardest thing

8    that a federal judge does is sentence people, because when you

9    sentence an individual, you're not just sentencing that person,

10   you're sentencing their mother, their father, their children,

11   their friends, everyone.  And that's very difficult.

12           But it's not the government's fault that the sentence

13   has to be imposed.  It is the individual who made the decision

14   to break the law that causes there to have to be a sentence.

15   And the sentence is a consequence of the actions.

16           You told me yesterday that you don't want to be in

17   trouble for a picture.  But you didn't just sell a picture.  It

18   wasn't a picture.  It wasn't art.  It wasn't a drawing.  And

19   your own statements reflect that you knew that the strong metal

20   card that you were selling had a purpose; that your customers

21   might want some day, you said perhaps only under dire

22   circumstances -- of course, there was nothing prohibiting

23   people from using it for any reason.  But it was sold for and

24   built for a purpose.  And that purpose was to convert a firearm

25   to a machine gun.  It wasn't a picture.  It wasn't a piece of

1    art.

2         You said yesterday that there were ways to mitigate

3    this and that you never had a chance.  And I think one of the

4    other witnesses expressed the view that there were better ways

5    for this to be handled.  And I assume that's a reference to

6    sending a stop-and-desist letter instead of arresting Mr. Ervin

7    and Mr. Hoover.  But the way to mitigate this was not to engage

8    in the criminal conduct to begin with.

9         I am quite certain that any number of defendants who

10   are charged with crimes in federal and state court would have

11   preferred that law enforcement just approach them and say,

12   "Hey, dude, cut it out."  I'm sure.  But that doesn't change

13   the fact that you had already made the decision to commit

14   federal crimes and had been doing so for a period of time.  And

15   there are consequences for that.

16        I heard from Mr. Ervin's father yesterday.  And sir,

17   thank you for speaking.  I know that was hard.  And I just

18   wanted to say that you can't blame yourself.  As parents, we

19   always want to take responsibility for our children's actions.

20   We can't help it.  We love them.  And of course you love your

21   son.  And nothing about this changes the fact that you love

22   him.  But you're not responsible for his decisions or for his

23   actions.  And Mr. Ervin, he chose his actions.  And you weren't

24   in a position to stop him.  And it's not your fault that you

25   did not see the flaw in his plan.

1        You said that Mr. Ervin didn't wake up and decide to

2   become a criminal.  And I'm sure that that is absolutely true.

3   But at some point he did decide that he would manufacture and

4   sell devices that could convert a firearm into a machine gun.

5   He just thought he found a way that he could do it where he

6   wouldn't get caught or he wouldn't be shown to be breaking the

7   law, even if his purchasers were clearly breaking the law.  And

8   he talked about that in one of his conversations.

9        I think, if my memory serves, it might have been in

10  text messages with Ms. Wolfe, where an acquaintance of hers had

11  asked about Mr. Ervin's responsibility if somebody did

12  something bad with the items.  And the evidence in this case,

13  Mr. Ervin's response was quite cavalier in his dismissal of

14  anybody's ability to prove his responsibility and his cavalier

15  attitude of what somebody might do or use his device for.

16       So Mr. Ervin didn't wake up and decide to be a

17  criminal, but he did decide to engage in criminal activity.  He

18  just thought he'd come up with a way to make a profit of it and

19  not be held responsible.

20       And Mr. Ervin, it was apparent yesterday, and even

21  more apparent here today, that you still don't believe that you

22  committed a crime.  You have expressed really no contrition

23  whatsoever.  You say that you don't want to be punished or hurt

24  for doing the right thing.  And you say that you will always do

25  the right thing, but you did not do the right thing here.  You

1    did not do the right thing when you mislead the folks at Orange

2    Park Machine to manufacture these devices for you.  And you saw

3    them testify.  They were quite terrified that that family

4    business was going to go out of business because you had

5    tricked them into manufacturing machine gun conversion devices.

6    I can't remember -- they testified about how many employees

7    they had.  But that wasn't doing the right thing, to trick them

8    into making these devices.

9          You weren't doing the right thing when you advertised

10   to sell these devices, when you advertised their capability to

11   fire bullets automatically.  You didn't do the right thing when

12   you told the people where to go on the internet to figure out

13   how to illegally use your device, how to make it work.  And you

14   didn't do the right thing when you sold these devices with no

15   regard to who the purchasers were or what they might be used

16   for.

17         None of that was you doing the right thing.  It was

18   you doing what you wanted to do to make money by doing

19   something you knew should not be done, but -- because you

20   thought you were clever enough to come up with a workaround so

21   that you wouldn't get in trouble, and that is a far cry from

22   doing the right thing.

23         You talked yesterday about having the moral high

24   ground.  And if there's one thing that you really need to

25   understand, sir, is that you do not have the moral high ground.

1   Not remotely.  What you did was illegal.

2          Mr. Hoover, a lot of what I have just said to

3   Mr. Ervin -- not the Orange Park Machine thing because you had

4   nothing to do with his decisions in that, but much of what I

5   have just said about Mr. Hoover's choices -- sorry, Mr. Ervin's

6   choices are equally applicable.  Your own videos clearly

7   reflect that you knew what you were doing was unlawful, yet you

8   chose to do it.

9          And again, to the extent that you continue to be of

10  the view that this case is about First Amendment rights and

11  political speech, it just isn't.  That's not what you were

12  charged with.

13         And the jury listened to the evidence very, very

14  carefully.  We had a jury that was -- they paid close attention

15  throughout the trial.  And those 12 fellow citizens concluded

16  that you knew what you were doing was unlawful.  And they made

17  that conclusion largely based on the words that came out of

18  your mouth that they saw on the videos, that those -- your

19  statements there and all of the suggestions that you use a

20  money order and send your -- use the address of your anti-gun

21  relative and all -- and the potential that the FBI would -- or

22  ATF would be in a courtroom arguing that these are firearms or

23  machine gun conversion devices, all of that evidence, and more,

24  convinced the jury beyond and to the exclusion of any

25  reasonable doubt that you knew that the actions you were

1    engaging in were unlawful.

2           Mr. Hughes spoke on your behalf yesterday, and

3    Mr. Hughes expressed his sadness that an individual engaging in

4    advertising ended up in jail.

5           And Mr. Hughes, I would simply say to that, again,

6    that Mr. Hoover is not going to jail because he was

7    advertising.  Mr. Hoover is being sentenced because he was

8    convicted of conspiring to transfer machine gun conversion

9    devices, in violation of the National Firearms Act.

10          You can't advertise the sale or purchase of an

11   unlawful firearm any more than you can advertise for help to

12   commit a robbery or a burglary or a murder-for-hire.

13          This isn't about holding somebody responsible for

14   advertising or for accepting a sponsorship, it's for what was

15   being advertised and what was being sponsored, and that is,

16   illegal firearms under the law.  That's what the jury found.

17          And I would simply note, Mr. Hughes, that I recognize

18   that Mr. Hoover is your friend.  And you are a good friend to

19   him.  You stand by him, and you should.  That's what friends do

20   for each other.  I fully recognize that.

21          But I don't think you do him or anybody else any

22   favors, and certainly not your listening population, who I

23   think respect you as a source of knowledge, I don't think you

24   do any of them any favors when you suggest that this

25   prosecution was improper because there wasn't a

1   cease-and-desist letter or because the First Amendment

2   protected his actions, because neither of those arguments will

3   prevail in the future any more than they prevailed here.  And I

4   fear that that will cause others to make the same mistake that

5   Mr. Ervin and Mr. Hoover did; that is, to skirt the edge of the

6   law to try to find some way to engage in similar conduct.

7          I need to address what was hinted at and what was

8   suggested, and that is that Mr. Hoover spoke to the ATF and was

9   told that the actions that he and Mr. Ervin would engage in

10  were not unlawful.  And there was also a statement, I think

11  Mr. Ervin may have said, that people said this couldn't be

12  illegal.  And I simply reject the contention that either

13  Mr. Ervin or Mr. Hoover spoke to anyone with the ATF, and that

14  after having been given an accurate description of what the

15  defendants intended to manufacture and sell, that any ATF agent

16  would have told them that that was okay.  There is just nothing

17  at all that supports that contention.  It's a good narrative.

18  I get that.  It's a good narrative to say "I was told these

19  were legal," but it's just not true.  And Mr. Hoover's own

20  videos show that that wasn't what he thought.  And certainly

21  Mr. Ervin's actions show that that was not what he thought.

22         And so the case is not about the First Amendment.

23  It's not about public debate.  It's not about advertising or

24  sponsorship.  And it's not about a good-faith belief that an

25  individual was operating within the law.  It's about what the

1   jury was asked to consider and what the jury found beyond a

2   reasonable doubt, and that is that both defendants conspired to

3   transfer machine gun conversion devices, that Mr. Ervin

4   possessed such devices, and that he engaged in structuring of

5   financial transactions.  And the Court has to determine an

6   appropriate sentence for that crime, not the other things that

7   people may want to say this case is about.  People don't get --

8   well, that's what this case is about.

9          With regard to the firearms, I have thought hard

10  about the relative culpability of Mr. Ervin and Mr. Hoover.

11  Initially I thought Mr. Ervin was far more culpable because

12  Mr. Hoover would never have ended up in this courtroom but for

13  meeting Mr. Ervin.  It was Mr. Ervin's idea.  Mr. Ervin

14  manufactured these items.

15          But as Mr. Ervin said, Mr. Hoover, you're quite a

16  salesman.  And you really set things on fire.  And but for your

17  involvement, there is no way Mr. Ervin would have been able to

18  sell 1,700 of these items.  There's no way he would have made

19  all the money that he made.  And there's no way that as many

20  people would have known about the devices.  They would not have

21  been proliferated to the extent that they were but for your

22  involvement.

23          And the chart that -- the graph, bar graph that was

24  shown in the trial shows that before your involvement,

25  Mr. Ervin was -- you know, had small numbers of sales, and then

1    when you would post a video, sales would skyrocket.

2            And so ultimately I think I became -- or I have

3    become convinced that you-all are largely equally culpable, but

4    Mr. Ervin slightly more, for two reasons:  one, for his actions

5    with regard to the manufacturing of the devices and his conduct

6    with Orange Park Machine, and his conviction for the

7    structuring offenses in addition to the firearms offense.

8            As I said, one of the things that the Court is

9    required to consider is the Court has to avoid any

10   unnecessary -- any unwarranted, pardon me, sentencing

11   disparity.  And so I considered the sentences that have been

12   imposed in similar cases in the Middle District of Florida.

13   And many of those ranged between 30 and 36 months'

14   imprisonment.  But in all of those cases the defendants pled

15   guilty, and so their guidelines were reduced because they

16   received a reduction for acceptance of responsibility.  And two

17   of those individuals -- in addition to a downward adjustment

18   for acceptance of responsibility, two of those individuals

19   cooperated with law enforcement and received the benefit of a

20   5K1 motion for downward departure.

21           I'll also note that all of them had substantially --

22   and if I were writing this, I would have to underline the word

23   "substantially" -- fewer firearms.  One had 69.  Well, sorry.

24   There was one with 69 cases, the others had 24.  And there was

25   one other; that one had I think a couple hundred.  His sentence

1   was 60 months, though.  He wasn't one of the ones that ended up

2   in a 30 to 36 months.

3        And I also noted that while the court in *Hixson* found

4   that the guidelines didn't increase the offense level due to

5   the number of devices because the devices did not fall within

6   the commentary's definition of a firearm, the judge in *Hixson*

7   varied upward to impose a sentence that was double the

8   guideline range, a significant upward variance, imposing a

9   sentence of 66 months to account for the seriousness of the

10  offense conduct.

11       So here I've considered the guidelines.  I've

12  considered the purposes of sentencing.  I've considered the

13  sentences imposed in other cases.  I am convinced that the

14  conduct of the defendants in this case is clearly unlawful,

15  dangerous, reckless, certainly posed a great potential danger

16  to public safety, but I'm not convinced that the evidence

17  presented warrants treating the sale of each and every device

18  with such severity as a guideline sentence would reflect.

19       And when I look at the overall history and

20  characteristics of the defendants, they paint a different

21  picture.  We don't see a history of disregard or disrespect for

22  the law.  Up to now, Mr. Ervin and Mr. Hoover have been

23  law-abiding citizens, except perhaps with the marijuana use,

24  but we won't talk about that.  They are loving members of their

25  family.  They take care of their family.  They are respected in

1  their communities.

2        It does appear that this foray into this business

3  endeavor was their brush with criminal activity.  And if you

4  look at it, it was a bad idea.  It was a terrible idea.  But

5  I'm not convinced that it reflects their true character.

6        One thing that if I didn't know it before, I've

7  certainly seen it time and again in the 17 years or so that

8  I've been doing this, and that is that good people make

9  mistakes all the time.  And we'll talk a little bit about that

10  later, but I think when one looks -- I hope that at some point

11  Mr. Ervin will look back on this and realize that it was a

12  mistake.  I hope that Mr. Hoover will as well.  I think more

13  likely Mr. Hoover will than Mr. Ervin, at least based on his

14  statements here today, but that will remain to be seen.

15        With no criminal history, with no suggestion of any

16  anti-social history at all, considering the history and

17  characteristics of the defendants, the sentences in other cases

18  involving similar devices, the seriousness of the offense

19  conduct, I'm convinced that a term of imprisonment of 60 months

20  for Mr. Hoover is necessary and a sentence of 68 months for

21  Mr. Ervin is necessary.  I think that sentence is sufficient to

22  satisfy all of those statutory purposes of sentencing.  And so

23  I'm varying downward from the guidelines to those sentences.

24        I'll note that these are two individuals who have

25  never been to prison before, and so a sentence of five years,

1  or five years plus, is a very significant sentence.  And I

2  don't think it can be discounted.  And I don't think it can be

3  described as a slap on the wrist or as a light sentence.  I

4  think it's a very serious sentence.  And I think it reflects

5  the seriousness of their offense conduct.  I think it

6  accomplishes just punishment.  And I think it accomplishes

7  deterrence.  If five years in federal prison isn't going to

8  deter someone, I am really challenged to believe that seven

9  years or ten years will.  I don't think someone is going to

10 look at this and say, "Oh, well, if I get caught, I'm only

11 going to get five years."  So I think that that sentence is

12 sufficient to accomplish the purposes of sentencing.

13         To Mr. Hoover and Mr. Ervin's family and friends, I

14 appreciate your presence here.  You love Mr. Hoover and

15 Mr. Ervin.  You have every right to.  As I said, good people

16 make mistakes all the time.  The mistakes don't define them.

17 It doesn't make them a bad person.

18         What does define an individual, though, is what they

19 do after they've made the mistake.  And that's what will remain

20 to be seen.  Whether Mr. Ervin and Mr. Hoover will accept

21 responsibility for the unlawfulness of their conducts and

22 change their behavior or not, that's what will ultimately

23 define them.

24         Mr. Hoover, you're a family man.  You love your wife,

25 you love your children, but you can't be there for them if you

1    break the law.  It's just a reality.  So you're going to

2    complete this term of imprisonment, and I see no reason why you

3    should ever have any future untoward encounter with law

4    enforcement.

5              I recognize you've lost the right to possess firearms

6    and that will be difficult for you, but that is a consequence

7    of the offense.  But you will complete your term of

8    imprisonment and you will go back to being the loving husband

9    and father that you -- that you were, you just won't be able to

10   have guns.

11             And Mr. Ervin, you are a young man.  You're an

12   entrepreneur.  You have a lot you can do with your future.  But

13   you're going to have to recognize that it was what you did,

14   that it was choices that you made, that caused this

15   prosecution, because what you did was illegal and you knew it

16   when you were doing it.  And if you continue throughout your

17   term of imprisonment to deny that it was your actions that

18   brought you here, then I fear that you will go down a very dark

19   road.  And I don't think that's what any person in this room

20   wants for you.

21             As I said earlier, nobody targeted you.  Nobody

22   sought to hurt your family or your friends.  The evidence

23   showed that you came before this Court because of your actions,

24   and that's -- and your knowledge of the illegality of your

25   actions was evident in your desire to distance yourself from

1   the devices.  It was a gamble.  It failed.  But your

2   incarceration is a consequence of that failed gamble.

3            As I said, viewed through the best lens, this was a

4   mistake, but it was a very serious mistake.  A mistake that may

5   well have consequences well into the future because we don't

6   know where 1,700 of these items are.  And that -- I hope we

7   never will know, because the only way we'll know is if

8   something terribly bad happens.

9            But my only hope is that you choose to accept that

10  this was a mistake, that it was wrong, that it was against the

11  law, and that you learn from it.  But that will be up to you.

12           For purposes of the record, before I impose sentence,

13  I'm going to make clear what I've done.

14           I had a guideline range of 121 to 151 months.  I

15  denied the government's motion for an upward departure from

16  that guideline range.  I denied Mr. Hoover's request for a

17  downward departure from that guideline range.

18           I varied downward based upon the history and

19  circumstances of these individuals and based upon my view that

20  a sentence of 121 to 151 months is simply more than necessary.

21  The guidelines in this case, I think, are greater than

22  necessary to accomplish the statutory purposes of sentencing.

23  And so I varied downward to a sentence of 60 months for

24  Mr. Hoover and 68 months for Mr. Ervin because in my view, that

25  term of imprisonment, which is a significant term of

1   imprisonment, accounts for their conduct, holds them

2   responsible, reflects the seriousness of the offense and

3   promotes respect for the law and accomplishes deterrence and is

4   certainly sufficient to protect the public.  And it also takes

5   into account similar sentences to individuals engaging in

6   similar conduct.

7           To the extent that the guidelines had been 33 to 41

8   for Mr. Hoover and 27 to 33 for -- sorry, 33 to 41 for

9   Mr. Ervin and 27 to 33 for Mr. Hoover, if those had been the

10  guidelines, if I had accepted the presentence report, then I

11  would have departed upward for the reasons stated earlier, or,

12  alternatively, varied upward to the same sentence that I'm

13  imposing today because the 33 to 41 months or 27 to 33 simply

14  did not take into account the seriousness of the offense

15  conduct, the sheer magnitude and scope of the proliferation of

16  the machine gun conversion devices that occurred in this case,

17  and doesn't differentiate Mr. Ervin and Mr. Hoover from other

18  individuals who received sentences in that range for offense

19  conduct that was significantly, significantly less egregious.

20          And so for purposes of the record, I'll just note

21  that if I was in error in determining that *Dupree* required me

22  to disregard the commentary guideline definition, I would have

23  arrived at the same sentence either based on the

24  guideline-authorized departures that I discussed earlier or an

25  upward variance for the same reasons.

1        So in sum, I have determined that the sentence that I

2   intend to impose here today is an appropriate sentence when I

3   look at these two human beings, when I look at their personal

4   history and characteristics, when I look at the circumstances

5   of their offense.  I am convinced that the sentences of 68 and

6   60 months are sufficient, but not greater than necessary.  I am

7   firmly convinced that any lesser sentence would be inadequate.

8   And so for those reasons, that is the sentence that I intend to

9   impose at this time.

10       At this time, Mr. Hoover and Mr. Ervin, if you will

11  please come up to the podium, along with your attorneys.

12       The Court has asked why judgment should not be

13  pronounced; I've been given no cause.  I've heard from counsel

14  and from the defendants and family and friends.  I've reviewed

15  the sentencing memoranda and the presentence report and all of

16  the materials that were presented.

17       Pursuant to Title 18, United States Code, Sections

18  3551 and 3553, it is the judgment of the Court that the

19  defendant Kristopher Justinboyer Ervin is hereby committed to

20  the custody of the Bureau of Prisons to be imprisoned for a

21  term of 68 months.  That term of imprisonment will consist of

22  the following:

23       A term of imprisonment of 60 months as to Count One,

24  a term of imprisonment of 68 months for Counts Two through

25  Twelve, with all such terms of imprisonment to run

1    concurrently.

2            Mr. Hoover, pursuant to Title 18, United States Code,

3    Sections 3551 and 3553, it is the judgment of the Court that

4    Matthew Raymond Hoover is committed to the custody of the

5    Bureau of Prisons to be imprisoned for a term of 60 months.

6    And that term of imprisonment consists of 60 months as to

7    Counts One through Three, Five, and Seven, with all such terms

8    to run concurrently.

9            Upon release from imprisonment both Mr. Ervin and

10   Mr. Hoover will be required to serve a term of supervised

11   release of three years.  During the term of that supervised

12   release you will be required to comply with the standard

13   conditions of release adopted in the Middle District of Florida

14   as well as certain special conditions.

15           Mr. Hoover, you'll have to participate -- pardon me.

16   Mr. Ervin, you will have to participate in a substance abuse

17   treatment program and submit to drug testing.

18           Both Mr. Ervin and Mr. Hoover will be required to

19   participate in a mental health treatment program.

20           Because these are firearms offenses, both Mr. Ervin

21   and Mr. Hoover will be required to submit to a search of their

22   person, their place of business, their residence, any vehicles

23   or storage units under their control.  You will have to advise

24   anyone with whom you share any of those items that you're

25   subject to that search condition.  And a refusal to submit to

1    the search would be a violation of the terms of your supervised

2    release.

3              You will also have to provide the probation officers

4    with any requested financial information.

5              Because you've been convicted of qualifying felony

6    offenses, you will have to submit to the collection of DNA.

7              You're ordered to refrain from any unlawful use of a

8    controlled substance.  And you'll have to submit to one drug

9    test within 15 days of beginning your supervised release and

10   then periodic drug tests thereafter.

11             Based on the financial circumstances of these

12   individuals, the Court waives the imposition of any fine.

13             And Ms. Taylor, I assume there's no forfeiture that I

14   have to consider at this point?

15             MS. TAYLOR:  Right, Your Honor.  We just request that

16   you mention the previously filed preliminary order of

17   forfeiture, but nothing beyond that, Your Honor.

18             THE COURT:  The Court incorporates the preliminary

19   order of forfeiture, Docket Number 316, into the judgment.

20             Mr. Ervin, because you were convicted on 12 separate

21   counts, there's a mandatory special assessment of $100 as to

22   each of them, so the Court is required to impose a $1,200

23   special assessment.

24             Mr. Hoover, you were convicted of five counts, so the

25   Court is required to impose a $500 special assessment.

1    (Courtroom deputy confers with the judge.)

2         THE COURT:  Ms. Wiles reminds me that for purposes of

3    the term of supervised release, for Mr. Ervin, that's a term of

4    supervised release of three years for each count, Counts One

5    through Twelve, to run concurrently.

6         For Mr. Hoover it is a term of three years for each

7    count, Counts One through Three, Five, and Seven, with all such

8    terms of supervised release to run concurrently.

9         Thank you, Ms. Wiles.

10        Ms. Taylor, does the government move to dismiss all

11   prior indictments at this time?

12        MS. TAYLOR:  Yes, Your Honor.

13        THE COURT:  The Court will dismiss all of the

14   previous indictments, that is, the original indictment, the

15   superseding indictment, and the second and third superseding

16   indictments on the motion of the government.

17        Mr. Ervin and Mr. Hoover will be remanded to the

18   custody of the marshal to await designation.

19        The Court will recommend designation for Mr. Ervin to

20   the facility closest to Jacksonville, Florida.  And the Court

21   will recommendation -- will recommend designation for

22   Mr. Hoover to the facility closest to Coloma, Washington.

23        DEFENDANT HOOVER:  Wisconsin.

24        THE COURT:  Sorry.  My apologies.  Coloma, Wisconsin.

25   I had "W" in my brain.

1          DEFENDANT HOOVER:  Sorry, I didn't want to go to

2    Washington.

3          THE COURT:  No.  Thank you, sir.  That was my error.

4       (Audio distortion.)

5          THE COURT:  The microphone really likes you,

6    Mr. Hoover.

7          DEFENDANT HOOVER:  They all do.

8          THE COURT:  Coloma, Wisconsin.

9          The Court will recommend that both of these

10   individuals be permitted to participate in any mental health

11   treatment at the facility of designation as well as any

12   vocational programming available at the facility of

13   designation.

14         Mr. King, are there any additional recommendations

15   you would ask me to consider for Mr. Ervin?

16         MR. KING:  No, Your Honor.

17         THE COURT:  Mr. Larosiere, anything else you would

18   ask me to consider for Mr. Hoover?

19         MR. LAROSIERE:  No, Your Honor.

20         THE COURT:  All right.  Gentlemen, you both have the

21   right to appeal the judgment of conviction as well as the

22   Court's sentence.  And if you wish to pursue an appeal, you

23   have to file a Notice of Appeal within 14 days.  The government

24   also has the right to appeal.

25         You are entitled to be represented by an attorney in

1  any appeal that's taken, and if you can't afford one, the Court

2  will appoint one to represent you at no cost to you.

3          And if you wish to pursue an appeal and you can't

4  afford the filing fee, that's fine, you just submit the notice

5  and the Court will accept it without prepayment.

6          Mr. Ervin, do you understand what I've just

7  explained?

8          DEFENDANT ERVIN:  Yes, ma'am.  I'm very knowledgeable

9  about this.

10          THE COURT:  Okay.

11          Mr. Hoover, do you understand what I just explained?

12          DEFENDANT HOOVER:  To a point.  After we recess, can

13  you have it so I can talk to my lawyers for a little bit before

14  we get out of here?

15          THE COURT:  Yes.

16          Can they meet with them downstairs before they --

17          U.S. MARSHAL:  Yes.

18          THE COURT:  Okay.  Yes.

19          MR. LAROSIERE:  Thank you, Your Honor.

20          THE COURT:  All right.  Mr. Ervin, do you have any

21  questions for me at this time, sir?

22          DEFENDANT ERVIN:  No, ma'am, not at all.  I want to

23  really tell you thank you for doing the best you could.  But

24  I --

25          MR. KING:  Stop.

1          DEFENDANT ERVIN:  Thank you.

2          THE COURT:  All right.

3          Mr. Hoover, any questions, sir?

4          DEFENDANT HOOVER:  No, thank you.

5          THE COURT:  Mr. King --

6          MR. KING:  Yes, Your Honor.

7          THE COURT:  -- any objections to the sentence or the

8   manner in which it was imposed?

9          MR. KING:  Other than the previous objections that

10  the Court's already ruled on, no, Your Honor.

11          THE COURT:  And I understand the substantive

12  objections.

13          Let me just clarify.  Do you have any objection to

14  the procedure -- any procedural objections to the sentence?

15          MR. KING:  No, Your Honor.  I apologize.  I phrased

16  that poorly.

17          THE COURT:  Mr. Larosiere, any objections?

18          MR. LAROSIERE:  In addition to -- one in addition to

19  those previously raised is that it is the position of Hoover

20  that the character of the items were not accurately considered

21  in the sentence itself.

22          THE COURT:  Okay.  Well, I think that actually goes

23  to the judgment, but regardless, that objection is noted.

24          DEFENDANT ERVIN:  Your Honor, we would join that too,

25  just so you know.  I plan on appealing it.

1        THE COURT:  I fully expect that.

2        DEFENDANT ERVIN:  I don't want to get in the way of

3   anything for that.  That's --

4        THE COURT:  No, that objection is preserved.

5        DEFENDANT ERVIN:  Yes, ma'am.

6        THE COURT:  That has very clearly been the position

7   of the parties throughout this case.  And I suspect that

8   everybody's going to appeal and that nobody is really satisfied

9   with what I've done today.  But I can promise every one of you

10  that I've tried to do what I think is right in this case.

11        Ms. -- I don't -- I guess it was -- I don't know

12  who's handling -- as to Mr. Ervin, any objection -- any

13  objection to the Court's sentence?

14        MS. TAYLOR:  Your Honor, as to both defendants, the

15  government objects to the substantive reasonableness of the

16  sentences.

17        THE COURT:  That objection is noted.  Ms. Taylor,

18  does the government have any procedural objections to the

19  manner in which sentence was imposed?

20        MS. TAYLOR:  No, Your Honor.

21        THE COURT:  All right.  I think that concludes

22  this -- oh, wait.

23     (Probation officer confers with the judge.)

24        THE COURT:  I need to correct my sentence as to

25  Mr. Ervin because the statutory maximum on Count Nine is

1    60 months.  So it's 60 months -- I couldn't read my own

2    writing, clearly -- 60 months as to Counts One and Count Nine

3    for Mr. Ervin because the structuring count is a statutory max

4    of five years and 68 months for Counts Two through Eight and

5    Ten through Twelve.

6              Ms. Taylor, any disagreement with that correction?

7              MS. TAYLOR:  No, Your Honor.

8              THE COURT:  Mr. King, not agreeing with the sentence,

9    but any disagreement with my correcting that mistake on my

10   part?

11             MR. KING:  No, Your Honor.

12             DEFENDANT ERVIN:  Your Honor, has something changed

13   or it's still the same amount of time?

14             THE COURT:  It's the same amount of time.

15             DEFENDANT ERVIN:  Okay.  I just wanted to make sure.

16             THE COURT:  Your total sentence is 68 months.

17             DEFENDANT ERVIN:  Yes, ma'am.

18             THE COURT:  And you've already served the majority of

19   that, is the good news for you.

20             DEFENDANT ERVIN:  Yes, ma'am.

21             THE COURT:  And your total sentence, Mr. Hoover, is

22   60 months.  And the way it works in the federal prison -- in

23   the federal system is that as long as you behave while you're

24   incarcerated, which I fully expect that both of you will,

25   you'll serve 85 percent of that and then you'll be able to go

1   home to your families and start your term of supervised

2   release.

3         And I probably won't see either one of you again, so

4   I wish you both good luck.

5         And I thank you all for being here.

6         We're in recess.

7         COURT SECURITY OFFICER:  All rise.

8      (Proceedings concluded at 12:44 p.m.)

9                         -    -    -

1              CERTIFICATE OF OFFICIAL COURT REPORTER

2

3    UNITED STATES DISTRICT COURT)

4    MIDDLE DISTRICT OF FLORIDA )

5

6         I hereby certify that the foregoing transcript is a true

7    and correct computer-aided transcription of my stenotype notes

8    taken at the time and place indicated herein.

9

10        DATED this 14th day of September, 2023.

11

12                         /s/ Katharine M. Healey
                           Katharine M. Healey, RMR, CRR, FPR-C
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25